ACCEPTED
15-25-00152-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
10/6/2025 12:28 PM
CHRISTOPHER A. PRINE
CLERK

**No. 15-25-____-CV**

IN THE COURT OF APPEALS
FOR THE FIFTEENTH DISTRICT
AT AUSTIN

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
10/6/2025 12:28:00 PM
CHRISTOPHER A. PRINE
~~Clerk~~

IN RE FRANCES SPANOS SHELTON,

*Relator*.

On Mandamus from the 414th District Court
of McLennan County, Texas, Cause No. 2024-3035-5

## PETITION FOR WRIT OF MANDAMUS

Kirk L. Pittard
State Bar No. 24010313
kpittard@dpslawgroup.com
Rick Thompson
State Bar No. 00788537
rthompson@dpslawgroup.com
DURHAM, PITTARD & SPALDING, LLP
P.O. Box 224626
Dallas, Texas 75222
(214) 946-8000
(214) 946-8433 (fax)

Craig D. Cherry
State Bar No. 24012419
ccherry@cjsjlaw.com
Ryan C. Johnson
State Bar No. 24048574
rjohnson@cjsjlaw.com
Scott H. James
State Bar No. 24037848
sjames@cjsjlaw.com
CHERRY JOHNSON SIEGMUND
JAMES, PLLC
7901 Fish Pond Road, 2nd Floor
Waco, Texas 76710
(254) 732-2242
(866) 627-3509 (fax)

**COUNSEL FOR RELATOR**

**ORAL ARGUMENT REQUESTED**

## IDENTITY OF PARTIES AND COUNSEL

As required by Texas Rule of Appellate Procedure 52.3(a), Relator hereby identifies all parties and their appellate and trial counsel as well as other parties to the trial court's order:

**RELATOR**

Frances Spanos Shelton
("Fran")

**APPELLATE COUNSEL**

Kirk L. Pittard
State Bar No. 24010313
Rick Thompson
State Bar No. 00788537
DURHAM, PITTARD & SPALDING, LLP
P.O. Box 224626
Dallas, Texas 75222
(214) 946-8000
(214) 946-8433 (fax)

**TRIAL & APPELLATE COUNSEL**

Craig D. Cherry
State Bar No. 24012419
ccherry@cjsjlaw.com
Ryan C. Johnson
State Bar No. 24048574
rjohnson@cjsjlaw.com
Scott H. James
State Bar No. 24037848
sjames@cjsjlaw.com
CHERRY JOHNSON SIEGMUND JAMES, PLLC
7901 Fish Pond Road, 2nd Floor
Waco, Texas 76710
(254) 732-2242

| **REAL PARTIES IN INTEREST** | **TRIAL & APPELLATE COUNSEL** |
|---|---|
| Vernon Leuschner | Andy McSwain<br>State Bar No. 1361100<br>mcswain@thetexasfirm.com<br>Mark E. Firmin<br>State Bar No. 24099614<br>mfirmin@thetexasfirm.com<br>BEARD KULTGEN BROPHY BOSTWICK &<br>DICKSON PLLC<br>220 South 4th Street<br>Waco, Texas 76701<br>(254) 776-5500<br>(254) 776-3591 (fax) |
| Robert Spanos, Christopher Spanos,<br>Katherine Leuschner, and<br>Katherine Nicole Lawrie | Jim Dunnam<br>State Bar No. 06258010<br>jimdunnam@dunnamlaw.com<br>Andrea Mehta<br>State Bar No. 24078992<br>andreamehta@dunnamlaw.com<br>Mason Vance Dunnam<br>State Bar No. 24108079<br>masondunnam@dunnamlaw.com<br>DUNNAM & DUNNAM LLP<br>4125 West Waco Drive<br>Waco, Texas 76710<br>(254) 753-6437<br>(254) 753-7434 (fax) |

## IDENTITY OF PARTIES AND COUNSEL (CONT'D)

### RESPONDENT

Hon. Judge Ryan Luna
414th Judicial District Court of McLennan County
501 Washington Avenue
Suite 307
Waco, TX 76701
414th@mclennan.gov


### APPOINTED RECEIVER

Aubrey R. Williams
Law Office of Aubrey R. Williams
P.O. Box 20156
Waco, Texas 76702
(254) 722-3331
aubreyw9000@yahoo.com

# TABLE OF CONTENTS

**Page(s)**

Identity of Parties and Counsel.................................................................... ii

Table of Authorities ...............................................................................viii

Statement of the Case ............................................................................xvii

Statement of Jurisdiction.........................................................................xx

Statement Regarding Oral Argument..................................................... xxi

Issues Presented ................................................................................... xxii

Statement of the Record .......................................................................xxiii

Introduction .............................................................................................1

Statement of Facts ...................................................................................2

Summary of the Argument.........................................................................9

Argument and Authorities .......................................................................10

I.      The District Court's Order Appointing Receiver Is Void
        Because It Enforces Aspects of Orders Issued by County
        Court at Law No. 1, Which Had No Jurisdiction Over Trust
        Disputes.........................................................................................13

        A.      County Court at Law No. 1 Had No Jurisdiction
                Over the Administration of a Trust in 2022 .................13

                1.      Section 25.1572 of the Texas Government Code Did
                        Not Confer Jurisdiction on County Court at Law
                        No. 1 to Exercise Jurisdiction Over Disputes
                        Involving the Trust................................................14

                2.      County Court at Law No. 1 Did Not Have Original
                        Probate Jurisdiction Over the Trust Claims............14

3. *The County Court at Law No. 1 Did Not Have Pendent or Ancillary Jurisdiction Over the Trust Claims* ........................16

B. Assuming Arguendo the County Court at Law No. 1 Had Some Sort of Ancillary Jurisdiction Over the Trust Claims, the County Court Lost That Jurisdiction No Later Than May 18, 2022 ......................19

II. The Real Parties in Interest Failed to Present Any Evidence to Support the Appointment of a Receiver Under Texas Law..............................................................................21

A. The Appointment of a Receiver Under Texas Civil Practice and Remedies Code § 64.001 Was an Abuse of Discretion Because the Appointment Was Not Supported by Any Evidence............................22

1. *Section 64.001(a)(2) does not apply here* ........................23

2. *Section 64.001(a)(3) does not authorize the district court's appointment of the receiver*....................25

3. *Section 64.001(a)(6) does not authorize the district court's appointment of the receiver either* ........................................29

B. The Appointment of a Receiver Under Texas Property Code § 114.008 Was an Abuse of Discretion as Well ..........................................33

C. The "Rules of Equity" Did Not Justify the Appointment of the Receiver.........................36

D. Mandamus Relief Is Proper Because the Benefits of Review at This Time Outweigh Any Detriments of Immediate Review..................................38

**Page(s)**

III.    The Order Appointing Receiver Requires Fran to Pay the Bills of the Trust, Which Violates Texas Law and Results in an Unconstitutional Taking of Fran's Property ......................................39

IV.    The Order Appointing Receiver Also Improperly Enjoins any Beneficiary from Directly or Indirectly Taking Any Actions That Would Hinder the Receiver from Selling Trust Property ....................................................................................41

V.    Mandamus Relief Is Not Barred by Principles of Equity .....................42

Conclusion and Prayer ..................................................................................44

Texas Rule of Appellate Procedure 52.3(j) Certification .................................46

Certificate of Compliance ..............................................................................46

Certificate of Service .....................................................................................47

# TABLE OF AUTHORITIES

**Cases**                                                                **Page(s)**

*Abila v. Miller*, 683 S.W.3d 842 (Tex. App.—Austin 2023, no pet.)................25

*Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223 (Tex. 1991) ..............................12

*Benefield v. State*, 266 S.W.3d 25
  (Tex. App.—Houston [1st Dist.] 2008, no pet.)...................................... 32, 38

*Bridas Corp. v. Unocal Corp.*, 16 S.W.3d 887
  (Tex. App.—Houston [14th Dist.] 2000, writ dism'd w.o.j.).......................42

*Brown v. Peters*, 94 S.W.2d 129 (Tex. Comm'n App. 1936) ..............................13

*Castaneda v. Chapa*, No. 13-22-00537-CV, 2024 WL 2197216
  (Tex. App.—Corpus Christi-Edinburg May 16, 2024, pet. denied)............17

*City of Houston v. Carlson*, 451 S.W.3d 828 (Tex. 2014) ....................................40

*Commons of Lake Houston, Ltd. v. City of Houston*,
  711 S.W.3d 666 (Tex. 2025)....................................................................40

*CSR Ltd. v. Link*, 925 S.W.2d 591 (Tex. 1996) ......................................................39

*Elliott v. Weatherman*, 396 S.W.3d 224
  (Tex. App.—Austin 2013, no pet.) ........................................................ 12, 22

*Estate of Benson*, No. 04-15-00087-CV, 2015 WL 5258702
  (Tex. App.—San Antonio Sept. 9, 2015, pet. dism'd) .................................22

*Estate of Hoskins*, 501 S.W.3d 295
  (Tex. App.—Corpus Christi-Edinburg 2016, orig. proceeding).................34

*Estate of Martinez*, No. 01-18-00217-CV, 2019 WL 1442100
  (Tex. App.—Houston [1st Dist.] Apr. 2, 2019, no pet.)...............................23

**Cases (cont'd)**                                                    **Page(s)**

*Estate of Price*, 528 S.W.3d 591 (Tex. App.—Texarkana 2017, no pet.)............31

*Estate of Vines*, No. 01-21-00003-CV, 2022 WL 1085624
    (Tex. App.—Houston [1st Dist.] Apr. 12, 2022, no pet.)...............................22

*Ex parte Fernandez*, 645 S.W.2d 636 (Tex. App.—El Paso 1983, no writ) .......11

*Fallon v. MD Anderson Physicians Network*, 586 S.W.3d 58
    (Tex. App.—Houston [1st Dist.] 2019, pet. denied).......................................25

*Fieldtech Avionics & Instruments, Inc. v. Component Control.Com, Inc.*,
    262 S.W.3d 813 (Tex. App.—Fort Worth 2008, no pet.)...............................27

*Floyd v. MMWKM Advisors, LLC*, No. 05-23-00638-CV,
    2024 WL 549036 (Tex. App.—Dallas Feb. 12, 2024, no pet.) ........................23

*Fortis Benefits v. Cantu*, 234 S.W.3d 642 (Tex. 2007) ..........................................31

*Franks v. Hovey*, No. 10-18-00218-CV, 2022 WL 395228
    (Tex. App.—Waco Feb. 9, 2022, pet. denied) .................................................12

*Gilbreath v. Horan*, 682 S.W.3d 454
    (Tex. App.—Houston [1st Dist.] 2023, pet. denied).......................................38

*Goodman v. Summit at West Rim, Ltd.*, 952 S.W.2d 930
    (Tex. App.—Austin 1997, no pet.) ........................................................... 19, 20

*Greiner v. Jameson*, 865 S.W.2d 493
    (Tex. App.—Dallas 1993, writ denied)............................................................42

*Guardianship of Fairley*, 650 S.W.3d 372 (Tex. 2022) ..........................................20

*In re AutoZoners, LLC*, 694 S.W.3d 219 (Tex. 2024) .................................... 11, 21

**Cases (cont'd)**                                                                  **Page(s)**

*In re Bent*, 487 S.W.3d 170 (Tex. 2016)..................................................................10

*In re Breviloba, LLC*, 650 S.W.3d 508 (Tex. 2022)..................................................13

*In re Columbia Medical Center of Las Colinas, Subsidiary, L.P.,*
    290 S.W.3d 204 (Tex. 2009).....................................................................................10

*In re Dickason*, 987 S.W.2d 570, 571 (Tex. 1998)
    (orig. proceeding) (per curiam)...............................................................................11

*In re Estate of Hallmark*, 629 S.W.3d 433
    (Tex. App.—Eastland 2020, no pet.).......................................................................17

*In re Estate of Martinez*, No. 01-18-00217-CV, 2019 WL 1442100
    (Tex. App.—Houston [1st Dist.] Apr. 2, 2019, no pet.)..........................................30

*In re Giles*, 675 S.W.3d 37
    (Tex. App.—Corpus Christi-Edinburg 2023, orig. proceeding)..............................43

*In re Harrison*, No. 14–15–00370–CV, 2015 WL 5935816
    (Tex. App.—Houston [14th Dist.] Oct. 13, 2015, orig. proceeding)........................11

*In re Int'l Profit Assocs., Inc.*, 274 S.W.3d 672 (Tex. 2009) ..................................42

*In re Kelly*, 399 S.W.3d 282
    (Tex. App.—San Antonio 2012, orig. proceeding)..................................................42

*In re McCray*, No. 05–13–01195–CV, 2013 WL 5969581
    (Tex. App.—Dallas Nov. 7, 2013, orig. proceeding)...............................................11

*In re Panchakarla*, 602 S.W.3d 536 (Tex. 2020)
    (orig. proceeding) (per curiam)...............................................................................11

**Cases (cont'd)**                                               **Page(s)**

*In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124 (Tex. 2004) .............................10

*In re Southwestern Bell Tel. Co.*, 35 S.W.3d 602 (Tex. 2000)
(orig. proceeding) (per curiam)................................................................. 11, 18

*In re Tex. Conference of Seventh-Day Adventists*, 652 S.W.3d 136
(Tex. App.—Fort Worth 2022, orig. proceeding) ..........................................18

*In re Toyota Motor Corp.*, No. 10–11–00050–CV, 2011 WL 5830468
(Tex. App.—Waco Nov. 16, 2011, orig. proceeding) ....................................19

*In re Vaishangi, Inc.*, 442 S.W.3d 256 (Tex. 2014)
(orig. proceeding) (per curiam)....................................................................11

*In re Valliance Bank*, 422 S.W.3d 722
(Tex. App.—Fort Worth 2012, orig. proceeding) ..........................................43

*Interest of J.S.*, 670 S.W.3d 591 (Tex. 2023)...........................................................29

*Jay & VMK, Corp. v. Lopez*, 572 S.W.3d 698
(Tex. App.—Houston [14th Dist.] 2019, no pet.) ..........................................24

*Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150 (Tex. 2004) ....................27

*Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916 (Tex. 1995) .......................10

*Junkin v. Sterchi Furniture Co.*, 92 S.W.2d 1098
(Tex. Civ. App.—San Antonio 1936, no writ) ...............................................24

*Krumnow v. Krumnow*, 174 S.W.3d 820
(Tex. App.—Waco 2004, pet. denied) ...........................................................21

**Cases (cont'd)** **Page(s)**

*Laidlaw Waste Sys. (Dallas), Inc. v. City of Wilmer*,
904 S.W.2d 656 (Tex. 1995)..................................................................31

*Lawton v. Lawton*, No. 01–12–00932–CV, 2014 WL 3408699
(Tex. App.—Houston [1st Dist.] Jul. 10, 2014, no pet.)................................20

*Matter of Bumstead Family Irrevocable Trust*, No. 13-20-00350-CV,
2022 WL 710159 (Tex. App.—Corpus Christi-Edinburg
Mar. 10, 2022, pet. denied)...............................................................32

*Matter of Marriage of Pinkston and Smith*, No. 12-24-00185-CV,
2024 WL 3858474 (Tex. App.—Tyler Aug. 15, 2024, no pet.) ......................21

*Mexico Foods Holdings, LLC v. Nafal*, No. 05-23-00108-CV,
2023 WL 6284705 (Tex. App.—Dallas 2023, no pet.) ...................................12

*Moody Nat'l Bank v. Moody*, No. 14-21-00096-CV, 2022 WL 14205534
(Tex. App.—Houston [14th Dist.] Oct. 25, 2022, pet. denied)....................34

*Mueller v. Beamalloy, Inc.*, 994 S.W.2d 855
(Tex. App.—Houston [1st Dist.] 1999, no pet.)..................................... 12, 30

*Pajooh v. Royal West Invs. LLC, Series E*, 518 S.W.3d 557
(Tex. App.—Houston [1st Dist.] Mar. 30, 2017, no pet.) ............................33

*Peek v. Mayfield*, No. 02-22-00492-CV, 2023 WL 5967886
(Tex. App.—Fort Worth Sept. 14, 2023, pet. denied)..................................34

*Rivercenter Assocs. v. Rivera*, 858 S.W.2d 366
(Tex. 1993) (orig. proceeding) .........................................................42

*Rogers v. Daniel Oil & Royalty Co.*, 110 S.W.2d 891 (Tex. 1937) ......................37

**Cases (cont'd)**                                                                                       **Page(s)**

*Safeco Ins. Co. of Am. v. Clear Vision Windshield Repair, LLC,*
    564 S.W.3d 913 (Tex. App—Houston [14th Dist.] 2018, no pet.) ...............12

*San Antonio River Auth. v. Austin Bridge & Road, L.P.,*
    601 S.W.3d 616 (Tex. 2020)...................................................................20

*Schuchmann v. Schuchmann*, 193 S.W.3d 598
    (Tex. App.—Fort Worth 2006, pet. denied).......................................17

*Schuld v. Dembrinski*, 12 S.W.3d 485 (Tex. App.—Dallas 2000, no pet.) ........20

*Spiritas v. Davidoff*, 459 S.W.3d 224 (Tex. App.—Dallas 2015, no pet.).........21

*TC & C Real Estate Holdings, Inc. v. ETC Katy Pipeline, Ltd.,*
    No. 10–16–00134–CV, 2017 WL 7048923
    (Tex. App.—Waco Dec. 20, 2017, pet. denied)................................12

*Tex. Unemployment Comp. Comm'n v. Metropolitan Bldg. & Loan Ass'n,*
    139 S.W.2d 309 (Tex. Civ. App.—Austin 1940, writ ref'd).........................37

*Thompson v. Consolidated Gas Util. Corp.*, 300 U.S. 55 (1937)............................40

*Thompson v. Winkelmann*, No. 01-06-00457-CV, 2008 WL 921041
    (Tex. App.—Houston [1st Dist.] Apr. 3, 2008, no pet.)................................40

*Walker v. Packer*, 827 S.W.2d 833 (Tex. 1992) .....................................................11

*Welch v. Milton*, 185 S.W.3d 586
    (Tex. App.—Dallas 2006, pet. denied) .........................................................27

*Zimmerman v. Ottis*, 941 S.W.2d 259
    (Tex. App.—Corpus Christi 1996, orig. proceeding)...................................43

**Statutes**                                                                                          **Page(s)**

TEX. CIV. PRAC. & REM. CODE § 51.014(a)........................................................................41

TEX. CIV. PRAC. & REM. CODE § 51.014(a)(1) ...................................................................7

TEX. CIV. PRAC. & REM. CODE § 64.001 ..................................................................... 22, 33

TEX. CIV. PRAC. & REM. CODE § 64.001(a)......................................................................30

TEX. CIV. PRAC. & REM. CODE § 64.001(a)(2) ........................................................... 23, 24

TEX. CIV. PRAC. & REM. CODE § 64.001(a)(3) ....................................................... 23, 25, 30

TEX. CIV. PRAC. & REM. CODE § 64.001(a)(6) ....................................................... 23, 29, 30

TEX. CIV. PRAC. & REM. CODE § 64.001(b) ............................................................. 23-25, 30

TEX. ESTATES CODE § 31.002(a) ......................................................................................15

TEX. ESTATES CODE § 32.001(b) ................................................................................ 16, 19

TEX. ESTATES CODE § 31.002(b)(2) .................................................................................15

TEX. ESTATES CODE § 31.002(b)(3) .................................................................................15

TEX. ESTATES CODE § 31.002.........................................................................................14

TEX. ESTATES CODE § 32.001(a) .....................................................................................14

TEX. GOV'T CODE § 22.220(d) ................................................................... xiii, xiv, 8

TEX. GOV'T CODE § 22.221(c)................................................................................xiii

TEX. GOV'T CODE § 22.221(c-1) ............................................................... xiii, xiv, 8

**Statutes (cont'd)**                                                    **Page(s)**

TEX. GOV'T CODE § 22.201(p) .................................................................. xiii

TEX. GOV'T CODE § 25.003 .................................................................. 9, 14

TEX. GOV'T CODE § 25.0003(e) ...................................................................1

TEX. GOV'T CODE § 25.0003(d) ...................................................................1

TEX. GOV'T CODE §§ 25.0041-.2512................................................................13

TEX. GOV'T CODE §§ 25.1571-.1572................................................................14

TEX. GOV'T CODE § 25.1572 ...................................................................9

TEX. GOV'T CODE § 73.001(a)...................................................................8

TEX. GOV'T CODE § 311.011(a) ................................................................29

TEX. GOV'T CODE § 311.021(2) ................................................................29

TEX. GOV'T CODE § 312.005 ................................................................29

TEX. PROP. CODE § 114.008(a)(5)............................................................ 22, 33, 34

**Other Authorities**

BLACK'S LAW DICTIONARY (12th ed. 2024) .................................................... 18, 36

TEX. CONST. art. 1, § 17(a) ................................................................40

**Rules**

TEX. R. APP. P. 28.1.................................................................7

**Rules (cont'd)**                                                                                **Page(s)**

TEX. R. APP. P. 29.3 .......................................................................................7

TEX. R. APP. P. 52.3(k) ...............................................................................xvii

TEX. R. APP. P. 52.7 ....................................................................................xvii

## STATEMENT OF THE CASE

**Nature of the Case:**

This case arises from a dispute regarding administration of the Dorothy Spanos Living Trust ("Trust") (Tab B) (CR 460-552).

This mandamus arises from the district court's order appointing a receiver, which gives effect to earlier void orders issued by the County Court at Law No. 1 of McLennan County. Those orders appointed former Judge Robert Stem as trust advisor, who then removed Ms. Frances Spanos Shelton ("Fran") as trustee of the Trust.

**Respondent District Court:**

Hon. Judge Ryan Luna, 414th Judicial District Court of McLennan County

**Course of Proceedings:**

Fran, the original trustee following the death of Ms. Spanos, sued for the removal of her successor trustee, Mr. John Malone, due to his alleged breaches of fiduciary duties and moved to reinstate herself as trustee. In turn, Real Parties in Interest sued Fran for alleged breaches of trust during her prior tenure as trustee.

Mr. Malone resigned as trustee. The Real Parties moved for the appointment of a receiver over the Trust.

**Disposition:**

On March 2, 2025, following a hearing on the motions, the district court issued its Order Appointing Receiver. *See* Tab A (CR 1291-99).

xvii

Fran filed an interlocutory appeal in the Waco Court of Appeals and sought temporary emergency relief from the Order Appointing Receiver, pending resolution of the appeal. The court granted the requested relief.

The Texas Supreme Court transferred the case from the Waco Court to this Court for purposes of docket equalization on May 1, 2025.

Although it has statewide jurisdiction, the Court's authority to issue mandamus relief in cases over which it does not have exclusive appellate jurisdiction is not as clear. *See* TEX. GOV'T CODE §§ 22.201(p), 22.221(c), (c-1), 22.220(d).

Consequently, Fran filed her petition for writ of mandamus in the Waco Court and filed a motion to transfer this appeal back to the Waco Court for resolution of the related issues in a single forum. In its correspondence to the Supreme Court, the Court noted its belief that it may have jurisdiction to issue mandamus relief in a transferred case. The Supreme Court denied Fran's motion to transfer and consolidate.

Given the Court's belief that it may have jurisdiction to issue mandamus relief

and the Supreme Court's ruling, Fran, out of an abundance of caution, is filing this largely identical petition for writ of mandamus in this Court as well.

## STATEMENT OF JURISDICTION

Section 22.221(c-1) of the Texas Government Code provides that this Court's jurisdiction "to issue writs is limited to writs arising out of matters over which the court has exclusive intermediate appellate jurisdiction under Section 22.220(d)." Section 22.220(d) does not expressly state that a case transferred for docket equalization purposes is part of the Court's exclusive intermediate appellate jurisdiction. Thus, Relator filed her mandamus petition in the Waco Court along with a motion to transfer and consolidate the case in a single forum with jurisdiction to grant all of the relief sought— *i.e.*, the Waco Court.

This Court corresponded with the Supreme Court and noted its belief that the Court may indeed have jurisdiction to grant mandamus relief in a case transferred for docket equalization purposes. Thereafter, the Supreme Court denied Fran's motion to transfer and consolidate. Given the denial of the motion and this Court's belief that it may possess jurisdiction to grant mandamus relief, Fran is filing her petition for writ of mandamus in this Court as well. The issues presented in this petition largely overlap with the issues presented in the interlocutory appeal already pending before this

Court and are identical to the issues in the mandamus action pending in the Waco Court.

## STATEMENT REGARDING ORAL ARGUMENT

Given the many moving parts and complex jurisdictional provisions at play in this case, Fran believes that oral argument will materially assist the Court in sorting through the underlying void orders that were issued years earlier by McLennan County Court of Law No. 1 and were given effect by the district court's Order Appointing Receiver.

# ISSUES PRESENTED

1. Whether County Court of Law No. 1 had jurisdiction to issue orders in the case regarding the administration of Ms. Spanos's Trust.

2. Whether the County Court at Law's earlier orders are void.

3. If the County Court at Law's orders are void, including the orders appointing Judge Stem as the trust advisor, the issue becomes whether all actions taken by Judge Stem as trust advisor, including the removal of Fran as trustee, are also void.

4. Whether Respondent's Order Appointing Receiver, which gives effect to the void orders issued by the County Court at Law No. 1, is therefore void as well.

5. Whether the district court's findings and conclusions in the Order Appointing Receiver are supported by any legally sufficient evidence, whether the district court abused its discretion by so ruling, and whether Fran has an adequate remedy by appeal from the court's order.

6. Whether the Order Appointing Receiver would result in an unconstitutional taking of Fran's property.

7. Whether Respondent abused its discretion by issuing its Order Appointing Receiver, which enjoined Fran from exercising her statutory right to challenge the rulings of the district court and the actions of the receiver.

8. Whether Respondent abused its discretion by issuing the Order Appointing Receiver.

## STATEMENT OF THE RECORD

The Mandamus Record is identical to the materials presented in the attached Appendix. The Mandamus Record and Appendix contain sworn copies of the district court's order appointing the receiver for the Trust, the document creating the Trust, the void orders of the county court at law on which the district court's order is based, and other documents material to the legal issues presented. *See* TEX. R. APP. P. 52.3(k), 52.7. The documents in the mandamus record and appendix shall be referred to by tab letter and, when available, page numbers from the Clerk's Record from the related interlocutory appeal pending in this Court—*e.g.*, Tab A (CR 1291-99).

Fran opted not to attach all documents in the Clerk's Record from the related interlocutory appeal because it is rather voluminous—*i.e.*, it contains over 1,350 pages of documents. However, when necessary to provide the Court with background information, Fran refers the Court to cites from the clerk's record on file in the related interlocutory appeal.

The Mandamus Record and Appendix also include a sworn copy of the transcript from the hearing on the parties' motions to appoint a receiver and to designate a trustee. The transcript shall be referenced by tab letter and page number—*e.g.*, Tab L at 3.

## INTRODUCTION

This is a complicated family dispute regarding the appointment of a receiver for the Dorothy Spanos Living Trust ("Trust"). This case is further complicated by the fact that County Court at Law No. 1 of McLennan County issued numerous orders in an earlier proceeding that purport to govern the current administration of the Trust—even though that court never had subject matter jurisdiction over the administration of the Trust. Fran attacks the district court's Order Appointing Receiver as void because it gives effect to the void orders issued by the county court at law.

The court also abused its discretion by issuing the order appointing a receiver over certain real property in the Trust and directing the receiver to take possession of, and sell, that property because there is no evidence to support the district court's findings or its order appointing the receiver. The Order Appointing Receiver also includes mandates that do not comport with Texas law or the state and federal constitutions. Thus, the Order Appointing Receiver, even if not void, constitutes an abuse of discretion for which there would be no adequate remedy on appeal, and the Court should grant conditional mandamus relief.

1

On December 19, 2007, Ms. Dorothy Spanos transferred much of her real and personal property into the Dorothy Spanos Living Trust. *See* Tab B (CR 467, 551). Ms. Spanos appointed herself trustee. *See* CR 466. She then appointed the Relator, her daughter Fran, to serve as co-trustee. Ms. Spanos named Fran's husband, Mr. Ricky Shelton, to serve as substitute trustee, if necessary. Tab B (CR 470-71). Ms. Spanos did not appoint Ms. Katherine Leuschner, her other daughter and Appellee, to serve as trustee or substitute trustee. Ms. Spanos also signed the First Amendment to the Trust. *See* Tab C (CR 553-60). Upon Ms. Spanos's death, Fran became the sole trustee.

In March 2022, Ms. Leuschner filed an application in the County Court at Law No. 1 of McLennan County for the appointment of Retired Judge Robert Stem as the temporary administrator of Ms. Spanos's estate as well as the trust advisor for the Trust. *See* Tab D (CR 801-11). Under the terms of the Trust, a trust advisor acts as a "super-trustee" vested with the power to, among other things, remove a trustee with or without just cause, appoint a successor trustee, direct a trustee to execute any documents necessary to carry out his will, and, if any conflicts arise, overrule and trump the authority and actions of any trustee. *See* Tab B (CR 476-78).

On March 8, 2022, the county court at law entered an order appointing Judge Stem as the temporary administrator of Ms. Spanos's estate and trust advisor to the Trust. *See* Tab E (CR 817-19). His term was set to expire on September 5, 2022. *See* Tab E (CR 817). On May 18, 2022, the county court at law discharged Judge Stem as the temporary administrator and ended the administration of the estate. *See* Tab F (CR 821-23). However, Judge Stem remained the purported trust advisor under the county court's earlier order.

On September 1, 2022, the county court signed an order extending the appointment of Judge Stem as trust advisor until Judge Stem "determines that there no longer exists a necessity for a Trust Advisor, by agreement of the Parties, or if the Court, in the best interest of the Trust, determines cause exists for the removal of the Trust Advisor." *See* Tab G (CR 827-28). On May 3, 2023, Judge Stem removed Fran as trustee of the Trust, skipped over Mr. Shelton, who was named the successor trustee by the terms of the Trust, and appointed his colleague Mr. John Malone, a Waco attorney, as the trustee. *See* Tab H (CR 923).

On October 25, 2024, Fran filed the underlying lawsuit against Mr. Malone for breach of his fiduciary duties in the district court. *See* Tab I (CR 9-19). On February 3, 2025, the Real Parties in Interest filed a joint petition

3

in intervention, seeking damages from Fran for alleged self-dealing and breaches of trust during her stint as trustee. *See* CR 385-569. On February 24, 2025, Mr. Malone resigned as trustee. *See* Tab J (CR 990). Thus, currently, the Trust is effectively without a trustee.

Fran filed a motion to re-affirm herself as Trustee or, in the alternative, to properly designate a trustee of the Trust. CR 787-928. On February 25, 2025, the Real Parties in Interest filed an application to appoint a receiver over all Trust property. *See* Tab K (CR 956-1019, 1061-65).

On March 4, 2025, the district court conducted an evidentiary hearing on the parties' motions. *See* Tab L at 1. The Real Parties opened the hearing by calling Judge Stem as a witness. *See* Tab L at 77. Judge Stem is a highly esteemed, former judge in the Waco legal community, and his reputation and credentials followed him into the courtroom during the hearing. The district court permitted Judge Stem to testify, over Fran's objections, as an apparent expert, albeit undesignated as such, on the legal effect of the Trust document, the jurisdiction of the county court at law that appointed him, the merits of Fran's pending claims, and whether Fran's attorneys violated professional legal ethics. *See* Tab L at 79, 93-95. The district court also permitted Judge Stem to admonish Fran and her attorneys in open court for

4

filing the lawsuit to remove Mr. Malone as Trustee, which he considered "ridiculous, baseless, [and] spiteful lawsuit conduct." Tab L at 101. Judge Stem also testified that he believed Fran's actions violated the terms of the trust. *See* Tab L at 92, 101.

Judge Stem's testimony at the hearing directly conflicted with prior statements that he made to Fran before she filed the motion to remove Mr. Malone as trustee (who Judge Stem appointed). Before Fran filed the motion to remove Mr. Malone, Judge Stem informed her that she was not being removed as trustee for cause, but rather to shield her from the "enormously difficult situation" she found herself in "through no fault of [her] own," which was created by the actions of Ms. Leuschner, which Judge Stem characterized as "firing laser beams at [Fran]." Tab L at 103, 112.

Judge Stem ultimately conceded that his testimony in the district court conflicted with his remarks made many months earlier. *See* Tab L at 113. Judge Stem also admitted that, even though he testified that an unidentified cause existed to remove Fran as trustee, he continued to allow Fran to "handle all the finances for the Trust" until a couple of months before the hearing—*i.e.*, for almost a year and a half after she was removed by Judge Stem as trustee. *See* Tab L at 92, 116-17. The district court concluded the

hearing following the testimony of Judge Stem and arguments of counsel. *See* Tab L at 137. Fran was not similarly afforded the opportunity to present any witnesses, testimony, or other evidence on her behalf.

On March 31, 2025, based on the testimony of Judge Stem, the district court partially granted Real Parties in Interest's motion for the appointment of a receiver and issued its Order Appointing Receiver. *See* Tab A (CR 1291-99). The trial court made the following finding in support of its ruling:

> Due to the extraordinary controversy surrounding the sale of the Front 45 Acres, there is a material risk of harm, injury, damage and/or loss to the Property and/or Trust funds, as well as the various beneficiaries, if a Receiver is not appointed to carry out the terms of the Trust.

Tab A (CR 1292). The district court concluded that "[i]rreparable damage will ensue to the beneficiaries of the Trust unless there is an immediate sale of the Front 45 Acres pursuant to the terms of the Trust." Tab A (CR 1292). Although the Order Appointing Receiver is "supported" by 11 findings of fact and conclusions of law, the district court did not identify any alleged harm, damage, or loss to the property, trust funds, or the beneficiaries that would result from its failure to appoint a receiver. *See* Tab A (CR 1292).

The order directed the receiver to take possession of, and sell, the 45-acre tract of Trust property in Crawford, Texas. Tab A (CR 1291). The order

6

effectively denied Fran's motion to re-affirm or designate a trustee for the Trust. The district court appointed attorney Aubrey R. Williams to serve as the receiver. *See* Tab A (CR 1293).

The Order Appointing Receiver not only appointed the receiver and set forth his powers and obligations, but also directed Fran, who has been purportedly removed as Trustee by Judge Stem, to turn over "all documents and materials representing all interests of the Trust in the Front 45 Acres" within 10 days. Tab A (CR 1295). The Order also requires Fran, who is no longer a signatory on the Trust's bank account, to "continue to make regular and routine payments of any bills or invoices incurred by the Trust in the ordinary course of business." Tab A (CR 1295).

On April 3, 2025, Fran filed an interlocutory appeal from the district court's Order Appointing Receiver in the Waco Court of Appeals. *See* TEX. CIV. PRAC. & REM. CODE § 51.014(a)(1) ("A person may appeal from an interlocutory order of a district court . . . that appoints a receiver or trustee."). She concurrently filed an emergency motion for temporary relief because the order required her to pay the bills of the Trust even though she is neither a trustee nor a signatory to the Trust's bank account. *See* TEX. R. APP. P. 28.1, 29.3. On April 9, 2025, the Waco Court granted the requested temporary

7

relief and stayed the Order Appointing Receiver pending resolution of the appeal or further order of the court.

On May 1, 2025, the Texas Supreme Court transferred the appeal from the Waco Court to this Court for docket equalization. *See* TEX. GOV'T CODE § 73.001(a) ("Except as provided by Subsection (b), the supreme court may order cases transferred from one court of appeals to another at any time that, in the opinion of the supreme court, there is good cause for the transfer."). Because this dispute involves jurisdictional challenges to the county court's orders and involves requests for mandamus relief, Fran filed a motion to transfer the interlocutory appeal back to the Waco Court for the efficient resolution of these related disputes in a single forum. Fran feared that this Court may not have jurisdiction to grant the requested mandamus relief because the case did not appear to technically fall under this Court's exclusive appellate jurisdiction. *See* TEX. GOV'T CODE 22.220(c-1),(d).

The Supreme Court ultimately denied Fran's motion. Given counsel's fear that the Court could resolve the interlocutory appeal without granting mandamus relief to remedy the void nature of the county court at law's orders, and a paranoia that the Waco Court could deny the mandamus before them because of this Court's representation to the Supreme Court that

8

it may indeed have jurisdiction to grant mandamus relief—*i.e.*, the existence of another potential appellate remedy—Fran is filing this largely duplicative petition for writ of mandamus in this Court as well.

## SUMMARY OF THE ARGUMENT

The County Court at Law No. 1 had no jurisdiction over the Trust or the related disputes when it issued its orders related to the administration of the Trust. In 2022, when it issued its order appointing Judge Stem as the trust advisor, county courts at law in McLennan County were permitted to exercise jurisdiction "in third degree felony cases" and were authorized to conduct arraignments, pretrial hearings, accept guilty pleas, and conduct probation revocation hearings in felony cases. TEX. GOV'T CODE § 25.1572 (2022). The county court also possessed jurisdiction over cases within its amount-in-controversy jurisdiction. TEX. GOV'T CODE § 25.003 (2022). The county court did not have jurisdiction to make rulings involving the administration of a trust.

Because the county court at law did not have jurisdiction, its orders appointing Judge Stem and extending his term as the trust advisor, and—as a consequence—all decisions made by Judge Stem on behalf of the Trust pursuant to those orders, are void. Although these orders were issued, and

9

acts were taken, in 2022 and 2023, the district court's Order Appointing Receiver adopts and incorporates aspects of the 2022 and 2023 orders issued by the county court at law. The district court's order is, therefore, void as well.

Mandamus relief is the proper remedy for the issuance of void orders. This Court should make clear that the orders of the County Court at Law No. 1, the actions taken by Judge Stem, and the district court's order were all void. The Court should grant conditional mandamus relief.

## ARGUMENT AND AUTHORITIES

To obtain mandamus relief, a relator normally must show that the trial court abused its discretion and that it has no adequate appellate remedy. *See In re Bent*, 487 S.W.3d 170, 177-78 (Tex. 2016); *In re Columbia Medical Center of Las Colinas, Subsidiary, L.P.*, 290 S.W.3d 204, 209 (Tex. 2009). A trial court abuses its discretion when it makes a ruling "so arbitrary and unreasonable as to amount to a clear and prejudicial error of law." *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 917 (Tex. 1995). A relator has an adequate remedy by appeal when the benefits from mandamus review are outweighed by the detriments from immediate review. *See In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 136 (Tex. 2004).

A court also abuses its discretion if it issues an order that exceeds its jurisdiction. Such an order is considered void ab initio, and mandamus relief is the proper remedy. *See In re Panchakarla*, 602 S.W.3d 536, 539 (Tex. 2020) (orig. proceeding) (per curiam); *In re Southwestern Bell Tel. Co.*, 35 S.W.3d 602, 605 (Tex. 2000) (orig. proceeding) (per curiam); *In re Dickason*, 987 S.W.2d 570, 571 (Tex. 1998) (orig. proceeding) (per curiam). In seeking relief from a void order, a relator need not show that she lacks an adequate remedy by appeal. *In re Vaishangi, Inc.*, 442 S.W.3d 256, 261 (Tex. 2014) (orig. proceeding) (per curiam); *In re Southwestern Bell Tel. Co.*, 35 S.W.3d at 605. Mandamus relief also protects a relator from an order that enforces another void order. *See Ex parte Fernandez*, 645 S.W.2d 636, 639 (Tex. App.—El Paso 1983, no writ); *In re Harrison*, No. 14-15-00370-CV, 2015 WL 5935816, at *5 (Tex. App.—Houston [14th Dist.] Oct. 13, 2015, orig. proceeding); *In re McCray*, No. 05-13-01195-CV, 2013 WL 5969581, at *2 (Tex. App.—Dallas Nov. 7, 2013, orig. proceeding).

Finally, a court abuses its discretion if no evidence supports a finding of fact upon which its ruling rests. *See In re AutoZoners, LLC*, 694 S.W.3d 219, 223 (Tex. 2024); *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992). A district court's findings and conclusions in support of the appointment of a receiver

"are not binding on [this Court] but may be helpful in determining if the trial court exercised its discretion in a reasonable and principled fashion." *Mexico Foods Holdings, LLC v. Nafal*, No. 05-23-00108-CV, 2023 WL 6284705, at \*4 (Tex. App.—Dallas 2023, no pet.); *see Elliott v. Weatherman*, 396 S.W.3d 224 at 228. Such findings "do not carry the same weight on appeal as findings made under rule 296," even if they are not challenged on appeal. *Mueller v. Beamalloy, Inc.*, 994 S.W.2d 855, 858–59 (Tex. App.—Houston [1st Dist.] 1999, no pet.).

If challenged, however, as they are in this case, the Court reviews the findings by the standards used for reviewing the sufficiency of the evidence. *See Franks v. Hovey*, No. 10-18-00218-CV, 2022 WL 395228, at \*5 (Tex. App.—Waco Feb. 9, 2022, pet. denied); *Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 226 (Tex. 1991). A legal sufficiency challenge to findings of fact fails if there is more than a scintilla of evidence to support the findings. *See Safeco Ins. Co. of Am. v. Clear Vision Windshield Repair, LLC*, 564 S.W.3d 913, 918-19 (Tex. App—Houston [14th Dist.] 2018, no pet.); *TC & C Real Estate Holdings, Inc. v. ETC Katy Pipeline, Ltd.*, No. 10–16–00134–CV, 2017 WL 7048923, at \*1 (Tex. App.—Waco Dec. 20, 2017, pet. denied). No evidence supports the district court's key findings of fact.

**I.** **THE DISTRICT COURT'S ORDER APPOINTING RECEIVER IS VOID BECAUSE IT ENFORCES ASPECTS OF ORDERS ISSUED BY COUNTY COURT AT LAW NO. 1, WHICH HAD NO JURISDICTION OVER TRUST DISPUTES.**

Pursuant to the terms of the Trust, a trust advisor "must be appointed by a court of *competent jurisdiction* on petition of a Trustee or beneficiary." Tab B (CR 845). Although the Real Parties stated in their application for the appointment of a trust advisor that County Court at Law No. 1 was a court of competent jurisdiction to hear their action, it clearly was not. CR 801; *see Brown v. Peters*, 94 S.W.2d 129, 130 (Tex. Comm'n App. 1936) (jurisdiction is based on allegations in the petition unless a lack of jurisdiction is apparent from the face of the petition).

**A.** **County Court at Law No. 1 Had No Jurisdiction Over the Administration of a Trust in 2022.**

County courts at law in Texas have varying jurisdictions dependent on statutes enacted by the Legislature. *See In re Breviloba, LLC*, 650 S.W.3d 508, 511 (Tex. 2022) (citing TEX. GOV'T CODE §§ 25.0041-.2512). No statute in effect in 2022 conferred jurisdiction on McLennan County Court at Law No. 1 to exercise jurisdiction over cases involving the administration of a trust.

1.  *Section 25.1572 of the Texas Government Code Did Not Confer Jurisdiction on County Court at Law No. 1 to Exercise Jurisdiction Over Disputes Involving the Trust.*

In 2022, a county court in McLennan County had "jurisdiction in third degree felony cases," as well as authority "to conduct arraignments, conduct pretrial hearings, accept guilty pleas, and conduct probation revocation hearings in felony cases." TEX. GOV'T CODE §§ 25.1571-.1572 (2022). The county court also possessed limited amount-in-controversy jurisdiction. *See* TEX. GOV'T CODE § 25.0003 (2022). Cases involving the administration of a trust were not within the jurisdiction that was expressly granted to County Court at Law No. 1 by statute.

2.  *County Court at Law No. 1 Did Not Have Original Probate Jurisdiction Over the Trust Claims.*

Ms. Leuschner moved to appoint Judge Stem as trust advisor while her motion for a temporary administration of Ms. Spanos's estate was before the country court at law. Thus, the county court at law was exercising probate jurisdiction.[1] The county court at law's probate jurisdiction included "all matters related to probate proceedings" as specified in Section 31.002 of the Estates Code. *See* TEX. ESTATES CODE §§ 31.002, 32.001(a). Section 31.002(a)

---

[1] County Court at Law No. 1 had probate jurisdiction because McLennan County did not have a statutory probate court. *See* TEX. GOV'T CODE § 25.0003(d), (e).

14

defines "matters related to probate proceedings" to include many different types of claims; however, a claim related to trust administration is not one of them.[2]

Section 31.002(b)(2) states that matters related to probate proceedings include "the interpretation and administration of a testamentary trust if the will creating the trust has been *admitted to probate* in the court."  TEX. ESTATES CODE § 31.002(b)(2) (emphasis added).  Section 31.002(b)(3) provides that matters related to probate proceedings include "the interpretation and administration of an inter vivos trust created by a decedent whose will has been *admitted to probate* in the court."  TEX. ESTATES CODE § 31.002(b)(3) (emphasis added).  Section 31.002(b)(3) is the only basis that even arguably vests the county court at law with jurisdiction over Ms. Leuschner's 2002 trust claims; however, at bottom, that section does not apply either.

---

[2] Section 31.002 defines matters related to a probate proceeding to include:  (1) an action against a personal representative or former personal representative arising out of the representative's performance of the duties of a personal representative; (2) an action against a surety of a personal representative or a former personal representative; (3) a claim brought by a personal representative on behalf of an estate; (4) an action brought against a personal representative in his capacity as personal representative; (5) an action for trial of title to real property that is estate property, including the enforcement of a lien against the property; and (6) an action for trial of the right of property that is estate property.  TEX. ESTATES CODE § 31.002(a).

On March 2, 2022, Ms. Leuschner filed a motion for the appointment of a temporary administrator for Ms. Spanos's estate and for appointment of a trust advisor. Tab D (CR 801-11). Although the Dorothy Spanos Living Trust is an inter vivos trust, Ms. Spanos's will has never been admitted to probate in any court. Tab D (CR 803) ("Applicant is not contesting the validity of the Will.").

Indeed, Ms. Leuschner recognized as much when, on September 17, 2025, she filed an application to probate Ms. Spanos's will and to appoint yet another temporary administrator of Ms. Spanos's estate. *See* Tab M. Thus, Ms. Leuschner's claim seeking the appointment of a trust advisor in 2022, was not a matter related to a probate proceeding as a matter of law, and the county court did not have probate jurisdiction over the trust claims.

3. *The County Court at Law No. 1 Did Not Have Pendent or Ancillary Jurisdiction Over the Trust Claims.*

Statutory county courts acting as probate courts can exercise "pendent and ancillary jurisdiction as necessary to promote judicial efficiency and economy." TEX. ESTATES CODE § 32.001(b). However, the county court at law

could not exercise pendant or ancillary jurisdiction over Ms. Leuschner's trust claims.[3]

A county court exercising its original probate jurisdiction may exercise pendent or ancillary jurisdiction "when a close relationship exists between the non-probate claims and the matter pending in the probate court" ***and*** doing so "will aid in the efficient administration of a matter pending in the probate court." *Schuchmann v. Schuchmann*, 193 S.W.3d 598, 603 (Tex. App.—Fort Worth 2006, pet. denied); *see In re Estate of Hallmark*, 629 S.W.3d 433, 438 (Tex. App.—Eastland 2020, no pet.). A close relationship between probate and non-probate proceedings exists, for example, when the matters involve the same parties, the same causes of action, and the same underlying facts. *See, e.g.*, *Castaneda v. Chapa*, No. 13-22-00537-CV, 2024 WL 2197216, at *5 (Tex. App.—Corpus Christi-Edinburg May 16, 2024, pet. denied).

The County Court at Law No. 1's exercise of jurisdiction over the trust claims did not and could not have "aid[ed] in the efficient administration of"

---

[3] In its order appointing the trust advisor, the County Court at Law No. 1 never stated that, and likely never considered whether, it had jurisdiction over the Trust. Rather, the court found "that this Court has jurisdiction and ***venue over this estate***, and the interest of this estate and trust requires the immediate appointment of a Temporary Administrator and Trust Advisor." Tab E (emphasis added) (CR 817). This language suggests that the county court knew it lacked jurisdiction over the Trust and, at best, simply assumed ancillary jurisdiction over the trust claims.

17

any estate claims. Ms. Spanos's will is a simple "pourover will"—*i.e.*, a "will giving money or property to an existing trust." Tab D (CR 802-03); BLACK'S LAW DICTIONARY *Will* (12th ed. 2024). Thus, the only administration of the estate that was required was the transfer of Ms. Spanos's assets that had not already been transferred to the Trust into the Trust.

Ms. Leuschner's claims, on the other hand, related to the ***temporary administration of the Trust*** and were not related to ***the estate proceedings before the county court***. The administration of the Trust did not aid in Judge Stem's administration of the estate—*i.e.*, collecting, accounting for, or transferring the remaining assets in Ms. Spanos's estate to the Trust. Although Ms. Leuschner asserted estate and trust claims in the county court that involved some of the same parties, those claims sought to enforce two different documents that governed different parties and different property, and those two documents were written to serve two very different functions.

For these reasons, the county court's exercise of pendant or ancillary jurisdiction over Ms. Leuschner's trust claims would not have been proper. *See In re Southwestern Bell Tel. Co.*, 35 S.W.3d at 605; *In re Tex. Conference of Seventh-Day Adventists*, 652 S.W.3d 136, 142 (Tex. App.—Fort Worth 2022, orig. proceeding); *In re Toyota Motor Corp.*, No. 10–11–00050–CV, 2011 WL

18

5830468, at *1 (Tex. App.—Waco Nov. 16, 2011, orig. proceeding). Because the county court had no jurisdiction over the trust claims, no pendent or ancillary jurisdiction, and the district court's Order Appointing Receiver incorporates and gives effect to the county court's void orders, its order is likewise void, and this Court should grant conditional mandamus relief.[4]

B. **Assuming Arguendo the County Court at Law No. 1 Had Some Sort of Ancillary Jurisdiction Over the Trust Claims, the County Court Lost That Jurisdiction No Later Than May 18, 2022.**

Assuming arguendo that County Court at Law No. 1 could have exercised pendant or ancillary jurisdiction over the trust claims, the court lost authority to exercise such jurisdiction no later than May 18, 2022—*i.e.*, the date on which the county court discharged Judge Stem as the temporary administrator and terminated the temporary administration of Ms. Spanos's estate.

"In Texas, the pendency of a probate proceeding is a requisite for a court's exercise of jurisdiction over matters related to it." *Goodman v. Summit at West Rim, Ltd.*, 952 S.W.2d 930, 933 (Tex. App.—Austin 1997, no pet.) (applying the predecessor to Section 32.001(b) of the Estates Code); *see Schuld*

---

[4] The district court's Order Appointing Receiver acknowledges, sanctions, and approves the county court at law's appointment of Judge Stem as trust advisor and the county court's extension of his service as trust advisor. *See* CR 1292, 1295.

19

*v. Dembrinski*, 12 S.W.3d 485, 487 (Tex. App.—Dallas 2000, no pet.). Once an estate is closed, a court loses any probate or ancillary jurisdiction over any claims. *See Lawton v. Lawton*, No. 01–12–00932–CV, 2014 WL 3408699, at *2 (Tex. App.—Houston [1st Dist.] Jul. 10, 2014, no pet.); *Dembrinski*, 12 S.W.3d at 487; *Goodman*, 952 S.W.2d at 933.

County Court at Law No. 1 signed an Agreed Order Approving the Discharge of the Temporary Administrator and Termination of Temporary Administration on May 18, 2022. Tab F (CR 821-23). On that date, County Court at Law No. 1 terminated its jurisdiction over the probate proceeding and lost any pendant or ancillary jurisdiction. *See Goodman*, 952 S.W.2d at 933; *Lawton*, 2014 WL 3408699, at *2; *Dembrinski*, 12 S.W.3d at 487. As a result, the County Court at Law No. 1's September 1, 2022, Agreed Order to Extend the Appointment of Judge Stem as the trust advisor is void for want of jurisdiction, as are his acts taken after September 1, 2022, including the removal of Fran as trustee on May 3, 2023. *See* Tab G (CR 827-28).[5]

---

[5]  In the district court, the Real Parties made much of the fact that this order was agreed; however, that fact is irrelevant because "subject-matter jurisdiction cannot be conferred on a court by consent or waiver." *Guardianship of Fairley*, 650 S.W.3d 372, 379 (Tex. 2022); *see San Antonio River Auth. v. Austin Bridge & Road, L.P.*, 601 S.W.3d 616, 627 (Tex. 2020). Although the Real Parties relied on *Guardianship of Fairley* to support their argument that the agreed order somehow vested the county court with jurisdiction, that case is totally distinguishable because the county court here, unlike the court in *Guardianship of Fairley*, formally terminated the administration of the estate.

Because the County Court at Law No. 1 could not exercise jurisdiction over Ms. Leuschner's trust claims, its appointment of Judge Stem is void, its order extending Judge Stem's tenure as trust advisor is void, Judge Stem's removal of Fran as trustee is void, and the district court's order giving effect to those orders is likewise void. Accordingly, this Court should grant mandamus relief to vacate these void acts and orders.

**II.** **THE REAL PARTIES IN INTEREST FAILED TO PRESENT ANY EVIDENCE TO SUPPORT THE APPOINTMENT OF A RECEIVER UNDER TEXAS LAW.**

In Texas, a court's appointment of a receiver is a "harsh, drastic, and extraordinary remedy," which district courts should be "particularly loathe to utilize." *Matter of Marriage of Pinkston and Smith*, No. 12-24-00185-CV, 2024 WL 3858474, at *2 (Tex. App.—Tyler Aug. 15, 2024, no pet.); *see Spiritas v. Davidoff*, 459 S.W.3d 224, 232 (Tex. App.—Dallas 2015, no pet.); *Krumnow v. Krumnow*, 174 S.W.3d 820, 828 (Tex. App.—Waco 2004, pet. denied). The district court's appointment of Mr. Williams to serve as receiver and sell the front 45-acres of Trust property, and its findings of fact and conclusions, are not supported by any evidence. Rulings made with no evidence to support the findings and conclusions upon which the rulings rest constitute abuses of discretion that support mandamus relief. *See In re AutoZoners, LLC*, 694 S.W.3d at 223.

21

The Real Parties sought the appointment of a receiver under Texas Civil Practice & Remedies Code § 64.001 and Property Code § 114.008(a)(5). *See* Tab K (CR 957-62, 1061-62). As requested by the Real Parties and Judge Stem, *see* Tab L at 101, the district court appointed a receiver "[p]ursuant to Texas Civil Practice & Remedies Code § 64.001, Texas Property Code § 114.008(a)(5), and/or the rules of equity." Tab A (CR 1292).

The parties seeking the appointment of the receiver, in this case the Real Parties, had the burden "to demonstrate that the circumstances justify the appointment of a receiver." *Estate of Vines*, No. 01-21-00003-CV, 2022 WL 1085624, at *5 (Tex. App.—Houston [1st Dist.] Apr. 12, 2022, no pet.); *see Estate of Benson*, No. 04-15-00087-CV, 2015 WL 5258702, at *5 (Tex. App.—San Antonio Sept. 9, 2015, pet. dism'd); *Elliott v. Weatherman*, 396 S.W.3d 224, 230 (Tex. App.—Austin 2013, no pet.). That burden was never met.

A. **The Appointment of a Receiver Under Texas Civil Practice and Remedies Code § 64.001 Was an Abuse of Discretion Because the Appointment Was Not Supported by Any Evidence.**

The Real Parties in Interest alleged that Sections 64.001(a)(2), (3), and (6) authorized the district court to appoint Mr. Williams as the receiver for the Trust. *See* Tab K (CR 959-60). Those sections provide that a "court of competent jurisdiction" may appoint a receiver "in an action by a creditor to

subject any property or fund to his claim," "in an action between partners or others jointly owning or interested in any property or fund," and "in any other case in which a receiver may be appointed under the rules of equity." TEX. CIV. PRAC. & REM. CODE § 64.001(a)(2), (3), (6).[6]

Under Sections 64.001(a)(2) and (a)(3), the party seeking appointment of the receiver must also prove that the property or fund is "in danger of being lost, removed, or materially injured." TEX. CIV. PRAC. & REM. CODE § 64.001(b); *see Floyd v. MMWKM Advisors, LLC*, No. 05-23-00638-CV, 2024 WL 549036, at *2 (Tex. App.—Dallas Feb. 12, 2024, no pet.); *Estate of Martinez*, No. 01-18-00217-CV, 2019 WL 1442100, at *4–*5 (Tex. App.—Houston [1st Dist.] Apr. 2, 2019, no pet.) (appointment of a receiver under Section 64.001(a)(3) requires evidentiary support, not simply allegations and arguments in pleadings and motions).

### 1. *Section 64.001(a)(2) does not apply here.*

Section 64.001(a)(2) permits a court to appoint a receiver "in an action by a creditor to subject any property or fund to his claim" if the property or fund is "in danger of being lost, removed, or materially injured." TEX. CIV.

---

[6] In this section, Fran assumes only for purposes of this argument that County Court at Law No. 1 was a court of competent jurisdiction. Of course, in light of the arguments presented above, the Court should never reach this argument.

PRAC. & REM. CODE § 64.001(a)(2), (b).  Any creditor seeking the appointment of a receiver under this subsection must be a secured creditor, and the receivership may only be imposed with respect to the property or fund to which the lien is attached.  *See Jay & VMK, Corp. v. Lopez*, 572 S.W.3d 698, 703-04 (Tex. App.—Houston [14th Dist.] 2019, no pet.); *Junkin v. Sterchi Furniture Co.*, 92 S.W.2d 1098, 1101 (Tex. Civ. App.—San Antonio 1936, no writ).

The Real Parties are not secured creditors of the front 45-acre tract or any Trust property.  The Real Parties certainly did not attach any evidence to the motion to appoint a receiver that supported a finding that any of them were secured creditors or that any Trust property or funds were subject to a lien.  *See* Tab L (CR 956-1018).  Likewise, at the hearing on the motion, the Real Parties did not present any evidence that they were secured creditors of, or had a lien against, any Trust funds or property.  *See* Tab L at 158; 3 RR 4-21.  Accordingly, Section 64.001(a)(2) did not apply, and the district court abused its discretion to the extent it relied on that subsection as a legal basis for appointing the receiver.

2. *Section 64.001(a)(3) does not authorize the district court's appointment of the receiver.*

Section 64.001(a)(3) does not provide a basis for the district court's order either. That section permits a court to appoint a receiver "in an action between partners or others jointly owning or interested in any property or fund" when "the property or fund [is] in danger of being lost, removed, or materially injured." TEX. CIV. PRAC. & REM. CODE § 64.001(a)(3), (b). Although the Real Parties have a joint interest in the Trust property, they wholly failed to present any evidence demonstrating that this property was in any danger of being lost or materially injured in any way.

The Real Parties did not attach any evidence to their motion or present any evidence at the hearing showing that the Trust property was in any danger of being lost or materially injured. To begin, the order is based on the county court's orders and the "testimony of the Trust Advisor," Judge Stem. Tab A (CR 1292). Although counsel for the Real Parties argued at the hearing that the "trust is always going to be losing money over time," it is well settled that argument of counsel is not evidence. Tab L at 139; *see Abila v. Miller*, 683 S.W.3d 842, 848 (Tex. App.—Austin 2023, no pet.); *Fallon v. MD Anderson Physicians Network*, 586 S.W.3d 58, 75 (Tex. App.—Houston [1st Dist.] 2019, pet. denied). And Judge Stem did not testify that the Trust

25

property was in any danger of being lost or materially injured in any way.

Instead, Judge Stem simply believed that a receiver was needed to end the

dispute amongst the beneficiaries regarding the Trust property, based in

large part on his personal frustration with Fran and the fact that he believed

this dispute had gone on too long and should be resolved quickly:

> I have thought long and hard on this. The trust is exhausted. There's no money left. This is an extraordinary case. And it requires extraordinary measures. This is a time where we need to save these people from themselves. There will be nothing left. All these grandkids will be cheated out of their inheritance. This ongoing litigation will exhaust this trust. This is an extraordinary case that requires an extraordinary ruling.
>
> The only way to bring this to conclusion is not through a successor trustee, but it's through a receivership with some judicial protection to get this done. John Malone and I worked hours and hours and hours trying to get this done. And that man deserves a medal. He deserves a nod toward the Nobel Peace Prize, not a ridiculous, baseless, spiteful lawsuit. Shame on you guys. I'm sorry, Judge, but this is—enough is enough. I've seen these in court.
>
> The only route to get this done is a receivership, bring someone in with fresh eyes, not connected to anyone. I'll stay on, if the Court wants me to, just for background information, but let's get someone in here with fresh eyes, that has experience in receiverships and get this done. . . . Everyone deserves this to be final.

Tab L at 101-03, 130-31.

Although Judge Stem testified that there was only $8,000 or so in cash left in the Trust, he later admitted that he was personally unaware of the Trust's financial position. Tab L at 100, 119. When Fran's attorney attempted to show Judge Stem that the balance in just one of the Trust's accounts was $615,000, the district court sustained the Real Parties' objection because Judge Stem had already admitted that he was unaware of the Trust's actual cash position. Tab L at 119-20.

Judge Stem also speculated that, as a result of the ongoing litigation, there would be nothing left in the Trust to distribute to the beneficiaries. Tab L at 101. Such pure speculation is not evidence. *See, e.g., Fieldtech Avionics & Instruments, Inc. v. Component Control.Com, Inc.*, 262 S.W.3d 813, 833 (Tex. App.—Fort Worth 2008, no pet.) (citing *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 164 (Tex. 2004)); *Welch v. Milton*, 185 S.W.3d 586, 599 (Tex. App.—Dallas 2006, pet. denied). Judge Stem's remarks also ignore the undisputed fact that the Trust includes real property valued at $1 million or more. There simply is no evidence to justify the district court's finding that the Trust assets were at risk of any harm, injury, damage, or loss. *See* Tab A (CR 1292).

In theory, the most likely source of potential harm to Trust property would be a quick, forced sale of the front 45-acres to a non-family member. There is only one road on the Trust property that is used to access the entire 261-acre tract. If the front 45-acres were sold with easements of access for each of the Trust beneficiaries, without selling the remainder of the property, the front 45 acres would likely reap a far lesser sales price as a result of being burdened by easements to persons with such a litigious history. Likewise, the value of the remainder of the tract, which would be virtually inaccessible absent the easements to facilitate construction of new roads or irrevocable covenants from the purchasers to keep the existing access road as is, would likely be substantially devalued as a result of the limited access.

At bottom, the Real Parties presented no evidence demonstrating that any Trust property had deteriorated in any way, had been stolen, had been vandalized, damaged, or destroyed, was subject to condemnation, was being misused, was under contract for sale, or was in danger of any "irreparable damage" as found by the district court. *See* Tab A (CR 1292). To the extent the district court determined that it was appropriate to appoint a receiver under Section 64.001(a)(3), it abused its discretion because there is no

evidence to support its factual findings or its legal conclusions justifying its Order Appointing Receiver.

> 3. *Section 64.001(a)(6) does not authorize the district court's appointment of the receiver either.*

Section 64.001(a)(6) vests a court with the power to appoint a receiver "in any other case in which a receiver may be appointed under the rules of equity." TEX. CIV. PRAC. & REM. CODE § 64.001(a)(6). In effect, this section permits a court to appoint a receiver under the equitable common law in limited circumstances. This section, however, didn't vest the district court with authority to appoint the receiver in this case for several reasons.

First, in construing this statute, the Court must give effect to the intent of the Legislature. *See* TEX. GOV'T CODE § 312.005. To do so, the Court must give the words in the statute their plain and common meaning and give effect to all the statute's terms. *See* TEX. GOV'T CODE §§ 311.011(a), 311.021(2); *Interest of J.S.*, 670 S.W.3d 591, 599 (Tex. 2023). When the Real Parties moved for the appointment of a receiver, Section 64.001 authorized the appointment of a receiver in six types of cases. Section 64.001(a)(6), the last in the list of six, authorized the appointment of a receiver "in ***any other case*** in which a receiver may be appointed under the rules of equity." *See* TEX. CIV. PRAC. & REM. CODE § 64.001(a)(6) (emphasis added).

29

The highlighted language only permits the appointment of a receiver in "instances beyond" the five situations listed earlier in Section 64.001(a) — *i.e.*, it does not permit the appointment of an equitable receiver in cases that would ordinarily be governed by one of the five preceding subsections. *See Mueller v. Beamalloy, Inc.*, 994 S.W.2d 855, 861 (Tex. App. — Houston [1st Dist.] 1999, no pet.); *In re Estate of Martinez*, No. 01-18-00217-CV, 2019 WL 1442100, at *3-*4 (Tex. App. — Houston [1st Dist.] Apr. 2, 2019, no pet.). To interpret this section otherwise would fail to give effect to the common meaning of "any other case." *See Mueller*, 994 S.W.2d at 861; *In re Estate of Martinez*, 2019 WL 1442100, at *4 ("[S]ection 64.001(a)(6) applies to instances beyond the specific circumstances in subsections (a)(1) through (a)(5). Thus, if subsection (a)(3) applies, then subsection (a)(6) does not.").

This case would ordinarily be controlled by Section 64.001(a)(3), given that Fran and the Real Parties have a joint interest in the Trust property, but the Real Parties failed to present any evidence that any Trust property was in danger of being lost, removed, or materially injured. *See* TEX. CIV. PRAC. & REM. CODE § 64.001(a)(3), (b).

Second, Section 64.001(a)(6) is a so-called "equitable receivership." To plead and prove that such a receivership was required, the Real Parties had

to produce evidence—not merely pleadings—supporting imposition of this harsh, drastic, and extraordinary remedy. *See Estate of Price*, 528 S.W.3d 591, 594 (Tex. App.—Texarkana 2017, no pet.); *Marriage of Pinkston and Smith*, 2024 WL 3858474, at *2 n.4 (citing *Fortis Benefits v. Cantu*, 234 S.W.3d 642, 648 (Tex. 2007)).

The Real Parties did not present any evidence to the district court that the value of the front 45 acres had lost value or would suffer any potential devaluation absent an immediate sale. Judge Stem, the only witness allowed to testify at the hearing on the motion, did speak of unidentified breaches of trust by Fran as trustee. *See* Tab L at 82, 88, 98, 119. Such allegations, however, are the basis for some of Appellees' unsubstantiated claims at issue in this lawsuit, not evidence.

Of course, the Real Parties' counsel repeatedly relied on these alleged breaches of trust at the hearing on the motion to appoint a receiver; however, his arguments are not evidence either. Tab L at 139, 140, 141, 143; *see Laidlaw Waste Sys. (Dallas), Inc. v. City of Wilmer*, 904 S.W.2d 656, 660 (Tex. 1995). Moreover, given the fact that Fran is no longer a trustee and has no superior access to Trust assets (under the County Court at Law No. 1's void orders),

it is hard to imagine how Fran could breach any alleged duty of trust as a beneficiary.

To the extent that Judge Stem alleged that Fran's failure to sell the front 45-acres was a past breach of trust, *see* Tab L at 82, 88, 98, 119, his accusation is quite rich. Judge Stem has been the trust advisor for years and has not managed to arrange a sale of the front 45 acres either. In fact, Judge Stem admitted that it would be best **to keep the Trust property in the family** and that Fran had offered to purchase the Trust property for more than market value. *See* Tab L at 122-23. (Mr. Malone inexplicably rejected her above-market offer (which Fran considers a breach of his trust)). There was simply no evidence that the rules of equity required the appointment of an equitable receiver to sell the front 45-acre tract.

Third, a court should not appoint an equitable receivership unless evidence reflects "a threat of serious injury to the applicant." *Benefield v. State*, 266 S.W.3d 25, 31 (Tex. App.—Houston [1st Dist.] 2008, no pet.); *see Matter of Bumstead Family Irrevocable Trust*, No. 13-20-00350-CV, 2022 WL 710159, at *17 (Tex. App.—Corpus Christi-Edinburg Mar. 10, 2022, pet. denied); *Pajooh v. Royal West Invs. LLC, Series E*, 518 S.W.3d 557, 567 (Tex.

App.—Houston [1st Dist.] Mar. 30, 2017, no pet.). As discussed above, no such evidence exists.

This case is complex. The situation is difficult. The emotions of the parties run high. But the Trust must be administered properly—*i.e.*, per the terms of the Trust and per Texas law as interpreted by a court of competent jurisdiction. The appointment of the receiver is not based on any competent evidence and cannot be grounded on the unfounded conjecture of a former judge who has clearly lost his objectivity regarding this situation. To the extent the district court appointed a receiver based on Section 64.001, the court abused its discretion because there was no evidence to support the appointment of the receiver under that statute.

### B. The Appointment of a Receiver Under Texas Property Code § 114.008 Was an Abuse of Discretion as Well.

The district court also stated that it was appointing the receiver based on Section 114.008(a)(5) of the Texas Property Code. Tab A (CR 1292). But again, in so doing, the district court abused its discretion because there is no evidence to support its order.

Section 114.008(a)(5) authorizes a court to "appoint a receiver to take possession of the trust property and administer the trust" if the court finds it necessary to "remedy a breach of trust that has occurred or might occur."

33

TEX. PROP. CODE § 114.008(a)(5); *see Moody Nat'l Bank v. Moody*, No. 14-21-00096-CV, 2022 WL 14205534, at *6 (Tex. App.—Houston [14th Dist.] Oct. 25, 2022, pet. denied); *Peek v. Mayfield*, No. 02-22-00492-CV, 2023 WL 5967886, at *9 (Tex. App.—Fort Worth Sept. 14, 2023, pet. denied). As with Section 64.001, the Real Parties bore the burden to produce evidence demonstrating the need for the appointment of the receiver under this section. *See Estate of Hoskins*, 501 S.W.3d 295, 306 (Tex. App.—Corpus Christi-Edinburg 2016, orig. proceeding).

However, as discussed above, there is no evidence that Fran ever breached her duty of trust or that her past alleged breaches of trust could be somehow **remedied** by the appointment of a receiver. Judge Stem removed Fran as Trustee pursuant to Section 4.07(c) of the Trust; however, Section 4.07(a) permitted Judge Stem to remove Fran "at any time, with or without cause," and Judge Stem did not identify any cause to remove Fran as Trustee in his notice of removal. Tab B (CR 476-77); Tab H (CR 923).

Judge Stem stated at the hearing that there were unidentified grounds for removing Fran as trustee for alleged breaches of trust. Tab L at 92. Judge Stem never identified these alleged breaches of trust, and his testimony was belied by his own previous statements made to Fran near the time of her

34

removal that she was ***not*** being removed for cause. *See* Audio Exhibit (CR 1051-52). Indeed, Judge Stem conceded at the hearing that he told Fran that he "did not remove [her] for cause." Tab L at 92. Any finding of any alleged breach of trust was also belied by Judge Stem's decision to permit Fran to continue to "handle all the finances for the Trust" until a couple of months before the motions hearing—*i.e.*, for over one and half years after she was removed as Trustee. Tab L at 116-17.[7]

And, of course, a receiver could not have been necessary to prevent any future breaches of trust by Fran that might occur since Fran was removed as trustee pursuant to the county court at law's void orders and purportedly has no current duties of trust. As stated before, it is difficult to imagine why a receiver would be necessary to prevent potential breaches of trust by Fran given the lack of her duty of trust as a beneficiary.

To the extent that the district court appointed the receiver pursuant to Section 114.008 of the Texas Property Code, the court abused its discretion because there was no evidence to support the order.

---

[7] Although Judge Stem did discuss Fran's proposal to partition the Trust property, which he considered improper, Fran floated that proposal before she was removed as trustee— *i.e.*, more than two years before the hearing on the motion to appoint the receiver. *See* Tab L at 84-88. Once Fran was purportedly removed as Trustee by Judge Stem, her proposal died.

## C. The "Rules of Equity" Did Not Justify the Appointment of the Receiver.

Lastly, the district court's Order Appointing Receiver stated that it was authorized by the "rules of equity." Tab A (CR 1292). Such a receivership fails because it is unnecessary to protect the Trust assets or the interests of the beneficiaries.

An equitable remedy is simply one that exists in equity. *See* BLACK'S LAW DICTIONARY *Equitable* (12th ed. 2024). Equity, in turn, is defined as "[f]airness; impartiality; evenhanded dealing." *Id. Equity*. Thus, the rules of equity permit a court to appoint a receiver whenever circumstances exist that the court finds require the appointment of a receiver to protect Trust assets, prevent damage to the Trust, or to protect the interests of the beneficiaries.

When a court is faced with an intractable controversy between parties, equity "'will take cognizance of a controversy to determine the rights of all the parties, and grant the relief required to meet the ends of justice in order to prevent a multiplicity of suits.'" *Tex. Unemployment Comp. Comm'n v. Metropolitan Bldg. & Loan Ass'n*, 139 S.W.2d 309, 311 (Tex. Civ. App.—Austin 1940, writ ref'd) (quoting *Rogers v. Daniel Oil & Royalty Co.*, 110 S.W.2d 891, 895 (Tex. 1937)).

In this case, however, the appointment of the receiver is based largely on the testimony of Judge Stem as the trust advisor that was improperly appointed by the county court at law. This fact, coupled with his continued administration of the Trust and the court-ordered sale of the Trust property, will likely multiply future legal proceedings necessary to prevent or remedy any illegal sale of the trust property, not deter it. Why? Because the district court's Order Appointing Receiver enforces the prior void orders of the county court at law by rubber-stamping the appointment of Judge Stem as trust advisor. Tab A (CR 1292, 1295-96).

Although the Trust beneficiaries remain at odds, the appointment of a limited receivership to sell the front 45-acre tract of land will not ease this tension. More importantly, the rules of equity did not compel the district court to resort to this harsh and drastic remedy. The appointment of the receiver to take possession of, and sell, the front 45-acre tract is simply not supported by the facts, the law, or principles of equity.

"When a court appoints a receiver, the court has determined that property should no longer be under the control of the parties but instead within the custody of the court." *Gilbreath v. Horan*, 682 S.W.3d 454, 552 (Tex. App.—Houston [1st Dist.] 2023, pet. denied). If the passage of time alone or

a protracted disagreement between trust beneficiaries were sufficient to justify the appointment of an equitable receiver, then the reality will be that every sizeable or complex trust is likely to soon be under the supervision of a Texas court. This result would transmute an equitable receivership from the "harsh, drastic, and extraordinary remedy" it is intended to be into an everyday occurrence. *See Benefield v. State*, 266 S.W.3d 25, 31 (Tex. App.—Houston [1st Dist.] 2008, no pet.).

## D. Mandamus Relief Is Proper Because the Benefits of Review at This Time Outweigh Any Detriments of Immediate Review.

To the extent the district court's Order Appointing Receiver is based on findings of fact that are not supported by any legally sufficient evidence, the district court abused its discretion. Thus, the question becomes whether these abuses of discretion also warrant mandamus relief—in addition to the fact that the district court's order is void because it gives effect to provisions of the county court at law's void orders—because Fran has no adequate remedy on appeal.

Obviously, Fran's interlocutory appeal of the appointment of the receiver is before the Court; however, the Fifteenth Court should resolve this entire controversy rather than require the piecemeal resolution of different aspects of the case in different cases. Thus, although the Court can reverse

the Order Appointing Receiver for want of evidentiary support, for example, the Court should also grant conditional mandamus relief, declare the orders void, and end the use of the county court at law's void orders in the future administration of the Trust.

Given that the Court should review the former issues on mandamus and the latter issues on interlocutory appeal, the Court may now review all issues presented in this single forum. *See CSR Ltd. v. Link*, 925 S.W.2d 591, 596 (Tex. 1996).

### III. THE ORDER APPOINTING RECEIVER REQUIRES FRAN TO PAY THE BILLS OF THE TRUST, WHICH VIOLATES TEXAS LAW AND RESULTS IN AN UNCONSTITUTIONAL TAKING OF FRAN'S PROPERTY.

The district court's Order Appointing Receiver directs Fran to pay the Trust's expenses incurred in the ordinary course of Trust business:

> Mrs. Frances Shelton is ORDERED to continue to make regular and routine payments of any bills or invoices incurred by the Trust in the ordinary course of business with a copy of any such invoice or bill and payment thereof relating to or connected with the Front 45 Acres to be delivered to the Receiver and the parties.

Tab A (CR 1295). Fran was improperly removed as trustee by Judge Stem and removed as a signatory on the Trust's bank accounts. Tab H (CR 923). Thus, to comply with this order, Fran would be required to use her personal funds to pay Trust expenses. Such would constitute an unconstitutional

taking of her private property. *See Thompson v. Winkelmann*, No. 01-06-00457-CV, 2008 WL 921041, at \*4-\*5 (Tex. App.—Houston [1st Dist.] Apr. 3, 2008, no pet.) (sustaining challenge to the trial court's order because it did "not comport with Texas law and result[ed] in an unconstitutional taking of said land"); *see also Thompson v. Consolidated Gas Util. Corp.*, 300 U.S. 55, 79-80 (1937) (upholding plaintiff's claim that enforcement of Railroad Commission order resulted in unconstitutional taking of private property).

The Texas takings clause reflects that the right to own, use, and enjoy one's private property is a fundamental right and is "'among our most cherished liberties.'" *Commons of Lake Houston, Ltd. v. City of Houston*, 711 S.W.3d 666, 675 (Tex. 2025) (quoting *City of Houston v. Carlson*, 451 S.W.3d 828, 830 (Tex. 2014)); *see* TEX. CONST. art. 1, § 17(a). Property is "taken" when the State transfers property from one owner to another. *See Commons of Lake Houston*, 711 S.W.3d at 678 n.34. Ordering Fran to pay the expenses of the Trust out of her own pocket results in such an unconstitutional taking of her private property.

The district court abused its discretion by issuing its Order Appointing Receiver requiring Fran to pay the expenses of the Trust out of her own pocket. To avoid the unconstitutional effect of the order, the Court should

grant conditional mandamus relief requiring the district court to vacate this portion of its order.

## IV. THE ORDER APPOINTING RECEIVER ALSO IMPROPERLY ENJOINS ANY BENEFICIARY FROM DIRECTLY OR INDIRECTLY TAKING ANY ACTIONS THAT WOULD HINDER THE RECEIVER FROM SELLING TRUST PROPERTY.

The Order Appointing Receiver also provides that the beneficiaries of the Trust "are hereby restrained and enjoined from directly or indirectly taking any action or causing any action to be taken, without the express written agreement of the Receiver, which would . . . [h]inder, obstruct or otherwise interfere with the Receiver in the performance of his duties." Tab A (CR 1296). This order effectively prohibits any beneficiary, including Fran, from challenging any act of the district court or the receiver that would slow the receiver from selling the property. Tab A (CR 1296).

The overly broad language of this injunction would theoretically keep Fran from filing her notice of interlocutory appeal and prohibit her from filing this mandamus, or taking any other legal action, even though she has legal and statutory rights to do so. *See* TEX. CIV. PRAC. & REM. CODE § 51.014(a). Although the district court's order is not technically an anti-suit injunction because the injunction was not issued by a separate court, the effect is the same—*i.e.*, it would bar Fran's right to prosecute her appeal or

41

this mandamus.  As a consequence, the court's order is illegal and constitutes an abuse of discretion that should be corrected by mandamus.  *See Greiner v. Jameson*, 865 S.W.2d 493, 499 (Tex. App.—Dallas 1993, writ denied) (observing that a court's inherent power is not without its limits); *see also Bridas Corp. v. Unocal Corp.*, 16 S.W.3d 887, 890 (Tex. App.—Houston [14th Dist.] 2000, pet. dism'd w.o.j.) (same).

## V.    MANDAMUS RELIEF IS NOT BARRED BY PRINCIPLES OF EQUITY.

Relator acknowledges that County Court at Law No. 1 issued its void orders as early as 2022; however, this fact does not preclude mandamus relief here.  Ordinarily, such a delay might preclude mandamus relief unless the delay was justified.  *See In re Int'l Profit Assocs., Inc.*, 274 S.W.3d 672, 676 (Tex. 2009).  In this case, however, delay is not a barrier to mandamus relief.

Although mandamus is not an equitable remedy, its grant is controlled largely by equitable principles.  *See In re Kelly*, 399 S.W.3d 282, 284-85 (Tex. App.—San Antonio 2012, orig. proceeding).  The Texas Supreme Court has explained that a party's unreasonable delay in seeking mandamus relief may waive the party's right to such relief.  *See Rivercenter Assocs. v. Rivera*, 858 S.W.2d 366, 367 (Tex. 1993) (orig. proceeding).

If, however, the challenged orders are void, then "equitable doctrines such as delay and laches do not apply to bar mandamus relief." *In re Giles*, 675 S.W.3d 376, 387 (Tex. App.—Corpus Christi-Edinburg 2023, orig. proceeding); *see In re Valliance Bank*, 422 S.W.3d 722, 728-29 (Tex. App.—Fort Worth 2012, orig. proceeding); *Zimmerman v. Ottis*, 941 S.W.2d 259, 262 (Tex. App.—Corpus Christi 1996, orig. proceeding) ("Since mandamus relief in the present case is premised on the entry of a void order, it would not serve the interests of justice or those of the parties to invoke laches as an excuse to ignore that order, and thus to allow the parties to expend further time and effort in connection with a lawsuit that must ultimately be dismissed . . . or reversed on appeal for want of jurisdiction.").

County Court at Law No. 1 did not have any jurisdiction to issue orders related to the administration of the Trust. Therefore, its orders related to the administration of the Trust, including the order appointing Judge Stem as the trust advisor and his subsequent decision to remove Fran as trustee, are void. The Court should grant the mandamus relief sought by Fran notwithstanding any perceived delay.

## CONCLUSION AND PRAYER

The Court should declare the orders of the County Court at Law No. 1 and the district court's Order Appointing Receiver void and conditionally grant the mandamus relief requested in this petition. Relator also requests such further relief to which she may be justly entitled.

Respectfully submitted,

By: */s/ Rick Thompson*
Kirk L. Pittard
State Bar No. 24010313
Rick Thompson
State Bar No. 00788537
rthompson@dpslawgroup.com
DURHAM, PITTARD & SPALDING, LLP
P.O. Box 224626
Dallas, Texas 75222
(214) 946-8000
(214) 946-8433 (fax)

Craig D. Cherry
State Bar No. 24012419
ccherry@cjsjlaw.com
Ryan C. Johnson
State Bar No. 24048574
rjohnson@cjsjlaw.com
Scott H. James
State Bar No. 24037848
sjames@cjsjlaw.com
CHERRY JOHNSON SIEGMUND JAMES,
PLLC
7901 Fish Pond Road, 2nd Floor
Waco, Texas 76710
(254) 732-2242
(866) 627-3509 (fax)

**COUNSEL FOR RELATOR**

45

**TEXAS RULE OF APPELLATE PROCEDURE 52.3(j) CERTIFICATION**

Pursuant to Texas Rule of Appellate Procedure 52.3(j), I certify that I have reviewed this Petition for Writ of Mandamus and every factual statement in it is supported by competent evidence included in the Appendix or Mandamus Record.

*/s/ Rick Thompson*
Rick Thompson

**CERTIFICATE OF COMPLIANCE**

This document complies with the typeface requirements of Texas Rule of Appellate Procedure 9.4(e) because it has been prepared in a conventional typeface no smaller than 14-point for text and 12-point for footnotes. This document also complies with the word-count limitations of Rule 9.4(i)(2)(D) because it contains 9,927 words, excluding any parts exempted by Rule 9.4(i)(1).

*/s/ Rick Thompson*
**Rick Thompson**

## CERTIFICATE OF SERVICE

I hereby certify that on October 6, 2025, a true and correct copy of the foregoing petition for writ of mandamus was served on the following counsel of record via electronic service, pursuant to the Texas Rules of Appellate Procedure.

Jim Dunnam
jimdunnam@dunnamlaw.com
Andrea Mehta
andreamehta@dunnamlaw.com
Mason Vance Dunnam
masondunnam@dunnamlaw.com
DUNNAM & DUNNAM LLP
4125 West Waco Drive
Waco, Texas 76710

*Attorneys for Real Parties Robert Spanos, Chrisopher Spanos, and Nicole Spanos*

The Honorable Judge Ryan Luna
414th Judicial District Court
501 Washington Avenue
Suite 307
Waco, Texas 76701
414th@mclennan.gov
*Respondent*

Andy McSwain
mcswain@thetexasfirm.com
Mark E. Firmin
mfirmin@thetexasfirm.com
BEARD KULTGEN BROPHY BOSTWICK
& DICKSON PLLC
220 South 4th Street
Waco, Texas 76701

*Attorneys for Real Party Vernon Leuschner*

Aubrey R. Williams
Law Office of Aubrey R. Williams
P.O. Box 20156
Waco, Texas 76702
aubreyw9000@yahoo.com
*Appointed Receiver*


*/s/ Rick Thompson*
Rick Thompson

**No. 15-25-_____-CV**

IN THE COURT OF APPEALS
FOR THE FIFTEENTH DISTRICT
AT HOUSTON

IN RE FRANCES SPANOS SHELTON,

*Relator.*

On Mandamus Relief from the 414th District Court
of McLennan County, Texas, Cause No. 2024-3035-5

**APPENDIX IN SUPPORT OF PETITION FOR WRIT OF MANDAMUS**

| **Tab** | **Document** |
|---|---|
| A | March 31, 2025, Order Appointing Receiver |
| B | The Dorothy Spanos Living Trust |
| C | The First Amendment to The Dorothy Spanos Living Trust |
| D | Application for Appointment of Temporary Administrator and of a Trust Advisor |
| E | March 8, 2022, Order Appointing Temporary Administrator and Trust Advisor and Authorizing Issuance of Letters of Administration |
| F | May 18, 2022, Agreed Order Approving the Discharge of Temporary Administrator and Termination of Temporary Administration |
| G | September 1, 2022, Agreed Order to Extend the Appointment of the Trust Advisor of the Dorothy Spanos Living Trust |
| H | Judge Stem's May 3, 2023, Letter Removing Frances Shelton as Trustee of the Dorothy Spanos Trust |

48

| Tab | Document |
|-----|----------|
| I | Plaintiff's Verified Original Petition and Request for Temporary Restraining Order, Temporary Injunction, and Permanent Injunction |
| J | John Malone February 24, 2025, Letter to Judge Stem Resigning as Trustee |
| K | Motion to Appoint Receiver *and* Robert Lee Spanos, Christopher Blake Spanos and Kathryn Nicole Lawrie's Joinder to Motion to Appoint Receiver |
| L | March 4, 2025, Hearing Transcript on Motion to Appoint Receiver and Motion to Re-Affirm and/or Designate Trustee of the Dorothy Spanos Living Trust |
| M | Ms. Leuschner's Application to Probate Ms. Spanos's Will and for Appointment of Temporary Administrator |

# TAB A

| | | |
|---|---|---|
| FRANCES SPANOS SHELTON, | § | IN THE DISTRICT COURT |
| | § | |
| PLAINTIFFS, | § | |
| | § | |
| V. | § | 414TH JUDICIAL DISTRICT |
| | § | |
| JOHN MALONE, AS TRUSTEE OF THE DOROTHY | § | |
| SPANOS LIVING TRUST, | § | |
| | § | |
| DEFENDANTS, | § | McLENNAN COUNTY, TEXAS |
| | § | |
| V. | § | |
| | § | |
| VERNON LEUSCHNER , AS DURABLE POWER | § | |
| OF ATTORNEY FOR KATHERINE LEUSCHNER, | § | |
| ROBERT LEE SPANOS, CHRISTPHER BLAKE | § | |
| SPANOS, AND KATHRYN NICOLE LAWRIE, | § | |
| | § | |
| INTERVENORS. | § | |

# ORDER APPOINTING RECEIVER

CAME ON to be heard Intervenors, VERNON LEUSCHNER, as durable power of attorney for KATHERINE LEUSCHNER, ROBERT LEE SPANOS, CHRISTOPHER BLAKE SPANOS, AND KATHRYN NICOLE LAWRIE (collectively as "Intervenors"), Application to Appoint a Receiver. The Court, after careful consideration of the Motion, as well as the evidence and arguments of counsel, and the papers on file herein, determines the Motion should be GRANTED. Any relief not granted herein is DENIED.

The Receiver should (1) accordingly take possession of and sell the approximately 45 (+/-) acres of real property abutting FM 185 in Crawford, Texas owned (and defined) by the Dorothy Spanos Living Trust (the "Trust"), described as follows: the real property located at 228 Spanos Ranch Road and abutting FM 185 in Crawford, Texas, including the existing house, the RV Shed, Hanger, runway, front pasture, and pasture behind the existing house (the "Front 45 Acres") and related property/materials, and (2) distribute the proceeds from the sale of the Front 45 Acres in accordance with the terms of the Trust and its amendment.

Order Appointing Receiver

Page 1 of 9

# I
## FINDINGS AND CONCLUSIONS DEMONSTRATING THE NEED FOR RECEIVERSHIP

1. The Court takes judicial notice of its file and the underlying proceedings. Based on the pleadings, the arguments of counsel, the testimony, and the evidence before this Court, the Court finds:

   a. The Court has jurisdiction to make necessary order involving this Trust under Tex. Prop. Code Sec. 115 and personal jurisdiction over the parties to this case.

   b. The Trust owns approximately 261-acres of real property located at 228 Spanos Ranch Road, Crawford, Texas 76638, of which the Front 45 Acres abutting FM 185 is to be sold and the proceeds distributed under the express terms of the Trust;

   c. All parties have a probable right to or interest in Trust property and/or Trust Funds.

   d. Based on the evidence admitted, and testimony of the Trust Advisor, Judge Robert Stem, the main issue giving rise to this controversy is the sale of the Front 45 Acres.

   e. Due to the extraordinary controversy surrounding the sale of the Front 45 Acres, there is a material risk of harm, injury, damage and/or loss to the Property and/or Trust funds, as well as the various beneficiaries, if a Receiver is not appointed to carry out the terms of the Trust.

   f. To the extent necessary, all other legal and equitable remedies are inadequate under the circumstances to protect the property of the Trust and its beneficiaries.

   g. All other requirements of law have been complied with.

   h. Pursuant to Texas Civil Practice & Remedies Code § 64.001, Texas Property Code § 114.008(a)(5), and/or the rules of equity, a Receiver is necessary and appropriate for the purpose of securing and selling the Front 45 Acres, along with granting any easement(s) pertaining to the Front 45 Acres, so as to minimize harm to the Trust, Trust property, and beneficiaries of the Trust, and to effectuate the terms of the Trust in an efficient and expeditious manner, including through the prompt distribution of sales proceeds to the beneficiaries thereof.

   i. Irreparable damage will ensue to the beneficiaries of the Trust unless there is an immediate sale of the Front 45 Acres pursuant to the terms of the Trust.

   j. To achieve the purposes of the Receivership, the Receiver will need the authority set forth in this Order.

   k. Appointment of a Receiver over the Trust's assets will not disrupt the Trust's operations and is in the best interest of the Trust and its beneficiaries.

## II
### IDENTIFICATION OF THE RECEIVERSHIP ASSETS OF THE RECEIVERSHIP ESTATE

2. The **Receivership Assets** of the **Receivership Estate** shall consist of the following:

   a. The Front 45 Acres of the Trust located at 228 Spanos Ranch Road and abutting FM 185, Crawford, Texas, including the existing house, the RV Shed, Hanger, runway, front pasture, and pasture behind the existing house together with all property/materials located thereupon or relevant thereto; and

   b. The proceeds from the sale of the Front 45 Acres.

   c. **"Receivership Assets"** means the Front 45 Acres as defined herein, and any and all related rights or property, as well as the sales proceeds thereof.

## III
### APPOINTMENT OF RECEIVER

IT IS THEREFORE, ORDERED, ADJUDGED, and DECREED by this Court that:

3. The Court hereby takes exclusive jurisdiction and possession of the Receivership Assets, as defined herein.

4. Until further order of the Court, Mr. Aubrey R. Williams, Attorney, Law Office of Aubrey R. Williams, P.O. Box 20156, Waco, Texas 76702 (254) 722-3331, is hereby appointed to serve as the Court's appointed Receiver over the Receivership Assets of the Trust (the **"Receivership Estate"**). Immediately with this Order, the Receiver shall hold the Receivership Estate assets *in custodia legis*. The Court finds that Mr. Williams is appropriate and qualified to serve as Receiver.

## IV
### ORDER FREEZING ALL RECEIVERSHIP ASSETS

5. Except as otherwise specified herein, the **Receivership Assets** are frozen and may not be conveyed, assigned, transferred or in any way hypothecated (1) until further order of this Court, and only this Court, or (2) with or by the prior written authorization of the Receiver.

## V
### GENERAL POWERS AND DUTIES OF RECEIVER

6. Except as limited herein, the Receiver shall have all powers, authorities, rights, and privileges necessary to manage the Receivership Assets under the supervision of the Court. This includes all powers to manage the Receivership Assets that were heretofore conveyed and possessed by the Trust, under any valid deeds and/or pursuant to the terms of the Trust and its amendments, and all powers and authority of a Receiver at equity, and all powers conferred upon a Receiver by the provisions of Texas law, and this Order.

7. Subject to the specific provisions below, the Receiver shall immediately have the following general powers and duties:

a. To use reasonable efforts to determine the boundaries, extent, and value of the Front 45 Acres as described in the Trust and its amendments, to grant easements as deemed appropriate or necessary in connection with the sale of the Front 45 Acres, and the preservation/grant of appropriate access as necessary for efficient and normal use of the remainder to the Trust property, and its ultimate beneficiaries, once distributed, and to distribute the proceeds from the sale of the Front 45 Acres in accordance with the terms of the Trust and its amendments.

b. To take immediate possession, custody, and control of all Receivership Assets, and to manage, control, operate, and maintain the Receivership Assets, pending further Order of the Court.

c. To take any action immediately that, prior to the entry of this Order, could have been taken by a Trustee with respect to managing, selling, or preserving the Receivership Assets, except as limited by this Order.

d. To choose, engage and employ attorneys, accountants, appraisers, consultants, experts and any other independent contractors and technical specialists, immediately, including, but not limited to, real estate agents, property managers, and auctioneers (collectively, "**Retained Personnel**") as the Receiver deems advisable or necessary in the performance of the Receiver's duties and responsibilities under the authority granted by this Order.

e. At his sole discretion, deposit all proceeds from the sale of the Receivership Assets (1) into the Receiver's IOLTA or other appropriate repository, (2) distribute the proceeds from the sale directly to the beneficiaries as provided under the terms of the Trust, or (3) deposit the sale proceeds in the registry of the Court.

f. To use the Receivership Assets and proceeds from the sale thereof to pay proper debts and expenses of the Receivership Estate that (1) have accrued prior to or during the receivership and (2) in the sole discretion of the Receiver are essential or necessary to the operations of the Trust.

g. Upon further Order, pursuant to such procedures as may be required by the Court, the Receiver is authorized to encumber, sell, and transfer title to, all real property in the Receivership Estate.

8. The Receiver may delegate to his agents or attorneys any of the powers of the Receiver granted to Receiver by this Order.

9. The Receiver may seek further Orders of the Court regarding standing powers of the Receiver and administration of Receivership Assets as the Receiver, in his sole discretion, deems necessary, to conserve the Receivership Assets, to protect the best interests of the beneficiaries of the Trust, and to protect the interests of the Receiver.

# VI
## TURNOVER OF DOCUMENTS AND INFORMATION

10. Within **ten (10) calendar days** of the entry of this Order, any former or future Trustee is **ORDERED** to identify and turn over to the Receiver all documents and materials representing all interests of the Trust in the Front 45 Acres.

11. Mrs. Frances Shelton is **ORDERED** to continue to make regular and routine payments of any bills or invoices incurred by the Trust in the ordinary course of business with a copy of any such invoice or bill and payment thereof relating to or connected with the Front 45 Acres to be delivered to the Receiver and the parties.

12. Any former or future Trustee, the Trust Advisor, and all beneficiaries of the Trust shall reasonably assist the Receiver in fulfilling his duties and obligations. As such, all former or future Trustee(s), the Trust Advisor, and all beneficiaries of the Trust must reasonably and expeditiously cooperate with all requests for information and documents from the Receiver regarding the Receivership Assets and administration thereof. This cooperation and assistance shall include, but not be limited to:

    (a) providing any information or documents that the Receiver deems necessary or appropriate to the exercise of the Receiver's powers;

    (b) providing any keys, including but not limited to physical and digital keys, codes, device PINs, and passwords, including but not limited to account, encryption, email account, website, and computer passwords required to access any website, electronic storage account application, or data in any medium that relates to or concerns the Receivership Assets, including but not limited to those that facilitate access and security to the Receivership Assets; and

    (c) providing full and unfettered access to all Receivership Assets.

# VII
## ACCESS TO AND TURN OVER REAL PROPERTY

13. Upon receiving actual notice of this Order by personal service or otherwise, all persons other than law enforcement officials acting within the course and scope of their official duties, are (without the express written permission of the Receiver) prohibited from removing, destroying, or concealing anything from any building, residence or structure on the Front 45 Acres.

14. To execute the express and implied terms of this Order, the Receiver is authorized to change door locks to any premises or buildings on the Front 45 Acres. The parties to this suit, any beneficiaries, or any other person acting or purporting to act on their behalf, and any former or future Trustee, or their agents, are ordered not to change the locks in any manner, nor to have duplicate keys made.

# VIII
## NOTICE TO FUTURE AND FORMER TRUSTEES, BENEFICIARIES, AND THIRD PARTIES

15. The Receiver shall promptly give notice of his appointment to all known agents and attorneys of any former or future Trustee and any beneficiary of the Trust, or the Trust Advisor as the Receiver deems necessary or advisable to effectuate the operation of the receivership.

16. In furtherance of his responsibilities in this matter, the Receiver is authorized to communicate with, and/or serve this Order upon, any person, entity, or government office, that he deems appropriate to inform them of the status of this matter. All government offices which maintain public files of security interests in real and personal property shall, consistent with such office's applicable procedures, record this Order upon the request of the Receiver.

## IX
## INJUNCTION AGAINST INTERFERENCE WITH RECEIVER

17. Any former or future Trustee, any beneficiary of the Trust, and all persons receiving notice of this Order by personal service or otherwise, are hereby restrained and enjoined from directly or indirectly taking any action or causing any action to be taken, without the express written agreement of the Receiver, which would:

    a. Interfere with the Receiver's efforts to take control, possession, or management of any Receivership Assets; such prohibited actions include but are not limited to, using self-help or executing or issuing or causing the execution or issuance of any court attachment, subpoena, replevin, execution, or other process for the purpose of impounding or taking possession of or interfering with or creating or enforcing a lien upon any Receivership Assets;

    b. Hinder, obstruct or otherwise interfere with the Receiver in the performance of his duties;

    c. Dissipate or otherwise diminish the value of any Receivership Assets;

    d. Destroy, secret, deface, transfer, or otherwise alter or dispose of any documents of or pertaining to the Front 45 Acres, or property or structures located thereon;

    e. Fail to provide any assistance or information requested by the Receiver in connection with obtaining possession, custody, or control of such Receivership Assets and the management of Receivership Assets;

18. Any former or future Trustee, any beneficiary, and the Trust Advisor shall cooperate with and assist the Receiver in the performance of the Receiver's duties.

## X
## BONDS AND OATH OF RECEIVER

19. Receiver is ordered to post bond, surety or otherwise, in the amount of $1,000.00 with the Clerk of the Court conditioned on faithful discharge of Receiver's duties and obedience to the Orders of the Court, and to file the required oath of service.

## XI
## RECEIVER IMMUNITY FROM LIABILITY

20. The Receiver and Retained Personnel are entitled to derived judicial immunity. The Receiver and Retained Personnel, acting within the scope of such agency, are entitled to rely on all outstanding rules of law and Orders of the Court and shall not be liable to anyone, in any country, for their own good-faith compliance with any order, rule, law, judgment, or decree. In no event shall the Receiver or Retained Personnel be liable to anyone for their good-faith compliance with their duties and responsibilities

as Receiver or Retained Personnel, including compliance with applicable law governing the collection of debt, nor shall the Receiver or Retained Personnel be liable to anyone for any actions taken or omitted by them except upon a finding by the Court that they acted or failed to act as a result of malfeasance, bad faith, or in reckless disregard of their duties. The Receiver and Retained Personnel shall be entitled to such derived judicial immunity even if this Receivership Order is subsequently stayed, reversed, vacated, modified, or amended, for any reason, by any court, including for lack of jurisdiction.

21. The Court shall retain exclusive jurisdiction over any action filed against the Receiver or Retained Personnel based upon acts or omissions alleged to have been committed in their representative capacities relative to the carrying out of duties and responsibilities of the Receiver.

22. Under no circumstances shall any former or future Trustee, any beneficiary, or any other person or entity file any lawsuit, objection, discovery, intervention, or claim against Receiver, or any of his attorneys, except in this Court and no other. In the event such lawsuit, objection, discovery, intervention, or claim is filed, Receiver is instructed to seek dismissal of such suit and file appropriate motions in this Court to address the violation of this provision. In the event any attorney files such lawsuit, discovery, intervention, or claim against Receiver or his lawyers in any court except this Court, such attorney must type the following statement in 14-point font, bold, underlined at the top front page of each pleading or correspondence to such court: "**The McLennan County 414th District Court has Ordered That all Claims, Objections, Pleadings and Discovery Against Receiver, Mr. Williams and his Attorneys be Filed Only in Said McLennan County 414th District Court, cause number 2024-335-5.**"

23. In the event the Receiver decides to resign, the Receiver shall give written notice to the Court and counsel for the parties herein of its intention, and the resignation shall be effective immediately.

24. The Receiver shall not be personally liable for any liabilities or costs that have accrued, or will accrue to the Trust, the Trustee, or any beneficiary of the Trust.

## XII
## RECOMMENDATIONS AND REPORTS

25. The Receiver, in accordance with the terms of the Trust and any amendments thereto, is authorized, empowered, and directed to develop a plan for the fair, reasonable, and efficient preservation and/or disposition of the Receivership Assets as quickly as possible using his best judgment regarding the sale and/or distribution of the proceeds from the sale of the Front 45 Acres.

26. At Receiver's discretion, the Receiver shall file and serve a full report and accounting of the Receivership Estate, reflecting (to the best of the Receiver's knowledge as of the period covered by the report) the existence, value, and location of the Front 45 Acres, and of the extent of liabilities, both those claimed to exist by others and those the Receiver believes to be legal obligations of or related to the Receivership Estate.

## XIII
### FEES, EXPENSES AND ACCOUNTINGS

27. The Receiver need not obtain approval prior to the disbursement of sale proceeds of the Front 45 Acres for reasonable and necessary expenses incurred in the ordinary course of the administration and operation of the Receivership. Further, prior approval is not required for payments of applicable federal, state, or local taxes pertaining to the Receivership Assets.

28. The Receiver's fee is $400.00 per billable hour incurred by the Receiver for his work on this matter. All Receiver's fees will be taxed as costs against the Trust, which means that the Receiver is authorized to seek and recover all Receivership fees, plus Receivership expenses. The Receiver may secure payment for the Receiver's fees and expenses in any manner the Receiver deems to be in the best interest of the Trust and its beneficiaries, including, but not limited to, taking a portion of the proceeds from the sale of any and all Receivership Assets.

29. The Court finds the foregoing to be a fair, reasonable, and necessary fee for the Receiver.

30. In concluding that this a fair, reasonable and necessary fee for the Receiver, the Court considered:

    a. The Court's file in this cause;

    b. The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the receivership work properly;

    c. The range of reasonable and necessary hourly rates paid in this county and in other Texas counties;

    d. The importance of fulfilling the terms of the Trust and any amendments thereto in order to balance and safeguard the interests of the beneficiaries of the Trust and to maintain respect for the law;

    e. The circumstance surrounding the Trust and the Receivership Assets, therefore indicating that any unreasonable harm to the Trust and its beneficiaries by appointment of Receiver is comparatively low;

    f. The education, skill, experience, training, knowledge, reputation, ability, and seasoned judgment of the Receiver;

    g. The complexity and demands of this particular case;

    h. The value of property owned by the Trust and the work that will likely be required to carry out the terms of the Trust by Receiver; and

    i. The time limitations imposed by this Court and this case.

31. Each party shall bear its own costs and fees associated with the Intervenors' Motion to Appoint a Receiver and Plaintiff's Motion to Re-Affirm.

32. At the close of the Receivership, the Receiver shall submit a Final Accounting, which shall include a report of all sums paid to the Receiver and Retained Personnel pursuant to this Order, as well as receipt of funds and distribution to Trust beneficiaries.

33. All such fees and expenses of the Receiver, including all amounts due to the Receiver or Retained Personnel, shall be accorded priority to the maximum extent provided by applicable law.

34. Further, this Order shall constitute a subordinate lien upon the Receivership Assets, including, but not limited to, any real property owned by the Trust or Receiver and any amounts advanced by Receiver in accordance with this Order. Such lien shall be properly perfected upon filing of this Order, or an abstract thereof, in the Public Records of McLennan County.

SIGNED __March 31, 2025__.

_____
JUDGE PRESIDING

# TAB B

# THE DOROTHY SPANOS LIVING TRUST

# December 19, 2017

PREPARED BY

## EVANS & DAVIS, PLLC

8117 PRESTON ROAD, SUITE 300
DALLAS, TEXAS 75225
(214) 368-2335

Copyright © 2017 Evans & Davis, PLLC

# The Dorothy Spanos Living Trust
## Table of Contents

**Article One**        **Establishing My Trust** ................................................ **1-1**
Section 1.01        Identifying My Trust.............................................. 1-1
Section 1.02        Reliance by Third Parties....................................... 1-1
Section 1.03        Transferring Property to My Trust ........................ 1-2
Section 1.04        Powers Reserved by Me as Grantor....................... 1-3
Section 1.05        Grantor Trust Status.............................................. 1-3

**Article Two**        **Family Information**.................................................... **2-1**

**Article Three**        **Trustee Succession Provisions**.............................. **3-1**
Section 3.01        Resignation of a Trustee ........................................ 3-1
Section 3.02        Trustee Succession during My Lifetime................. 3-1
Section 3.03        Trustee Succession after My Death ....................... 3-1
Section 3.04        Notice of Removal and Appointment..................... 3-2
Section 3.05        Appointment of a Co-Trustee................................ 3-2
Section 3.06        Corporate Fiduciaries............................................ 3-3
Section 3.07        Incapacity of a Trustee.......................................... 3-3
Section 3.08        Appointment of Independent Special Trustee ........ 3-3
Section 3.09        Rights and Obligations of Successor Trustees........ 3-3
Section 3.10        Successor Trustee Required to Provide An
       Authorization to Release Medical Information ...................... 3-4
Section 3.11        Obtain the Release of Medical Information............ 3-4

**Article Four**        **Trust Advisor Provisions** ......................................... **4-1**
Section 4.01        Provisions for Trust Advisor ................................. 4-1
Section 4.02        Designation of Trust Advisor ................................ 4-1
Section 4.03        Removal of a Trust Advisor .................................. 4-1
Section 4.04        Resignation of a Trust Advisor.............................. 4-1
Section 4.05        Incapacity of a Trust Advisor ............................... 4-2
Section 4.06        Authority of Successor Trust Advisors.................. 4-2
Section 4.07        Trust Advisor Powers ........................................... 4-2
Section 4.08        Limitation on Trust Advisor Powers ..................... 4-4
Section 4.09        Trust Advisor May Release Powers ...................... 4-4
Section 4.10        Trust Advisor Considered to Have Consented ...... 4-4
Section 4.11        Trust Advisor Compensation................................. 4-4
Section 4.12        Reimbursement To Trust Advisor ......................... 4-5
Section 4.13        Right to Examine Trust Records............................ 4-5
Section 4.14        Employment of Professionals................................ 4-5

| Article Five | Administration of My Trust during My Incapacity | 5-1 |
|---|---|---|
| Section 5.01 | Definition of My Incapacity | 5-1 |
| Section 5.02 | Determination of My Incapacity | 5-1 |
| Section 5.03 | Trust Distributions during My Incapacity | 5-1 |

| Article Six | Administration of My Trust upon My Death | 6-1 |
|---|---|---|
| Section 6.01 | My Trust Becomes Irrevocable | 6-1 |
| Section 6.02 | Administrative Trust | 6-1 |
| Section 6.03 | Payment of Expenses and Taxes | 6-1 |
| Section 6.04 | Restrictions on Certain Payments from Retirement Plans | 6-1 |
| Section 6.05 | Excluding Life Insurance Proceeds from Creditors | 6-2 |
| Section 6.06 | Payment of Death Taxes | 6-2 |
| Section 6.07 | Coordination with My Executor | 6-3 |
| Section 6.08 | Authority to Make Tax Elections | 6-3 |
| Section 6.09 | Payment of Charitable Bequests | 6-4 |

| Article Seven | Specific Distributions and Disposition of Tangible Personal Property | 7-1 |
|---|---|---|
| Section 7.01 | Specific Distribution to Robert Lee Spanos | 7-1 |
| Section 7.02 | Specific Distribution to Frances Shelton | 7-1 |
| Section 7.03 | Specific Distribution to Katherine Leuschner | 7-1 |
| Section 7.04 | Specific Distribution to Brandon Shelton | 7-1 |
| Section 7.05 | Specific Distribution to Brianna Shelton | 7-2 |
| Section 7.06 | Specific Distribution to Nicholas Shelton | 7-2 |
| Section 7.07 | Specific Distribution to Robert Lee Spanos | 7-2 |
| Section 7.08 | Specific Distribution to Kathryn Nicole Laurie | 7-2 |
| Section 7.09 | Specific Distribution to Christopher Blake Spanos | 7-2 |
| Section 7.10 | Distribution of Tangible Personal Property by Memorandum | 7-3 |
| Section 7.11 | Distribution of Remaining Tangible Personal Property | 7-3 |
| Section 7.12 | Definition of Tangible Personal Property | 7-4 |
| Section 7.13 | Incidental Expenses and Encumbrances | 7-4 |
| Section 7.14 | Residuary Distribution | 7-4 |

| Article Eight | Trusts for My Beneficiaries | 8-1 |
|---|---|---|
| Section 8.01 | Division of Remaining Trust Property | 8-1 |
| Section 8.02 | Distribution of the Share for Frances Shelton | 8-1 |
| Section 8.03 | Distribution of the Share for Katherine Leuschner | 8-2 |
| Section 8.04 | Distribution of the Share for Brandon Shelton | 8-3 |
| Section 8.05 | Distribution of the Share for Brianna Shelton | 8-4 |
| Section 8.06 | Distribution of the Share for Nicholas Shelton | 8-6 |

Section 8.07  Distribution of the Share for Robert Lee Spanos.................... 8-7
Section 8.08  Distribution of the Share for Kathryn Nicole Laurie............ 8-8
Section 8.09  Distribution of the Share for Christopher Blake Spanos....... 8-9
Section 8.10  Provisions Regarding Incapacitated Beneficiaries and
         Special Needs....................................................................... 8-10


**Article Nine**    **Remote Contingent Distribution.............................. 9-1**


**Article Ten**     **Distributions to Underage and Incapacitated**
            **Beneficiaries ............................................................. 10-1**
Section 10.01  Supplemental Needs Trust.................................................... 10-1
Section 10.02  Underage and Incapacitated Beneficiaries.......................... 10-5
Section 10.03  Methods of Distribution....................................................... 10-5
Section 10.04  Retention in Trust................................................................ 10-5
Section 10.05  Special Instructions for Disability Due to Addictive
         Situations or Criminal Behavior......................................... 10-6
Section 10.06  Application of Article.......................................................... 10-7


**Article Eleven**   **Retirement Plans and Life Insurance Policies ...... 11-1**
Section 11.01  Retirement Plans................................................................. 11-1
Section 11.02  Life Insurance Policies ....................................................... 11-2
Section 11.03  Limitation on Liability of Payor......................................... 11-3
Section 11.04  Collection Efforts................................................................ 11-3
Section 11.05  No Obligation to Purchase or Maintain Benefits................ 11-4


**Article Twelve**   **Trust Administration ................................................. 12-1**
Section 12.01  Distributions to Beneficiaries ............................................ 12-1
Section 12.02  Trust Decanting; Power to Appoint in Further Trust........... 12-1
Section 12.03  Beneficiary's Status............................................................ 12-2
Section 12.04  Mandatory Payments of a Pecuniary Amount.................... 12-2
Section 12.05  No Court Proceedings.......................................................... 12-2
Section 12.06  No Bond............................................................................... 12-2
Section 12.07  Exoneration of My Trustee.................................................. 12-3
Section 12.08  Limitations on Trustee Liability ......................................... 12-3
Section 12.09  Trustee Compensation ........................................................ 12-4
Section 12.10  Employment of Professionals.............................................. 12-4
Section 12.11  Exercise of Testamentary Power of Appointment............... 12-4
Section 12.12  Determination of Principal and Income.............................. 12-5
Section 12.13  Trust Accounting ................................................................ 12-5
Section 12.14  Action of Trustees and Delegation of Trustee Authority .... 12-6
Section 12.15  Trustee May Disclaim or Release Any Power..................... 12-6
Section 12.16  Trustee May Execute a Power of Attorney.......................... 12-6
Section 12.17  Additions to Separate Trusts............................................... 12-6

Dorothy Spanos Living Trust

iii

Section 12.18        Authority to Merge or Sever Trusts.................................. 12-7
Section 12.19        Authority to Terminate Trusts........................................... 12-7
Section 12.20        Discretionary Distribution to Fully Utilize Basis
                     Increase upon Death of Beneficiary................................... 12-8
Section 12.21        Merger of Corporate Fiduciary.......................................... 12-8
Section 12.22        Funeral and Other Expenses of Beneficiary...................... 12-8
Section 12.23        Generation-Skipping Transfer Tax Provisions................... 12-9


**Article Thirteen        My Trustee's Powers.............................................. 13-1**

Section 13.01        Introduction to Trustee's Powers...................................... 13-1
Section 13.02        Execution of Documents by My Trustee............................ 13-1
Section 13.03        Investment Powers in General........................................... 13-1
Section 13.04        Banking Powers................................................................. 13-2
Section 13.05        Business Powers................................................................ 13-2
Section 13.06        Contract Powers................................................................ 13-4
Section 13.07        Common Investments....................................................... 13-4
Section 13.08        Environmental Powers...................................................... 13-5
Section 13.09        Farm, Ranch, and Other Agricultural Powers.................... 13-5
Section 13.10        Insurance Powers.............................................................. 13-6
Section 13.11        Loans and Borrowing Powers........................................... 13-6
Section 13.12        Nominee Powers............................................................... 13-7
Section 13.13        Oil, Gas and Mineral Interests.......................................... 13-7
Section 13.14        Payment of Property Taxes and Expenses......................... 13-7
Section 13.15        Purchase of Assets from and Loans to My Probate
                     Estate................................................................................ 13-7
Section 13.16        Qualified Real Property Valuation..................................... 13-8
Section 13.17        Qualified Tuition Programs............................................... 13-8
Section 13.18        Real Estate Powers........................................................... 13-8
Section 13.19        Residences and Tangible Personal Property...................... 13-9
Section 13.20        Digital Assets.................................................................... 13-9
Section 13.21        Retention and Abandonment of Trust Property................. 13-10
Section 13.22        Securities, Brokerage and Margin Powers......................... 13-10
Section 13.23        Settlement Powers............................................................ 13-11
Section 13.24        Subchapter S Corporation Stock Provisions..................... 13-11
Section 13.25        Limitation on My Trustee's Powers................................... 13-13


**Article Fourteen        General Provisions................................................. 14-1**

Section 14.01        Maximum Term for Trusts................................................. 14-1
Section 14.02        Spendthrift Provision........................................................ 14-1
Section 14.03        Contest Provision.............................................................. 14-1
Section 14.04        Survivorship Presumption................................................. 14-2
Section 14.05        Changing the Governing Law and Situs of
                     Administration................................................................... 14-2
Section 14.06        Antilapse Statutes............................................................. 14-2

Section 14.07          Definitions ........................................................................... 14-3
Section 14.08          General Provisions and Rules of Construction ..................... 14-8

Dorothy Spanos Living Trust

v

EVANS & DAVIS, PLLC, 8117 PRESTON ROAD, SUITE 300, DALLAS, TEXAS 75225 | (214) 368-2335

# The Dorothy Spanos Living Trust

## Article One
## Establishing My Trust

The date of this trust is December 19, 2017. The parties to this trust are Dorothy J. Spanos (the *Grantor*) and Dorothy J. Spanos (my *Trustee*).

Unless otherwise provided in my Trust Agreement, when one or more initial trustee(s) are serving as Trustee under my Trust, any one initial trustee may conduct business and act on behalf of my Trust without the consent of any other Trustee.

I intend to create a valid trust under the laws of Texas and under the laws of any state in which any trust created under this trust document is administered. The terms of this trust prevail over any provision of Texas law, except those provisions that are mandatory and may not be waived.

### Section 1.01    Identifying My Trust

For convenience, my trust may be referred to as:

"The Dorothy Spanos Living Trust dated December 19, 2017."

To the extent practicable, for the purpose of transferring property to my trust or identifying my trust in any beneficiary or pay-on-death designation, my trust should be identified as:

"Dorothy J. Spanos, Trustee, or her successors in interest, of the Dorothy Spanos Living Trust dated December 19, 2017, and any amendments thereto."

For all purposes concerning the identity of my trust or any property titled in or payable to my trust, any description referring to my trust will be effective if it reasonably identifies my trust and indicates that the trust property is held in a fiduciary capacity.

### Section 1.02    Reliance by Third Parties

Third parties may require documentation to verify the existence of this trust, or particular provisions of it, including the name of my Trustee or the powers held by my Trustee. To protect the confidentiality of this instrument, my Trustee may use an affidavit or a certification of trust that identifies my Trustee and sets forth the authority of my Trustee to transact business on behalf of my trust instead of providing a copy of this instrument. The affidavit or certification may include pertinent pages from this instrument, including title or signature pages.

A third party may rely upon an affidavit or certification of trust that is signed by my Trustee with respect to the representations contained in it. A third party relying upon an affidavit or certification of trust will be exonerated from any liability for actions the third party takes

EVANS & DAVIS, PLLC, 8117 PRESTON ROAD, SUITE 300, DALLAS, TEXAS 75225 | (214) 368-2335

or does not take in reliance upon the representations contained in the affidavit or certification of trust.

A third party dealing with my Trustee will not be required to inquire into this trust's terms or the authority of my Trustee, or to see to the application of funds or other property received by my Trustee. My Trustee's receipt of any money or property paid, transferred, or delivered to my Trustee will be a sufficient discharge to the third party from all liability in connection with its application. A written statement by my Trustee is conclusive evidence of my Trustee's authority. Third parties are not liable for any loss resulting from their reliance on a written statement by my Trustee asserting my Trustee's authority or seeking to effect a transfer of property to or from the trust.

## Section 1.03    Transferring Property to My Trust

Any person or entity may transfer any property to my trust in any manner authorized by law.

### (a)    Funding of My Trust

By executing this instrument, I transfer, convey, and assign the property described in the attached Schedule A to my Trustee. I also transfer all my right, title, and interest in and to all of my property that may legally be held in trust and that may be transferred to my trust by this assignment. This assignment includes all of my real, personal, tangible, and intangible property located in the United States, whether separate property or community property, and whether acquired before or after the execution of this instrument, except for these assets that are expressly not transferred by this instrument:

> life insurance policies, unless the ownership of a policy is transferred to my trust by a separate instrument that specifically refers to the policy;

> corporate and self-employed (*Keogh*) pension, profit-sharing, and stock bonus plans;

> qualified retirement plans;

> commercial annuities;

> Section 1244 (small business) stock; and

> any property, the transfer of which would result in the immediate recognition of income subject to income or other taxes, would result in the loss of a homestead exemption, or would violate a restriction on transfer agreement.

### (b)    Acceptance by My Trustee

By executing this instrument, my Trustee accepts and agrees to hold the property transferred to the trust as trust property. All property transferred to my trust after the date of this trust must be acceptable to my Trustee. My

Dorothy Spanos Living Trust

1-2

Trustee may refuse to accept any property. My Trustee shall hold, administer, and dispose of all accepted trust property for my benefit and for the benefit of my beneficiaries, in accordance with the terms of this trust.

## Section 1.04    Powers Reserved by Me as Grantor

As Grantor, I retain the powers set forth in this Section in addition to any powers that I reserve in other provisions of this instrument.

### (a)    Action on Behalf of My Trust

Whenever I am serving as Trustee, I may act for and conduct business on behalf of my trust without the consent of any other Trustee.

### (b)    Amendment, Restatement, or Revocation

I may amend, restate, or revoke this instrument, in whole or in part, for any purpose. Any amendment, restatement, or revocation must be made in writing and delivered to my then-serving Trustee.

### (c)    Addition or Removal of Trust Property

I may add property to my trust and may remove any property from my trust at any time.

### (d)    Control of Income and Principal Distributions

I retain the right to control the distribution of income and principal from my trust. I may direct my Trustee to distribute as much of the net income and principal of the trust property as I consider advisable to me or to other persons or entities. My Trustee may distribute the net income and principal to me or for my unrestricted use and benefit, even to the exhaustion of all trust property. Any undistributed net income is to be added to the principal of my trust.

### (e)    Approval of Investment Decisions

I reserve the absolute right to review and change my Trustee's investment decisions. But my Trustee is not required to seek my approval before making investment decisions.

## Section 1.05    Grantor Trust Status

By reserving the broad rights and powers set forth in Section 1.04 of this Article, I intend to qualify my trust as a *Grantor Trust* under Internal Revenue Code Sections 671 to 677. This means that, for federal income tax purposes, I will be treated as the owner of all the assets held in my trust during my lifetime, as if I held them in my individual capacity.

During any period that my trust is a Grantor Trust, the Taxpayer Identification Number of my trust will be my Social Security number, in accordance with Treasury Regulation Section 301.6109-1(a)(2).

EVANS & DAVIS, PLLC, 8117 PRESTON ROAD, SUITE 300, DALLAS, TEXAS 75225 | (214) 368-2335

# Article Two
# Family Information

I am unmarried.

I have two children. They are:

>    Frances Shelton, born on July 24, 1960 and

>    Katherine Leuschner, born on February 27, 1958.

All references in this document to *my children* are references to these children.

References to *my descendants* are to my children and their descendants, including any deceased child's descendants.

I have specifically intentionally excluded and disinherited unknown and unknowable claimants as blood relations.

EVANS & DAVIS, PLLC, 8117 PRESTON ROAD, SUITE 300, DALLAS, TEXAS 75225 | (214) 368-2335

# Article Three
## Trustee Succession Provisions

### Section 3.01    Resignation of a Trustee

A Trustee may resign by giving written notice to me. If I am incapacitated or deceased, a resigning Trustee must give written notice to the trust's Income Beneficiaries and to any other then-serving Trustee.

### Section 3.02    Trustee Succession during My Lifetime

During my lifetime, this Section governs the removal and replacement of my Trustees.

#### (a)    Removal and Replacement by Me

I may remove any Trustee with or without cause at any time. If a Trustee is removed, resigns, or cannot continue to serve for any reason, I may serve as sole Trustee, appoint a Trustee to serve with me, or appoint a successor Trustee.

#### (b)    During My Incapacity

During any time that I am incapacitated, the following will replace any then-serving Trustee in this order:

> Frances Shelton then
>
> Ricky Shelton.

If I am incapacitated, a Trustee may be removed only for cause, and only if a court of competent jurisdiction approves the removal upon the petition of an interested party. This does not limit the authority of a Trust Advisor to remove a Trustee under the provisions of Section 4.07(c).

My Legal Representative may petition a court of competent jurisdiction to appoint a successor Trustee to fill any vacancy lasting longer than 30 days. The petition may subject the trust to the jurisdiction of the court only to the extent necessary to make the appointment and may not subject the trust to the continuing jurisdiction of the court.

All appointments, removals, and revocations must be by signed written instrument.

### Section 3.03    Trustee Succession after My Death

After my death, this Section will govern the removal and replacement of my Trustees.

#### (a)    Successor Trustee

I name the following, in this order, to serve as my successor Trustee after my death, replacing any then-serving Trustee:

> Frances Shelton then

Dorothy Spanos Living Trust

3-1

Ricky Shelton.

## (b)  Removal of a Trustee

A Trustee may be removed only for cause, and a petitioning beneficiary must obtain approval from a court of competent jurisdiction before the removal is effective. The petition may subject the trust to the jurisdiction of the court only to the extent necessary to review the petition and may not subject the trust to the continuing jurisdiction of the court.

A minor or incapacitated beneficiary's parent or Legal Representative may act on his or her behalf.

Nothing in this Subsection limits the authority of a Trust Advisor to remove a Trustee under the provisions of Section 4.07(c).

## (c)  Default of Designation

If the office of Trustee of a trust created under this instrument is vacant and no designated successor Trustee is able and willing to act as Trustee, my Trust Advisor may appoint a successor Trustee. If my Trust Advisor is unable or unwilling to act, the trust's Primary Beneficiary may appoint an attorney, certified public accountant or corporate fiduciary that is not related or subordinate to the person or persons making the appointment within the meaning of Section 672(c) of the Internal Revenue Code as successor Trustee.

Any beneficiary may petition a court of competent jurisdiction to appoint a successor Trustee to fill any vacancy lasting longer than 30 days. The petition may subject the trust to the jurisdiction of the court only to the extent necessary to make the appointment and may not subject the trust to the continuing jurisdiction of the court.

A minor or incapacitated beneficiary's parent or Legal Representative may act on his or her behalf.

## Section 3.04    Notice of Removal and Appointment

Notice of removal must be in writing and delivered to the Trustee being removed and to any other then-serving Trustees. The removal becomes effective in accordance with its provisions.

Notice of appointment must be in writing and delivered to the successor Trustee and to any other then-serving Trustees. The appointment becomes effective at the time of acceptance by the successor Trustee. A copy of the notice may be attached to this instrument.

## Section 3.05    Appointment of a Co-Trustee

Any individual Trustee may appoint an individual or a corporate fiduciary as a Co-Trustee. This Co-Trustee serves only as long as the appointing Trustee serves, or as long as the last to serve if more than one Trustee appointed the Co-Trustee. This Co-Trustee will not

become a successor Trustee upon the death, resignation, or incapacity of the appointing Trustee, unless appointed under the terms of this instrument. Although this Co-Trustee may exercise all the powers of the appointing Trustee, the combined powers of this Co-Trustee and the appointing Trustee may not exceed the powers of the appointing Trustee alone. The Trustee appointing a Co-Trustee may revoke the appointment at any time, with or without cause.

## Section 3.06    Corporate Fiduciaries

Any corporate fiduciary serving under this instrument as a Trustee must be a bank, trust company, or public charity that is qualified to act as a fiduciary under applicable federal and state law and that is not related or subordinate to any beneficiary within the meaning of Internal Revenue Code Section 672(c).

## Section 3.07    Incapacity of a Trustee

If any individual Trustee becomes incapacitated, the incapacitated Trustee need not resign as Trustee. For Trustees other than me, a written declaration of incapacity by the Co-Trustee or, if none, by the party designated to succeed the incapacitated Trustee, made in good faith and supported by a written opinion of incapacity by a physician who has examined the incapacitated Trustee, will terminate the trusteeship. If the Trustee designated in the written declaration refuses to sign the necessary medical releases needed to obtain the physician's written opinion of incapacity within 10 days, the trusteeship will be terminated.

## Section 3.08    Appointment of Independent Special Trustee

If for any reason the Trustee of any trust created under this instrument is unwilling or unable to act with respect to any trust property or any provision of this instrument, my Trust Advisor shall appoint, in writing, a corporate fiduciary or an individual to serve as an Independent Special Trustee as to this property or with respect to this provision. The Independent Special Trustee appointed may not be related or subordinate to any trust beneficiary within the meaning of Internal Revenue Code Section 672(c). My Trust Advisor may revoke any appointment of this kind at any time.

An Independent Special Trustee will exercise all fiduciary powers granted by this trust unless expressly limited elsewhere in this instrument or by my Trust Advisor in the instrument appointing the Independent Special Trustee. An Independent Special Trustee may resign at any time by delivering written notice of resignation to my Trust Advisor. Notice of resignation will be effective in accordance with the terms of the notice.

## Section 3.09    Rights and Obligations of Successor Trustees

Each successor Trustee serving under this instrument, whether corporate or individual, will have all of the title, rights, powers, and privileges granted to the initial Trustee named under this instrument. In addition, each successor Trustee will be subject to all of the restrictions imposed upon, as well as to all discretionary and ministerial obligations and duties given to the initial Trustee named under this instrument.

EVANS & DAVIS, PLLC, 8117 PRESTON ROAD, SUITE 300, DALLAS, TEXAS 75225 | (214) 368-2335

## Section 3.10 Successor Trustee Required to Provide An Authorization to Release Medical Information

Each individual successor Trustee (or Co-Trustee) shall be required to execute and deliver to the co-Trustee (if any) or next successor Trustee an "Authorization for Release of Medical Information", pursuant to the Health Insurance and Portability and Accountability Act of 1996 ("HIPAA") and any other similarly applicable federal and state laws, authorizing the release of said successor's protected health and medical information to said successor's Co-Trustee (if any) and to all alternate successor Trustees (or Co-Trustees) named under this Trust Agreement, to be used only for the purpose of determining in the future whether said successor has become incapacitated (as defined in this Trust Agreement). If said successor is already acting in the capacity of Trustee (or Co-Trustee) and fails to so execute and deliver such Authorization within thirty (30) days of actual notice of said requirement, or if an event has occurred which triggers said successor's power to act but said successor has not yet begun to act in said capacity and fails to so execute and deliver such Authorization within thirty (30) days of actual notice of said requirement, then for purposes of the Trust Agreement, said successor shall be deemed incapacitated. "Actual notice" shall occur when a written notice, signed by the Co-Trustee (if any) or next successor Trustee, informing said successor of the need to timely execute and deliver an authorization as set forth above (and, in the case where said successor has not yet begun to act, informing him or her of the event that has triggered said successor's power to act), is (i) deposited in the United States mail, postage prepaid, addressed to the last address of said successor known to the Co-Trustee or next successor Trustee or (ii) hand delivered to said successor, provided such delivery is witnessed by a third party independent from the Co-Trustee or next successor Trustee within the meaning of Internal Revenue Code Section 674(c) and said witness signs a statement that he or she has witnessed such delivery.

## Section 3.11 Obtain the Release of Medical Information

The Trustee is empowered to request, receive and review any information, verbal or written, regarding Grantor' physical or mental health, including, but not limited to, protected health and medical information, and to consent to their release or disclosure. Grantor(s) have separately signed on this same date of on an earlier date an "Authorization For Release of Medical Information", in compliance with HIPAA, immediately authorizing the release of any and all health and medical information to the trustee (or next successor trustee, even if not yet acting) for the purposes of determining the Grantor's incapacity (or for other stated purposes therein). In the event said authorization cannot be located, is by its own terms no longer in force or is otherwise deemed invalid in whole or in part, Grantor(s) hereby grant(s) the trustee (or next successor trustee even if not yet acting) the power and authority, as Grantor's legal representative, to execute a new authorization on the Grantor's behalf, immediately authorizing the release of any and all health and medical information for the purpose of determining the Grantor's incapacity (and for the purpose of carrying out any of the trustee's powers, rights, duties and obligations under this trust agreement), naming the trustee (or next successor trustee even if not yet acting) as the

EVANS & DAVIS, PLLC, 8117 PRESTON ROAD, SUITE 300, DALLAS, TEXAS 75225 | (214) 368-2335.

Grantor's "personal representative", "authorized representative" and "authorized recipient".

EVANS & DAVIS, PLLC, 8117 PRESTON ROAD, SUITE 300, DALLAS, TEXAS 75225 | (214) 368-2335

# Article Four
# Trust Advisor Provisions

## Section 4.01    Provisions for Trust Advisor

The Trust Advisor's purpose is to direct my Trustee in matters concerning the trust, and to assist in achieving my objectives as expressed by the other provisions of my estate plan if needed. Any Trust Advisor must be a corporate fiduciary or an individual who is not related or subordinate to me, while I am still living, or to any beneficiary within the meaning of Internal Revenue Code Section 672(c), and must not be an adverse party within the meaning of Internal Revenue Code Section 672(b). Neither I, nor any trust beneficiaries, nor any person who has contributed to the trust may serve as a Trust Advisor at any time under this instrument.

## Section 4.02    Designation of Trust Advisor

Any Trust Advisor authorized or required to act with respect to this instrument must be appointed by a court of competent jurisdiction on petition of a Trustee or beneficiary. The Trust Advisor must be a corporate fiduciary or individual of a type described in Section 4.01.

The court acting to appoint a Trust Advisor will acquire jurisdiction or authority over the trust only to the extent necessary to make the appointment and may not subject the trust to the continuing jurisdiction of the court.

A minor or incapacitated beneficiary's parent or Legal Representative may act on his or her behalf.

## Section 4.03    Removal of a Trust Advisor

Any Trust Advisor may be removed for cause only as determined by a court of competent jurisdiction on the petition of any Trustee or beneficiary not acting under compulsion or any kind of duress. The court removing a Trust Advisor may appoint one or more successor Trust Advisors to immediately replace the removed Trust Advisor. The court acting to remove and replace a Trust Advisor will acquire jurisdiction or authority over the trust only to the extent necessary for the removal and replacement of the Trust Advisor.

## Section 4.04    Resignation of a Trust Advisor

A Trust Advisor may resign by giving written notice to me. If I am deceased, a Trust Advisor may resign by giving written notice to the Income Beneficiaries of the trust and to the then-serving Trustee.

Resignation will take effect on the date set forth in the notice, but not earlier than 30 days after the delivery date of the notice of resignation, unless an earlier effective date is agreed to by me or by the trust's Primary Beneficiary. A resigning Trust Advisor is not liable or responsible for the act of any successor Trust Advisor.

EVANS & DAVIS, PLLC, 8117 PRESTON ROAD, SUITE 300, DALLAS, TEXAS 75225 | (214) 368-2335

## Section 4.05    Incapacity of a Trust Advisor

If any individual Trust Advisor becomes incapacitated, the incapacitated Trust Advisor need not resign as Trust Advisor. Any then-serving Trust Advisor or the immediately eligible successor Trust Advisor may provide a written declaration that a Trust Advisor is incapacitated.

The written declaration of the Trust Advisor's incapacity, if supported by a written opinion of incapacity by a physician who has examined the incapacitated Trust Advisor, will terminate the Trust Advisor's service. If the Trust Advisor designated in the written declaration refuses to sign the necessary medical releases needed to obtain the physician's written opinion within 10 days of a request to do so, the Trust Advisor's service will be terminated.

The provisions of Section 14.07(g) of this instrument govern the determination of a Trust Advisor's incapacity, except that a single physician may make the determination of incapacity instead of two physicians. Further, Section 14.07(g) governs the Trust Advisor's obligations to submit to examination and provide necessary releases.

## Section 4.06    Authority of Successor Trust Advisors

Any successor Trust Advisor has all the authority of any predecessor Trust Advisor, but is not responsible for the predecessor's acts, omissions, or forbearances.

## Section 4.07    Trust Advisor Powers

Any Trust Advisor named or appointed under the provisions of this instrument has the following powers and authorities.

### (a)    Power to Change the Governing Law and Situs of Administration

The Trust Advisor may change the governing law of the trust, remove all or any part of the property, or change the situs of administration of the trust from one jurisdiction to another as more specifically set forth in Section 14.05 of this instrument.

### (b)    Power to Decant a Trust

The Trust Advisor may appoint the property subject to my Trustee's power of distribution in trust for the benefit of one or more beneficiaries of any trust created under this instrument under the terms established by the Trust Advisor, and as more specifically set forth in Section 12.02 of this instrument.

### (c)    Power to Remove and Appoint Trustees

The Trust Advisor may remove any Trustee of any trust created under this instrument at any time, with or without cause. If the office of Trustee of a trust is vacant and no successor Trustee is effectively named, the Trust Advisor may appoint an individual or a corporate fiduciary to serve as

EVANS & DAVIS, PLLC, 8117 PRESTON ROAD, SUITE 300, DALLAS, TEXAS 75225 | (214) 368-2335

Trustee. A Trust Advisor may not appoint any then-serving Trust Advisor as a Trustee.

If the Trust Advisor removes a Trustee, notice of removal must be made in writing and delivered to my Trustee being removed and any other then-serving Trustees. The removal of my Trustee will be effective in accordance with the terms of the notice of removal.

If one or more beneficiaries also hold the power to remove, replace, or remove and replace Trustees, the Trust Advisor may veto any removal, appointment, or both made by any beneficiary.

### (d) Power to Compel, Approve, or Reject Trustee Accountings

The Trust Advisor may demand from time to time a written accounting from my Trustee, but not more often than quarter-annually. If my Trustee fails to account to the Trust Advisor within 30 days of a written demand, the Trust Advisor may institute appropriate legal actions on behalf of my beneficiaries to compel a full accounting and for other appropriate relief.

The Trust Advisor must either approve or reject any accountings provided by any Trustee within 60 days after the Trustee provides the accounting. Failure to act by the Trust Advisor within the 60-day period will be treated as approval of the accounting by the Trust Advisor. If the Trust Advisor approves an accounting, the approval will be binding on all other parties to the fullest extent allowable under the law. If the Trust Advisor rejects a Trustee's accounting, the Trust Advisor must provide the Trustee with an explanation that adequately enables the Trustee to revise its accounting. The Trustee will then present the revised accounting to the Trust Advisor for approval or further revision, as necessary.

### (e) Power to Construe the Terms of This Instrument

The Trust Advisor may settle any disputes concerning the interpretation of any provision contained in this instrument that arise as a result of any perceived ambiguity. In doing so, the role of the Trust Advisor is to ensure that the instrument is construed in a manner consistent with my estate planning objectives.

### (f) Executing Documents Denoting Authority

The Trust Advisor may execute and deliver, and may direct any Trustee to execute and deliver, any documents necessary to carry out any power granted to the Trust Advisor or my Trustee. All parties dealing with the Trust Advisor and my Trustee may rely on statements and documents made by the Trust Advisor and by any Trustee. No party is required to inquire into any statement or document's validity. If any conflict exists between assertions of authority made by the Trust Advisor and my Trustee,

EVANS & DAVIS, PLLC, 8117 PRESTON ROAD, SUITE 300, DALLAS, TEXAS 75225 | (214) 368-2335

assertions made by the Trust Advisor will control, and any assertion made by my Trustee will be disregarded to the extent of the conflict.

## Section 4.08    Limitation on Trust Advisor Powers

A Trust Advisor may not exercise any power or discretion in favor of the Trust Advisor, for the Trust Advisor's benefit, or for the benefit of any person to whom the Trust Advisor is related or subordinate within the meaning of Internal Revenue Code Section 672(c). My intent is that nothing in this instrument be construed in any manner that would cause the Trust Advisor to possess a general power of appointment within the meaning of Internal Revenue Code Sections 2041 and 2514. This provision, however, does not prohibit the Trust Advisor or any related party from receiving reasonable fees for services rendered to the Trust.

If my Trust Advisor exercises any one of the powers granted in Section 4.07(a) or Section 4.07(b), the Trust Advisor must direct that an amount of assets will be left with the Trustee, sufficient in the Trustee's discretion to cover an estimate of the reasonable claims, expenses and taxes that the Trustee may incur in defending any anticipated claims or winding up the trust.

In exercising and considering whether to exercise any power granted to a Trust Advisor under this agreement, the Trust Advisor should make reasonable inquiry into any matter or seek any information that reasonably bear upon the Trust Advisor's decision to exercise the power.

## Section 4.09    Trust Advisor May Release Powers

Acting on behalf of itself and all successor Trust Advisors, a Trust Advisor may irrevocably release, renounce, suspend, or limit any power or discretion held by the Trust Advisor at any time.

## Section 4.10    Trust Advisor Considered to Have Consented

If any provision of this Article requires the consent or approval of a Trust Advisor before a Trustee can act and the Trust Advisor does not affirmatively deny consent to the proposed action in writing within 10 days of being notified in writing that approval or consent is sought for the particular act, the Trust Advisor will be considered to have given consent or approval for the Trustee's proposed action.

## Section 4.11    Trust Advisor Compensation

Any Trust Advisor serving under this instrument is entitled to receive reasonable compensation for services rendered, taking into consideration:

the market rate for similar services in the jurisdiction in which the Trust Advisor serves;

the breadth and nature of the powers, authorities, and discretions granted to the Trust Advisor;

EVANS & DAVIS, PLLC, 8117 PRESTON ROAD, SUITE 300, DALLAS, TEXAS 75225 | (214) 368-2335

the amount of time the Trust Advisor will likely devote to overseeing the trust and my Trustee; and

the trust property's current value and the projected amount of appreciation.

The Trust Advisor is entitled to reimbursement for all expenses incurred in the performance of its duties as Trust Advisor, including reasonable travel expenses.

Serving in the capacity of Trust Advisor does not prevent the Trust Advisor from also providing legal, investment, or accounting services on behalf of the trust or the trust beneficiaries. If the Trust Advisor is providing professional services, the Trust Advisor is entitled to charge its normal and customary fees for services provided or to be provided, in addition to the Trust Advisor's ordinary compensation as Trust Advisor. The Trust Advisor shall not receive any compensation for merely being named as a Trust advisor.

## Section 4.12    Reimbursement To Trust Advisor

Any Trust Advisor of any trust held hereunder shall be entitled to reimbursement for all ordinary and necessary out-of-pocket costs and expenses (including attorneys', accountants', consultants' and other expert fees and charges) incurred by such Advisor in the performance of his or her duties under this Trust Agreement.

Each of the Advisors shall be indemnified for his or her reasonable legal expenses incurred in defending himself or herself in any action or actions brought against him or her in which it is finally determined that his or her conduct did not constitute gross negligence, willful misconduct, or a crime, and, further, such reasonable legal expenses may be advanced to a Advisor provided that he or she executes an undertaking, with a supporting promissory note, to repay such advanced amounts in the event that the conduct of such Advisor is finally determined to have constituted gross negligence, willful misconduct, or a crime.

## Section 4.13    Right to Examine Trust Records

The books and records of each trust created under this instrument, including all documentation, inventories, and accountings, must be open and available for inspection by the Trust Advisor at all reasonable times.

## Section 4.14    Employment of Professionals

Any Trust Advisor may appoint, employ, and remove investment advisors, accountants, auditors, depositories, custodians, brokers, consultants, attorneys, advisors, agents, and employees to advise or assist in the performance of the Trust Advisor's duties. The Trust Advisor may act on the recommendations of the persons or entities employed, with or without independent investigation.

The Trust Advisor may reasonably compensate an individual or entity employed to assist or advise the Trust Advisor, regardless of any other relationship existing between the individual or entity and the Trust Advisor.

Dorothy Spanos Living Trust

4-5

The Trust Advisor may direct and my Trustee will pay the usual compensation for services contracted for under this Section out of trust income or principal as the Trust Advisor deems advisable. The Trust Advisor may direct payment of compensation to an individual or entity employed to assist or advise the Trust Advisor without diminishing the compensation to which the Trust Advisor is entitled under this instrument. A Trust Advisor who is a partner, stockholder, officer, director, or corporate affiliate in any entity employed to assist or advise the Trust Advisor may nonetheless receive the Trust Advisor's share of the compensation paid to the entity.

EVANS & DAVIS, PLLC, 8117 PRESTON ROAD, SUITE 300, DALLAS, TEXAS 75225 | (214) 368-2335

# Article Five
# Administration of My Trust during My Incapacity

### Section 5.01    Definition of My Incapacity

I will be considered incapacitated during any time when I am unable to effectively manage my property or financial affairs because of age, illness, mental disorder, dependence on prescription medication or other substances, or any other cause.

### Section 5.02    Determination of My Incapacity

For purposes of this instrument, I am incapacitated if I am determined to be so under any one of the following Subsections.

#### (a)    Determination by Attending Physician

I will be considered incapacitated if my attending physician has determined my then-existing circumstances fall within the definition of incapacity as provided in Section 5.01.

I will be considered restored to capacity if my personal or attending physician signs a written opinion that I can effectively manage my property and financial affairs.

#### (b)    Court Determination

I will be considered incapacitated if a court of competent jurisdiction determines that I am legally incapacitated, incompetent, or otherwise unable to effectively manage my property or financial affairs.

#### (c)    Detention, Disappearance, or Absence

I will be considered incapacitated if I have an unexplained disappearance or absence for more than 30 days, or if I am detained under duress. My disappearance, absence, or detention under duress may be established by an affidavit of my Trustee, or, if no Trustee is then serving under this trust, by the affidavit of any beneficiary of any trust created under this instrument. The affidavit must describe the circumstances of my disappearance, absence, or detention under duress. A third party dealing with my Trustee in good faith may always rely on the representations contained in the affidavit.

I will be considered restored to capacity upon my written notice to the successor Trustee that I can manage my property and financial affairs.

### Section 5.03    Trust Distributions during My Incapacity

During any period of time when I am incapacitated, my Trustee shall administer my trust and distribute its net income and principal as provided in this Section.

Evans & Davis, PLLC, 8117 Preston Road, Suite 300, Dallas, Texas 75225 | (214) 368-2335

## (a)  Distributions for My Benefit

My Trustee shall regularly and conscientiously make appropriate distributions of income and principal for my general welfare and comfort under the circumstances existing at the time each distribution is made.

Appropriate distributions under this Subsection include the payment of any of my enforceable legal obligations and premiums for insurance policies owned by me or by my trust, including life, medical, disability, property and casualty, errors and omissions, and longterm health care policies.

My Trustee is authorized to honor pledges and continue to make gifts to charitable organizations that I have regularly supported in the customarily given amounts.

The examples included in this Subsection are for purposes of illustration only and are not intended to limit the authority of my Trustee to make any distribution for my benefit that my Trustee determines appropriate.

## (b)  Manner of Making Distributions

My Trustee may make distributions for my benefit in any one or more of the following ways:

to me, but only to the extent I am able to manage these distributions;

to other persons and entities for my use and benefit;

to an agent or attorney in fact authorized to act for me under a legally valid durable power of attorney executed by me before my incapacity; and

to my guardian or conservator who has assumed responsibility for me under any court order, decree, or judgment issued by a court of competent jurisdiction.

I wish to maintain the highest level of personal independence and comfort, and to live in the manner in which I have lived throughout my life. The authorized expenditures from the trust include all expenditures necessary for food, shelter, and maintenance of an independent lifestyle in my own home or apartment. The authorized expenditures include service, equipment or personal care necessary to allow me to remain in my own home or apartment, and to have a lifestyle which allows the highest degree of dignity and independence. It is my intent that I remain in my current home, for as long as possible, unless medical exigencies which may not be handled by purchase of additional home care make it necessary for me to move to another location.

Dorothy Spanos Living Trust

5-2

My trustee shall give priority to these purposes over any consideration for any interest of any remainder beneficiary. It is understood that the use of funds in said trust may leave nothing to be distributed to remainder beneficiaries and it is my intention that my care be given priority.

### (c) Distributions for the Benefit of Persons Dependent on Me

My Trustee also may distribute as much of the net income and principal as my Trustee considers necessary for the health, education, maintenance or support of persons who my Trustee determines are dependent on me for support.

### (d) Guidance for My Trustee Regarding Distributions

When making distributions under Subsections (a) and (c), my Trustee shall give consideration first to my needs, and then to the needs of those persons dependent on me.

When making distributions under Subsection (c), I request that my Trustee, in its sole and absolute discretion, consider other income and resources available to the beneficiaries. My Trustee may make unequal distributions, distributions to some but not all beneficiaries, or no distributions.

A distribution made to a beneficiary under this Section will not be considered an advancement, and will not be charged against the share of the beneficiary that may be distributable under any other provision of this trust.

EVANS & DAVIS, PLLC, 8117 PRESTON ROAD, SUITE 300, DALLAS, TEXAS 75225 | (214) 368-2335

# Article Six
# Administration of My Trust upon My Death

## Section 6.01    My Trust Becomes Irrevocable

After my death, my trust is irrevocable and my Social Security number may no longer be used to identify the trust. My Trustee may need to apply for a separate Taxpayer Identification Number for the trust.

## Section 6.02    Administrative Trust

After my death and before the distribution of trust property as provided in the subsequent Articles of this trust, the trust will be an *administrative trust*, but may continue to be known as the Dorothy Spanos Living Trust. The administrative trust will continue for a reasonable period of time necessary to complete the administrative tasks set forth in this Article.

## Section 6.03    Payment of Expenses and Taxes

My Trustee may pay from the trust property:

> expenses of my last illness, funeral, and burial or cremation, including expenses of memorials and memorial services;
>
> legally enforceable claims against me or my estate;
>
> expenses of administering the trust and my estate; and
>
> court-ordered allowances for those dependent upon me.

These payments are discretionary with my Trustee. My Trustee may make decisions on these payments without regard to any limitation on payment of the expenses and may make payments without any court's approval. No third party may enforce any claim or right to payment against the trust by virtue of this discretionary authority.

If payment would decrease the federal estate tax charitable deduction available to my estate, my Trustee may not pay any administrative expenses from assets passing to an organization that qualifies for the federal estate tax charitable deduction.

My Trustee shall pay death taxes out of the trust property's principal, as provided in Section 6.06. But if a probate estate is opened within six months after the date of my death, my Executor shall pay any outstanding claims and expenses as authorized by the Executor, as well as any death taxes from my probate estate to the extent that the cash and readily marketable assets in my probate estate are sufficient.

## Section 6.04    Restrictions on Certain Payments from Retirement Plans

The term *designation date* means September 30 of the calendar year following the year of my death, or another date as established by Treasury Regulations or other tax law authority as the final date for determining whether this trust meets the requirements for treatment of

.EVANS & DAVIS, PLLC, 8117 PRESTON ROAD, SUITE 300, DALLAS, TEXAS 75225 | (214) 368-2335

the trust's oldest beneficiary as if the beneficiary was named individually as beneficiary of any qualified retirement plan payable to this trust.

Notwithstanding any other provision of this trust or state law to the contrary, my Trustee may not distribute any qualified retirement benefit payable to a trust created under this trust to or for the benefit of my estate, any charity, or any beneficiary other than an individual, on or after the *designation date*. My intent is that all qualified retirement benefits held by or payable to this trust on or after the designation date be distributed to or held only for individual beneficiaries, within the meaning of Internal Revenue Code Section 401(a)(9).

Qualified retirement benefits payable to the trust may not be used or applied on or after the designation date for payment of my debts, taxes, expenses of administration, or other claims against my estate, or for payment of estate, inheritance, or similar transfer taxes due because of my death, other than those directly attributable to and the legal obligation of a particular qualified retirement plan. This Section does not apply to any bequest or expense that is specifically directed to be funded with qualified retirement benefits.

## Section 6.05    Excluding Life Insurance Proceeds from Creditors

Despite anything to the contrary in this instrument, any life insurance proceeds payable to the Trustee under this instrument must never be or become part of my probate or testamentary estate. Nothing in this instrument directs that these life insurance proceeds be used to pay my debts or expenses.

## Section 6.06    Payment of Death Taxes

For the purposes of this Article, the term *death taxes* refers to any taxes imposed by reason of my death by federal, state, or local authorities, including estate, inheritance, gift, and direct-skip generation-skipping transfer taxes. For purposes of this Section, *death taxes* does not include any additional estate tax imposed by Internal Revenue Code Section 2031(c)(5)(C) or Section 2032A(c), or any other comparable recapture tax imposed by any taxing authority. Nor does the term include any generation-skipping transfer tax, other than a direct-skip generation-skipping transfer tax.

Except as otherwise provided in this Article or elsewhere in this trust, my Trustee shall provide for payment of all death taxes from the administrative trust without apportionment. My Trustee may not seek contribution toward or recovery of any payments of death taxes from any individual.

### (a)    Protection of Exempt Property

Death taxes may not be allocated to or paid from any assets that are not included in my gross estate for federal estate tax purposes. To the extent practicable, my Trustee may not pay any death taxes from assets that are exempt from generation-skipping transfer tax purposes.

### (b)    Protection of the Charitable Deduction

Death taxes may not be paid from or allocated to any assets passing to an organization that qualifies for the federal estate tax charitable deduction, or

EVANS & DAVIS, PLLC, 8117 PRESTON ROAD, SUITE 300, DALLAS, TEXAS 75225 | (214) 368-2335

from any assets passing to a split-interest charitable trust, unless the Trustee has first used all other assets available to pay the taxes.

### (c) Property Passing outside of My Trust

Except as to qualified retirement benefits, death taxes imposed with respect to property included in my gross estate for death tax purposes but passing outside of the trust are to be apportioned among the persons and entities benefited. The proportion attributed to each person or entity is the taxable value of each person or entity's beneficial interest over the total taxable value of all property and interests included in my gross estate for death tax purposes. The values used for the apportionment are to be the values as finally determined under federal, state, or local law.

## Section 6.07    Coordination with My Executor

The following provisions are intended to help facilitate the coordination between my Executor and my Trustee. These provisions apply even if the Executor and the Trustee are the same person or entity.

### (a) Reliance on Information from My Executor

My Trustee may rely upon the written request of my Executor for payments authorized under this Article and the amounts included in those payments without computing the sums involved. If a payment is made under this Article to my Executor, my Trustee will have no duty to inquire into the application of the payment.

### (b) Receipt of Probate Property

My Trustee may accept or decline any distributions of property tendered to my Trustee by my Executor. If my Trustee accepts the property, my Trustee may do so without audit, and will not be required to review the Executor's records.

### (c) Discretionary Distributions to My Executor

My Trustee may distribute cash, accrued income, or other trust property to my probate estate as a beneficiary of this trust, to the extent my Trustee determines that doing so is in the best interests of the trust beneficiaries.

## Section 6.08    Authority to Make Tax Elections

After my death, my Trustee may make tax elections as provided in this Section. But if an Executor is appointed for my probate estate, the discretionary authority granted to my Trustee as to any tax election will be subordinate to the Executor's statutorily delegated authority.

### (a) Tax Elections

My Trustee may make any tax elections necessary for the efficient administration of my estate, including:

Dorothy Spanos Living Trust

6-3

valuing assets according to an alternate valuation date;

electing whether to take administration expenses as estate tax deductions or income tax deductions;

allocating my unused generation-skipping exemption to any portion of the trust property;

electing special-use valuation;

deferring payment of all or any portion of any taxes; and

treating any portion of my administrative trust as part of my estate for federal or state income tax purposes, or both.

My Trustee may make equitable adjustments between income and principal because of any tax elections made by my Trustee.

## (b)     Allocation of GST Exemption

My Trustee may elect to allocate or not allocate any portion of the Available GST Exemption under Internal Revenue Code Section 2631, or a counterpart exemption under any applicable state law to any property of which I am considered the transferor for generation-skipping transfer tax purposes. This includes any property transferred by me during my life for which I did not make an allocation prior to death. The exercise of my Trustee's discretion should be based on the transfers, gift tax returns, and other information known to my Trustee, with no requirement that allocations benefit the various transferees or beneficiaries in any particular manner.

## (c)     Qualified Conservation Easements

My Trustee may create a qualified conservation easement, as defined in Internal Revenue Code Section 2031(c)(8)(A), in any land held by the trust and may make the necessary election provided by Section 2031(c)(6).

## Section 6.09     Payment of Charitable Bequests

To the extent possible, my Trustee must make all charitable distributions from property that constitutes *income in respect of a decedent* (IRD) as that term is defined under the U.S. income tax laws. The distribution will qualify for the income tax charitable deduction under Internal Revenue Code Section 642(c)(2), as amended.

EVANS & DAVIS, PLLC, 8117 PRESTON ROAD, SUITE 300, DALLAS, TEXAS 75225 | (214) 368-2335

# Article Seven
## Specific Distributions and Disposition of Tangible Personal Property

### Section 7.01     Specific Distribution to Robert Lee Spanos

As soon as practicable after my death, my Trustee shall distribute 44 acres of land with an address of 228 Spanos Ranch Road and with a legal description of being 266.482 acres of land out of the J.B. Capel Survey A-203 L.C. Woodruff Survey, Isaac Gifford and Wm. Parvin Surveys, McLennan County, Texas to Robert Lee Spanos.

If Robert Lee Spanos is deceased, then this distribution will lapse, and this property instead will be distributed under the other provisions of this trust.

Property passing under this Section passes free of any administrative expenses or death taxes. But property passing under this Section passes subject to all liens, security interests, and other encumbrances.

### Section 7.02     Specific Distribution to Frances Shelton

As soon as practicable after my death, my Trustee shall distribute $100,000 to Frances Shelton.

If Frances Shelton is deceased, then this distribution will lapse, and this property instead will be distributed under the other provisions of this trust.

Property passing under this Section passes free of any administrative expenses or death taxes.

### Section 7.03     Specific Distribution to Katherine Leuschner

As soon as practicable after my death, my Trustee shall distribute $100,000 to Katherine Leuschner.

If Katherine Leuschner is deceased, then this distribution will lapse, and this property instead will be distributed under the other provisions of this trust.

Property passing under this Section passes free of any administrative expenses or death taxes.

### Section 7.04     Specific Distribution to Brandon Shelton

As soon as practicable after my death, my Trustee shall distribute $100,000 to Brandon Shelton.

If Brandon Shelton is deceased, then this distribution will lapse, and this property instead will be distributed under the other provisions of this trust.

Property passing under this Section passes free of any administrative expenses or death taxes.

## Section 7.05    Specific Distribution to Brianna Shelton

As soon as practicable after my death, my Trustee shall distribute $100,000 to Brianna Shelton.

If Brianna Shelton is deceased, then this distribution will lapse, and this property instead will be distributed under the other provisions of this trust.

Property passing under this Section passes free of any administrative expenses or death taxes.

## Section 7.06    Specific Distribution to Nicholas Shelton

As soon as practicable after my death, my Trustee shall distribute $100,000 to Nicholas Shelton.

If Nicholas Shelton is deceased, then this distribution will lapse, and this property instead will be distributed under the other provisions of this trust.

Property passing under this Section passes free of any administrative expenses or death taxes.

## Section 7.07    Specific Distribution to Robert Lee Spanos

As soon as practicable after my death, my Trustee shall distribute $100,000 to Robert Lee Spanos.

If Robert Lee Spanos is deceased, then this distribution will lapse, and this property instead will be distributed under the other provisions of this trust.

Property passing under this Section passes free of any administrative expenses or death taxes.

## Section 7.08    Specific Distribution to Kathryn Nicole Laurie

As soon as practicable after my death, my Trustee shall distribute $100,000 to Kathryn Nicole Laurie.

If Kathryn Nicole Laurie is deceased, then this distribution will lapse, and this property instead will be distributed under the other provisions of this trust.

Property passing under this Section passes free of any administrative expenses or death taxes.

## Section 7.09    Specific Distribution to Christopher Blake Spanos

As soon as practicable after my death, my Trustee shall distribute $100,000 to Christopher Blake Spanos.

If Christopher Blake Spanos is deceased, then this distribution will lapse, and this property instead will be distributed under the other provisions of this trust.

Property passing under this Section passes free of any administrative expenses or death taxes.

EVANS & DAVIS, PLLC, 8117 PRESTON ROAD, SUITE 300, DALLAS, TEXAS 75225 | (214) 368-2335

## Section 7.10 Distribution of Tangible Personal Property by Memorandum

I may dispose of items of tangible personal property by a signed written memorandum executed after I sign this instrument. The memorandum must refer to my trust and must reasonably identify the items and the beneficiary designated to receive each item. If I execute a memorandum, my Trustee shall incorporate the memorandum by reference into this instrument to the extent permitted by law.

My Trustee shall distribute the items of tangible personal property listed in the memorandum as promptly as practicable after my death, together with any insurance policies covering the property and any claims under those policies, as provided in the memorandum. If I leave multiple written memoranda that conflict as to the disposition of any item of tangible personal property, the memorandum with the most recent date will control as to that item.

If the memorandum with the most recent date conflicts with a provision of this instrument as to the specific distribution of any item of tangible personal property, the provisions of this instrument will control as to those items that are in conflict.

If the law does not permit incorporation of the memorandum by reference, the memorandum will then serve as an amendment to my trust, but only to the extent this amendment solely disposes of tangible personal property. I request that my Trustee follow my wishes and distribute the items of tangible personal property listed in the memorandum according to its terms, except to the extent the memorandum conflicts with any other provision of this instrument as to the specific distribution of any item of tangible personal property.

## Section 7.11 Distribution of Remaining Tangible Personal Property

My Trustee shall distribute any remaining tangible personal property not disposed of by a written memorandum to my children in shares of substantially equal value, to be divided among my children as they agree. If any child should predecease me, my Trustee shall distribute that child's share to the child's then living descendants as those descendants agree. If any child is deceased having no then living descendants, the distribution to that child will lapse. If my Trustee determines that a child or any descendant of a deceased child is incapable of acting in his or her own best interest, my Trustee shall appoint a person to represent the child or descendant of the deceased child in the division of the property. If my children and the descendants of any deceased child or children are unable to agree upon the division of the property within six months after my death, my Trustee shall make the division according to my Trustee's discretion. My Trustee may use a lottery, rotation system, or any other method of allocation to determine the order of selection and distribution of the property. As an alternative, my Trustee may sell all or any portion of the property and distribute the net proceeds equally among my then-living children and any then-living descendants of any deceased child or children. My Trustee will not incur any liability to any party for decisions made by my Trustee with respect to the division or sale of tangible personal property. Any decision made by my Trustee will be final and binding on all beneficiaries.

EVANS & DAVIS, PLLC, 8117 PRESTON ROAD, SUITE 300, DALLAS, TEXAS 75225 | (214) 368-2335

## Section 7.12    Definition of Tangible Personal Property

For purposes of this Article, the term *tangible personal property* includes household furnishings, appliances and fixtures, works of art, motor vehicles, pictures, collectibles, apparel and jewelry, books, sporting goods, and hobby paraphernalia. The term does not include any property that my Trustee, in its sole and absolute discretion, determines to be part of any business or business interest owned by me or my trust.

After my death, if my Trustee receives property to be distributed under this Article from my probate estate or in any other manner, my Trustee shall distribute the property in accordance with this Article's terms. The fact that an item of tangible personal property was not received by my trust until after my death does not diminish the validity of the gift. If property to be distributed under this Article is not part of the trust property upon my death and is not subsequently transferred to my Trustee from my probate estate or in any other manner, then the specific distribution of property made in this Article is null and void, without any legal or binding effect.

## Section 7.13    Incidental Expenses and Encumbrances

Until property distributed in accordance with this Article is delivered to the appropriate beneficiary or his or her Legal Representative, my Trustee shall pay the reasonable expenses of securing, storing, insuring, packing, transporting, and otherwise caring for the property as an administration expense. Except as otherwise provided in my trust, my Trustee shall distribute property under this Article subject to all liens, security interests, and other encumbrances on the property.

## Section 7.14    Residuary Distribution

Any property not distributed under this or prior Articles of this instrument will be distributed as provided in the following Articles.

EVANS & DAVIS, PLLC, 8117 PRESTON ROAD, SUITE 300, DALLAS, TEXAS 75225 | (214) 368-2335

# Article Eight
# Trusts for My Beneficiaries

My Trustee shall administer and distribute my remaining trust property (not distributed under prior Articles of this instrument) under the terms of this Article.

## Section 8.01    Division of Remaining Trust Property

My Trustee shall divide my remaining trust property into shares as follows:

| Name | Relationship | Share |
|------|--------------|-------|
| Frances Shelton | Daughter | 1/3 |
| Katherine Leuschner | Daughter | 1/3 |
| Brandon Shelton | Grandson | 1/18 |
| Brianna Shelton | Granddaughter | 1/18 |
| Nicholas Shelton | Grandson | 1/18 |
| Robert Lee Spanos | Grandson | 1/18 |
| Kathryn Nicole Laurie | Granddaughter | 1/18 |
| Christopher Blake Spanos | Grandson | 1/18 |

My Trustee shall administer the share of each beneficiary as provided in the Sections that follow.

## Section 8.02    Distribution of the Share for Frances Shelton

My Trustee shall administer the share set aside for Frances Shelton in trust as provided in this Section.

### (a)    Distributions of Income and Principal

My Independent Trustee may distribute to Frances Shelton as much of the income and principal of her trust as my Independent Trustee may determine advisable for any purpose. If no Independent Trustee is then serving, my Trustee shall distribute to Frances Shelton as much of the income and principal of her trust as my Trustee determines necessary or advisable for her health, education, maintenance or support.

My Trustee shall add any undistributed net income to principal.

EVANS & DAVIS, PLLC, 8117 PRESTON ROAD, SUITE 300, DALLAS, TEXAS 75225 | (214) 368-2335

## (b)     Guidelines for Discretionary Distributions

In making discretionary distributions to Frances Shelton, I desire that Frances Shelton develops a strong work ethic, is a productive and contributing member of society, and provides for those who are dependent on her for care and support. Accordingly, my Trustee shall always consider the other known resources available to Frances Shelton before making discretionary distributions. I desire that preservation of principal be a priority for purposes of this trust, and that Frances Shelton show genuine need before my Trustee makes any discretionary distribution.

## (c)     Right to Withdraw Principal

Frances Shelton may withdraw any portion or all of the accumulated trust income and principal from her trust.

Frances Shelton may exercise this right by delivering written notice to my Trustee, setting forth the desired withdrawal amount. Upon receiving a notice, my Trustee shall convey and deliver the requested amount to Frances Shelton, free of trust. Frances Shelton's right of withdrawal is a privilege that may be exercised only by Frances Shelton, and is not subject to the claims of any creditor or to legal process and may not be voluntarily or involuntarily alienated or encumbered. This provision does not limit the exercise of any power of appointment Frances Shelton may have.

## (d)     Distribution if Frances Shelton Is Deceased or upon Death

Upon Frances Shelton's death, or if Frances Shelton dies before the establishment of her trust, my Trustee shall distribute Frances Shelton's share *per stirpes* in trusts to the descendants of Frances Shelton. My Trustee shall administer the trusts under the same terms as Frances Shelton's trust. If Frances Shelton has no descendants, my Trustee shall distribute Frances Shelton's share *pro rata* to the other beneficiaries named in this Article. If no other named beneficiaries exist, my Trustee shall distribute Frances Shelton's share under the terms of Article Nine.

## Section 8.03     Distribution of the Share for Katherine Leuschner

My Trustee shall administer the share set aside for Katherine Leuschner in trust as provided in this Section.

## (a)     Distributions of Income and Principal

My Independent Trustee may distribute to Katherine Leuschner as much of the income and principal of her trust as my Independent Trustee may determine advisable for any purpose. If no Independent Trustee is then serving, my Trustee shall distribute to Katherine Leuschner as much of the income and principal of her trust as my Trustee determines necessary or advisable for her health, education, maintenance or support.

EVANS & DAVIS, PLLC, 8117 PRESTON ROAD, SUITE 300, DALLAS, TEXAS 75225 | (214) 368-2335

My Trustee shall add any undistributed net income to principal.

### (b) Guidelines for Discretionary Distributions

In making discretionary distributions to Katherine Leuschner, I desire that Katherine Leuschner develops a strong work ethic, is a productive and contributing member of society, and provides for those who are dependent on her for care and support. Accordingly, my Trustee shall always consider the other known resources available to Katherine Leuschner before making discretionary distributions. I desire that preservation of principal be a priority for purposes of this trust, and that Katherine Leuschner show genuine need before my Trustee makes any discretionary distribution.

### (c) Right to Withdraw Principal

Katherine Leuschner may withdraw any portion or all of the accumulated trust income and principal from her trust.

Katherine Leuschner may exercise this right by delivering written notice to my Trustee, setting forth the desired withdrawal amount. Upon receiving a notice, my Trustee shall convey and deliver the requested amount to Katherine Leuschner, free of trust. Katherine Leuschner's right of withdrawal is a privilege that may be exercised only by Katherine Leuschner, and is not subject to the claims of any creditor or to legal process and may not be voluntarily or involuntarily alienated or encumbered. This provision does not limit the exercise of any power of appointment Katherine Leuschner may have.

### (d) Distribution if Katherine Leuschner Is Deceased or upon Death

Upon Katherine Leuschner's death, or if Katherine Leuschner dies before the establishment of her trust, my Trustee shall distribute Katherine Leuschner's share *per stirpes* in trusts to the descendants of Katherine Leuschner. My Trustee shall administer the trusts under the same terms as Katherine Leuschner's trust. If Katherine Leuschner has no descendants, my Trustee shall distribute Katherine Leuschner's share *pro rata* to the other beneficiaries named in this Article. If no other named beneficiaries exist, my Trustee shall distribute Katherine Leuschner's share under the terms of Article Nine.

### Section 8.04 Distribution of the Share for Brandon Shelton

My Trustee shall administer the share set aside for Brandon Shelton in trust as provided in this Section.

### (a) Distributions of Income and Principal

My Independent Trustee may distribute to Brandon Shelton as much of the income and principal of his trust as my Independent Trustee may determine advisable for any purpose. If no Independent Trustee is then serving, my

EVANS & DAVIS, PLLC, 8117 PRESTON ROAD, SUITE 300, DALLAS, TEXAS 75225 | (214) 368-2335

Trustee shall distribute to Brandon Shelton as much of the income and principal of his trust as my Trustee determines necessary or advisable for his health, education, maintenance or support.

My Trustee shall add any undistributed net income to principal.

### (b)    Guidelines for Discretionary Distributions

In making discretionary distributions to Brandon Shelton, I desire that Brandon Shelton develops a strong work ethic, is a productive and contributing member of society, and provides for those who are dependent on him for care and support. Accordingly, my Trustee shall always consider the other known resources available to Brandon Shelton before making discretionary distributions. I desire that preservation of principal be a priority for purposes of this trust, and that Brandon Shelton show genuine need before my Trustee makes any discretionary distribution.

### (c)    Right to Withdraw Principal

Brandon Shelton may withdraw any portion or all of the accumulated trust income and principal from his trust.

Brandon Shelton may exercise this right by delivering written notice to my Trustee, setting forth the desired withdrawal amount. Upon receiving a notice, my Trustee shall convey and deliver the requested amount to Brandon Shelton, free of trust. Brandon Shelton's right of withdrawal is a privilege that may be exercised only by Brandon Shelton, and is not subject to the claims of any creditor or to legal process and may not be voluntarily or involuntarily alienated or encumbered. This provision does not limit the exercise of any power of appointment Brandon Shelton may have.

### (d)    Distribution if Brandon Shelton Is Deceased or upon Death

Upon Brandon Shelton's death, or if Brandon Shelton dies before the establishment of his trust, my Trustee shall distribute Brandon Shelton's share *per stirpes* in trusts to the descendants of Brandon Shelton. My Trustee shall administer the trusts under the same terms as Brandon Shelton's trust. If Brandon Shelton has no descendants, my Trustee shall distribute Brandon Shelton's share *pro rata* to the other beneficiaries named in this Article. If no other named beneficiaries exist, my Trustee shall distribute Brandon Shelton's share under the terms of Article Nine.

## Section 8.05    Distribution of the Share for Brianna Shelton

My Trustee shall administer the share set aside for Brianna Shelton in trust as provided in this Section.

EVANS & DAVIS, PLLC, 8117 PRESTON ROAD, SUITE 300, DALLAS, TEXAS 75225 | (214) 368-2335

## (a) Distributions of Income and Principal

My Independent Trustee may distribute to Brianna Shelton as much of the income and principal of her trust as my Independent Trustee may determine advisable for any purpose. If no Independent Trustee is then serving, my Trustee shall distribute to Brianna Shelton as much of the income and principal of her trust as my Trustee determines necessary or advisable for her health, education, maintenance or support.

My Trustee shall add any undistributed net income to principal.

## (b) Guidelines for Discretionary Distributions

In making discretionary distributions to Brianna Shelton, I desire that Brianna Shelton develops a strong work ethic, is a productive and contributing member of society, and provides for those who are dependent on her for care and support. Accordingly, my Trustee shall always consider the other known resources available to Brianna Shelton before making discretionary distributions. I desire that preservation of principal be a priority for purposes of this trust, and that Brianna Shelton show genuine need before my Trustee makes any discretionary distribution.

## (c) Right to Withdraw Principal

Brianna Shelton may withdraw any portion or all of the accumulated trust income and principal from her trust.

Brianna Shelton may exercise this right by delivering written notice to my Trustee, setting forth the desired withdrawal amount. Upon receiving a notice, my Trustee shall convey and deliver the requested amount to Brianna Shelton, free of trust. Brianna Shelton's right of withdrawal is a privilege that may be exercised only by Brianna Shelton, and is not subject to the claims of any creditor or to legal process and may not be voluntarily or involuntarily alienated or encumbered. This provision does not limit the exercise of any power of appointment Brianna Shelton may have.

## (d) Distribution if Brianna Shelton Is Deceased or upon Death

Upon Brianna Shelton's death, or if Brianna Shelton dies before the establishment of her trust, my Trustee shall distribute Brianna Shelton's share *per stirpes* in trusts to the descendants of Brianna Shelton. My Trustee shall administer the trusts under the same terms as Brianna Shelton's trust. If Brianna Shelton has no descendants, my Trustee shall distribute Brianna Shelton's share *pro rata* to the other beneficiaries named in this Article. If no other named beneficiaries exist, my Trustee shall distribute Brianna Shelton's share under the terms of Article Nine.

EVANS & DAVIS, PLLC, 8117 PRESTON ROAD, SUITE 300, DALLAS, TEXAS 75225 | (214) 368-2335

## Section 8.06    Distribution of the Share for Nicholas Shelton

My Trustee shall administer the share set aside for Nicholas Shelton in trust as provided in this Section.

### (a)    Distributions of Income and Principal

My Independent Trustee may distribute to Nicholas Shelton as much of the income and principal of his trust as my Independent Trustee may determine advisable for any purpose. If no Independent Trustee is then serving, my Trustee shall distribute to Nicholas Shelton as much of the income and principal of his trust as my Trustee determines necessary or advisable for his health, education, maintenance or support.

My Trustee shall add any undistributed net income to principal.

### (b)    Guidelines for Discretionary Distributions

In making discretionary distributions to Nicholas Shelton, I desire that Nicholas Shelton develops a strong work ethic, is a productive and contributing member of society, and provides for those who are dependent on him for care and support. Accordingly, my Trustee shall always consider the other known resources available to Nicholas Shelton before making discretionary distributions. I desire that preservation of principal be a priority for purposes of this trust, and that Nicholas Shelton show genuine need before my Trustee makes any discretionary distribution.

### (c)    Right to Withdraw Principal

Nicholas Shelton may withdraw any portion or all of the accumulated trust income and principal from his trust.

Nicholas Shelton may exercise this right by delivering written notice to my Trustee, setting forth the desired withdrawal amount. Upon receiving a notice, my Trustee shall convey and deliver the requested amount to Nicholas Shelton, free of trust. Nicholas Shelton's right of withdrawal is a privilege that may be exercised only by Nicholas Shelton, and is not subject to the claims of any creditor or to legal process and may not be voluntarily or involuntarily alienated or encumbered. This provision does not limit the exercise of any power of appointment Nicholas Shelton may have.

### (d)    Distribution if Nicholas Shelton Is Deceased or upon Death

Upon Nicholas Shelton's death, or if Nicholas Shelton dies before the establishment of his trust, my Trustee shall distribute Nicholas Shelton's share *per stirpes* in trusts to the descendants of Nicholas Shelton. My Trustee shall administer the trusts under the same terms as Nicholas Shelton's trust. If Nicholas Shelton has no descendants, my Trustee shall distribute Nicholas Shelton's share *pro rata* to the other beneficiaries named

EVANS & DAVIS, PLLC, 8117 PRESTON ROAD, SUITE 300, DALLAS, TEXAS 75225 | (214) 368-2335

in this Article. If no other named beneficiaries exist, my Trustee shall distribute Nicholas Shelton's share under the terms of Article Nine.

## Section 8.07    Distribution of the Share for Robert Lee Spanos

My Trustee shall administer the share set aside for Robert Lee Spanos in trust as provided in this Section.

### (a)    Distributions of Income and Principal

My Independent Trustee may distribute to Robert Lee Spanos as much of the income and principal of his trust as my Independent Trustee may determine advisable for any purpose. If no Independent Trustee is then serving, my Trustee shall distribute to Robert Lee Spanos as much of the income and principal of his trust as my Trustee determines necessary or advisable for his health, education, maintenance or support.

My Trustee shall add any undistributed net income to principal.

### (b)    Guidelines for Discretionary Distributions

In making discretionary distributions to Robert Lee Spanos, I desire that Robert Lee Spanos develops a strong work ethic, is a productive and contributing member of society, and provides for those who are dependent on him for care and support. Accordingly, my Trustee shall always consider the other known resources available to Robert Lee Spanos before making discretionary distributions. I desire that preservation of principal be a priority for purposes of this trust, and that Robert Lee Spanos show genuine need before my Trustee makes any discretionary distribution.

### (c)    Right to Withdraw Principal

Robert Lee Spanos may withdraw any portion or all of the accumulated trust income and principal from his trust.

Robert Lee Spanos may exercise this right by delivering written notice to my Trustee, setting forth the desired withdrawal amount. Upon receiving a notice, my Trustee shall convey and deliver the requested amount to Robert Lee Spanos, free of trust. Robert Lee Spanos's right of withdrawal is a privilege that may be exercised only by Robert Lee Spanos, and is not subject to the claims of any creditor or to legal process and may not be voluntarily or involuntarily alienated or encumbered. This provision does not limit the exercise of any power of appointment Robert Lee Spanos may have.

### (d)    Distribution if Robert Lee Spanos Is Deceased or upon Death

Upon Robert Lee Spanos's death, or if Robert Lee Spanos dies before the establishment of his trust, my Trustee shall distribute Robert Lee Spanos's share *per stirpes* in trusts to the descendants of Robert Lee Spanos. My

EVANS & DAVIS, PLLC, 8117 PRESTON ROAD, SUITE 300, DALLAS, TEXAS 75225 | (214) 368-2335

Trustee shall administer the trusts under the same terms as Robert Lee Spanos's trust. If Robert Lee Spanos has no descendants, my Trustee shall distribute Robert Lee Spanos's share *pro rata* to the other beneficiaries named in this Article. If no other named beneficiaries exist, my Trustee shall distribute Robert Lee Spanos's share under the terms of Article Nine.

## Section 8.08     Distribution of the Share for Kathryn Nicole Laurie

My Trustee shall administer the share set aside for Kathryn Nicole Laurie in trust as provided in this Section.

### (a)     Distributions of Income and Principal

My Independent Trustee may distribute to Kathryn Nicole Laurie as much of the income and principal of her trust as my Independent Trustee may determine advisable for any purpose. If no Independent Trustee is then serving, my Trustee shall distribute to Kathryn Nicole Laurie as much of the income and principal of her trust as my Trustee determines necessary or advisable for her health, education, maintenance or support.

My Trustee shall add any undistributed net income to principal.

### (b)     Guidelines for Discretionary Distributions

In making discretionary distributions to Kathryn Nicole Laurie, I desire that Kathryn Nicole Laurie develops a strong work ethic, is a productive and contributing member of society, and provides for those who are dependent on her for care and support. Accordingly, my Trustee shall always consider the other known resources available to Kathryn Nicole Laurie before making discretionary distributions. I desire that preservation of principal be a priority for purposes of this trust, and that Kathryn Nicole Laurie show genuine need before my Trustee makes any discretionary distribution.

### (c)     Right to Withdraw Principal

Kathryn Nicole Laurie may withdraw any portion or all of the accumulated trust income and principal from her trust.

Kathryn Nicole Laurie may exercise this right by delivering written notice to my Trustee, setting forth the desired withdrawal amount. Upon receiving a notice, my Trustee shall convey and deliver the requested amount to Kathryn Nicole Laurie, free of trust. Kathryn Nicole Laurie's right of withdrawal is a privilege that may be exercised only by Kathryn Nicole Laurie, and is not subject to the claims of any creditor or to legal process and may not be voluntarily or involuntarily alienated or encumbered. This provision does not limit the exercise of any power of appointment Kathryn Nicole Laurie may have.

EVANS & DAVIS, PLLC, 8117 PRESTON ROAD, SUITE 300, DALLAS, TEXAS 75225 | (214) 368-2335

### (d) Distribution if Kathryn Nicole Laurie Is Deceased or upon Death

Upon Kathryn Nicole Laurie's death, or if Kathryn Nicole Laurie dies before the establishment of her trust, my Trustee shall distribute Kathryn Nicole Laurie's share *per stirpes* in trusts to the descendants of Kathryn Nicole Laurie. My Trustee shall administer the trusts under the same terms as Kathryn Nicole Laurie's trust. If Kathryn Nicole Laurie has no descendants, my Trustee shall distribute Kathryn Nicole Laurie's share *pro rata* to the other beneficiaries named in this Article. If no other named beneficiaries exist, my Trustee shall distribute Kathryn Nicole Laurie's share under the terms of Article Nine.

## Section 8.09　Distribution of the Share for Christopher Blake Spanos

My Trustee shall administer the share set aside for Christopher Blake Spanos in trust as provided in this Section.

### (a) Distributions of Income and Principal

My Independent Trustee may distribute to Christopher Blake Spanos as much of the income and principal of his trust as my Independent Trustee may determine advisable for any purpose. If no Independent Trustee is then serving, my Trustee shall distribute to Christopher Blake Spanos as much of the income and principal of his trust as my Trustee determines necessary or advisable for his health, education, maintenance or support.

My Trustee shall add any undistributed net income to principal.

### (b) Guidelines for Discretionary Distributions

In making discretionary distributions to Christopher Blake Spanos, I desire that Christopher Blake Spanos develops a strong work ethic, is a productive and contributing member of society, and provides for those who are dependent on him for care and support. Accordingly, my Trustee shall always consider the other known resources available to Christopher Blake Spanos before making discretionary distributions. I desire that preservation of principal be a priority for purposes of this trust, and that Christopher Blake Spanos show genuine need before my Trustee makes any discretionary distribution.

### (c) Right to Withdraw Principal

Christopher Blake Spanos may withdraw any portion or all of the accumulated trust income and principal from his trust.

Christopher Blake Spanos may exercise this right by delivering written notice to my Trustee, setting forth the desired withdrawal amount. Upon receiving a notice, my Trustee shall convey and deliver the requested amount to Christopher Blake Spanos, free of trust. Christopher Blake Spanos's right of withdrawal is a privilege that may be exercised only by

EVANS & DAVIS, PLLC, 8117 PRESTON ROAD, SUITE 300, DALLAS, TEXAS 75225 | (214) 368-2335

Christopher Blake Spanos, and is not subject to the claims of any creditor or to legal process and may not be voluntarily or involuntarily alienated or encumbered. This provision does not limit the exercise of any power of appointment Christopher Blake Spanos may have.

### (d) Distribution if Christopher Blake Spanos Is Deceased or upon Death

Upon Christopher Blake Spanos's death, or if Christopher Blake Spanos dies before the establishment of his trust, my Trustee shall distribute Christopher Blake Spanos's share *per stirpes* in trusts to the descendants of Christopher Blake Spanos. My Trustee shall administer the trusts under the same terms as Christopher Blake Spanos's trust. If Christopher Blake Spanos has no descendants, my Trustee shall distribute Christopher Blake Spanos's share *pro rata* to the other beneficiaries named in this Article. If no other named beneficiaries exist, my Trustee shall distribute Christopher Blake Spanos's share under the terms of Article Nine.

## Section 8.10 Provisions Regarding Incapacitated Beneficiaries and Special Needs

Any distributions to beneficiaries who are incapacitated or disabled due to addictive situations or criminal behavior as defined in my trust and to any beneficiaries who may be beneficiaries of a Special Needs Trust as defined in my trust shall only be made as provided for in the provisions covering incapacitated beneficiaries and special needs trust beneficiaries respectively.

EVANS & DAVIS, PLLC, 8117 PRESTON ROAD, SUITE 300, DALLAS, TEXAS 75225 | (214) 368-2335

# Article Nine
# Remote Contingent Distribution

If at any time no person or entity is qualified to receive final distribution of any part of my trust estate, this portion of my trust estate must be distributed to those persons who would inherit it had I then died intestate owning the property, as determined and in the proportions provided by the laws of Texas then in effect.

# Article Ten
## Distributions to Underage and Incapacitated Beneficiaries

### Section 10.01 Supplemental Needs Trust

If under any provision of this trust my Trustee is directed to distribute to or for the benefit of any beneficiary when that person is receiving or applying for needs-based government benefits, my Trustee shall retain and administer the trust property as follows:

#### (a) Not a Conduit Trust

The distributions from Retirement Plans (*conduit trust provisions*) set forth in Section 11.01 do not apply to the provisions of Section 10.01.

#### (b) Distributions for Supplemental Needs

In its sole, absolute, and unreviewable discretion, my Trustee may distribute discretionary amounts of net income and principal for supplemental needs of the beneficiary not otherwise provided by governmental financial assistance and benefits, or by the providers of services.

*Supplemental needs* refers to the basic requirements for maintaining the good health, safety, and welfare when, in the discretion of my Trustee, these basic requirements are not being provided by any public agency, office, or department of any state or of the United States.

*Supplemental needs* will also include medical and dental expenses; annual independent checkups; clothing and equipment; programs of training, education, treatment, and rehabilitation; private residential care; transportation, including vehicle purchases; maintenance; insurance; and essential dietary needs. *Supplemental needs* may include spending money; additional food; clothing; electronic equipment such as radio, recording and playback, television and computer equipment; camping; vacations; athletic contests; movies; trips; and money to purchase appropriate gifts for relatives and friends.

My Trustee will have no obligation to expend trust assets for these needs. But if my Trustee, in its sole, absolute and unreviewable discretion, decides to expend trust assets, under no circumstances should any amounts be paid to or reimbursed to the federal government, any state, or any governmental agency for any purpose, including for the care, support, and maintenance of the beneficiary.

#### (c) Objective to Promote Independence of the Beneficiary

While actions are in my Trustee's sole, absolute, and unreviewable discretion, all parties to this trust should be mindful that my wish is that the beneficiary live as independently, productively, and happily as possible.

Dorothy Spanos Living Trust
10-1

## (d) Trust Assets Not to be Considered Available Resource to the Beneficiary

The purpose of the provisions of this Section 10.01 is to supplement any benefits received, or for which the beneficiary may be eligible, from various governmental assistance programs, and not to supplant any benefits of this kind. All actions of my Trustee shall be directed toward carrying out this intent, and my Trustee's discretion granted under this instrument to carry out this intent is sole, absolute, and unreviewable.

For purposes of determining the beneficiary's eligibility for any of these benefits, no part of the trust estate's principal or undistributed income will be considered available to the beneficiary for public benefit purposes. The beneficiary must not be considered to have access to the trust's principal or income, or to have ownership, right, authority, or power to convert any asset into cash for his or her own use.

My Trustee shall hold, administer, and distribute all property allocated to this trust for the exclusive benefit of the beneficiary during his or her lifetime. All distributions from this trust share are in the sole, absolute, and unreviewable discretion of my Trustee, and the beneficiary is legally restricted from demanding trust assets for his or her support and maintenance.

In the event my Trustee is requested to release principal or income of the trust to or on behalf of the beneficiary to pay for equipment, medication, or services that any government agency is authorized to provide, or to petition a court or any other administrative agency for the release of trust principal or income for this purpose, my Trustee is authorized to deny this request and to take whatever administrative or judicial steps are necessary to continue the beneficiary's eligibility for benefits. This includes obtaining legal advice about the beneficiary's specific entitlement to public benefits and obtaining instructions from a court of competent jurisdiction ruling that neither the trust corpus nor the trust income is available to the beneficiary for eligibility purposes. Any expenses incurred by my Trustee in this regard, including reasonable attorney fees, will be a proper charge to the trust estate.

## (e) Distribution Guidelines

My Trustee shall be responsible for determining what discretionary distributions will be made from this trust. My Trustee may distribute discretionary amounts of income and principal to or for the benefit of the beneficiary for those supplemental needs not otherwise provided by governmental financial assistance and benefits, or by the providers of services. Any undistributed income will be added to principal. In making distributions, my Trustee must:

EVANS & DAVIS, PLLC, 8117 PRESTON ROAD, SUITE 300, DALLAS, TEXAS 75225 | (214) 368-2335

consider any other known income or resources of the beneficiary that are reasonably available;

consider all entitlement benefits from any government agency, including Social Security disability payments, Medicare, Medicaid (or any state Medicaid program equivalent), Supplemental Security Income (SSI), In-Home Support Service (IHSS), and any other supplemental purpose benefits for which the beneficiary is eligible;

consider resource and income limitations of any assistance program;

make expenditures so that the beneficiary's standard of living will be comfortable and enjoyable;

not be obligated or compelled to make specific payments;

not pay or reimburse any amounts to any governmental agency or department, unless proper demand is made by this governmental agency or reimbursement is required by the state; and

not be liable for any loss of benefits.

## (f)    No Seeking of Order to Distribute

For purposes of determining the beneficiary's state Medicaid program equivalent eligibility, no part of the trust estate's principal or undistributed income may be considered available to the beneficiary. My Trustee shall deny any request by the beneficiary to:

release trust principal or income to or on behalf of the beneficiary to pay for equipment, medication, or services that the state Medicaid program equivalent would provide if the trust did not exist; or

petition a court or any other administrative agency for the release of trust principal or income for this purpose.

In its sole, absolute, and unreviewable discretion, my Trustee may take necessary administrative or legal steps to protect the beneficiary's state Medicaid program equivalent eligibility. This includes obtaining a ruling from a court of competent jurisdiction that the trust principal is not available to the beneficiary for purposes of determining state Medicaid program equivalent eligibility. Expenses for this action, including reasonable attorney fees, will be a proper charge to the trust estate.

## (g)    Indemnification of Trustee When Acting in Good Faith

My Trustee will be indemnified from the trust property for any loss or reduction of public benefits sustained by the beneficiary as a result of my

EVANS & DAVIS, PLLC, 8117 PRESTON ROAD, SUITE 300, DALLAS, TEXAS 75225 | (214) 368-2335

Trustee exercising the authority granted to my Trustee under this Section in good faith.

### (h) Termination and Distribution of the Supplemental Needs Trust

If my Trustee, in its sole, absolute, and unreviewable discretion, determines that the beneficiary is no longer dependent on others and is able to independently support himself or herself, my Trustee shall distribute or retain the remaining property according to the other provisions of this trust as though the provisions of this Section 10.01 had not been effective.

If the other provisions of this trust do not provide for the remaining property's distribution or retention, then my Trustee shall distribute the remaining property to the beneficiary outright and free of trust.

*Independently support* is satisfied when the beneficiary has been gainfully employed for 33 months of the 36-month period immediately preceding the decision to terminate the trust share.

The terms *gainful employment* and *gainfully employed* mean the full-time employment that produces sufficient net income to enable the beneficiary to contribute not less than 100% of the funds (exclusive of other revenue sources) that are necessary to provide for the beneficiary's independent care, support, maintenance, and education. In its sole, absolute, and unreviewable discretion, my Trustee shall determine whether or not the beneficiary has satisfied the condition of gainful employment.

### (i) Distribution upon the Death of the Beneficiary

Upon the beneficiary's death, my Trustee shall distribute or retain the remaining property according to the other provisions of this trust as though the provisions of this Section 10.01 had not been effective. If the other provisions of this trust provide for the beneficiary's share to be held in trust, then those provisions will be interpreted as though the beneficiary died after the establishment of that trust.

If the other provisions of this trust do not provide for the distribution or retention of the remaining property, then the beneficiary will have the testamentary limited power to appoint all or any portion of the principal and undistributed income remaining in the beneficiary's trust at his or her death among one or more persons or entities. But the beneficiary may not exercise this limited power of appointment to appoint to himself or herself, his or her estate, his or her creditors or the creditors of his or her estate.

I intend to create a limited power of appointment and not a general power of appointment as defined in Internal Revenue Code Section 2041.

If any part of the beneficiary's trust is not effectively appointed, my Trustee shall distribute the remaining unappointed balance *per stirpes* to the beneficiary's descendants. If the beneficiary has no then-living

EVANS & DAVIS, PLLC, 8117 PRESTON ROAD, SUITE 300, DALLAS, TEXAS 75225 | (214) 368-2335

descendants, my Trustee shall distribute the unappointed balance *per stirpes* to the then-living descendants of the beneficiary's nearest lineal ancestor who was a descendant of mine or, if there is no then-living descendant, *per stirpes* to my descendants.

If I have no then-living descendants, my Trustee shall distribute the balance of the trust property as provided in Article Nine.

## Section 10.02   Underage and Incapacitated Beneficiaries

If my Trustee is authorized or directed under any provision of this trust to distribute net income or principal to a person who has not yet reached 21 years of age or who is incapacitated as defined in Section 14.07(g), my Trustee may make the distribution by any one or more of the methods described in Section 10.03. Alternatively, my Trustee may retain the trust property in a separate trust to be administered by my Trustee under Section 10.04.

I request that before making a distribution to a beneficiary, my Trustee consider, to the extent reasonable, the ability the beneficiary has demonstrated in managing prior distributions of trust property.

## Section 10.03   Methods of Distribution

My Trustee may distribute trust property for any beneficiary's benefit, subject to the provisions of Section 10.02 in any one or more of the following methods:

My Trustee may distribute trust property directly to the beneficiary.

My Trustee may distribute trust property to the beneficiary's guardian, conservator, parent, other family member, or any person who has assumed the responsibility of caring for the beneficiary.

My Trustee may distribute trust property to any person or entity, including my Trustee, as custodian for the beneficiary under the Uniform Transfers to Minors Act or similar statute.

My Trustee may distribute trust property to other persons and entities for the beneficiary's use and benefit.

My Trustee may distribute trust property to an agent or attorney in fact authorized to act for the beneficiary under a valid durable power of attorney executed by the beneficiary before becoming incapacitated.

## Section 10.04   Retention in Trust

My Trustee may retain and administer trust property in a separate trust for any beneficiary's benefit, subject to the provisions of Section 10.02 as follows.

### (a)   Distribution of Net Income and Principal

My Independent Trustee may distribute to the beneficiary as much of the net income and principal of any trust created under this Section as my

EVANS & DAVIS, PLLC, 8117 PRESTON ROAD, SUITE 300, DALLAS, TEXAS 75225 | (214) 368-2335

Independent Trustee may determine advisable for any purpose. If there is no then-serving Independent Trustee, my Trustee shall distribute to the beneficiary as much of the net income and principal of the trust created under this Section as my Trustee determines is necessary or advisable for the beneficiary's health, education, maintenance or support. Any undistributed net income will be accumulated and added to principal.

## (b) Right of Withdrawal

When the beneficiary whose trust is created under this Section either reaches 21 years of age or is no longer incapacitated, the beneficiary may withdraw all or any portion of the accumulated net income and principal from the trust.

## (c) Distribution upon the Death of the Beneficiary

Subject to the terms of the next paragraph, the beneficiary whose trust is created under this Section may appoint all or any portion of the principal and undistributed net income remaining in the beneficiary's trust at the beneficiary's death among one or more persons or entities, and the creditors of the beneficiary's estate. The beneficiary has the exclusive right to exercise this general power of appointment.

The beneficiary may not exercise this power of appointment to appoint to the beneficiary, the beneficiary's estate, the beneficiary's creditors, or creditors of the beneficiary's estate from the *limited share* of the beneficiary's trust. For purposes of this power of appointment, the *limited share* of the beneficiary's trust is that portion of the beneficiary's trust that has an inclusion ratio for generation-skipping transfer tax purposes of zero or that without the exercise of the power of appointment, would not constitute a taxable generation-skipping transfer at the beneficiary's death. If the generation-skipping tax does not then apply, the limited share will be the beneficiary's entire trust.

If any part of the beneficiary's trust is not effectively appointed, my Trustee shall distribute the remaining unappointed balance *per stirpes* to the beneficiary's descendants. If the beneficiary has no then-living descendants, my Trustee shall distribute the unappointed balance *per stirpes* to the then-living descendants of the beneficiary's nearest lineal ancestor who was a descendant of mine or, if there is no then-living descendant, *per stirpes* to my descendants.

If I have no then-living descendants, my Trustee shall distribute the balance of the trust property as provided in Article Nine.

## Section 10.05 Special Instructions for Disability Due to Addictive Situations or Criminal Behavior

Prior to making an initial distribution of income or principal authorized under this Article to any beneficiary, my Trustee shall conduct a diligent and reasonable investigation to determine

EVANS & DAVIS, PLLC, 8117 PRESTON ROAD, SUITE 300, DALLAS, TEXAS 75225 | (214) 368-2335

that for the thirty-six (36) months immediately preceding any proposed distribution, the requesting beneficiary has not been incarcerated for any reason, has not been arrested for any felony or drug-related violation, infraction, misdemeanor or felony (whether or not such arrest resulted in conviction or incarceration), and has not been disabled due to a drug, alcohol, gambling, eating, chemical or other dependency disorder. As a condition for subsequent distributions to a beneficiary, my Trustee may, in its sole discretion, conduct additional investigations if my Trustee has reason to believe that the requesting beneficiary has become involved in any of the above situations.

In helping to determine whether or not a beneficiary has been arrested or incarcerated, has a substance abuse or some other dependency disorder, my Trustee may find it helpful to consult with the beneficiary's employer, physician, family members and others who have a personal relationship with the beneficiary. If the beneficiary wishes to receive a trust distribution, he or she must consent to any of these contacts. If the beneficiary refuses to cooperate, then the distribution guidelines shall be deemed to have not been met and the distribution will not be made.

Prior to making any distribution authorized under this Section, or as a condition for further distributions, my Trustee shall require that any beneficiary disabled due to a drug, alcohol, gambling, eating, chemical or other dependency disorder, participate in and successfully complete a rehabilitation program aimed at combating the problem involved.

My Trustee, in its sole and absolute discretion, may determine the nature and extent of the rehabilitative program, including follow up requirements. I direct that my Trustee consult with counselors from local rehabilitative programs or similar institutions, in order to best design an individualized program for the affected beneficiary.

I specifically authorize and direct my Trustee to pay the expenses of rehabilitation for the affected beneficiary from that beneficiary's trust property.

If a beneficiary is disabled under this Section, my Trustee shall withhold distributions (other than those distributions for medical care and reasonable living expenses) to that beneficiary for one year after the beneficiary has successfully completed the requisite rehabilitation program. During that year, my Trustee shall require the beneficiary to submit to random drug testing (using currently accepted methods), up to a maximum of four times during the year, and, in my Trustee's sole discretion, up to four times per year every year subsequent, as a condition for further distributions. All such tests shall be performed by a certified laboratory specializing in these procedures. A positive result may be challenged and shall be confirmed by an alternate testing facility using a different testing method. No distributions shall be made (other than those necessary for medical care and living expenses) if any test registers positive for alcohol or other addictive drugs, chemicals or controlled substances. A refusal or failure to provide a sample for testing shall be deemed a positive test and no distributions shall be made.

## Section 10.06    Application of Article

Any decision made by my Trustee under this Article is final, controlling, and binding upon all beneficiaries subject to the provisions of this Article.

EVANS & DAVIS, PLLC, 8117 PRESTON ROAD, SUITE 300, DALLAS, TEXAS 75225 | (214) 368-2335

The provisions of this Article do not apply to distributions to me.

Except as provided in Section 10.01, the provisions of this Article do not apply to distributions that are required to be made to a beneficiary under the provisions of Section 11.01.

EVANS & DAVIS, PLLC, 8117 PRESTON ROAD, SUITE 300, DALLAS, TEXAS 75225 | (214) 368-2335

# Article Eleven
# Retirement Plans and Life Insurance Policies

The provisions of this Article apply to qualified retirement plans and insurance policies owned by or made payable to my trust.

## Section 11.01  Retirement Plans

Notwithstanding any contrary provision of this trust, the provisions of this Section apply to qualified retirement plans.

### (a)  Rights of My Trustee

Subject to the provisions below pertaining to distributions from qualified retirement plans, my Trustee may exercise the right to determine the manner and timing of qualified retirement plan benefit payments permitted under these plans and consistent with the federal income tax rules regarding required minimum distributions under Internal Revenue Code Section 401(a)(9).

My Trustee may make a qualified disclaimer of any qualified retirement benefits or non-qualified annuity benefits payable to my trust.

My Trustee may not be held liable to any beneficiary for any decision regarding the death benefit election or the disclaimer of any qualified retirement benefits payable to my trust.

My Trustee may not change or designate beneficiaries under any retirement plan. Any power extended to my Trustee under the terms of a retirement plan that gives or appears to give my Trustee the power to change the identity or rights of any beneficiaries under the plan is void *ab initio*.

### (b)  Distributions from Qualified Retirement Plans to Trusts

Unless specifically stated otherwise beginning with the year of my death, if any trust created under this trust, including any administrative trust created under Article Six, becomes the beneficiary of death benefits under any qualified retirement plan, my Trustee shall annually withdraw from the trust's share of the plan the minimum distribution required under Internal Revenue Code Section 401(a)(9). My Trustee may withdraw additional amounts from the trust's share of the plan as my Trustee deems advisable, but only if the dispositive terms of the trust authorize my Trustee to immediately distribute the withdrawn amount as provided below. My Trustee shall immediately distribute all amounts withdrawn to:

> to my descendants, *per stirpes*, who are beneficiaries of this trust; and

EVANS & DAVIS, PLLC, 8117 PRESTON ROAD, SUITE 300, DALLAS, TEXAS 75225 | (214) 368-2335

if no descendant of mine is a trust beneficiary, then to the trust's Income Beneficiaries in equal shares.

Amounts required to be withdrawn and distributed under this Section will reduce mandatory distribution amounts under other provisions of this trust that otherwise require distribution of all the trust's income.

This Section's purpose is to ensure that the life expectancy of the trust beneficiaries may be used to calculate the minimum distributions required by the Internal Revenue Code. This Section is to be interpreted consistent with my intent, despite any direction to the contrary in this trust.

## (c) Minimum Required Distribution

In administering my trust, the minimum required distribution for each qualified retirement plan for any year is the greater of:

the value of the qualified retirement plan determined as of the preceding year end, divided by the applicable distribution period; and

the amount that my Trustee is required to withdraw under the laws then applicable to the trust to avoid penalty.

If I die before my required beginning date for a qualified retirement plan, the applicable distribution period means the beneficiary's life expectancy. If I die on or after my required beginning date for a qualified retirement plan, the applicable distribution period means the beneficiary's life expectancy, or my remaining life expectancy, if longer.

Notwithstanding the foregoing, if I die on or after my required beginning date for a qualified retirement plan, the minimum required distribution for the year of my death means:

the amount that was required to be distributed to me with respect to the qualified retirement plan during the year; minus

amounts actually distributed to me with respect to the qualified retirement plan during the year.

*Life expectancy*, *required beginning date*, and other similar terms used in this Subsection are to be determined under Internal Revenue Code Section 401(a)(9).

## Section 11.02   Life Insurance Policies

The following provisions apply to life insurance policies owned by or made payable to my trust.

EVANS & DAVIS, PLLC, 8117 PRESTON ROAD, SUITE 300, DALLAS, TEXAS 75225 | (214) 368-2335

### (a) Provisions during My Life

During my life, I reserve all of the rights, powers, privileges, and options, with respect to any insurance policy, annuity, or any other third-party beneficiary contract owned by or made payable to my trust. This includes the rights to designate and change beneficiaries, to borrow money, to surrender the policy, to receive any payments as owner, and to make any available elections.

My Trustee will have no duty to exercise or not exercise any rights, powers, privileges, or options with respect to any insurance policy, annuity contract, or other third-party beneficiary contract. My Trustee will have no obligation to pay premiums or other contractual amounts that may be payable under any policy.

### (b) Provisions after My Death

After my death, my Trustee may make all appropriate elections with respect to these policies and may collect all sums made payable to my trust or my Trustee under all these policies or contracts.

My Trustee may exercise any settlement options or other options or rights that may be available under the terms of any policy or contract. My Trustee may not be held liable to any beneficiary on account of any election my Trustee made with respect to any policy or contract.

## Section 11.03  Limitation on Liability of Payor

Persons or entities dealing in good faith with my Trustee are not required to see to the proper application of proceeds delivered to my Trustee, or to inquire into any provision of this trust.

A receipt signed by my Trustee for any proceeds or benefits paid will be a sufficient discharge to the person or entity making the payment.

## Section 11.04  Collection Efforts

My Trustee shall make reasonable efforts to collect all life insurance policy proceeds and qualified retirement benefits payable to my trust.

My Trustee may commence legal or administrative proceedings to collect any life insurance policy proceeds or qualified retirement benefits to which the trust is entitled. My Trustee need not commence any proceedings until my Trustee is satisfactorily indemnified for any expenses and liabilities my Trustee may incur in connection with the proceeding.

My Trustee may settle any claims with respect to the collection of any life insurance proceeds or qualified retirement benefits to which my trust may be entitled. A settlement made by my Trustee will be binding on all beneficiaries.

Evans & Davis, PLLC, 8117 Preston Road, Suite 300, Dallas, Texas 75225 | (214) 368-2335

## Section 11.05   No Obligation to Purchase or Maintain Benefits

Nothing in this trust is to be interpreted as imposing any obligation on me or on my Trustee to purchase, invest, or maintain any qualified retirement plan or life insurance policy.

EVANS & DAVIS, PLLC, 8117 PRESTON ROAD, SUITE 300, DALLAS, TEXAS 75225 | (214) 368-2335

# Article Twelve
# Trust Administration

## Section 12.01    Distributions to Beneficiaries

Whenever this trust authorizes or directs my Trustee to make a net income or principal distribution to a beneficiary, my Trustee may apply any property that otherwise could be distributed directly to the beneficiary for his or her benefit. My Trustee is not required to inquire into the beneficiary's ultimate disposition of the distributed property unless specifically directed otherwise by this trust.

My Trustee may make cash distributions, in-kind distributions, or distributions partly in each, in proportions and at values determined by my Trustee. My Trustee may allocate undivided interests in specific assets to a beneficiary or trust in any proportion or manner that my Trustee determines, even though the property allocated to one beneficiary may be different from that allocated to another beneficiary.

My Trustee may make these determinations without regard to the income tax attributes of the property and without the consent of any beneficiary.

## Section 12.02    Trust Decanting; Power to Appoint in Further Trust

My Trust Advisor may appoint the property subject to my Trustee's power of distribution in trust for the benefit of one or more beneficiaries of any trust created under this instrument under the terms established by the Trust Advisor. Any trust established by the Trust Advisor and funded by the exercise of the power granted under this Section must meet these requirements:

> the trust must not reduce any fixed income, annuity, or unitrust right provided by this trust instrument to any beneficiary;

> the trust must provide for one or more of the beneficiaries of a trust created under this instrument; and

> the interests of remainder beneficiaries of the trust created under this instrument must not be accelerated under the terms of the new trust.

I request the Trust Advisor consider including a provision in the new trust that permits my Trustee to distribute as much of the trust principal to the beneficiary of the trust as an Independent Trustee advises so that the beneficiary's estate can utilize the basis increase allowed under Internal Revenue Code Section 1014 after the beneficiary's death without causing an increase in the federal estate tax.

A Trust Advisor may not use the powers granted under this Section to extend the term of the new trust beyond the period of perpetuities provided under the governing law of this instrument.

Any trust created under this provision must not contain any provision that, if applicable, would cause the trust to fail to qualify for the marital deduction or charitable deduction,

EVANS & DAVIS, PLLC, 8117 PRESTON ROAD, SUITE 300, DALLAS, TEXAS 75225 | (214) 368-2335

fail to qualify any gift to the trust for any gift, estate, or generation-skipping transfer annual exclusion, or disqualify the trust as a qualified subchapter S corporation shareholder.

If any beneficiary holds a presently exercisable right to withdraw property from this trust, that right may not be defeated by the exercise of the Trust Advisor's powers granted under this Section.

## Section 12.03   Beneficiary's Status

Until my Trustee receives notice of the incapacity, birth, marriage, death, or other event upon which a beneficiary's right to receive payments may depend, my Trustee will not be held liable for acting or not acting with respect to the event, or for disbursements made in good faith to persons whose interest may have been affected by the event. Unless otherwise provided in this trust, a parent or Legal Representative may act on behalf of a minor or incapacitated beneficiary.

My Trustee may rely on any information provided by a beneficiary with respect to the beneficiary's assets and income. My Trustee will have no independent duty to investigate the status of any beneficiary and will not incur any liability for not doing so.

## Section 12.04   Mandatory Payments of a Pecuniary Amount

If any person holds the right to receive a pecuniary amount from my trust upon my death, my Trustee must either:

> satisfy the entire pecuniary amount or irrevocably set aside property to satisfy the entire pecuniary amount within 15 months of my death; or

> pay appropriate interest, as defined in Treasury Regulations Section 26.2642-2(b)(4)(ii)(B), to the person.

If my Trustee satisfies the pecuniary amount with an in-kind distribution, my Trustee will allocate assets to satisfy the pecuniary amount in a manner that fairly reflects net appreciation or depreciation in the value of the available assets, as measured from the valuation date to the payment date.

## Section 12.05   No Court Proceedings

My Trustee shall administer this trust with efficiency, with attention to the provisions of this trust, and with freedom from judicial intervention. If my Trustee or another interested party institutes a legal proceeding, the court will acquire jurisdiction only to the extent necessary for that proceeding. Any proceeding to seek instructions or a court determination may only be initiated in the court with original jurisdiction over matters relating to the construction and administration of trusts. Seeking instructions or a court determination is not to be construed as subjecting this trust to the court's continuing jurisdiction.

## Section 12.06   No Bond

My Trustee is not required to furnish any bond for the faithful performance of the Trustee's duties unless required by a court of competent jurisdiction, and only if the court finds that

EVANS & DAVIS, PLLC, 8117 PRESTON ROAD, SUITE 300, DALLAS, TEXAS 75225 | (214) 368-2335

a bond is needed to protect the beneficiaries' interests. No surety will be required on any bond required by any law or court rule, unless the court specifies its necessity.

## Section 12.07   Exoneration of My Trustee

No successor Trustee is obligated to examine the accounts, records, or actions of any previous Trustee or the Executor of my estate. No successor Trustee may be held responsible for any act, omission, or forbearance by any previous Trustee or of the Executor of my estate. Absent clear and convincing evidence of willful bad faith on the part of my Trustee, my Trustee is exonerated from any liability for the acts, omissions, or forbearances of any Trust Advisor and from any liability for my Trustee's own acts, omissions, or forbearances directed by the Trust Advisor.

Any Trustee may obtain written agreements from the beneficiaries or their Legal Representatives releasing and indemnifying the Trustee from any liability that may have arisen from the Trustee's acts, omissions, or forbearances. If acquired from all the trust's living beneficiaries or their Legal Representatives, any agreement is conclusive and binding on all parties, born or unborn, who may have or who may later acquire an interest in the trust.

My Trustee may require a refunding agreement before making any distribution or allocation of trust income or principal, and may withhold distribution or allocation pending determination or release of a tax or other lien. This refunding agreement provision will not apply to any distribution that qualifies for the federal estate tax charitable deduction.

## Section 12.08   Limitations on Trustee Liability

I direct that any individual or corporate fiduciary that serves as my Trustee will not incur any liability for any action, omission, or forbearance made in good faith reliance on information, consent, or directions received from a Trust Advisor, except for cases of willful misconduct or gross negligence on the Trustee's part.

Any individual or corporate fiduciary currently serving as a Trustee may expend any portion of the trust assets to defend any claim brought against the Trustee as a result of his or her good faith reliance on any information, consent, or directions received from a Trust Advisor, even if my Trustee's defense costs would exhaust the trust's value. Any individual or corporate fiduciary that formerly served as a Trustee is entitled to reimbursement from the trust estate for any expenses, including reimbursement for attorney's fees and litigation costs reasonably incurred as a result of the Trustee's good faith reliance on information, consent, or directions received from a Trust Advisor.

Except for cases of willful misconduct or gross negligence on the Trustee's part, any action, omission, or forbearance made in good faith reliance on information, consent, or directions received from a Trust Advisor will be considered to have been made in good faith for this Section's purposes.

## Section 12.09    Trustee Compensation

An individual serving as Trustee is entitled to fair and reasonable compensation for the services provided as a fiduciary. A corporate fiduciary serving as Trustee will be compensated by agreement between an individual serving as Trustee and the corporate fiduciary. In the absence of an individual Trustee or an agreement, a corporate fiduciary will be compensated in accordance with the corporate fiduciary's current published fee schedule.

A Trustee may charge additional fees for services provided that are beyond the ordinary scope of duties, such as fees for legal services, tax return preparation, and corporate finance or investment banking services.

In addition to receiving compensation, a Trustee may be reimbursed for reasonable costs and expenses incurred in carrying out the Trustee's duties under this trust.

## Section 12.10    Employment of Professionals

My Trustee may appoint, employ, and remove investment advisors, accountants, auditors, depositories, custodians, brokers, consultants, attorneys, advisors, agents, and employees to advise or assist in the performance of my Trustee's duties. My Trustee may act on the recommendations of the persons or entities employed, with or without independent investigation.

My Trustee may reasonably compensate an individual or entity employed to assist or advise my Trustee, regardless of any other relationship existing between the individual or entity and my Trustee.

My Trustee may compensate providers of contracted services at the usual rate out of the trust's income or principal, as my Trustee deems advisable. My Trustee may compensate an individual or entity employed to assist or advise my Trustee without diminishing the compensation the Trustee is entitled to under this trust. A Trustee who is a partner, stockholder, officer, director, or corporate affiliate in any entity employed to assist or advise my Trustee may still receive the Trustee's share of the compensation paid to the entity.

## Section 12.11    Exercise of Testamentary Power of Appointment

A testamentary power of appointment granted under this trust may be exercised by a will, living trust or other written instrument specifically referring to the power of appointment. The holder of a testamentary power of appointment may exercise the power to appoint property among the permissible appointees in equal or unequal proportions, and may designate the terms and conditions, whether outright or in trust. The holder of a testamentary power of appointment may grant further powers of appointment to any person to whom principal may be appointed, including a presently exercisable limited or general power of appointment.

My Trustee may conclusively presume that any power of appointment granted to any beneficiary of a trust created under this trust has not been exercised by the beneficiary if

EVANS & DAVIS, PLLC, 8117 PRESTON ROAD, SUITE 300, DALLAS, TEXAS 75225 | (214) 368-2335

my Trustee has no knowledge of the existence of a will, living trust or other written instrument exercising the power within three months after the beneficiary's death.

## Section 12.12   Determination of Principal and Income

The rights among beneficiaries in matters concerning principal and income are to be determined in accordance with the Uniform Principal and Income Act, Texas Property Code Chapter 116 . If the Uniform Principal and Income Act, Texas Property Code Chapter 116 does not contain a provision concerning a particular item, my Trustee shall determine what will be credited, charged, and apportioned between principal and income in a fair, equitable, and practical manner with respect to that item.

## Section 12.13   Trust Accounting

Except to the extent required by law, my Trustee is not required to file accountings in any jurisdiction. After my death, my Trustee must provide an annual accounting to the Income Beneficiaries of any trust created under this trust unless waived by the Income Beneficiaries.

The annual accounting must include the receipts, expenditures, and distributions of income and principal and the assets on hand for the accounting period. A copy of the federal fiduciary tax return filed for a trust during the accounting will satisfy this reporting requirement.

In the absence of fraud or obvious error, assent by all Income Beneficiaries to a Trustee's accounting will make the matters disclosed in the accounting binding and conclusive upon all persons, including those living on this date and those born in the future who have or will have a vested or contingent interest in the trust property. In the case of an Income Beneficiary who is a minor or incapacitated, the beneficiary's natural guardian or Legal Representative may give the assent required under this Section.

A beneficiary may object to an accounting provided by my Trustee only by giving written notice to my Trustee within 60 days after my Trustee provides the accounting. Any beneficiary who does not submit a timely written objection is considered to assent to the accounting.

My Trustee must make the trust's financial records and documents available to beneficiaries at reasonable times and upon reasonable notice for inspection. My Trustee is not required to furnish any information regarding my trust to anyone other than a beneficiary. My Trustee may exclude any information my Trustee determines is not directly applicable to the beneficiary receiving the information. This in no way limits the right of the Trust Advisor to compel an accounting.

In all events, a beneficiary's Legal Representative may receive any notices and take any action on behalf of the beneficiary as to an accounting. If any beneficiary's Legal Representative fails to object to any accounting in writing within 60 days after my Trustee provides the accounting, the beneficiary's Legal Representative will be considered to assent to the accounting.

Evans & Davis, PLLC, 8117 Preston Road, Suite 300, Dallas, Texas 75225 | (214) 368-2335

## Section 12.14    Action of Trustees and Delegation of Trustee Authority

When I am not serving as a Trustee, if two Trustees are eligible to act with respect to a given matter, they must agree unanimously for action to be taken unless the express terms of the Trustees' appointment provide otherwise. If more than two Trustees are eligible to act with respect to a given matter, the Trustees must agree by majority for action to be taken.

A nonconcurring Trustee may dissent or abstain from a decision of the majority. A Trustee will be absolved from personal liability by registering the dissent or abstention in the trust records. After doing so, the dissenting Trustee must then act with my other Trustees in any way necessary or appropriate to effect the majority decision.

Notwithstanding the limitations set forth in this Section, unless a Trustee elects otherwise in a written instrument delivered to the other Trustees, whenever I am not serving as a Trustee, if two or more Trustees are then serving, any one Trustee may sign any checks, agreements, or other documents on behalf of the trust with the same effect as if all Trustees had signed. Persons dealing with the signing Trustee in good faith may rely upon the signing Trustee's authority to act on behalf of the trust without inquiry as to the other Trustees' agreement.

Subject to the limitations set forth in Section 13.25, any Trustee may, by written instrument, delegate to any other Trustee the right to exercise any power, including a discretionary power, granted to my Trustee in this trust. During the time a delegation under this Section is in effect, the Trustee to whom the delegation is made may exercise the power to the same extent as if the delegating Trustee has personally joined in the exercise of the power. The delegating Trustee may revoke the delegation at any time by giving written notice to the Trustee to whom the power was delegated.

## Section 12.15    Trustee May Disclaim or Release Any Power

Notwithstanding any provision of this trust to the contrary, any Trustee may relinquish any Trustee power in whole or in part, irrevocably or for any specified period of time, by a written instrument. The Trustee may relinquish a power personally or may relinquish the power for all subsequent Trustees.

## Section 12.16    Trustee May Execute a Power of Attorney

My Trustee may appoint any individual or entity to serve as my Trustee's agent under a power of attorney to transact any business on behalf of my trust or any other trust created under this trust.

## Section 12.17    Additions to Separate Trusts

If upon my death, or upon the termination of any trust created under this trust, a final distribution is to be made to a person who is the Primary Beneficiary of another trust established under this trust, and there is no specific indication whether the distribution is to be made in trust or outright, my Trustee shall make the distribution to the second trust instead of distributing the property to the beneficiary outright. For purposes of

EVANS & DAVIS, PLLC, 8117 PRESTON ROAD, SUITE 300, DALLAS, TEXAS 75225 | (214) 368-2335

administration, the distribution will be treated as though it had been an original part of the second trust.

## Section 12.18   Authority to Merge or Sever Trusts

My Trustee may merge a trust created under this trust with any other trust, if the two trusts contain substantially the same terms for the same beneficiaries and have at least one Trustee in common. My Trustee may administer the merged trust under the provisions of the instrument governing the other trust, and this trust will no longer exist if it merges into another trust. Accordingly, in the event another trust is merged into this trust or a trust created under the provisions of this trust document, my Trustee may shorten the period during which this trust subsists to comply with Section 14.01, if necessary, to effect the merger. But if a merger does not appear feasible, my Trustee may consolidate the trusts' assets for purposes of investment and trust administration while retaining separate records and accounts for each respective trust.

My Trustee may sever any trust on a fractional basis into two or more separate and identical trusts, or may segregate a specific amount or asset from the trust property by allocating it to a separate account or trust. The separate trusts may be funded on a *non pro rata* basis, but the funding must be based on the assets' total fair market value on the funding date. After the segregation, income earned on a segregated amount or specific asset passes with the amount or asset segregated. My Trustee shall hold and administer each severed trust upon terms and conditions identical to those of the original trust.

Subject to the trust's terms, my Trustee may consider differences in federal tax attributes and other pertinent factors in administering the trust property of any separate account or trust, in making applicable tax elections and in making distributions. A separate trust created by severance must be treated as a separate trust for all purposes from the effective severance date; however, the effective severance date may be retroactive to a date before my Trustee exercises the power.

## Section 12.19   Authority to Terminate Trusts

My Trust Advisor may terminate any trust created under this trust at any time, if my Trust Advisor determines that administering a trust created under this trust is no longer economical. Once distributed, my Trustee will have no further responsibility with respect to that trust property. My Trustee will distribute the trust property from a terminated trust in this order:

> to me, if I am then living;
>
> to the beneficiaries then entitled to mandatory distributions of the trust's net income, in the same proportions; and then
>
> if none of the beneficiaries are entitled to mandatory distributions of net income, to the beneficiaries then eligible to receive discretionary distributions of the trust's net income, in the amounts and shares my Trust Advisor determines.

But if a Trust Advisor is not then serving, only an Independent Trustee will possess the power to terminate any trust created under this trust, and the Independent Trustee can act only as authorized and with the specific powers and discretions permitted under this Section.

## Section 12.20   Discretionary Distribution to Fully Utilize Basis Increase upon Death of Beneficiary

To the extent I have permitted my Trustee to make distributions of principal to a trust beneficiary, my Independent Trustee may distribute as much of the trust's principal to the beneficiary as my Independent Trustee determines advisable so that, upon the beneficiary's death, his or her estate may utilize the basis increase allowed under Internal Revenue Code Section 1014 without causing an increase in the federal estate tax.

Before making a distribution of property under this Section, I request that my Trustee determine whether or not a good reason exists to retain the property in trust, such as whether my Trustee or the beneficiary might sell the property in the near future, as well as protection of the beneficiary from creditors, protection of the beneficiary from failed marriages, and protection of the asset for future generations. My Trustee has no liability to any beneficiary for any action or inaction by my Trustee under this Section, if made in good faith.

Alternatively, I recommend my Independent Trustee consider appointing the assets to a trust established for the beneficiary under the provisions of Section 12.02.

## Section 12.21   Merger of Corporate Fiduciary

If any corporate fiduciary acting as the Trustee under this trust is merged with or transfers substantially all of its trust assets to another corporation, or if a corporate fiduciary changes its name, the successor will automatically succeed to the trusteeship as if that successor had been originally named a Trustee. No document of acceptance of trusteeship will be required.

## Section 12.22   Funeral and Other Expenses of Beneficiary

Upon the death of an Income Beneficiary, my Trustee may pay the funeral expenses, burial or cremation expenses, enforceable debts, or other expenses incurred due to the death of the beneficiary from trust property. This Section only applies to the extent the Income Beneficiary has not exercised any testamentary power of appointment granted to the beneficiary under this trust.

My Trustee may rely upon any request by the deceased beneficiary's Legal Representative or family members for payment without verifying the validity or the amounts and without being required to see to the application of the payment. My Trustee may make decisions under this Section without regard to any limitation on payment of expenses imposed by statute or court rule and without obtaining the approval of any court having jurisdiction over the administration of the deceased beneficiary's estate.

EVANS & DAVIS, PLLC, 8117 PRESTON ROAD, SUITE 300, DALLAS, TEXAS 75225 | (214) 368-2335

## Section 12.23  Generation-Skipping Transfer Tax Provisions

If any trust created under this trust would be partially exempt from generation-skipping transfer tax after the intended allocation of Available GST Exemption to the trust, then my Trustee may divide the partially exempt trust so that the allocation of Available GST Exemption can be made to a trust that will be entirely exempt from generation-skipping transfer tax. If my Trustee chooses to divide a trust that would otherwise be a partially exempt trust, my Trustee must create and administer the separate trusts as provided in this Section.

### (a)  Division into Exempt and Non-Exempt Trusts

My Trustee shall divide the property of the otherwise partially-exempt trust into two separate trusts, the *exempt trust* and the *nonexempt trust*. The exempt trust will consist of the largest fractional share of the otherwise partially exempt trust's total assets that will permit the exempt trust to be entirely exempt from generation-skipping transfer tax. The *nonexempt trust* will consist of the balance of the otherwise partially exempt trust's total assets.

To compute the fractional share, my Trustee will use asset values as finally determined for transfer tax purposes. My Trustee must then apply the fraction to the assets at their actual value on the effective date or dates of distribution so that the actual value of the fractional share resulting from the application of the fraction will include fluctuations in the trust property's value. I request that my Trustee allocate the value of any Roth IRAs payable to my trust to the exempt trust to the extent possible.

### (b)  Administration of the Trusts

My Trustee shall administer the exempt and nonexempt trusts created under this Section as separate and independent trusts, but under the same terms as the original trust. To the extent possible, my Trustee should make distributions to a non-skip person as defined by Internal Revenue Code Section 2613 from the nonexempt trust and distributions to a skip person as defined by Section 2613 from an exempt trust. My Trustee may designate names for the exempt and nonexempt trusts.

If an exempt trust and a nonexempt trust are further divided under the terms of this trust, my Trustee may allocate property from the exempt trust first to the trust from which a generation-skipping transfer is more likely to occur.

### (c)  Expression of My Intent

My intent is to minimize the application of the generation-skipping transfer tax to the trust property, but not to affect the total amount of trust property to which any beneficiary may be entitled under this trust. This trust must be construed and interpreted to give effect to this intent.

EVANS & DAVIS, PLLC, 8117 PRESTON ROAD, SUITE 300, DALLAS, TEXAS 75225 | (214) 368-2335

## (d)    Additions of Property to Exempt and Non-Exempt Trusts

If at any time any property that has an inclusion ratio greater than zero for generation-skipping transfer tax purposes would be added to a trust with property that has an inclusion ratio of zero, then my Trustee will instead hold the property in a separate trust on the same terms and conditions as the original trust.

## (e)    Re-Allocation

If my Trustee's determination of whether a trust in this trust is partially, entirely, or not exempt from GST taxes is later incorrect (for example, if the Congress by law or the Service by regulation or ruling applies the generation-skipping transfer tax retroactively to the trust), my Trustee may re-allocate the assets as of the initial division date, as provided in this Section.

# Article Thirteen
## My Trustee's Powers

### Section 13.01    Introduction to Trustee's Powers

Except as otherwise specifically provided in this trust, my Trustee may exercise the powers granted by this trust without prior approval from any court, including those powers set forth under the laws of the State of Texas or any other jurisdiction whose law applies to this trust. The powers set forth in the Texas Trust Code, Texas Property Code Title 9, Subtitle B are specifically incorporated into this trust.

My Trustee shall exercise the Trustee powers in the manner my Trustee determines to be in the beneficiaries' best interests. My Trustee must not exercise any power inconsistent with the beneficiaries' right to the enjoyment of the trust property in accordance with the general principles of trust law.

My Trustee may have duties and responsibilities in addition to those described in this trust. I encourage any individual or corporate fiduciary serving as Trustee to obtain appropriate legal advice if my Trustee has any questions concerning the duties and responsibilities as Trustee.

### Section 13.02    Execution of Documents by My Trustee

My Trustee may execute and deliver any written instruments that my Trustee considers necessary to carry out any powers granted in this trust.

### Section 13.03    Investment Powers in General

My Trustee may invest in any type of investment that my Trustee determines is consistent with the investment goals of the trust, whether inside or outside the geographic borders of the United States of America and its possessions or territories, taking into account the overall investment portfolio of the trust.

Without limiting my Trustee's investment authority in any way, I request that my Trustee exercise reasonable care and skill in selecting and retaining trust investments. I also request that my Trustee take into account the following factors in choosing investments:

> the potential return from the investment, both in income and appreciation;
>
> the potential income tax consequences of the investment;
>
> the investment's potential for volatility; and
>
> the role the investment will play in the trust's portfolio.

I request that my Trustee also consider the possible effects of inflation or deflation, changes in global and US economic conditions, transaction expenses, and the trust's need for liquidity while arranging the trust's investment portfolio.

My Trustee may delegate his or her discretion to manage trust investments to any registered investment advisor or corporate fiduciary.

EVANS & DAVIS, PLLC, 8117 PRESTON ROAD, SUITE 300, DALLAS, TEXAS 75225 | (214) 368-2335

## Section 13.04 Banking Powers

My Trustee may establish any type of bank account in any banking institutions that my Trustee chooses. If my Trustee makes frequent disbursements from an account, the account does not need to be interest bearing. My Trustee may authorize withdrawals from an account in any manner.

My Trustee may open accounts in the name of my Trustee, with or without disclosing fiduciary capacity, and may open accounts in the name of the trust. When an account is in the name of the trust, checks on that account and authorized signatures need not disclose the account's fiduciary nature or refer to any trust or Trustee.

## Section 13.05 Business Powers

If the trust owns or acquires an interest in a business entity, whether as a shareholder, partner, general partner, sole proprietor, member, participant in a joint venture, or otherwise, my Trustee may exercise the powers and authority provided for in this Section. The powers granted in this Section are in addition to all other powers granted to my Trustee in this trust.

### (a) No Duty to Diversify

Notwithstanding any duty to diversify imposed by state law or any other provision of this trust, my Trustee may acquire or indefinitely retain any ownership interest in or indebtedness of any closely held or nonpublicly traded entity in which the trust, myself, my descendants, and the spouses of my descendants have an ownership interest (the *business interests*), and even though any business interest may constitute all or a substantial portion of the trust property. I specifically authorize my Trustee to invest or indefinitely retain all or any part of the trust property in these business interests, regardless of any resulting risk, lack of income, diversification, or marketability. I waive any applicable prudent investor rule, as well as the Trustee's standard of care and duty to diversify with respect to the acquisition or retention of these business interests.

I recognize that the value of a noncontrolling interest in a business entity may be less than the underlying value of the entity's net assets. Nevertheless, I authorize my Trustee to acquire or retain any noncontrolling business interests.

### (b) Specific Management Powers

My Trustee has all power and authority necessary to manage and operate any business owned by the trust, whether directly or indirectly, including the express powers set forth in this Subsection. My Trustee may participate directly in the conduct of the business, by serving as a general partner of a limited partnership, a member, manager or managing member of a limited liability company, or a shareholder of a corporation, or may employ others to serve in that capacity.

EVANS & DAVIS, PLLC, 8117 PRESTON ROAD, SUITE 300, DALLAS, TEXAS 75225 | (214) 368-2335

My Trustee may participate in the management of the business and delegate management duties and powers to any employee, manager, partner, or associate of the business, without incurring any liability for the delegation. To the extent that the business interest held by the trust is not one that includes management powers (such as a minority stock interest, limited partnership interest, or a membership interest in a limited liability company), my Trustee has no obligation to supervise the management of the underlying assets, and no liability for the actions of those who do manage the business.

My Trustee may enter into management trusts and nominee trusts in which my Trustee and the trust may serve as the exclusive manager or nominee of property or property interests on behalf of any limited partnership, limited liability company, or corporation.

My Trustee, individually, or if my Trustee is a corporate fiduciary, then an employee of my Trustee, may act as a director, general or limited partner, associate, or officer of the business.

My Trustee may participate with any other person or entity in the formation or continuation of a partnership either as a general or limited partner, or in any joint venture. My Trustee may exercise all the powers of management necessary and incidental to a membership in the partnership, limited partnership, or joint venture, including making charitable contributions.

My Trustee may reduce, expand, limit, or otherwise adjust the operation or policy of the business. My Trustee may subject the trust's principal and income to the risks of the business for any term or period, as my Trustee determines.

For any business in which the trust has an interest, my Trustee may advance money or other property, make loans (subordinated or otherwise) of cash or securities, and guarantee the loans of others made to the business. My Trustee may borrow money for the business, either alone or with other persons interested in the business, and may secure the loan or loans by a pledge or mortgage of any part of any trust property.

My Trustee may select and vote for directors, partners, associates, and officers of the business. My Trustee may enter into owners' agreements with a business in which the trust has an interest or with the other owners of the business.

My Trustee may execute agreements and amendments to agreements as may be necessary to the operation of the business, including stockholder agreements, partnership agreements, buy-sell agreements, and operating agreements for limited liability companies.

My Trustee may generally exercise any powers necessary for the continuation, management, sale, or dissolution of the business.

EVANS & DAVIS, PLLC, 8117 PRESTON ROAD, SUITE 300, DALLAS, TEXAS 75225 | (214) 368-2335

My Trustee may participate in the sale, reorganization, merger, consolidation, recapitalization, or liquidation of the business. My Trustee may sell or liquidate the business or business interest on terms my Trustee deems advisable and in the best interests of the trust and the beneficiaries. My Trustee may sell any business interest held by the trust to one or more of the beneficiaries of this trust or to any trust in which a majority of the beneficiaries are beneficiaries of this trust. My Trustee may make the sale in exchange for cash, a private annuity, an installment note, or any combination of those.

My Trustee may exercise all of the business powers granted in this trust even though my Trustee may be personally invested in or otherwise involved with the business.

### (c) Business Liabilities

If any tort or contract liability arises in connection with the business, and if the trust is liable, my Trustee will first satisfy the liability from the assets of the business, and only then from other trust property as determined by my Trustee.

### (d) Trustee Compensation

In addition to the compensation set forth in Section 12.09, my Trustee may receive additional reasonable compensation for services in connection with the operation of the business. My Trustee may receive this compensation directly from the business, the trust or both.

### (e) Conflicts of Interest

My Trustee may exercise all of the powers granted in this trust even though my Trustee may be involved with or have a personal interest in the business.

## Section 13.06   Contract Powers

My Trustee may sell at public or private sale, transfer, exchange for other property, and otherwise dispose of trust property for consideration and upon terms and conditions that my Trustee deems advisable. My Trustee may grant options of any duration for any sales, exchanges, or transfers of trust property.

My Trustee may enter into contracts, and may deliver deeds or other instruments, that my Trustee considers appropriate.

## Section 13.07   Common Investments

For purposes of convenience with regard to the trust property's administration and investment, my Trustee may invest part or all of the trust property jointly with property of other trusts for which my Trustee is also serving as a Trustee. A corporate fiduciary acting as my Trustee may use common funds for investment. When trust property is managed and invested in this manner, my Trustee will maintain records that sufficiently identify this trust's portion of the jointly invested assets.

Dorothy Spanos Living Trust

13-4

## Section 13.08   Environmental Powers

My Trustee may inspect trust property to determine compliance with or to respond to any environmental law affecting the property. For purposes of this trust, *environmental law* means any federal, state, or local law, rule, regulation, or ordinance protecting the environment or human health.

My Trustee may refuse to accept property if my Trustee determines that the property is or may be contaminated by any hazardous substance or is or was used for any purpose involving hazardous substances that could create liability to the trust or to any Trustee.

My Trustee may use trust property to:

conduct environmental assessments, audits, or site monitoring;

take remedial action to contain, clean up, or remove any hazardous substance including a spill, discharge, or contamination;

institute, contest, or settle legal proceedings brought by a private litigant or any local, state, or federal agency concerned with environmental compliance;

comply with any order issued by any court or by any local, state, or federal agency directing an assessment, abatement, or cleanup of any hazardous substance; and

employ agents, consultants, and legal counsel to assist my Trustee in these actions.

My Trustee is not liable for any loss or reduction in value sustained by the trust as a result of my Trustee's decision to retain property on which hazardous materials or substances requiring remedial action are discovered, unless my Trustee contributed to that loss through willful misconduct or gross negligence.

My Trustee is not liable to any beneficiary or to any other party for any decrease in the value of property as a result of my Trustee's actions to comply with any environmental law, including any reporting requirement.

My Trustee may release, relinquish, or disclaim any power held by my Trustee that my Trustee determines may cause my Trustee to incur individual liability under any environmental law.

## Section 13.09   Farm, Ranch, and Other Agricultural Powers

My Trustee may retain, acquire, and sell any farm or ranching operation, whether as a sole proprietorship, partnership, or corporation.

My Trustee may engage in the production, harvesting, and marketing of farm and ranch products, either by operating directly or indirectly with management agencies, hired labor, tenants, or sharecroppers.

My Trustee may engage and participate in any government farm program, whether state or federally sponsored.

EVANS & DAVIS, PLLC, 8117 PRESTON ROAD, SUITE 300, DALLAS, TEXAS 75225 | (214) 368-2335

My Trustee may purchase or rent machinery, equipment, livestock, poultry, feed, and seed.

My Trustee may improve and repair all farm and ranch properties; construct buildings, fences, and drainage facilities; and acquire, retain, improve, and dispose of wells, water rights, ditch rights, and priorities of any nature.

My Trustee may do all things customary or desirable to operate a farm or ranch operation for the benefit of the beneficiaries.

## Section 13.10    Insurance Powers

My Trustee may purchase, accept, hold, and deal with as owner, insurance policies on my life, any beneficiary's life, or any person's life in whom any beneficiary has an insurable interest.

My Trustee may purchase disability, medical, liability, longterm health care and other insurance on behalf of and for the benefit of any beneficiary. My Trustee may purchase annuities and similar investments for any beneficiary.

My Trustee may execute or cancel any automatic premium loan agreement with respect to any policy, and may elect or cancel any automatic premium loan provision in a life insurance policy. My Trustee may borrow money to pay premiums due on any policy, either by borrowing from the company issuing the policy or from another source. My Trustee may assign the policy as security for the loan.

My Trustee may exercise any option contained in a policy with regard to any dividend or share of surplus apportioned to the policy to reduce the amount of a policy, to convert or exchange the policy, or to surrender a policy at any time for its cash value.

My Trustee may elect any paid-up insurance or extended-term insurance nonforfeiture option contained in a policy.

My Trustee may sell any policy at its fair market value to anyone having an insurable interest in the policy, including the insured.

My Trustee may exercise any other right, option, or benefit contained in a policy or permitted by the issuing insurance company.

Upon termination of the trust, my Trustee may transfer and assign the policies held by the trust as a distribution of trust property.

## Section 13.11    Loans and Borrowing Powers

My Trustee may make loans to any person including a beneficiary, as well as an entity, trust, or estate, for any term or payable on demand, and secured or unsecured.

My Trustee may encumber any trust property by mortgages, pledges, or otherwise, and may negotiate, refinance, or enter into any mortgage or other secured or unsecured financial arrangement, whether as a mortgagee or mortgagor. The term may extend beyond the trust's termination and beyond the period required for an interest created under this trust to vest in order to be valid under the rule against perpetuities.

EVANS & DAVIS, PLLC, 8117 PRESTON ROAD, SUITE 300, DALLAS, TEXAS 75225 | (214) 368-2335

My Trustee may enter into, negotiate, or modify the terms of any mortgage or any other secured or unsecured agreement granted in connection with any loan entered into by me individually or by any Trustee, and may release or foreclose on any mortgage or security interest payable to me or to the trust.

My Trustee may borrow money at interest rates and on other terms that my Trustee deems advisable from any person, institution, or other source including, in the case of a corporate fiduciary, its own banking or commercial lending department.

My Trustee may purchase, sell at public or private sale, trade, renew, modify, and extend mortgages. My Trustee may accept deeds instead of foreclosing.

## Section 13.12   Nominee Powers

My Trustee may hold real estate, securities, and any other property in the name of a nominee or in any other form, without disclosing the existence of any trust or fiduciary capacity.

## Section 13.13   Oil, Gas and Mineral Interests

My Trustee may acquire, maintain, develop, and exploit, either alone or jointly with others, any oil, gas, coal, mineral, or other natural resource rights or interests.

My Trustee may drill, test, explore, mine, develop, extract, remove, convert, manage, retain, store, sell, and exchange any of those rights and interests on terms and for a price that my Trustee deems advisable.

My Trustee may execute leases, pooling, unitization, and other types of agreements in connection with oil, gas, coal, mineral, and other natural resource rights and interests, even though the terms of those arrangements may extend beyond the trust's termination.

My Trustee may execute division orders, transfer orders, releases, assignments, farm outs, and any other instruments that it considers proper.

My Trustee may employ the services of consultants and outside specialists in connection with the evaluation, management, acquisition, disposition, and development of any mineral interest, and may pay the cost of the services from the trust's principal and income.

## Section 13.14   Payment of Property Taxes and Expenses

Except as otherwise provided in this trust, my Trustee may pay any property taxes, assessments, fees, charges, and other expenses incurred in the administration or protection of the trust. All payments will be a charge against the trust property and will be paid by my Trustee out of income. If the income is insufficient, then my Trustee may make any payments of property taxes or expenses out of the trust property's principal. My Trustee's determination with respect to this payment will be conclusive on the beneficiaries.

## Section 13.15   Purchase of Assets from and Loans to My Probate Estate

Upon my death, my Trustee may purchase at fair market value and retain in the form received any property that is a part of my probate or trust estate as an addition to the trust.

EVANS & DAVIS, PLLC, 8117 PRESTON ROAD, SUITE 300, DALLAS, TEXAS 75225 | (214) 368-2335

In addition, my Trustee may make secured and unsecured loans to my probate or trust estate. My Trustee may not be held liable for any loss suffered by the trust because of the exercise of the powers granted in this Section.

My Trustee may not use any trust property for the benefit of my estate as defined in Code of Federal Regulations Title 26 Section 20.2042-1(b), unless the property is included in my gross estate for federal estate tax purposes.

### Section 13.16   Qualified Real Property Valuation

My Independent Trustee has the power to amend the terms of a trust holding *qualified real property* as defined in Internal Revenue Code Section 2032A, in order to permit the qualified real property to qualify for special use valuation permitted under Section 2032A, even if the amendment changes beneficial interests and that directs the segregation of trust property into more than one trust.

### Section 13.17   Qualified Tuition Programs

My Trustee may purchase tuition credits or certificates or make contributions to an account in one or more qualified tuition programs as defined under Internal Revenue Code Section 529 on a beneficiary's behalf for the purpose of meeting the beneficiary's qualified higher education expenses. With respect to an interest in any qualified tuition program, my Trustee may act as contributor, administering the interest by actions including:

> designating and changing the designated beneficiary of the interest in the qualified tuition program;
>
> requesting both qualified and nonqualified withdrawals;
>
> selecting among investment options and reallocating funds among different investment options;
>
> making rollovers to another qualified tuition program; and
>
> allocating any tax benefits or penalties to the beneficiaries of the trust.

Notwithstanding anything in this provision to the contrary, the designated beneficiary must always be a beneficiary of the trust from which the funds were distributed to establish the interest in the qualified tuition program. Investment in a qualified tuition program will not be considered a delegation of investment responsibility under any applicable statute or other law.

### Section 13.18   Real Estate Powers

My Trustee may sell at public or private sale, convey, purchase, exchange, lease for any period, mortgage, manage, alter, improve, and in general deal in and with real property in the manner and on the terms and conditions as my Trustee deems appropriate.

My Trustee may grant or release easements in or over, subdivide, partition, develop, raze improvements to, and abandon any real property.

EVANS & DAVIS, PLLC, 8117 PRESTON ROAD, SUITE 300, DALLAS, TEXAS 75225 | (214) 368-2335

My Trustee may manage real estate in any manner considered best, and may exercise all other real estate powers necessary to effect this purpose.

My Trustee may enter into contracts to sell real estate. My Trustee may enter into leases and grant options to lease trust property, even though the term of the agreement extends beyond the termination of any trusts established under this trust and beyond the period that is required for an interest created under this trust to vest in order to be valid under the rule against perpetuities. My Trustee may enter into any contracts, covenants, and warranty agreements that my Trustee deems appropriate.

## Section 13.19 Residences and Tangible Personal Property

My Trustee may acquire, maintain, and invest in any residence for the beneficiaries' use and benefit, whether or not the residence is income producing and without regard to the proportion that the residence's value may bear to the trust property's total value, even if retaining the residence involves financial risks that Trustees would not ordinarily incur. My Trustee may pay or make arrangements for others to pay all carrying costs of any residence for the beneficiaries' use and benefit, including taxes, assessments, insurance, maintenance, and other related expenses.

My Trustee may acquire, maintain, and invest in articles of tangible personal property, whether or not the property produces income. My Trustee may pay for the repair and maintenance of the property.

My Trustee is not required to convert the property referred to in this Section to income-producing property, except as required by other provisions of this trust.

My Trustee may permit any Income Beneficiary of the trust to occupy any real property or use any personal property owned by the trust on terms or arrangements that my Trustee determines, including rent free or in consideration for the payment of taxes, insurance, maintenance, repairs, or other charges.

My Trustee is not liable for any depreciation or loss resulting from any decision to retain or acquire any property as authorized by this Section.

## Section 13.20 Digital Assets

My Trustee has the authority to access, modify, control, archive, transfer, and delete my digital assets.

Digital assets include my sent and received emails, email accounts, digital music, digital photographs, digital videos, gaming accounts, software licenses, social-network accounts, file-sharing accounts, financial accounts, domain registrations, Domain Name System (DNS) service accounts, blogs, listservs, web-hosting accounts, tax-preparation service accounts, online stores and auction sites, online accounts, and any similar digital asset that currently exists or may be developed as technology advances.

My digital assets may be stored in the cloud or on my own digital devices. My Trustee may access, use, and control my digital devices in order to access, modify, control, archive, transfer, and delete my digital assets—this power is essential for access to my digital assets

EVANS & DAVIS, PLLC, 8117 PRESTON ROAD, SUITE 300, DALLAS, TEXAS 75225 | (214) 368-2335

that are only accessible through my digital devices. Digital devices include desktops, laptops, tablets, peripherals, storage devices, mobile telephones, smartphones, and any similar hardware that currently exists or may be developed as technology advances.

## Section 13.21 Retention and Abandonment of Trust Property

My Trustee may retain any property constituting the trust at the time of its creation, at the time of my death, or as the result of the exercise of a stock option, without liability for depreciation or loss resulting from retention. My Trustee may retain property, notwithstanding the fact that the property may not be of the character prescribed by law for the investment of assets held by a fiduciary, and notwithstanding the fact that retention may result in inadequate diversification under any applicable Prudent Investor Act or other applicable law.

My Trustee may hold property that is not income producing or is otherwise nonproductive if holding the property is in the best interests of the beneficiaries in the sole and absolute discretion of my Trustee. On the other hand, my Trustee will invest contributions of cash and cash equivalents as soon as reasonably practicable after the assets have been acquired by the trust.

My Trustee may retain a reasonable amount in cash or money market accounts to pay anticipated expenses and other costs, and to provide for anticipated distributions to or for the benefit of a beneficiary.

My Trustee may abandon any property that my Trustee considers of insignificant value.

## Section 13.22 Securities, Brokerage and Margin Powers

My Trustee may buy, sell, trade, and otherwise deal in stocks, bonds, investment companies, mutual funds, common trust funds, commodities, and other securities of any kind and in any amount, including short sales. My Trustee may write and purchase call or put options, and other derivative securities. My Trustee may maintain margin accounts with brokerage firms, and may pledge securities to secure loans and advances made to my Trustee or to or for a beneficiary's benefit.

My Trustee may place all or any part of the securities held by the trust in the custody of a bank or trust company. My Trustee may have all securities registered in the name of the bank or trust company or in the name of the bank's nominee or trust company's nominee. My Trustee may appoint the bank or trust company as the agent or attorney in fact to collect, receive, receipt for, and disburse any income, and generally to perform the duties and services incident to a custodian of accounts.

My Trustee may employ a broker-dealer as a custodian for securities held by the trust, and may register the securities in the name of the broker-dealer or in the name of a nominee; words indicating that the securities are held in a fiduciary capacity are optional. My Trustee may hold securities in bearer or uncertificated form, and may use a central depository, clearing agency, or book-entry system, such as The Depository Trust Company, Euroclear, or the Federal Reserve Bank of New York.

EVANS & DAVIS, PLLC, 8117 PRESTON ROAD, SUITE 300, DALLAS, TEXAS 75225 | (214) 368-2335

My Trustee may participate in any reorganization, recapitalization, merger, or similar transaction. My Trustee may exercise or sell conversion or subscription rights for securities of all kinds and descriptions. My Trustee may give proxies or powers of attorney that may be discretionary and with or without powers of substitution, and may vote or refrain from voting on any matter.

## Section 13.23 Settlement Powers

My Trustee may settle any claims and demands in favor of or against the trust by compromise, adjustment, arbitration, or other means. My Trustee may release or abandon any claim in favor of the trust.

## Section 13.24 Subchapter S Corporation Stock Provisions

During any period the trust is not treated as a grantor trust for tax purposes under Internal Revenue Code Section 671, this trust or any trust created under this trust may hold any S corporation stock held as a separate *Electing Small Business Trust*, or as a separate *Qualified Subchapter S Trust*, as provided in this Section.

For purposes of this Section, *S corporation stock* means all capital stock issued by a corporation (or other entity taxable as a corporation for federal income tax purposes) that is treated or is intended to be treated under Section 1361(a) as an *S corporation* for federal income tax purposes.

### (a) Electing Treatment as an Electing Small Business Trust

If my Trustee elects under Internal Revenue Code Section 1361(e)(3) to qualify any portion of the trust as an *Electing Small Business Trust*, my Trustee shall:

apportion a reasonable share of the unallocated expenses of all trusts created under this trust to the Electing Small Business Trust under the applicable provisions of the Internal Revenue Code and Treasury Regulations; and

administer the trust as an Electing Small Business Trust, under Internal Revenue Code Section 1361(e).

### (b) Electing Treatment as a Qualified Subchapter S Trust

If the current Income Beneficiary of the trust makes an election under Section 1361(d)(2) to qualify the trust as a Qualified Subchapter S Trust within the meaning of Section 1361(d)(3), my Trustee shall:

refer to the Qualified Subchapter S Trust using the same name as the trust to which the stock was originally allocated, plus the name of the current Income Beneficiary of the trust, followed by the letters QSST;

administer the Qualified Subchapter S Trust in accordance with the same provisions contained in the trust to which the

EVANS & DAVIS, PLLC, 8117 PRESTON ROAD, SUITE 300, DALLAS, TEXAS 75225 | (214) 368-2335

Trustee allocated the S corporation stock, as long as the provisions of this Subsection control the trust administration to the extent that they are inconsistent with the provisions of the original trust; and

maintain the Qualified Subchapter S Trust as a separate trust held for the benefit of only one beneficiary as required in Section 1361(d)(3).

My Trustee shall recommend that the current Income Beneficiary of the trust make a timely election to cause federal tax treatment of the trust as a Qualified Subchapter S Trust.

**(1)    Current Income Beneficiary**

The *current Income Beneficiary* of a Qualified Subchapter S Trust is the person who has a present right to receive income distributions from the trust to which the Trustee has allocated the S corporation stock. A Qualified Subchapter S Trust may have only one current Income Beneficiary.

If, under the terms of the trust, more than one person has a present right to receive income distributions from the trust originally holding the S corporation stock, my Trustee shall segregate the S corporation stock into separate Qualified Subchapter S Trusts for each of these people.

**(2)    Distributions**

Until the earlier of the death of the current Income Beneficiary or the date on which the trust no longer holds any S corporation stock (the *QSST termination date*), my Trustee shall distribute at least annually all of the trust's *net income*, as defined in Internal Revenue Code Section 643(b) to the current Income Beneficiary.

The terms of the trust to which the S corporation stock was originally allocated govern distributions of principal from the Qualified Subchapter S Trust. But until the QSST termination date, my Trustee may distribute principal only to the current Income Beneficiary of the Qualified Subchapter S Trust and not to any other person or entity.

If the Qualified Subchapter S Trust terminates during the lifetime of the current Income Beneficiary, my Trustee shall distribute all assets of the Qualified Subchapter S Trust to the current Income Beneficiary outright and free of the trust.

EVANS & DAVIS, PLLC, 8117 PRESTON ROAD, SUITE 300, DALLAS, TEXAS 75225 | (214) 368-2335

### (3)   Allocation of Income and Expenses

My Trustee shall characterize receipts and expenses of any Qualified Subchapter S Trust in a manner consistent with Internal Revenue Code Section 643(b).

### (4)   Trust Merger or Consolidation

Notwithstanding any other provision of this trust that may seem to the contrary, my Trustee may not merge any Qualified Subchapter S Trust with another trust's assets if doing so would jeopardize the qualification of either trust as a Qualified Subchapter S Trust.

## (c)   Governance of the Trusts

The following additional provisions apply to any separate trust created under this Section.

### (1)   Protection of S Corporation Status

My Trustee must not administer a trust holding S corporation stock in a manner that would cause the termination of the S corporation status of the entity whose stock is held as part of the trust. Therefore, during any period that the trust holds S corporation stock, my Trustee must construe the terms and provisions of this trust in a manner that is consistent with the trust qualifying as an Electing Small Business Trust or as a Qualified Subchapter S Trust. My Trustee must disregard any provision of this trust that cannot be so construed or applied.

### (2)   Methods of Distribution

My Trustee may not make distributions in a manner that would jeopardize the trust's qualification as an Electing Small Business Trust or as a Qualified Subchapter S Trust.

### (3)   Disposition of S Corporation Stock

If my Trustee believes the continuation of any trust would result in the termination of the S corporation status of any entity whose stock is held as a part of the trust property, my Trustee, other than an Interested Trustee, in addition to the power to sell or otherwise dispose of the stock, has the power to distribute the stock to the person who is then entitled to receive the income from the trust.

## Section 13.25   Limitation on My Trustee's Powers

All powers granted to Trustees under this trust or by applicable law are limited as set forth in this Section, unless explicitly excluded by reference to this Section.

EVANS & DAVIS, PLLC, 8117 PRESTON ROAD, SUITE 300, DALLAS, TEXAS 75225 | (214) 368-2335

### (a) An Interested Trustee Limited to Ascertainable Standards

An Interested Trustee may only make discretionary decisions when they pertain to a beneficiary's health, education, maintenance, or support as described under Internal Revenue Code Sections 2041 and 2514.

### (b) Interested Trustee Prohibited from Acting

Whenever this trust specifically prohibits or limits an Interested Trustee from exercising discretion or performing an act, then any Interested Trustee serving as my Trustee is prohibited from participating in the exercise of that discretion or performance of that act. If there is no Trustee serving who is not an Interested Trustee, then an Independent Special Trustee may be appointed under the provisions of Section 3.08 to exercise the discretion or perform the act.

### (c) Exclusive Powers of My Independent Trustee

Whenever a power or discretion is granted exclusively to my Independent Trustee, then any Interested Trustee who is then serving as my Trustee is prohibited from participating in the exercise of the power or discretion. If there is no Independent Trustee then serving, then an Independent Special Trustee may be appointed under the provisions of Section 3.08 to exercise the power or discretion that is exercisable only by my Independent Trustee.

### (d) No Distributions in Discharge of Certain Legal Obligations

My Trustee may not exercise or participate in the exercise of discretion with respect to the distribution of income or principal that would in any manner discharge a legal obligation of my Trustee, including the obligation of support.

If a beneficiary or any other person has the power to remove a Trustee, that Trustee may not exercise or participate in the exercise of discretion with respect to the distribution of income or principal that would in any manner discharge a legal obligation of the person having the power to remove the Trustee, including that person's obligation of support.

### (e) Insurance Policy on the Life of My Trustee

If the trust holds a policy that insures the life of a Trustee, that Trustee may not exercise any powers or rights with respect to the policy. Instead, a Co-Trustee or an Independent Special Trustee must exercise the powers and rights with respect to the policy.

If any rule of law or court decision construes the ability of the insured Trustee to name an Independent Special Trustee as an incident of ownership of the policy, then a majority of the then current Income Beneficiaries

EVANS & DAVIS, PLLC, 8117 PRESTON ROAD, SUITE 300, DALLAS, TEXAS 75225 | (214) 368-2335

(excluding the insured Trustee if he or she is a beneficiary) will select the Independent Special Trustee.

## (f)    Insurance Policy on a Beneficiary's Life

If the trust holds a policy that insures a beneficiary's life, the beneficiary, individually or as Trustee, may not exercise any power over the policy, its cash value, or its proceeds. This denial of power is intended to prevent an insured beneficiary from holding any power that would constitute an incident of ownership of the policy.

In addition, no distribution of income or principal to the insured beneficiary may be satisfied out of the policy's proceeds, cash value, or other economic benefit of the policy.

The limitations of this Subsection do not apply if, upon the beneficiary's death, the policy's proceeds would otherwise be included in the beneficiary's gross estate for federal estate tax purposes.

# Article Fourteen
## General Provisions

### Section 14.01    Maximum Term for Trusts

Notwithstanding any contrary provisions or unless terminated earlier under other provisions of this trust, each trust created under this trust document will terminate 21 years after the death of the last to die of the descendants of my paternal and maternal grandparents who are living at the time of my death.

At that time, the remaining trust property will vest in and be distributed to the persons entitled to receive mandatory distributions of the trust's net income, in the same proportions. If no beneficiary is entitled to mandatory distributions of net income, the remaining trust property will vest in and be distributed to the beneficiaries entitled to receive discretionary distributions of the trust's net income, in equal shares *per stirpes*.

### Section 14.02    Spendthrift Provision

No beneficiary may assign, anticipate, encumber, alienate, or otherwise voluntarily transfer the income or principal of any trust created under this trust. In addition, neither the income nor the principal of any trust created under this trust is subject to attachment, bankruptcy proceedings or any other legal process, the interference or control of creditors or others, or any involuntary transfer.

This Section does not restrict a beneficiary's right to disclaim any interest or exercise of any power of appointment granted in this trust. In addition, this Section does not limit the ability of an Independent Trustee to appoint property in further trust for any beneficiary as provided in Section 12.02.

### Section 14.03    Contest Provision

The right of a beneficiary to take any interest given to him or her under this trust or any trust created under this trust instrument will be determined as if the beneficiary predeceased me without leaving any surviving descendants if that beneficiary, alone or in conjunction with any other person, engages in any of these actions:

> contests by a claim of undue influence, fraud, menace, duress, or lack of testamentary capacity, or otherwise objects in any court to the validity of this trust, any trust created under the terms of this instrument, my Will, or any beneficiary designation of an annuity, retirement plan, IRA, Keogh, pension, profit-sharing plan, or insurance policy signed by me, (collectively referred to in this Section as *Document* or *Documents*) or any amendments or codicils to any Document;

> seeks to obtain adjudication in any court proceeding that a Document or any of its provisions is void, or otherwise seeks to void, nullify, or set aside a Document or any of its provisions;

Dorothy Spanos Living Trust
14-1

files suit on a creditor's claim filed in a probate of my estate, against the trust estate, or any other Document, after rejection or lack of action by the respective fiduciary;

files a petition or other pleading to change the character (community, separate, joint tenancy, partnership, domestic partnership, real or personal, tangible or intangible) of property already characterized by a Document;

files a petition to impose a constructive trust or resulting trust on any assets of the trust estate; or

participates in any of the above actions in a manner adverse to the trust estate, such as conspiring with or assisting any person who takes any of these actions.

My Trustee may defend any violation of this Section at the expense of the trust estate. A *contest* includes any action described above in an arbitration proceeding, but does not include any action described above solely in a mediation not preceded by a filing of a contest with a court.

## Section 14.04   Survivorship Presumption

If any beneficiary is living at my death, but dies within 30 days after my death, then the beneficiary will be considered to have predeceased me for this trust's purposes.

## Section 14.05   Changing the Governing Law and Situs of Administration

At any time, my Trust Advisor may change the governing law of the trust; change the situs of the administration of the trust; and remove all or any part of the property from one jurisdiction to another. My Trust Advisor may elect, by filing an instrument with the trust records, that the trust will then be construed, regulated, and governed by the new jurisdiction's laws. My Trust Advisor may take action under this Section for any purpose my Trust Advisor considers appropriate, including the minimization of any taxes in respect of the trust or any trust beneficiary.

If considered necessary or advisable by my Trust Advisor, my Trust Advisor may appoint an Independent Trustee to serve as Trustee in the new situs.

If necessary and if my Trust Advisor does not appoint an Independent Trustee within 30 days of my Trust Advisor's action to change the governing law or situs of the trust, the beneficiaries entitled to receive distributions of the trust's net income may appoint a corporate fiduciary in the new situs by majority consent. If a beneficiary is a minor or is incapacitated, the beneficiary's parent or Legal Representative may act on the beneficiary's behalf.

## Section 14.06   Antilapse Statutes

Whether existing now or enacted later, no *antilapse* statute of Texas or any other jurisdiction will be applied in construing any provision of this trust.

EVANS & DAVIS, PLLC, 8117 PRESTON ROAD, SUITE 300, DALLAS, TEXAS 75225 | (214) 368-2335

## Section 14.07 Definitions

For purposes of this trust, the following terms have these meanings:

### (a) Adopted and Afterborn Persons

A person in any generation who is legally adopted before reaching 14 years of age and his or her descendants, including adopted descendants, have the same rights and will be treated in the same manner under this trust as natural children of the adopting parent. A person is considered legally adopted if the adoption was legal at the time when and in the jurisdiction in which it occurred.

A fetus *in utero* later born alive will be considered a person in being during the period of gestation.

### (b) Available GST Exemption

My *Available GST Exemption* means the GST exemption provided in Internal Revenue Code Section 2631 in effect at my death; reduced by the aggregate of:

> any amount of GST exemption allocated to my lifetime transfers, including those allocations made at the time of my death by my Personal Representative, by my Trustee, or by operation of law; and

> any amount allocated to direct-skip persons as defined in Internal Revenue Code Section 2612(c)(1) that does not qualify for an exclusion from the generation-skipping transfer tax occurring at my death to or for the benefit of my descendants.

At the time of my death, if I have made a lifetime transfer to a trust with an inclusion ratio of greater than zero but have not filed a gift tax return and the due date for the gift tax return has not yet passed, my Available GST Exemption will also be reduced so that the trust inclusion ratio is zero, in order to exempt the transfer from generation-skipping transfer tax.

### (c) Descendants

The term *descendants* means persons who directly descend from a person, such as children, grandchildren, or great-grandchildren. The term *descendants* does not include collateral descendants, such as nieces and nephews.

### (d) Education

The term *education* is intended to be an ascertainable standard under Internal Revenue Code Sections 2041 and 2514 and includes:

> enrollment at private elementary, junior, and senior high school, including boarding school;

EVANS & DAVIS, PLLC, 8117 PRESTON ROAD, SUITE 300, DALLAS, TEXAS 75225 | (214) 368-2335

undergraduate and graduate study in any field at a college or university;

specialized, vocational, or professional training or instruction at any institution, as well as private instruction; and

any other curriculum or activity that my Trustee considers useful for developing a beneficiary's abilities and interests including athletic training, musical instruction, theatrical training, the arts, and travel.

The term *education* also includes expenses such as tuition, room and board, fees, books, supplies, computers and other equipment, tutoring, transportation, and a reasonable allowance for living expenses.

## (e)   Good Faith

For the purposes of this trust, a Trustee has acted in good faith if:

an action or inaction is not a result of intentional wrongdoing;

the Trustee did not make the decision to act or not act with reckless indifference to the beneficiaries' interests; and

an action or inaction does not result in an improper personal benefit to the Trustee.

Further, all parties subject to the provisions of this trust will treat any action or inaction made in reliance on information, consent, or directions received from the Personal Representative of my estate as made in good faith for the purposes of this Section, except for cases of willful misconduct or malfeasance on the Trustee's part.

## (f)   Grantor

*Grantor* has the same legal meaning as *Settlor*, *Trustor* or any other term referring to the maker of a trust.

## (g)   Incapacity

Except as otherwise provided in this trust, a person is considered incapacitated in any of the following circumstances.

### (1)   The Opinion of Two Licensed Physicians

An individual is considered to be incapacitated whenever two licensed physicians give the opinion that the individual is unable to effectively manage his or her property or financial affairs, whether as a result of age; illness; use of prescription medications, drugs, or other substances; or any other cause. If an individual whose capacity is in question

EVANS & DAVIS, PLLC, 8117 PRESTON ROAD, SUITE 300, DALLAS, TEXAS 75225 | (214) 368-2335

refuses to provide necessary documentation or otherwise submit to examination by licensed physicians, that individual will be considered incapacitated.

An individual is considered restored to capacity whenever the individual's personal or attending physician provides a written opinion that the individual is able to effectively manage his or her property and financial affairs.

### (2) Court Determination

An individual is considered incapacitated if a court of competent jurisdiction has declared the individual to be disabled, incompetent, or legally incapacitated.

### (3) Detention, Disappearance, or Absence

An individual is considered to be incapacitated whenever he or she cannot effectively manage his or her property or financial affairs due to the individual's unexplained disappearance or absence for more than 30 days, or whenever he or she is detained under duress.

An individual's disappearance, absence, or detention under duress may be established by an affidavit of my Trustee, or by the affidavit of any beneficiary if no Trustee is then serving. The affidavit must describe the circumstances of the individual's disappearance, absence, or detention, and may be relied upon by any third party dealing in good faith with my Trustee.

### (h) Include, Includes, Including

In this document, the words include, includes, and including mean include without limitation, includes without limitation and including without limitation, respectively. Include, includes, and including are words of illustration and enlargement, not words of limitation or exclusivity.

### (i) Income Beneficiary

The term *Income Beneficiary* means any beneficiary who is then entitled to receive distributions of the trust's net income, whether mandatory or discretionary.

Unless otherwise provided in this trust, the phrase *majority of the Income Beneficiaries* means any combination of Income Beneficiaries who would receive more than 50% of the accrued net income if that income were distributed on the day of a vote. For purposes of this calculation, beneficiaries who are eligible to receive discretionary distributions of net income receive the imputed income in equal shares.

EVANS & DAVIS, PLLC, 8117 PRESTON ROAD, SUITE 300, DALLAS, TEXAS 75225 | (214) 368-2335

References to a *majority* refer to a majority of the entire trust collectively until my Trustee allocates property to separate trusts or trust shares. After my Trustee allocates property to separate trusts or trust shares, references to a *majority* refer to a majority of each separate trust or trust share.

## (j)  Income in Respect of a Decedent (IRD)

The term *income in respect of a decedent* (IRD) means income received after a decedent's death that would have been taxable to the decedent if the income had been received by the decedent during the decedent's lifetime. For example, payments under qualified retirement plans and other deferred compensation arrangements are IRD. For purposes of this trust, IRD means any income that would be classified as IRD under Internal Revenue Code Section 691(a).

## (k)  Independent Trustee

The term *Independent Trustee* means any Trustee who is not an Interested Trustee as defined in Subsection (m) and includes an Independent Special Trustee appointed under the provisions of Section 3.08.

## (l)  Instrument

The term *this instrument* means this trust, and includes all trusts created under the terms of this trust.

## (m)  Interested Trustee

The term *Interested Trustee* means a Trustee who:

is a transferor or beneficiary;

is related or subordinate to a transferor or beneficiary;

can be removed and replaced by a transferor with either the transferor or a party who is related or subordinate to the transferor; or

can be removed and replaced by a beneficiary with either the beneficiary or a party who is related or subordinate to the beneficiary.

For purposes of this Subsection, *transferor* means a person who transferred property to the trust during that person's lifetime, including a person whose disclaimer resulted in property passing to the trust. A person is only a transferor during his or her lifetime. *Beneficiary* means a person who is or may become eligible to receive income or principal from the trust under the terms of the trust, even if this person has only a remote contingent remainder interest in the trust, but not if the person's only interest is as a potential appointee under a power of appointment. *Related or subordinate* is used as defined in Internal Revenue Code Section 672(c).

EVANS & DAVIS, PLLC, 8117 PRESTON ROAD, SUITE 300, DALLAS, TEXAS 75225 | (214) 368-2335

## (n)    Internal Revenue Code and Treasury Regulations

References to the *Internal Revenue Code* or to its provisions are to the Internal Revenue Code of 1986, as amended, and any corresponding Treasury Regulations. References to the *Treasury Regulations*, are to the Treasury Regulations under the Internal Revenue Code in effect. If a particular provision of the Internal Revenue Code is renumbered or the Internal Revenue Code is superseded by a subsequent federal tax law, any reference is considered to be made to the renumbered provision or to the corresponding provision of the subsequent law, unless to do so would clearly be contrary to my intent as expressed in this trust. The same rule applies to references to the Treasury Regulations.

## (o)    Legal Representative or Personal Representative

As used in this trust document, the term *Legal Representative* or *Personal Representative* means a person's guardian, conservator, executor, administrator, Trustee, attorney in fact under a Durable Power of Attorney, or any other person or entity representing a person or the person's estate. In the case of a minor beneficiary, the beneficiary's parent or another adult with custody of the beneficiary, except for any transferor to a trust created under this instrument, will be considered the beneficiary's Legal Representative for purposes of this trust.

## (p)    Per Stirpes

Whenever a distribution is to be made to a person's descendants *per stirpes*, the distribution will be divided into as many equal shares as there are then-living children and deceased children who left then-living descendants. Each then-living child will receive one share, and the share of each deceased child will be divided among the deceased child's then-living descendants in the same manner.

## (q)    Primary Beneficiary

The *Primary Beneficiary* of a trust created under this trust is that trust's oldest Income Beneficiary, unless some other individual is specifically designated as the Primary Beneficiary of that separate trust.

## (r)    Qualified Retirement Benefits

The term *qualified retirement plan* means a plan qualified under Internal Revenue Code Section 401, an individual retirement arrangement under Section 408 or Section 408A, or a tax-sheltered annuity under Section 403. The term *qualified retirement benefits* means the amounts held in or distributed pursuant to a plan qualified under Section 401, an individual retirement arrangement under Section 408 or Section 408A, a tax-sheltered annuity under Section 403, or any other benefit subject to the distribution rules of Section 401(a)(9).

EVANS & DAVIS, PLLC, 8117 PRESTON ROAD, SUITE 300, DALLAS, TEXAS 75225 | (214) 368-2335

### (s)    Shall and May

Unless otherwise specifically provided in this trust or by the context in which used, I use the word *shall* in this trust to impose a duty, command, direct, or require, and the word *may* to allow or permit, but not require. In the context of my Trustee, when I use the word *shall* I intend to impose a fiduciary duty on my Trustee. When I use the word *may* I intend to empower my Trustee to act with the Trustee's sole and absolute discretion unless otherwise stated in this trust. When I use the words *may not* in reference to my Trustee, I specifically mean my Trustee *is not permitted to*.

### (t)    Trust

The terms *this trust, this document, instrument,* and *this trust document* refer to this trust and all trusts created under the terms of this trust.

### (u)    Trustee

The terms *my Trustee* and *Trustee* refer to the Initial Trustee named in Article One and to any successor, substitute, replacement, or additional person, corporation, or other entity that ever acts as the Trustee of any trust created under the terms of this trust. The term *Trustee* refers to singular or plural as the context may require.

### (v)    Trust Property

The term *trust property* means all property acquired from any source and held by a Trustee under this trust.

## Section 14.08   General Provisions and Rules of Construction

The following general provisions and rules of construction apply to this trust.

### (a)    Multiple Originals; Validity of Paper or Electronic Copies

This trust may be executed in any number of counterparts, each of which will be considered an original.

Any person may rely on a paper or electronic copy of this trust that the Trustee certifies to be a true copy as if it were an original.

### (b)    Singular and Plural; Gender

Unless the context requires otherwise, singular words may be construed as plural, and plural words may be construed as singular. Words of one gender may be construed as denoting another gender as is appropriate within the context. The word *or,* when used in a list of more than two items, may function as both a conjunction and a disjunction as the context requires.

EVANS & DAVIS, PLLC, 8117 PRESTON ROAD, SUITE 300, DALLAS, TEXAS 75225 | (214) 368-2335

### (c) Headings of Articles, Sections, and Subsections

The headings of Articles, Sections, and Subsections used within this trust are included solely for the convenience of the reader. They have no significance in the interpretation or construction of this trust.

### (d) Governing State Law

This trust is governed, construed, and administered according to the laws of Texas, as amended except as to trust property required by law to be governed by the laws of another jurisdiction and unless the situs of administration is changed under Section 14.05.

### (e) Notices

Unless otherwise stated, any notice required under this trust will be in writing. The notice may be personally delivered with proof of delivery to the party requiring notice and will be effective on the date personally delivered. Notice may also be mailed, postage prepaid, by certified mail with return receipt requested to the last known address of the party requiring notice. Mailed notice is effective on the date of the return receipt. If a party giving notice does not receive the return receipt but has proof that he or she mailed the notice, notice will be effective on the date it would normally have been received via certified mail. If the party requiring notice is a minor or incapacitated individual, notice will be given to the parent or Legal Representative.

### (f) Severability

The invalidity or unenforceability of any provision of this trust does not affect the validity or enforceability of any other provision of this trust. If a court of competent jurisdiction determines that any provision is invalid, the remaining provisions of this trust are to be interpreted as if the invalid provision had never been included.

I have executed this trust on December 19, 2017. This trust instrument is effective when signed by me, whether or not now signed by a Trustee.

I certify that I have read and understand this trust instrument, and that it correctly states the provisions under which my trust property is to be administered and distributed by my Trustee.

_Dorothy Spanos_
Dorothy J. Spanos, Grantor and Trustee

STATE OF TEXAS
COUNTY OF MCLENNAN

Before me, Landon C. Long, Notary Public, on this day personally appeared Dorothy J. Spanos, as Grantor and as Trustee, known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that she executed the same for the purposes and consideration therein expressed.

Given under my hand and official seal this day, December 19, 2017.

LANDON CHRISTOPHER LONG
Notary Public, State of Texas
My Commission Expires
August 04, 2019

Notary Public, State of Texas
My commission expires: 8/4/2019

Dorothy Spanos Living Trust
14-10

STATE OF TEXAS )
) ss.
COUNTY OF MCLENNAN )

I, Dorothy J. Spanos, declare to the officer taking my acknowledgment of this instrument and to the subscribing witnesses that I signed this instrument as my trust.

_____
Dorothy J. Spanos, Grantor

We, Taylor N. Kincanon and _Billy Borunda_ , have been sworn by the officer signing below, and declare to that officer on our oaths that the Grantor declared the instrument to be the Grantor's trust and signed it in our presence. We each signed the instrument as a witness in the presence of the Grantor and of each other.

_____
Taylor N. Kincanon, Witness

_____
_____, Witness

STATE OF TEXAS
COUNTY OF MCLENNAN

Before me, Landon C. Long, Notary Public, on this day personally appeared Taylor N. Kincanon, as Witness, and _Billy Borunda_ , as Witness, known to me to be the persons whose names are subscribed to the foregoing instrument and acknowledged to me that they executed the same for the purposes and consideration therein expressed.

Given under my hand and official seal this day, December 19, 2017.

_____
Notary Public, State of Texas
My commission expires: 8/4/2019

LANDON CHRISTOPHER LONG
Notary Public, State of Texas
My Commission Expires
August 04, 2019

Dorothy Spanos Living Trust
14-11

# Schedule A

American Bank Account No. ████ 3181

American Bank 3 CD's Nos. ██72, ██73 & ██74

First National Bank Account No. ███ 0997

Independent Bank Account No. █████ 588

Security Bank of Crawford 2 CD's - Nos. ███ 20 & ██ 003

Community Bank & Trust CD's - Nos. ██ 09, ██ 92 & ██ 92

Escondido Golf Club Membership

Ridgewood Country Club Membership

Raymond James Stock Accounts

Residence - Ranch - 228 Spanos Ranch Rd, Crawford TX

House - Horseshoe Bay, TX

Lot in Llano County

Dorothy Spanos Living Trust

A - 1

EVANS & DAVIS, PLLC, 8117 PRESTON ROAD, SUITE 300, DALLAS, TEXAS 75225 | (214) 368-2335

# TAB C

# The First Amendment
# to the
# Dorothy Spanos Living Trust

On December 19, 2017, I, Dorothy J. Spanos, signed the Dorothy Spanos Living Trust ("my trust"), more formally known as:

> Dorothy J. Spanos, Trustee of the Dorothy Spanos Living Trust dated December 19, 2017, and any amendments.

Section 1.04 of my trust permits me to amend it in writing at any time. This Amendment represents the First Amendment to my trust.

## Section 1.01    Amendment

I fully amend and restate Article Seven in its' entirety as follows:

### Section 7.01    Specific Distribution to Robert Lee Spanos

As soon as practicable after my death, my Trustee shall distribute 44 acres of land with an address of 228 Spanos Ranch Road and with a legal description of being 44 acres out of 261.733 acres of land out of the J.B. Capel Survey A-203 L.C. Woodruff Survey, Isaac Gifford and Wm. Parvin Surveys, McLennan County, Texas to Robert Lee Spanos.

If Robert Lee Spanos is deceased, then this distribution will lapse, and this property instead will be distributed under the other provisions of this trust.

Property passing under this Section passes free of any administrative expenses or death taxes. But property passing under this Section passes subject to all liens, security interests, and other encumbrances.

### Section 7.02    Specific Distribution to Frances Shelton or Rick Shelton

As soon as practicable after my death, my Trustee shall distribute $100,000 to Frances Shelton.

If Frances Shelton is deceased, then this distribution will lapse, and this property instead will be distributed under the other provisions of this trust.

Additionally, as soon as practicable after my death, my Trustee shall distribute all of my interest in the Escondido lot and all associated club membership and fees, to Frances Shelton or Rick Shelton.

EVANS & DAVIS, PLLC, 2707 HIBERNIA ST., DALLAS, TEXAS 75204 | (866) 708-2335

553

### Section 7.03  Specific Distribution to Frances Shelton or Rick Shelton

As soon as practicable after my death, my Trustee shall grant unto Frances Shelton or Rick Shelton a right of first refusal to purchase my property located at 509-9 Lighthouse Drive, Horseshoe Bay, Texas.

Additionally, as soon as practicable after my death, my Trustee shall distribute my "I-Deck" boat and two (2) wave runners to Frances Shelton and Rick Shelton.

If Frances Shelton and Rick Shelton are deceased, then this distribution will lapse, and this property instead will be distributed under the other provisions of this trust.

Property passing under this Section passes free of any administrative expenses or death taxes.

### Section 7.04  Specific Distribution to Katherine Leuschner

As soon as practicable after my death, my Trustee shall distribute $100,000 to Katherine Leuschner.

If Katherine Leuschner is deceased, then this distribution will lapse, and this property instead will be distributed under the other provisions of this trust.

Property passing under this Section passes free of any administrative expenses or death taxes.

### Section 7.05  Specific Distribution to Brandon Shelton

As soon as practicable after my death, my Trustee shall distribute $100,000 to Brandon Shelton.

If Brandon Shelton is deceased, then this distribution will lapse, and this property instead will be distributed under the other provisions of this trust.

Property passing under this Section passes free of any administrative expenses or death taxes.

### Section 7.06  Specific Distribution to Brianna Hunstiger

As soon as practicable after my death, my Trustee shall distribute $100,000 to Brianna Hunstiger.

If Brianna Hunstiger is deceased, then this distribution will lapse, and this property instead will be distributed under the other provisions of this trust.

Property passing under this Section passes free of any administrative expenses or death taxes.

### Section 7.07  Specific Distribution to Nicholas Shelton

As soon as practicable after my death, my Trustee shall distribute $100,000 to Nicholas Shelton.

EVANS & DAVIS, PLLC, 2707 HIBERNIA ST., DALLAS, TEXAS 75204 | (866) 708-2335

If Nicholas Shelton is deceased, then this distribution will lapse, and this property instead will be distributed under the other provisions of this trust.

Property passing under this Section passes free of any administrative expenses or death taxes.

### Section 7.08   Specific Distribution to Robert Lee Spanos

As soon as practicable after my death, my Trustee shall distribute $100,000 to Robert Lee Spanos.

If Robert Lee Spanos is deceased, then this distribution will lapse, and this property instead will be distributed under the other provisions of this trust.

Property passing under this Section passes free of any administrative expenses or death taxes.

### Section 7.09   Specific Distribution to Kathryn Nicole Lawrie

As soon as practicable after my death, my Trustee shall distribute $100,000 to Kathryn Nicole Lawrie.

If Kathryn Nicole Lawrie is deceased, then this distribution will lapse, and this property instead will be distributed under the other provisions of this trust.

Property passing under this Section passes free of any administrative expenses or death taxes.

### Section 7.10   Specific Distribution to Christopher Blake Spanos

As soon as practicable after my death, my Trustee shall distribute $100,000 to Christopher Blake Spanos.

If Christopher Blake Spanos is deceased, then this distribution will lapse, and this property instead will be distributed under the other provisions of this trust.

Property passing under this Section passes free of any administrative expenses or death taxes.

### Section 7.11   Distribution of my Ranch

As soon as practicable after my death, my Trustee shall distribute my ranch in the following manner:

**Frances Shelton:**

Barn; Stables; Arena; and 60 adjoining acres of land.

**Katherine Leuschner:**

Rock house and 60 adjoining acres of land.

EVANS & DAVIS, PLLC, 2707 HIBERNIA ST., DALLAS, TEXAS 75204 | (866) 708-2335

**My Grandchildren: Kathryn Nicole Lawrie; Christopher Blake Spanos; Brandon Shelton; Brianna Hunstiger; and Nicholas Shelton:**

12 acres per grandchild.

The existing house; RV Shed; Hanger; and 39.322 acres including runway, front pasture, and pasture behind the home to be sold with proceeds evenly distributed in the following manner:

1/3 to Frances Shelton;

1/3 to Katherine Leuschner; and

1/3 to be evenly divided amongst all living grandchildren at the time of my death.

Property passing under this Section passes free of any administrative expenses or death taxes.

### Section 7.12 Distribution of Tangible Personal Property by Memorandum

I may dispose of items of tangible personal property by a signed written memorandum executed after I sign this instrument. The memorandum must refer to my trust and must reasonably identify the items and the beneficiary designated to receive each item. If I execute a memorandum, my Trustee shall incorporate the memorandum by reference into this instrument to the extent permitted by law.

My Trustee shall distribute the items of tangible personal property listed in the memorandum as promptly as practicable after my death, together with any insurance policies covering the property and any claims under those policies, as provided in the memorandum. If I leave multiple written memoranda that conflict as to the disposition of any item of tangible personal property, the memorandum with the most recent date will control as to that item.

If the memorandum with the most recent date conflicts with a provision of this instrument as to the specific distribution of any item of tangible personal property, the provisions of this instrument will control as to those items that are in conflict.

If the law does not permit incorporation of the memorandum by reference, the memorandum will then serve as an amendment to my trust, but only to the extent this amendment solely disposes of tangible personal property. I request that my Trustee follow my wishes and distribute the items of tangible personal property listed in the memorandum according to its terms, except to the extent the memorandum conflicts with any other provision of

EVANS & DAVIS, PLLC, 2707 HIBERNIA ST., DALLAS, TEXAS 75204 | (866) 708-2335

this instrument as to the specific distribution of any item of tangible personal property.

## Section 7.13   Distribution of Remaining Tangible Personal Property

My Trustee shall distribute any remaining tangible personal property not disposed of by a written memorandum to my children in shares of substantially equal value, to be divided among my children as they agree. If any child should predecease me, my Trustee shall distribute that child's share to the child's then living descendants as those descendants agree. If any child is deceased having no then living descendants, the distribution to that child will lapse. If my Trustee determines that a child or any descendant of a deceased child is incapable of acting in his or her own best interest, my Trustee shall appoint a person to represent the child or descendant of the deceased child in the division of the property. If my children and the descendants of any deceased child or children are unable to agree upon the division of the property within six months after my death, my Trustee shall make the division according to my Trustee's discretion. My Trustee may use a lottery, rotation system, or any other method of allocation to determine the order of selection and distribution of the property. As an alternative, my Trustee may sell all or any portion of the property and distribute the net proceeds equally among my then-living children and any then-living descendants of any deceased child or children. My Trustee will not incur any liability to any party for decisions made by my Trustee with respect to the division or sale of tangible personal property. Any decision made by my Trustee will be final and binding on all beneficiaries.

## Section 7.14   Definition of Tangible Personal Property

For purposes of this Article, the term tangible personal property includes household furnishings, appliances and fixtures, works of art, motor vehicles, pictures, collectibles, apparel and jewelry, books, sporting goods, and hobby paraphernalia. The term does not include any property that my Trustee, in its sole and absolute discretion, determines to be part of any business or business interest owned by me or my trust.

After my death, if my Trustee receives property to be distributed under this Article from my probate estate or in any other manner, my Trustee shall distribute the property in accordance with this Article's terms. The fact that an item of tangible personal property was not received by my trust until after my death does not diminish the validity of the gift. If property to be distributed under this Article is not part of the trust property upon my death and is not subsequently transferred to my Trustee from my probate estate or in any other manner, then the specific distribution of property made in this Article is null and void, without any legal or binding effect.

## Section 7.15   Incidental Expenses and Encumbrances

EVANS & DAVIS, PLLC, 2707 HIBERNIA ST., DALLAS, TEXAS 75204 | (866) 708-2335

Until property distributed in accordance with this Article is delivered to the appropriate beneficiary or his or her Legal Representative, my Trustee shall pay the reasonable expenses of securing, storing, insuring, packing, transporting, and otherwise caring for the property as an administration expense. Except as otherwise provided in my trust, my Trustee shall distribute property under this Article subject to all liens, security interests, and other encumbrances on the property.

### Section 7.16 Residuary Distribution

Any property not distributed under this or prior Articles of this instrument will be distributed as provided in the following Articles.

## Section 1.02 Contest Provision

This Section of my Amendment applies to my trust and to this Amendment. If any provision of this Section conflicts with any provision of my trust, the provision of this Section will prevail.

The right of a beneficiary to take any interest given to him or her under this trust or any trust created under this trust instrument will be determined as if the beneficiary predeceased me without leaving any surviving descendants if that beneficiary, alone or in conjunction with any other person, engages in any of these actions:

contests by a claim of undue influence, fraud, menace, duress, or lack of testamentary capacity, or otherwise objects in any court to the validity of this trust, any trust created under the terms of this instrument, my Will, or any beneficiary designation of an annuity, retirement plan, IRA, Keogh, pension, profit-sharing plan, or insurance policy signed by me, (collectively referred to in this Section as *Document* or *Documents*) or any amendments or codicils to any Document;

seeks to obtain adjudication in any court proceeding that a Document or any of its provisions is void, or otherwise seeks to void, nullify, or set aside a Document or any of its provisions;

files suit on a creditor's claim filed in a probate of my estate, against the trust estate, or any other Document, after rejection or lack of action by the respective fiduciary;

files a petition or other pleading to change the character (community, separate, joint tenancy, partnership, domestic partnership, real or personal, tangible or intangible) of property already characterized by a Document;

files a petition to impose a constructive trust or resulting trust on any assets of the trust estate; or

The First Amendment to the
Dorothy Spanos Living Trust
Page 6

participates in any of the above actions in a manner adverse to the trust estate, such as conspiring with or assisting any person who takes any of these actions.

My Trustee may defend any violation of this Section at the expense of the trust estate. A *contest* includes any action described above in an arbitration proceeding, but does not include any action described above solely in a mediation not preceded by a filing of a contest with a court.

## Section 1.03    Effective Date

The provisions of this Amendment are effective immediately after I execute it.

## Section 1.04    Ratification and Confirmation

I confirm all provisions of my trust (and any prior amendments) that are not modified by this Amendment.

I executed this Amendment on __July 1,_____, 2020.

I certify that I have read this Amendment to my trust, and that it correctly states the changes I desire to make to my trust. I approve this Amendment to my trust in all particulars, and request my Trustee to execute it.

_____
Dorothy J. Spanos, Grantor and Trustee

EVANS & DAVIS, PLLC, 2707 HIBERNIA ST., DALLAS, TEXAS 75204 | (866) 708-2335

STATE OF TEXAS
COUNTY OF MCLENNAN

Before me, the undersigned, Notary Public, on this day personally appeared Dorothy J. Spanos, as Grantor and as Trustee, known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that she executed the same for the purposes and consideration therein expressed.

Given under my hand and official seal this day, _____July 1_____, 2020.

_Renee S. Adams_
Notary Public, State of Texas

RENEE S. ADAMS
Notary Public, State of Texas
Comm. Expires 11-16-2023
Notary ID 126325671

# TAB D

**Filed 3/2/2022 4:54 PM**
**J.A. (Andy) Harwell**
**County Clerk**
**McLennan County, Texas**
**By Cynthia Cunningham**
**Deputy**

NOTICE: THIS DOCUMENT
CONTAINS SENSITIVE DATA.

CAUSE NO. 20220135PR1_____

| | | |
|---|---|---|
| **IN THE ESTATE OF** | § | **IN THE COUNTY COURT AT LAW** |
| | § | |
| **DOROTHY J. SPANOS,** | § | **NUMBER ____ OF** |
| | § | |
| **DECEASED** | § | **McLENNAN COUNTY, TEXAS** |

### APPLICATION FOR APPOINTMENT OF A
### TEMPORARY ADMINISTRATOR AND OF A TRUST ADVISOR

COMES NOW, Applicant, Katherine Leuschner ("Katherine" or "Applicant") and pursuant to Texas Estates Code § 452.051(a) files this Application for Appointment of a Temporary Administrator in the Estate of Dorothy J. Spanos ("Dorothy" or "Decedent") and Trust Advisor of the Dorothy Spanos Living Trust and furnishes the following information to the Court for the appointment of a temporary administrator, respectfully showing the Court as follows:

### APPLICATION

1. Applicant is domiciled in Waco, McLennan County, Texas. The last three numbers of Applicant's driver's license are 728, and the last three number of her social security number are 328.

2. Decedent died on September 18, 2021, in Crawford, McLennan County, Texas, at the age of 86 years. The last three digits of Decedent's social security number are 332.

3. The Court has jurisdiction and venue over this matter because Decedent was domiciled and had a fixed place of residence in McLennan County on the date of death.

4. A necessity exists for the administration Decedent's estate. The interest of Decedent's estate requires immediate appointment of a temporary administrator because of issues detailed in the section below.

5. Applicant respectfully requests that the Court appoint the Honorable Judge Robert Stem (retired) as the Temporary Administrator for the Estate of Dorothy J. Spanos and as Trust Advisor

for the Dorothy Spanos Living Trust. As a Texas resident and the Senior District Judge of Falls County, Judge Stem would be a suitable Temporary Administrator of the Estate and as the Trust Advisor. His office is located at 108 Bridge St., Marlin, Texas 76661. Tex. Estates Code § 256.052.

6. Decedent's Estate/Trust is composed of personal and real property described generally as real and personal property, cash, personal effects, personal and recreational vehicles, and household goods of a probable value in excess of $5,000,000.

7. Pursuant to Texas Estates Code §§ 452.002 and 256.054 and to the best of Applicant's knowledge, Decedent died testate. A will is not produced for probate because an original copy of the purported will ("the Will") is not under Applicant's control or in Applicant's possession. Based on the copy of the Will that Applicant has seen, Applicant believes the Will to be a pour-over will that gives all of Decedent's probate property to the Trustee of the Dorothy J. Spanos Living Trust. *See* Tex. Estates Code § 256.054. The current Trustee of the Trust is Frances Shelton, whose address is 11339 Cedar Rock Parkway, Crawford, Texas 76638. In the case of partial intestacy, Frances Shelton Applicant are Decedent's heirs.

8. No child or children were born to or adopted by Decedent after the date of the Will or any other will known to exist.

9. After the date of Decedent's Will, no marriage was dissolved.

10. Neither the Will nor any known prior Will of Decedent name either the State of Texas, a governmental agency of the State of Texas, or a charitable organization as a devisee.

11. The Honorable Judge Robert Stem (retired) is not disqualified by law from accepting letters of administration.

**INFORMATION IN SUPPORT OF THE NECESSITY OF
ADMINISTRATION AND APPLICATION FOR THE APPOINTMENT
OF A TEMPORARY ADMINISTRATOR AND TRUST ADVISOR**

**Background Information**

12.     For 56 years, Decedent was married to Nick L. Spanos ("Nick"). Applicant and her sister, Frances Shelton ("Frances"), are the only two children from the marriage of Decedent and Nick.

13.     Decedent and Nick operated a successful trucking business as well as businesses in the warehouse and aeronautical industries. Nick passed away in 2013. They built their home on 261 acres located at 228 Spanos Ranch Rd., Crawford, Texas 76638 ("the Crawford Ranch").

14.     On or about December 19, 2017, Decedent executed several estate planning documents, including but not limited to (i) a Statutory Durable Power of Attorney naming Frances as her agent, (ii) the Dorothy Spanos Living Trust[1] appointing Frances as Trustee in the event of Dorothy's incapacity or death ("the Trust"), and (iii) the Pour-Over Will of Dorothy J. Spanos ("the Will"), designating Frances as executor of Dorothy's estate.[2] Applicant is a named beneficiary under the Trust..

15.     On or about July 1, 2020, Decedent executed the First Amendment to the Dorothy Spanos Living Trust ("the Trust Amendment") that made several specific distributions to various beneficiaries of cash, personal property, and real property.

16.     Applicant is unaware of any further amendments to the Trust or codicils to the known Will.

17.     At this time, Applicant is not contesting the validity of the Will, the Trust, or its amendment, but rather seeks to have the Trust faithfully interpreted and the Trust and Estate properly administered.

---

[1] The Trust has several named beneficiaries, including Applicant, Frances, Rick, and several grandchildren and great-grandchildren of Decedent.
[2] Frances's husband, Rick, was named as a successor to Frances in the DPOA, Trust, and Will.

## Decedent's Trust Provides for Appointment of Trust Advisor

18.     As settlor of the Trust, Decedent expressly provided for the appointment of a Trust Advisor—a court-appointed neutral third party who is unrelated to any beneficiary—whose "purpose is to direct [Dorothy's] Trustee in matters concerning the trust, and to assist in achieving [Dorothy's] objectives as expressed by the other provisions of [her] estate plan if needed." Trust § 4.01–.02.

19.     As a beneficiary of the Trust, Applicant possesses the right to request the appointment of a Trust Advisor. *See* Trust § 4.02.

20.     A need exists for the appointment of a Trust Advisor because (i) the Trustee has failed to provide basic information about the Trust and its assets, (ii) there are disputes concerning the interpretation of specific distributions in the Trust Amendment, and (iii) concerns relating to the disposition of other real property, personal property, and use and/or wasting of trust assets as detailed herein.

## Trust and Will Control the Payment of Debts, Collection of Claims Owed to the Estate, and Disposition of Significant Assets,

21.     The Trust and the Will control the disposition of Decedent's considerable assets and the Estate is the administrative vehicle through which debts owed to or by the Estate are to be collected and paid. any liabilities that are owed by her estate.

22.     On information and belief, included among the Trust assets are multiple banks accounts, certificates of deposit, stock accounts, and multiple real property tracts.[3]

23.     Additionally, the Estate is owed a large debt by Frances' husband, Rick Shelton, in excess of $550,000.  On information and belief, soon after Decedent's death, Rick became delinquent on payments for what is known as the "Warehouse Loan." Frances' failure to pursue payment created

---

[3] Applicant also recently learned about the existence of the Nick L. Spanos Family Trust of 1994 and Spanos Management LLC—both of which could have a bearing on what property is managed by the Trust, and through which Applicant may ultimately be a beneficiary. On information and belief, Frances is the trustee of the Nick L. Spanos Trust, but she has been less than forthcoming about the existence of these entities and their possible relationship to the Trust.

the appearance of self-dealing and favoritism toward her husband to the detriment of the other beneficiaries of the Trust and Estate.

24.     When confronted by Applicant and other beneficiaries about non-payment of the Warehouse Loan, Frances merely provided copies of (possibly post-dated) checks Rick wrote without proof that those checks had been deposited, and Frances persists in refusing to provide information on the terms of the loan.  The acts and omissions of Frances in this regard further underscore the need for the appointment of a Trust Advisor and Temporary Administrator to ascertain the details of the Warehouse Loan, including but to limited to the terms of the loan, the amount owed, the amortization schedule, and to ensure that timely payments are made without any favoritism or self-dealing.

**Applicant is Entitled to Transparency as well as Accurate and Complete Information**

25.     The Trust provides that the "Trustee must provide an annual accounting to the Income Beneficiaries," which "must include the receipts, expenditures, and distributions of income and principal and the assets on hand for each accounting period." Further, the Trustee "must make the [T]rust's financial records and documents available to beneficiaries at reasonable times and upon reasonable notice for inspection." Trust § 12.13.

26.     Despite repeated written and verbal requests from Applicant and other beneficiaries for Frances has failed to provide full and complete information regarding the Estate and Trust assets, the claims and/or debts against the Estate/Trust owed to creditors, or sufficient information regarding potential self-dealing transactions between Executor/Trustee Frances and Frances's husband, Rick, and has wasted Estate/Trust assets which she has a duty to preserve and manage for the beneficiaries.

27.     As mentioned above, Frances failed to pursue payment from Rick on behalf of the Estate/Trust and persists in refusing to be transparent about the details concerning the Warehouse Loan and the assets of the Estate/Trust. **Frances marital relationship to a debtor of the Estate may also explain why she has failed to offer the Will for probate, which would require her to**

**provide a certified inventory and pursue claims owed to the Estate.** Frances' conflict of interest and unwillingness to act in this regard further undergirds the need for a Temporary Administrator and Trust Advisor.

28. Frances also refuses to provide full and complete information regarding a check she wrote less than two weeks after Decedent passing from one of Decedent's checking accounts to Rick for more than $8,000.00. While this and other questionable transactions may ultimately prove to be legitimate, Frances has utterly failed to be transparent and her persistence in refusing to provide full accounting demonstrating that they are, and thus, creating the appearance of impropriety and self-dealing that necessitate oversight by a Temporary Administrator/Trust Advisor to guard against abuse and breach of the fiduciary duty Frances owes every beneficiary.

**Special Treatment for Family of Executor/Trustee; Waste of Estate/Trust Assets**

29. Immediately following Decedent's death, Frances wasted no less than $48,000 in Estate/Trust assets by hiring private, 24-hour, in-person security guards at the Crawford house, which already had a security system and cameras. Frances has failed to provide any satisfactory explanation for the necessity in retaining 24-hour security for a residence that is otherwise in a safe neighborhood with no history of crime.

30. Moreover, Frances continues to treat Applicant and other beneficiaries differently than she treats herself, her husband, and her and her husband's children. Frances excluded Applicant and her family members—who are named as beneficiaries in the Trust—from accessing Decedent's home and real property in Crawford, which they have always been permitted to use for recreation and leisure.

31. Most egregiously is Frances' handling of a lot and membership at Escondido in Horseshoe Bay when compared to how she has treated Bobby Spanos, Applicant's son. Prior to Decedent's passing, Frances, acting in her capacity as co-Trustee, executed an admittedly invalid transfer to the Escondido lot and memberships that went to her and Rick under the Trust Amendment so that Rick

could play golf whenever he wanted. Conversely, on the date of Decedent's death, Frances kicked Bobby Spanos out of the residence on the Crawford Ranch that he lived in with Decedent and he has been denied free access to the Crawford Ranch since that time despite being entitled to 44 acres of the Crawford Ranch under the Trust Amendment.

32. At the same time, Frances admittedly used Decedent's second home in Horseshoe Bay for her own benefit, and even allowed other family members to use it. Interestingly, Frances never saw fit to spend tens of thousands of dollars on security guards for this seldomly occupied vacation property, which only fuels Applicant's belief that the in-person security at the Crawford Ranch was hired to exclude Applicant and her family. The appointment of a Trust Advisor and Temporary Administrator is necessary to ensure that all beneficiaries have equal access to and enjoyment of the real property held by the Trust for all of their benefit and not for the exclusive use of the Trustee's family.

**Refusal to Honor Decedent's Express Wishes in Division and Use of Real Property**

33. Section 7.11 of the 2020 Trust Amendment provides explicit instructions for the division and distribution of Decedent's Crawford Ranch amongst the various beneficiaries. One such specific distribution requires that 39.322 acres, expressly identified by Decedent, to be sold with the proceeds evenly distributed amongst Frances (1/3), Applicant (1/3), and the Decedent's living grandchildren (1/3). Section 7.11 goes on to identify the acreage to be sold as: the existing house; RV Shed, and 39.322 acres including runway, front pasture, and pasture behind the home . . ." (see excerpt below).

> The existing house; RV Shed; Hanger; and 39.322 acres including runway, front pasture, and pasture behind the home to be sold with proceeds evenly distributed in the following manner:
>
> 1/3 to Frances Shelton;
>
> 1/3 to Katherine Leuschner; and
>
> 1/3 to be evenly divided amongst all living grandchildren at the time of my death.
>
> Property passing under this Section passes free of any administrative expenses or death taxes.

34.    Despite these detailed instructions, Frances (or rather Rick[4]) hired 1519 Surveying & Engineering to gerrymander the distribution so as to package acreage to be distributed to her and her children/stepchildren that she then intends to sell as part of the 39.322 acres in order to maximize the amount of proceeds she and her children/step-children receive while harming Applicant and her children's future use and enjoyment of the Crawford Ranch.  For example, the most recent survey cuts out 12.00 acres from the front pasture fronting Cedar Rock Parkway to be distributed to Frances' son, Nick, as well as prime property for Frances and her step-children Brandon and Brianna, leaving Applicant and her children with less than desirable acreage at the back of the property.  See excerpt below and survey attached hereto as **Exhibit A.**

---

[4] The Survey clearly indicates that it was prepared for Rick Shelton despite him lacking any authority to act on behalf of the Trust.

35. Because of Frances' refusal to honor a specific distribution in the Trust, a Trust Advisor is needed to ensure that Decedent's wishes are honored.

**Necessity for Temporary Administrator and Trust Advisor**

36. As detailed above, a necessity exists for the administration of the Decedent's estate and the appointment of a Trust Advisor because estate assets and/or assets held by the Trust are in danger of being lost or wasted due to the mismanagement of Frances, the Executor/Trustee, and Frances has engaged in behaviors that, at a minimum, have the appearance of self-dealing and border on a breach of her fiduciary duty.

37. Appointing a Temporary Administrator and Trust Advisor are in the best interest of Decedent's estate and Trust as well as Decedent's beneficiaries because it will ensure (i) that an impartial third party is in place to verify and determine the assets of the Estate and Trust, (ii) that the debts owed to and by the Estate/Trust are timely and appropriately paid, (iii) that the beneficiaries are treated equally, (iv) that assets are not wasted or used in an impermissible manner, and (v) that the wishes of the Decedent are honored.

38. As mentioned above, Applicant respectfully requests that the Court appoint the Honorable Judge Robert Stem (retired) as the Temporary Administrator for the Estate of Dorothy J. Spanos and Trust Advisor for the Dorothy Spanos Living Trust.

**Duties and Powers of Temporary Administrator**

39. A Temporary Administrator of the Estate should be given the following duties and powers:

a. To take charge and possession of any real property of the Estate that is not otherwise in the Trust.

b. To take possession of all accounts, funds, stocks, CDs, and other financial accounts subject to probate belonging to Decedent at the time of her death; to open new accounts and to be authorized signatory on those accounts;

c. To execute and deliver any instruments necessary for the sale, transfer or conveyance of any interest in real property owned by Decedent (including but not limited to contracts, deeds, closing statements, purchase and sale agreements, affidavits,

pleadings and other similar documents) at the time of death; to pay court costs and all necessary expenses and attorney's fees; to sue or defend lawsuits; and to exercise any rights necessary to protect Decedent's real and personal property;

d.  To insure the Estate and its assets against liability in appropriate cases;

e.  To insure the Estate property against fire, theft, and other hazards, as deemed necessary by the administrator;

f.  To pay taxes, court costs, and bond premiums, as necessary;

g.  To hire professionals to represent, advise, or assist the Temporary Administrator in performance of his duties;

h.  To consent to and obtain business and financial records, including business records of Spanos Management, LLC, records from financial institutions, records from attorneys for the Decedent and medical records of the Decedent;

i.  To consent to and obtain records of the Nick L. Spanos Family Trust 1994 to determine the relationship between the two trusts and other assets;

j.  To asses and determine all claims and debts owed to the Estate and/or to be paid by the Estate to its creditor; and

k.  To file an Interim Inventory of the Estate of Decedent, within forty-five (45) days of appointment.

## Duties and Powers of the Trust Advisor

40.  Pursuant to the terms of the Trust, a Trust Advisor has, among others, the following broad

powers:

a.  to demand a written accounting from the Trustee, review the accounting, and approve or reject the accounting;

b.  to construe the terms of the Trust to settle any interpretation disputes;

c.  to execute documents and direct the Trustee to execute and deliver documents;

d.  to examine the trust records, including all documentation, inventories, and accountings; and

e.  to employ professionals to advise or assist the Trust Advisor perform his duties.

Trust §§ 4.07, 4.13–.14.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Katherine respectfully requests that the Court make an immediate appointment of the Honorable Judge Robert Stem (retired) as Temporary Administrator of Decedent's estate and Trust Advisor of the Dorothy Spanos Living Trust to serve as such until discharged by order of this Court, for the issuance of Letters of Administration to the Temporary Administration, and for any such further relief to which she may be entitled.

Respectfully submitted,

**BEARD KULTGEN BROPHY BOSTWICK & DICKSON, PLLC**

Julia B. Jurgensen
State Bar No. 24050328
Mark E. Firmin
State Bar No. 24099614
220 South 4th Street
Waco, Texas 76701
(254) 776-5500 – Telephone
(254) 776-3591 – Fax
jurgensen@thetexasfirm.com
firmin@thetexasfirm.com
**ATTORNEYS FOR APPLICANT**

# VERIFICATION

**STATE OF TEXAS** §

§

**COUNTY OF McLENNAN** §

Before me, the undersigned notary public, personally appeared Katherine Leuschner, known to me or proved to me through her Texas Driver's License, who after being duly sworn, upon her oath stated that she is the Applicant in the above case, that she has read the foregoing document, and the factual allegations contained therein are true and correct within her personal knowledge.

_Katherine Leuschner_
Katherine Leuschner

SWORN TO AND SUBSCRIBED before me on the 2nd day of March, 2022.

SARAH JANE ROWELL
Notary Public
STATE OF TEXAS
ID# 13182054-6
My Comm. Exp. Dec. 4, 2022

_Sarah Jane Rowell_
Notary Public, State of Texas

# TAB E

| | | |
|---|---|---|
| IN THE ESTATE OF | § | IN THE COUNTY COURT AT LAW |
| | § | |
| DOROTHY J. SPANOS, | § | NUMBER 1 OF |
| | § | |
| DECEASED | § | McLENNAN COUNTY, TEXAS |

## ORDER APPOINTING TEMPORARY ADMINISTRATOR AND TRUST ADVISOR AND AUTHORIZING ISSUANCE OF LETTERS OF ADMINISTRATION

On this day the Court heard and considered the Application for Appointment of a Temporary Administrator and of a Trust Advisor filed by Katherine Leuschner ("Applicant"). After hearing the evidence in support of the application, the Court finds that Dorothy J. Spanos ("the Decedent") is dead and that four years have not elapsed since the date of Decedent's death on September 18, 2021; that this Court has jurisdiction and venue over this estate, and the interest of this estate and trust requires the immediate appointment of a Temporary Administrator and Trust Advisor; that the Application should be granted, including the issuance of Letters of Temporary Administration, and that the Honorable Robert Stem, would be a suitable temporary administrator and trust advisor, is not disqualified from acting as such, and should be temporary administrator of this estate and trust advisor of the Dorothy Spanos Living Trust.

It is ORDERED that the Honorable Robert Stem is hereby appointed temporary administrator of this estate to serve until _September 5, 2022_, which is not longer than 180 days from the date hereto, and who shall give bond in the sum of $_10,000_ condition as required by law; that unless this appointment is contested after service of citation, it shall be continued in force until _September 5, 2022_ or for such period of time as the Court shall deem in the interest of this estate, or it shall be made permanent if found by law and shall issue

letters of temporary administration within three days after the temporary administrator has qualified according to law; and that the temporary administrator shall have the following powers:

a. To take charge and possession of any real property of the Estate that is not otherwise in the Trust.

b. To take possession of all accounts, funds, stocks, CDs, and other financial accounts subject to probate belonging to Decedent at the time of her death; to open new accounts and to be authorized signatory on those accounts;

c. To execute and deliver any instruments necessary for the sale, transfer or conveyance of any interest in real property owned by Decedent (including but not limited to contracts, deeds, closing statements, purchase and sale agreements, affidavits, pleadings and other similar documents) at the time of death; to pay court costs and all necessary expenses and attorney's fees; to sue or defend lawsuits; and to exercise any rights necessary to protect Decedent's real and personal property;

d. To insure the Estate and its assets against liability in appropriate cases;

e. To insure the Estate property against fire, theft, and other hazards, as deemed necessary by the administrator;

f. To pay taxes, court costs, and bond premiums, as necessary;

g. To hire professionals to represent, advise, or assist the Temporary Administrator in performance of his duties;

h. To consent to and obtain business and financial records, including business records of Spanos Management, LLC, records from financial institutions, records from attorneys for the Decedent and medical records of the Decedent;

i. To consent to and obtain records of the Nick L. Spanos Family Trust 1994 to determine the relationship between the two trusts and other assets;

j. To asses and determine all claims and debts owed to the Estate and/or to be paid by the Estate to its creditor;

k. To file an Interim Inventory of the Estate of Decedent, within forty-five (45) days of appointment; and

l. To consent and obtain all estate planning documents of the Decedent, including but not limited to, any wills, codicils, memorandums, trusts, powers of attorney, directives, drafts, notes, and recordings.

IT IS FURTHER ORDERED that the Honorable Robert Stem is hereby appointed as Trust Advisor of the Dorothy Spanos Living Trust to serve until _September 5, 2022_, which is not longer than 180 days from the date hereto, this his appointment as Trust Advisor does not require a bond, and that his appointment unless this appointment is contested after service of citation, it shall be continued in force for such period of time as the Court shall deem in the interest of the Trust and its beneficiaries, or it shall be made permanent if found by law and shall issue; that Judge Stem shall have the following powers in his capacity of the Trust Advisor as detailed in the Trust:

a. to demand a written accounting from the Trustee, review the accounting, and approve or reject the accounting;

b. to construe the terms of the Trust to settle any interpretation disputes;

c. to execute documents and direct the Trustee to execute and deliver documents;

d. to examine the trust records, including all documentation, inventories, and accountings; and

e. to employ professionals to advise or assist the Trust Advisor perform his duties.

SIGNED this __8__ day of March, 2022.

_____
JUDGE PRESIDING

**APPROVED AS TO FORM:**

**BEARD KULTGEN BROPHY BOSTWICK &**
**DICKSON, PLLC**
220 South Fourth Street
Waco, Texas 76701
(254) 776-5500
(254) 776-3591/Facsimile

BY:  /s/ Mark E. Firmin
     Mark E. Firmin
     State Bar No. 24099614

# TAB F

| | | |
|---|---|---|
| IN THE ESTATE OF | § | IN THE COUNTY COURT OF |
| | § | |
| DOROTHY J. SPANOS, | § | |
| | § | |
| DECEASED | § | McLENNAN COUNTY, TEXAS |

## AGREED ORDER APPROVING THE DISCHARGE OF TEMPORARY ADMINISTRATOR AND TERMINATION OF TEMPORARY ADMINISTRATION

Before this Court is the Agreed Order Approving the Discharge of Temporary Administrator, the Honorable Judge Robert Stem ("Judge Stem" or "Temporary Administrator"), and Termination of Temporary Administration, on behalf of the Estate of Dorothy J. Spanos, Deceased ("the Estate"). The parties to this Agreed Order have represented to the Court the following:

After diligently investigating the assets of the Estate and Dorothy Spanos Living Trust ("the Trust") in cooperation with Frances Shelton, an heir of the Estate and Trustee of the Trust, and Katherine Leuschner, the other heir of the Estate and a beneficiary of the Trust, the parties have been unable to discover debts owed by or to the Estate, or any assets remaining in the Estate beyond a few vehicles and watercraft, whose titles were not changed to the Trust prior to Decedent's passing.

The parties represent that Shelton and Leuschner are the only heirs of the Decedent and primary beneficiaries of the personal property under the terms the Trust and its amendment.

The parties further represent that based on their investigation to date it appears there is no necessity of administration at this time and that Shelton and Leuschner, in their respective capacities, should be authorized to transfer title to any titled assets via an Affidavit of Heirship or other legal means.

The parties further represent that Shelton and Leuschner have agreed that in the event assets or debts of the Estate requiring administration are discovered Shelton, as the Independent Executor named in the Pour-Over Will of Dorothy J. Spanos ("the Will"), will either offer the Will for probate,

Agreed Order Approving the Discharge of Temporary Administrator and Termination of
Temporary Administration on Behalf of the Estate of Dorothy J. Spanos, Deceased        Page 1 of 4
821

probate the Will as a muniment of title, or record a small estate affidavit, whichever is most feasible and cost-effective.

The parties further agree that because there is no necessity of administration at this time and no need for an inventory, that Judge Stem shall be discharged as Temporary Administrator, his bond released, and the Temporary Administration terminated.

The Court, therefore, makes the following findings:

1. By order of the Court, the Honorable Judge Robert Stem was duly appointed to serve as Temporary Administrator of the Estate of Dorothy J. Spanos and as Trust Advisor of the Dorothy Spanos Living Trust on March 8, 2022.

2. Judge Stem has served in the role of Temporary Administrator and Trust Advisor since his appointment and has acted in accordance with this Court's order and pursuant to the powers granted therein.

3. Judge Stem has made a diligent search to determine the assets of the Estate and Trust and debts owed to or by the Estate.

4. Judge Stem has determined, to the best of his knowledge, that the only assets that were not transferred to the Trust were a few vehicles and watercrafts that can be dealt with through an Affidavit of Heirship or other legal means.

5. Judge Stem has determined that there is no necessity for an administration of this Estate at this time.

6. Judge Stem has managed the Estate in compliance with the standards set forth for a temporary administrator in the Texas Estates Code.

7. Judge Stem has not paid any fees or expenses from the assets of the Estate.

Agreed Order Approving the Discharge of Temporary Administrator and Termination of
Temporary Administration on Behalf of the Estate of Dorothy J. Spanos, Deceased                    Page 2 of 4
822

8.      Judge Stem is entitled to be paid compensation for his services as Temporary Administrator pursuant to Texas Estates Code § 352.002 and shall be paid for such services from assets in the Trust.

9.      Judge Stem shall be discharged as Temporary Administrator and the Temporary Administration terminated.

10.     Judge Stem shall continue to serve as the Trust Advisor of the Dorothy Spanos Living Trust in accordance with the Court's order of March 8, 2022 and pursuant to the terms of the Trust.

IT IS ORDERED THAT:

1.      Judge Stem shall be paid for reasonable and necessary services rendered as Temporary Administrator from the assets of the Trust and the parties agree that Judge Stem shall carry his fees forward until his service as the Trust Advisor is complete at which such time he shall submit an invoice to the Trustee;

2.      No necessity of administration exists at this time and that Leuschner and Shelton may execute any documents necessary to transfer title to any personal property or real property in their respective capacities;

3.      That in the event an administration becomes necessary or other assts discovered, Shelton shall timely offer the Will for probate, probate the Will as a muniment of title, or record a small estate affidavit, whichever is most feasible and cost-effective; and

4.      That Judge Stem is discharged as temporary administrator of the Estate and the Temporary Administration is terminated.

SIGNED, ENTERED, and ORDERED on this _____ day of May 2022.

_____
JUDGE PRESIDING

Agreed Order Approving the Discharge of Temporary Administrator and Termination of
Temporary Administration on Behalf of the Estate of Dorothy J. Spanos, Deceased          Page 3 of 4

823

APPROVED AS TO FORM AND SUBSTANCE:


/s/ Robert Stem
Judge Robert Stem, Temporary Administrator


/s/ Mark E. Firmin
Attorney for Katherine Leuschner


/s/ Daniel A. Palmer
Attorney for Frances Shelton

Agreed Order Approving the Discharge of Temporary Administrator and Termination of
Temporary Administration on Behalf of the Estate of Dorothy J. Spanos, Deceased          Page 4 of 4
824

# TAB G

J.A. "ANDY" HARWELL
McLENNAN COUNTY CLERK
FILED

2022 SEP -1 PM 3: 49

IN THE ESTATE OF      §      IN THE COUNTY COURT

DOROTHY J. SPANOS,      §

     §

DECEASED      §      McLENNAN COUNTY, TEXAS

## AGREED ORDER TO EXTEND THE APPOINTMENT OF THE TRUST ADVISOR OF THE DOROTHY SPANOS LIVING TRUST

Before this Court is the Agreed Order Extending the Appointment of the Honorable Judge Robert Stem ("Judge Stem" or "Trust Advisor"), as Trust Advisor to the Trustee of the Dorothy Spanos Living Trust. The parties to this Agreed Order have represented to the Court the following:

The Parties represent that on March 8, 2022, the Court signed an Order appointing Judge Stem as Trust Advisor to the Trustee of the Dorothy Spanos Living Trust through September 5, 2022.

There still exists a necessity for the Trust Advisor to assist in resolving a dispute amongst the Parties involving a perceived ambiguity in the Trust involving the distribution of certain real property, as well as assisting with the division and distribution of some of the personal property.

The Parties request that Judge Stem's appointment as Trust Advisor be extended indefinitely to help facilitate an agreement amongst the Parties for the distribution of real property and to resolve any other disagreements amongst the Parties relating to the Trust that may exist as a result of any perceived ambiguity.

The Court, therefore, makes the following findings:

1. By order of the Court, the Honorable Judge Robert Stem was duly appointed to serve as Trust Advisor of the Dorothy Spanos Living Trust on March 8, 2022.

2. Judge Stem has served as Trust Advisor since his appointment and has acted in accordance with this Court's order and pursuant to the powers granted therein.

3. A necessity stills exists for a Trust Advisor to facilitate in resolving a dispute amongst the Parties arising from a perceived ambiguity in the Trust.

4. Judge Stem shall continue to serve as the Trust Advisor of the Dorothy Spanos Living Trust in accordance with the Court's order of March 8, 2022 and pursuant to the terms of the Trust.

IT IS ORDERED THAT:

1. Judge Stem shall continue to serve as the Trust Advisor of the Dorothy Spanos Living Trust in accordance with the Court's order of March 8, 2022 and pursuant to the terms of the Trust until such time that the Trust Advisor either determines that there no longer exists a necessity for a Trust Advisor, by agreement of the Parties, or if the Court, in the best interest of the Trust, determines cause exists for the removal of the Trust Advisor.

SIGNED, ENTERED, and ORDERED on this ___1st___ day of __September__ 2022.

_____
JUDGE PRESIDING

APPROVED AS TO FORM AND SUBSTANCE:

/s/ Robert Stem
Judge Robert Stem, Trust Advisor to the Trustee
Of the Dorothy Spanos Living Trust

/s/ Mark E. Firmin
Attorney for Katherine Leuschner

/s/ Danny A. Palmer
Attorney for Frances Shelton, Trustee of the
Dorothy Spanos Living Trust

/s/ Jim Dunnam
Attorney for Bobby Spanos, Chris Spanos and
Nicole Spanos

# TAB H



# Robert Stem

Senior District Judge
State of Texas
Mediator

103 Bridge St.
Marlin, Texas 76661

(254) 214-4401

rstemfalls@gmail.com
judgerobertstem.com

May 3, 2023

Mr. Danny Palmer
Haley & Olson
100 Ritchie Road #200
Waco, Texas 76712
Via email: dpalmer@haleyolson.com

Re: Dorothy Spanos Trust

Dear Danny:

I have reviewed the request from Counsel for Kathy Leuschner, Bobby Spanos, Nicole Lawrie, and Chris Spanos to remove Frances Shelton as Trustee. I have also reviewed and taken into consideration your response, as well as all the facts and circumstances that have transpired since my appointment as trust advisor over a year ago.

The Dorothy Spanos Trust is in need of a truly neutral, detached and independent trustee.

As trust advisor, I am exercising the power set forth in Section 4.07(c), and removing Frances Shelton as Trustee. This emailed letter, sent simultaneously to all Counsel, will serve as written notice to Frances Shelton of her removal through her Attorney of Record.
Rick Shelton, as Successor Trustee is not an appropriate substitute trustee, and this letter will serve as written notice to him. In the event you are unable to accept notice on behalf of Rick Shelton, please let me know and I'll proceed to send the appropriate notice.

I have contacted Attorney John Malone, and he has agreed to accept the appointment as Successor Trustee. Under Sections 3.08 and 4.07 of the Trust, John Malone will be appointed as the Special Independent Trustee of the Dorothy Spanos Trust. John Malone is copied on this group email which will serve as written notice of his appointment.

Please contact John Malone in order to provide the necessary initial documents to begin the transition. I am also available to set up a time to have a joint visit with John Malone to speed up the process.

Sincerely,

Robert Stem
Trust Advisor
Dorothy Spanos Trust

# TAB I



FRANCES SPANOS SHELTON, §
*Plaintiff,* §
§
vs. §
§
JOHN MALONE, AS TRUSTEE OF §
THE DOROTHY SPANOS LIVING §
TRUST, §
*Defendant.* §

IN THE DISTRICT COURT

414TH JUDICIAL DISTRICT

MCLENNAN COUNTY, TEXAS

---

## PLAINTIFF'S VERIFIED ORIGINAL PETITION AND REQUEST FOR TEMPORARY RESTRAINING ORDER, TEMPORARY INJUNCTION, AND PERMANENT INJUNCTION

---

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES **FRANCES SPANOS SHELTON** (hereinafter referred to as "Plaintiff" or "Fran") and makes and files this Plaintiff's Original Petition and Request for Temporary Restraining Order, Temporary Injunction, and Permanent Injunction, complaining of **JOHN MALONE, AS TRUSTEE OF THE DOROTHY SPANOS LIVING TRUST** (hereinafter referred to as "Defendant" or "Malone"), and would respectfully show the Court as follows:

### I.
### DISCOVERY CONTROL PLAN

Plaintiff affirmatively pleads that she is seeking monetary relief over $200,000, but not more than $1,000,000, and non-monetary relief. Plaintiff intends to conduct discovery under a Level 3 Discovery Control Plan pursuant to Rule 190.4 of the Texas Rules of Civil Procedure.

**PLAINTIFF'S ORIGINAL VERIFIED PETITION AND REQUEST FOR**     **PAGE 1**
**TEMPORARY RESTRAINING ORDER, TEMPORARY INJUNCTION,**
**AND PERMANENT INJUNCTION**

9

## II.
## PARTIES

Plaintiff Frances Spanos Shelton is an individual residing in Crawford, McLennan County, Texas. Plaintiff is a named beneficiary of the Dorothy Spanos Living Trust ("the Trust" or "Trust") and the First Amendment to the Dorothy Spanos Living Trust ("the First Amendment").

Defendant John Malone is an individual residing in McLennan County, Texas, serving as the trustee of the Trust. Malone may be served with process at his business address of 5400 Bosque Blvd Ste 308, Waco, TX 76710; or wherever he may be found. Malone's residential address is unknown at this time.

## III.
## VENUE

Venue is proper in McLennan County because all or a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in McLennan County. Tex. Civ. Prac. & Rem. Code Ann. § 15.002(a)(1). Plaintiff incorporates the factual allegations, below, in this venue paragraph.

## IV.
## SUMMARY OF THE FACTS

Dorothy Spanos, Fran's mother, created the Trust on December 19, 2017. Dorothy executed the First Amendment on July 1, 2020. Dorothy served as trustee of the Trust until her death on September 18, 2021. Fran served as trustee after Dorothy's passing until John Malone was appointed on May 3, 2023.

The First Amendment directs that as soon as practicable after Dorothy's death, the 261.733-acre ranch, located in Crawford, Texas, ("the Trust Property") was to be partitioned. The house, RV shed, airplane hangar, and 39.322 acres including runway, front pasture, and back pasture ("the homeplace") were to be sold with the proceeds divided as follows:

1. 1/3 to Fran;

2. 1/3 to Katherine "Kathy" Leuschner (Fran's only sibling); and

**PLAINTIFF'S ORIGINAL VERIFIED PETITION AND REQUEST FOR**       **PAGE 2**
**TEMPORARY RESTRAINING ORDER, TEMPORARY INJUNCTION,**
**AND PERMANENT INJUNCTION**

3. 1/3 to be divided evenly among Dorothy's grandchildren (Robert "Bobby" Spanos, Nicole Lawrie, Christopher Spanos, Brandon Shelton, Brianna Hunstiger, and Nicholas Shelton).

The remainder of the Trust Property was to be divided as follows:

1. Fran: Barn, Stables, Arena; and 60 adjoining acres of land;

2. Kathy: Rock house and 60 adjoining acres of land;

3. Bobby: 44 acres;

4. Nicole: 12 acres;

5. Christopher: 12 acres;

6. Brandon: 12 acres;

7. Brianna: 12 acres; and

8. Nicholas: 12 acres

After Malone was appointed Trustee, he proposed tract divisions. The Trust Property currently has only one entrance and one road which leads to the homeplace, the rock house, stables, and all other fixtures and areas of the Trust Property, causing potential access issues upon partition.

Kathy and her children first raised an issue about access to their proposed tracts in July 2023. They proposed two options: (1) that the owner of the homeplace would grant an access easement to all beneficiaries, Fran would grant Kathy and her children (Bobby, Nicole, and Christopher) an access easement, and Fran would grant Kathy's children a second easement on the back half of Fran's proposed tract; or (2) the owner of the homeplace would grant an easement to all beneficiaries, and Kathy would give an easement to her own children. Kathy called the first option her preferred option and the second an alternate.

In November 2023, Fran raised concerns about the unfairness of burdening her proposed tract for the benefit of other beneficiaries—that this would only exacerbate the value discrepancy between Kathy's proposed tract and Fran's. Malone dismissed Fran's concern about receiving far less valuable land, stating that the sisters were to receive equal acreage, not equal value. So began

**PLAINTIFF'S ORIGINAL VERIFIED PETITION AND REQUEST FOR**     **PAGE 3**
**TEMPORARY RESTRAINING ORDER, TEMPORARY INJUNCTION,**
**AND PERMANENT INJUNCTION**

Malone's consistent, invariable track record of benefitting Kathy and her children at Fran's expense.

What's more, Malone has scolded Fran like a child for asking for clarifications of Malone's decisions. For example, once when asking for clarification through counsel, Malone responded, "once a decision is made, there need be no rationale given to explain the decision." This hardly comports with a trustee's duty of full disclosure and transparency.

In January of 2024, Malone issued his "final" decision regarding the easement issue. Malone decided that Fran would receive the road, Fran would grant all beneficiaries and the homeplace an access easement for the road, and that Kathy and Fran would be responsible for ensuring that their children had access to the children's tracts. Malone led Fran and the other beneficiaries to believe this decision was final.

Shockingly, Malone changed his mind and further burdened Fran's proposed tract with yet another access easement for Bobby. Malone's altered "final" decision is inexplicable in light of the photographic and video evidence that Bobby does not even need the easement.

Both of these easements are unnecessary and constitute a breach of Malone's fiduciary duties to Fran as a beneficiary.

In September 2024, Malone requested that Fran waive her equal acreage to fix a problem made by the survey he had commissioned to finalize the proposed tracts. Apparently, Malone now believes that the sisters are not even entitled to receive equal acreage despite the plain language of the Trust.

While Malone is more than willing to give Fran the short end of the stick, he has expressed a complete unwillingness to deny Kathy or her children any request. They have, in effect, a genie with unlimited wishes. To provide yet another example, when Fran suggested that Kathy could build her own road at a relatively low cost compared with the burden on Fran's proposed tract, Malone refused to seriously consider the possibility. Instead, he sheepishly asked Kathy if she might possibly consider building the road. When she refused, Malone did exactly what his prior

**PLAINTIFF'S ORIGINAL VERIFIED PETITION AND REQUEST FOR** **PAGE 4**
**TEMPORARY RESTRAINING ORDER, TEMPORARY INJUNCTION,**
**AND PERMANENT INJUNCTION**

conduct indicated he would do—fold and let Kathy win. Malone has also continued to ignore video and photographic evidence that the second easement he granted across Fran's property to Bobby is entirely unnecessary. After all, such evidence is irrelevant when you have made up your mind to treat Kathy and her children like the prodigal son and treat Fran like a redheaded stepchild left hanging out to dry.

## V.
## <u>CAUSE OF ACTION: BREACH OF FIDUCIARY DUTY</u>

Plaintiff incorporates the preceding paragraphs of this Petition as if set forth at this point, *verbatim*.

Trustees owe fiduciary duties of loyalty, good faith and fair dealing, to make a full disclosure, and candor to trust beneficiaries. They owe these duties to each beneficiary individually. As trustee of the Dorothy Spanos Living Trust and the First Amendment thereto, Defendant owes these fiduciary duties to Plaintiff, a beneficiary of the Trust.

Defendant has breached each of these duties to Plaintiff in at least the following ways:

(a) proposing to burden Plaintiff's proposed tract with not one, but two, completely unnecessary easements to the benefit of some beneficiaries completely at Plaintiff's expense;

(b) devaluing the Trust Property for the benefit of some beneficiaries at the expense of others;

(c) consistently and invariably making decisions that benefit some beneficiaries at the expense of other beneficiaries;

(d) refusing to consider reasonable alternatives to burdening one beneficiary for the benefit of another, such as building a road on Kathy's proposed tract;

(e) refusing to even discuss his rationale for making decisions that are detrimental to Plaintiff with her;

**PLAINTIFF'S ORIGINAL VERIFIED PETITION AND REQUEST FOR**      **PAGE 5**
**TEMPORARY RESTRAINING ORDER, TEMPORARY INJUNCTION,**
**AND PERMANENT INJUNCTION**

(f) increasing the value of Kathy and Bobby's proposed tracts at the expense of significantly devaluing Plaintiff's proposed tract; and

(g) attempting to deprive Plaintiff of the equal acreage she is entitled to under the plain language of the Trust and First Amendment.

Defendant negligently, grossly negligently, or intentionally failed to act in good faith and/or failed to use reasonable care in carrying out the fiduciary duties he owes to Plaintiff.

Defendant's negligence, gross negligence, or intentional conduct, all or singular, individually or in combination, was/were a proximate cause of the resulting injuries and damages sustained by Plaintiff.

## VI.
## APPLICATION FOR TEMPORARY RESTRAINING ORDER

Plaintiff hereby respectfully requests this Court to enjoin Defendant, his agents, employees, servants, attorneys, and those in active concert or participation with him, without notice or a hearing, from the following: (a) executing any easement, right-of-way, or right-of-access agreement pertaining to the Trust Property; (b) granting or conveying any easement, right-of-way, or right-of-access agreement pertaining to the Trust Property; and (c) from partitioning, disposing of, selling, or conveying any of the Trust Property.

It is highly probable that Plaintiff will recover from Defendant after a trial on the merits based on the summary of facts and cause of action alleged in Section V above. As previously described, Defendant has engaged in various wrongful conduct against Plaintiff, including, but not limited to, breach of fiduciary duties owed to Plaintiff.

If the Plaintiff's Application for Temporary Restraining Order against Defendant is not granted, without notice and a hearing, harm or injury is imminent and irreparable because, under these circumstances, there is a real and present risk that Plaintiff will suffer irreparable physical

**PLAINTIFF'S ORIGINAL VERIFIED PETITION AND REQUEST FOR**      **PAGE 6**
**TEMPORARY RESTRAINING ORDER, TEMPORARY INJUNCTION,**
**AND PERMANENT INJUNCTION**

14

damage to her expectancy interest in the Trust Property such that an eventual award of money damages will be an inadequate remedy. Plaintiff will also suffer irreparable damage due to the possible sale of the Trust Property such that an eventual award of money damages will be an inadequate remedy. Defendant has and therefore will cause irreparable damage to Plaintiff, unless Defendant is immediately restrained and enjoined pending a Temporary Injunction hearing. Defendant is preparing to list the homeplace for sale at this time and continues to perform work based on his current decision to unlawfully encumber Plaintiff's proposed tract. Therefore, there is not enough time to serve notice and hold a hearing prior to Plaintiffs being irreparably damaged.

Plaintiff has no adequate remedy at law for the injuries and damages described herein because: (a) once the Trust Property is partitioned and deeds are executed, an eventual award of money damages will be an inadequate remedy; (b) the injuries involve granting access easements over Fran's proposed tract for the benefit of at least seven individuals and the homeplace such that an eventual award of money damages will be an inadequate remedy; (c) the ability to enforce and restore Plaintiff's equitable rights will become significantly more difficult and expensive, and the burden on the parties (and the Court) will be unreasonably and unnecessarily increased, if the Temporary Restraining Order is not granted; and (d) Plaintiffs have no statutory, administrative, or other remedy that is as practical or efficient as the equitable injunctive remedy requested herein.

This controversy is not caused by any inequitable conduct on Plaintiff's part in this case. Plaintiff has continually addressed these issues with Defendant. However, Defendant has refused to even discuss the rationale behind his decision with Plaintiff. The potential loss to Plaintiff would be substantial if the Temporary Restraining Order is not granted, while granting of the Temporary Restraining Order will not result in substantial harm to Defendant pending a Temporary Injunction hearing on this matter. The probable harm that will be sustained by Plaintiff

**PLAINTIFF'S ORIGINAL VERIFIED PETITION AND REQUEST FOR**      **PAGE 7**
**TEMPORARY RESTRAINING ORDER, TEMPORARY INJUNCTION,**
**AND PERMANENT INJUNCTION**

15

if the Temporary Restraining Order is not granted far outweighs any damage that will be sustained by Defendant by the granting of the Temporary Restraining Order and also far outweighs any benefit that Defendant would receive if the Temporary Restraining Order was denied.

It is therefore extremely important that this Court preserve the status quo and the rights of the parties involved by Temporary Restraining Order pending a Temporary Injunction hearing in this case so that the Court can properly protect the respective equities of the parties.

## VII.
## APPLICATION FOR TEMPORARY INJUNCTION

Plaintiff hereby incorporates by reference the factual allegations and causes of action stated in Sections IV and V above, as well as the statements in Plaintiff's Application for Temporary Restraining Order in Section VI above. After proper notice and a hearing, Plaintiff respectfully requests this Court to temporarily enjoin Defendant, his agents, employees, servants, attorneys, and those in active concert or participation with him, from the following: (a) executing any easement, right-of-way, or right-of-access agreement pertaining to the Trust Property; (b) granting or conveying any easement, right-of-way, or right-of-access agreement pertaining to the Trust Property; and (c) from partitioning, disposing of, selling, or conveying any of the Trust Property.

## VIII.
## APPLICATION FOR PERMANENT INJUNCTION

Plaintiff hereby incorporates by reference the factual allegations and causes of action stated in Sections IV and V above, as well as the statements in Plaintiff's Application for Temporary Restraining Order in Section VI above, as well as the statements in Plaintiff's Application for Temporary Injunction in Section VII above. After a trial on the merits of this matter, Plaintiff respectfully request this Court and/or a jury to permanently enjoin Defendant, his agents, employees, servants, attorneys, and those in active concert or participation with him, from executing, granting, or conveying any easement, right-of-way, or right-of-access agreement pertaining to the Trust Property.

**PLAINTIFF'S ORIGINAL VERIFIED PETITION AND REQUEST FOR**      **PAGE 8**
**TEMPORARY RESTRAINING ORDER, TEMPORARY INJUNCTION,**
**AND PERMANENT INJUNCTION**

## IX.
## DAMAGES

Pursuant to Rule 47, TEX. R. CIV. P., Plaintiff seeks monetary relief over $200,000 but not more than $1,000,000.

## X.
## JURY DEMAND

Plaintiff hereby requests and demands a jury trial.

## XI.
## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully requests that the Court:

a. Issue a temporary restraining order enjoining Defendant as requested herein;

b. Order Defendant to appear and show cause, and following such hearing, issue a temporary injunction restraining him as requested herein;

c. Order a permanent injunction upon final trial of this cause enjoining Defendant as requested herein;

d. Award Plaintiff all damages to which she is entitled;

e. Render judgment against Defendant for costs of suit and pre-judgment and post-judgment interest at the highest rates allowed by law,

f. and for all such other and further relief to which Plaintiff may be justly entitled.

Respectfully submitted,

**CHERRY JOHNSON SIEGMUND JAMES, PLLC**
7901 Fish Pond Road
Second Floor
Waco, Texas 76710
Telephone: (254) 732-2242
Facsimile: (866) 627-3509

BY: /s/ Craig D. Cherry
**CRAIG D. CHERRY**
State Bar No. 24012419
Email: ccherry@cjsjlaw.com
**RYAN C. JOHNSON**
State Bar No. 24048574
Email: rjohnson@cjsjlaw.com
**SCOTT H. JAMES**
State Bar No. 24037848
Email: sjames@cjsjlaw.com
**M. KATIE QUILLEN**
State Bar No. 24133047
Email: kquillen@cjsjlaw.com

**ATTORNEYS FOR PLAINTIFFS**

**PLAINTIFF'S ORIGINAL VERIFIED PETITION AND REQUEST FOR**     **PAGE 10**
**TEMPORARY RESTRAINING ORDER, TEMPORARY INJUNCTION,**
**AND PERMANENT INJUNCTION**

18

## <u>DECLARATION OF FRANCES SPANOS SHELTON</u>

My name is Frances Spanos Shelton. My date of birth is July 24, 1960. I reside at 11339 Cedar Rock Parkway, Crawford, Texas, 76638. I have personal knowledge of the facts alleged in Plaintiff's Verified Original Petition and Request for Temporary Restraining Order, Temporary Injunction, and Permanent Injunction. I declare under penalty of perjury that the facts stated in Sections IV, VI, VII, and VIII of Plaintiff's Verified Original Petition, Request for Temporary Restraining Order, Temporary Injunction, and Permanent Injunction are true and correct.

Declarant states nothing further.

Executed in Llano County, Texas this the 24th day of October 2024.

Frances Spanos Shelton

**PLAINTIFF'S ORIGINAL VERIFIED PETITION AND REQUEST FOR**     **PAGE 11**
**TEMPORARY RESTRAINING ORDER, TEMPORARY INJUNCTION,**
**AND PERMANENT INJUNCTION**

# TAB J

February 24, 2025

The Honorable Judge Robert Stem
Trust Advisor of The Dororthy Spanos Living Trust

Dear Judge Stem:

I hereby resign as Trustee of The Dororthy Spanos Living Trust, effective 12 o'clock noon on February 24, 2025.

Sincerely,

*John Malone*

By: John Malone

990

# TAB K

FILED
MCLENNAN COUNTY
2/25/2025 11:27 AM
JON R. GIMBLE
DISTRICT CLERK
Shalakeia Richardson

CAUSE NO. 2024-3035-5

| | | |
|---|---|---|
| FRANCES SPANOS SHELTON, | § | IN THE DISTRICT COURT |
| | § | |
| PLAINTIFFS, | § | |
| | § | |
| V. | § | 414TH JUDICIAL DISTRICT |
| | § | |
| JOHN MALONE, AS TRUSTEE OF THE DOROTHY | § | |
| SPANOS LIVING TRUST, | § | |
| | § | |
| DEFENDANTS, | § | MCLENNAN COUNTY, TEXAS |
| | § | |
| V. | § | |
| | § | |
| VERNON LEUSCHNER , AS DURABLE POWER | § | |
| OF ATTORNEY FOR KATHERINE LEUSCHNER, | § | |
| ROBERT LEE SPANOS, CHRISTPHER BLAKE | § | |
| SPANOS, AND KATHRYN NICOLE LAWRIE, | § | |
| | § | |
| INTERVENORS. | § | |

## MOTION TO APPOINT RECEIVER

### TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES, Intervenor, VERNON LEUSCHNER, as durable power of attorney for

KATHERINE LEUSCHNER, (collectively as "Leuschner Intervenor" ), and files this Motion to

Appoint a Receiver over certain assets of the Dorothy Spanos Living Trust (the "Trust"), to distribute

and sell personal and real property, in accordance with the terms of the Trust, and in furtherance

thereof, would respectfully show unto the Court as follows:

**A.     Order Requested**

1.     Leuschner Intervenor asks the Court to sign the attached order appointing a Receiver.

*See* Proposed Order Appointing a Receiver attached hereto as **Exh. 1**. The Court has authority to do

so under Texas Civil Practice and Remedies Code § 64.001 and Texas Property Code §

114.00(8)(a)(5).[1] On Monday, February 24, 2024, the Trustee, John Malone, resigned as Trustee of the Dorothy Spanos Living Trust. *See* resignation letter of John Malone attached hereto as **Exh. 2**. **Even if the Trustee had not resigned, the Trustee would have been unable to carry out his duties because of Plaintiff Frances Spanos Shelton's suit and subsequent flood of filings seeking to undue the last three years in an effort to reinstall herself as Trustee despite having repeatedly shown herself to be unfit to serve.**

2.      Plaintiff Frances Spanos Shelton ("Plaintiff" or "Shelton") filed a meritless suit against John Malone, Trustee for the Dorothy Spanos Living Trust ("Trustee" or "Malone") for supposed breach of fiduciary, and she obtained a temporary restraining order that prevented the Trustee from carrying out express duties under the Trust—duties that Plaintiff failed to properly point out for the Court in her Petition. Although Intervenor believes a temporary injunction was unlikely, the practical effect of Shelton's suit was to mire the Trustee in litigation – criticized and sued even before pending decisions were made, property sold or the real property at issue here has been divided and distributed. Shelton's suit had its intended effect – to freeze those actions/decisions before they are made, despite the wide exculpatory provisions of the Trust itself, and Malone ultimately resigned. *See* §§ 12.07-12.08 of the Dorothy Spanos Living Trust attached to the Joint Petition in Intervention as *Exh. D* which is incorporated herein by reference.

3.      As such, the Trustee, whether he had resigned or not, was unable to carry out his duties, make decisions, and perform the actual work under the Trust due to the simple threat of Shelton suing for *any* decision with which she does not agree, regardless of the terms of the Trust. Apparently, Shelton also now contends that the Honorable Judge Robert Stem ("Judge Stem") – who previously removed

---

[1] A court of appeals decision is attached as an example of a court appointing a Receiver in a trust matter. *See* Exhibit 7.

Shelton and appointed Malone as her successor and who has served as Trust Advisor since March 8, 2022 – was also not properly appointed, and that Shelton should be reinstated as Trustee.

4. Shelton's latest attack in the Trust and its beneficiaries is in spite of McLennan County Court At Law No. 1 finding in an Order dated March 8, 2022 that it had jurisdiction and venue to appoint Judge Stem as the Temporary Administrator of the Estate of Dorothy Spanos and Trust Advisor of the Dorothy Spanos Living Trust and his appointment being reaffirmed *by agreement of the parties* on May 18, 2022 and again on September 1, 2022. A true and correct copy of the Order appointing Judge Stem as Trust Advisor and two Agreed Orders extending Judge Stem's appointment as Trust Advisor are attached hereto as **Exhs. 3, 4,** and **5**.

5. The endless stream of litigation – for each decision made and to be made and now for alleged jurisdictional issues – is not efficient, fair to the beneficiaries, or *the Court* – because the litigation (and the threat of litigation) – in effect will force the Court to administer the Trust in minute detail, in a fight over every decision – so as to preview and insulate a Trustee for the decisions he/she needs to make, particularly those contrary to Shelton's wishes. Even then, the *spectre* of suit will remain— whether it is Shelton's attempt to reestablish control or if a new successor Trustee were appointed. And what independent party, that has any sense, would want to serve as Trustee in those circumstances? The answer here is to appoint a Receiver to get the job done, and get the beneficiaries to the end of this process (that thus far has taken an inexorable 3.5 years).

### B. This Court has authority to appoint a Receiver.

6. Section 114.008(a)(5) of the Texas Property Code and § 64.001 of the Texas Civil Practice Remedies Code are statutory devices to assist beneficiaries of a trust in circumstances where a breach of trust has been alleged (as here), where persons have a joint interest in property (as here), and in any other case in which a Receiver may be appointed under the rules of equity. A beneficiary of a trust is

entitled to receive aid from a court in order to timely and efficiently fulfill the terms of a trust in the event of a breach of trust.

7.      Here, Intervenor brings claims against Shelton for breach of trust, including her improper use and wasting of trust funds and refusal to adhere to the terms of the Trust[2]. Indeed, Shelton was removed by the Trust Advisor, Judge Stem, due to her breach of trust, and Shelton in turn sued her successor, Malone, for breach of trust for attempting to follow the very provisions of the Trust that Shelton refused to abide by, due to her own self-dealing and breaches of her duty of impartiality and loyalty. *See* Letter Removing Fran Shelton as Receiver attached hereto as **Exh. 6**. **Regardless of whether Judge Stem was validly appointed (which he was) the fact that a highly respected judge that the parties had agreed to serve as Truste Advisor ultimately removed Shelton as Trustee for her inability to be impartial only underscores the necessity for a Receiver.**

8.      There is no realistic substitute trustee because Shelton inevitably will sue any substitute trustee that does not favor her or her children, regardless of whether the decisions made are in the best interest of the trust or all beneficiaries, and Shelton herself has shown that she is unable to serve as Trustee due to her inability to act in good faith or impartially.[3] Thus, a Receiver that is appointed by, and solely answerable to the Court, is in the best interest of the Trust and all beneficiaries.

9.      Texas Civil Practice & Remedies Code § 64.001 provides:

*Availability of Remedy.*

(a) *A court of competent jurisdiction* may appoint a Receiver:

(1) in an action by a vendor to vacate a fraudulent purchase of property;

(2) *in an action by a creditor to subject any property or fund to his claim;*

(3) **in an action between partners or others jointly owning or interested in any property or fund;**

---

[2] Importantly, a Receiver is an appropriate remedy whether a breach of trust has occurred or *might* occur.
[3] And even if Shelton disclaims the intent to act in this manner – the events leading to this point will dissuade any independent party to avoid the substitute trustee role here.

(4) in an action by a mortgagee for the foreclosure of the mortgage and sale of the mortgaged property;

(5) for a corporation that is insolvent, is in imminent danger of insolvency, has been dissolved, or has forfeited its corporate rights; or

(6) *in any other case in which a Receiver may be appointed under the rules of equity.*

Tex. Civ. Prac. & Rem. Code § 64.001 (2021) (emphases added).

10.     Here, the Court possesses express authority to direct its Receiver to sell and distribute personal and real property owned by the Trust, as is *also* expressly required/allowed by the Trust.

11.     The effect of a Receivership order is to create a Receivership estate for all property and funds owned or possessed by the Trust. Under Texas law, the power of a Receivership derives from the doctrine of *custodia legis*. Once a Receivership order is signed all of the Trust's property becomes property *in custodia legis*, or "in the custody of the law."[4] *Custodia Legis* occurs immediately upon the appointment of the Receiver, even prior to his or her qualifying by filing the bond and oath of office.[5] The trust's property is thus considered to be in the constructive possession of the court, with the Receiver acting as an officer of the Court within the terms of the Order granting the Receivership. During the pendency of a Receivership, the Receiver has exclusive possession and custody of the trust's property to which the Receivership relates.[6]

12.     Based on these statutes, the only requirement is that the court have "appropriate jurisdiction" or "competent jurisdiction" – which is not an issue here, as the Court has jurisdiction under the Texas Property Code and Texas Civil Practice Remedies Code.

13.     Also attached as **Exh. 7** is a court decision as an example. *See Estate of Benson, No. 04-15-00087-CV, 2015 WL 5258702, at *5 (Tex. App.—San Antonio Sept. 9, 2015, pet. dism'd). See also Elliott v.*

---

[4] *First Southern Properties, Inc. v. Vallone*, 533 S.W.2d 339, 343 (Tex. 1976).
[5] *Cline v. Cline*, 323 S.W.2d 276, 282 (Tex. Civ. App. – Houston 1959, writ ref'd, n.r.e.).
[6] *First S. Props.*, 533 S.W.2d at 343; *Ellis v. Vernon Ice Co. & Water Co.*, 86 Tex. 109, S.W. 858 (1893).

*Weatherman*, 396 S.W.3d 224, 228 (*Tex. App.—Austin 2013, no pet.*). In *Benson*, the San Antonio Court of Appeals affirmed the appointment of co-temporary Receivers due to an alleged breach of trust. Not only has Intervenor filed a Petition in Intervention alleging breach of trust by Shelton in connection with her removal and refusal to adhere to the Trust, but Shelton sued the now resigned Trustee for breach of fiduciary duty for attempting to carry out the same provisions of the Trust. There is little hope here that the parties could agree on the appointment of a successor Trustee, Shelton (and her husband) is clearly unfit, and finding anyone willing to be a Trustee when one has already been sued are virtually *nil*. Because the parties are clearly at odds and there is little hope of a reasonable, quick, and efficient resolution after 3.5 years, the circumstances justify the appointment of a Receiver to fulfill the terms of the Trust.

## C. Leuschner Intervenor is entitled to the Appointment of a Receiver.

14. The Trust owns and possesses personal and real property that must be distributed and/or sold under the express provisions of the Trust. *See* the Dorthy Spanos Living Trust and Amendment to Dorothy Spanos Living Trust attached to the Joint Petition in Intervention as *Exhs. D and E* which are incorporated herein by reference. Because the appointment of a successor Trustee is unlikely and Shelton has demonstrated that she is unfit to serve, the circumstances justify the appointment of a Receiver that is solely answerable to the Court and not constrained by the threats of frivolous suits and unrighteous and undignified tantrums of a former trustee and beneficiary.

15. Appointing a Receiver and turning over Trust property to a Receiver will not disrupt the Trust but instead will enable the expeditious and efficient fulfillment of express terms of the Trust that has neither been resolved nor distributed for the last 3.5 years.

16. Accordingly, Leuschner Intervenor asks the Court to order the Trustee to turn over all property that is in the Trustee's possession or subject to the Trustee's control, together with all documents related to the property, to appoint a Receiver with the authority to take possession of the

Trust property, and to deal with such property according to the terms of the Trust, including acting so as to pay the fees and costs of the Receiver.

17.     Leuschner Intervenor asks the Court to appoint Mr. James W. Volberding, Attorney, CPA, Volberding Legal Group, PLLC, 110 N. College Avenue, Suite 1850, Tyler, TX 75702, (903) 597-6622, as Receiver. Mr. Volberding is an experienced civil litigation attorney and Receiver, and a copy of his *curriculum vitae* is attached hereto as **Exh. 8**. Leuschner Intervenor asks the Court to authorize all actions and powers to the Receiver contained in the attached proposed order of appointment.

**PRAYER**

Wherefore, Intervenor, VERNON LEUSCHNER, as durable power of attorney for KATHERINE LEUSCHNER respectfully requests that the Court appoint a Receiver to deal with personal and real property owned by the Dorothy Spanos Living Trust in accordance with the terms of the Trust, and for such other relief in law or in equity to which Intervenor shows itself to be justly entitled.

Respectfully submitted,

**BEARD KULTGEN BROPHY
BOSTWICK & DICKSON, PLLC**

Andy McSwain
State Bar No. 13861100
Mark E. Firmin
State Bar No. 24099614
220 South 4th Street
Waco, Texas 76701
(254) 776-5500 – Telephone
(254) 776-3591 – Fax
mcswain@thetexasfirm.com
firmin@thetexasfirm.com

**ATTORNEYS FOR INTERVENOR
VERNON LEUSCHNER, AS THE DURABLE
POWER OF ATTORNEY FOR KATHERINE
LEUSCHNER**

## VERIFICATION

**THE STATE OF TEXAS**          '
                                '
**COUNTY OF MCLENNAN**          '

BEFORE ME, the undersigned authority, on this day personally appeared the undersigned affiant, Mark E. Firmin, who, after being by me duly sworn, on oath swears that the following facts are true:

> "I am the attorney for Intervenor Vernon Leuschner, as the durable power of attorney of Katherine Leuschner, in this cause. I have personal knowledge of the facts stated in the foregoing Motion for Appointment of Receiver. They are true and correct to the best of my knowledge."

_____
Mark E. Firmin

SUBSCRIBED AND SWORN to before me by Mark E. Firmin on February 25, 2025, to certify which witness my hand and official seal.

_____
Notary Public, State of Texas

SARAH JANE ROWELL
Notary Public, State of Texas
Comm. Expires 12-04-2026
Notary ID 131820546

## CERTIFICATE OF SERVICE

I certify that on February 25, 2025, a true and correct copy of the foregoing document was served upon all known counsel of record via certified mail, first class mail, facsimile, e-mail, and/or electronically through the Court's Filing Manager, in accordance with the Texas Rules of Civil Procedure.

Mark E. Firmin

# EXHIBIT 1

| | | |
|---|---|---|
| FRANCES SPANOS SHELTON, | § | IN THE DISTRICT COURT |
| | § | |
| PLAINTIFFS, | § | |
| | § | |
| V. | § | 414TH JUDICIAL DISTRICT |
| | § | |
| JOHN MALONE, AS TRUSTEE OF THE DOROTHY | § | |
| SPANOS LIVING TRUST, | § | |
| | § | |
| DEFENDANTS, | § | MCLENNAN COUNTY, TEXAS |
| | § | |
| V. | § | |
| | § | |
| VERNON LEUSCHNER, AS DURABLE POWER | § | |
| OF ATTORNEY FOR KATHERINE LEUSCHNER, | § | |
| ROBERT LEE SPANOS, CHRISTPHER BLAKE | § | |
| SPANOS, AND KATHRYN NICOLE LAWRIE, | § | |
| | § | |
| INTERVENORS. | § | |

## ORDER APPOINTING RECEIVER

CAME ON to be heard Intervenor, VERNON LEUSCHNER, as durable power of attorney for KATHERINE LEUSCHNER, (collectively as "Leuschner Intervenor"), Application to Appoint a Receiver. The Court, after careful consideration of the motion and the papers on file herein, determines the motion should be granted. The Receiver should take possession of, distribute, and/or sell the remaining personal and real property of the Dorothy Spanos Living Trust, in accordance with the terms of the Trust.

## I
## IDENTIFICATION OF THE ENTITY/ASSETS FOR WHOM RECEIVER IS APPOINTED

1.    The Court hereby appoints a Receiver over the remaining assets of the Dorothy Spanos Living Trust hereinafter designated as the "Trust."

## II
## FINDINGS AND CONCLUSIONS DEMONSTRATING THE NEED FOR RECEIVERSHIP

2. The Court takes judicial notice of its file and the underlying proceedings. Based on the pleadings and the evidence before this Court, the Court finds:

a. The Court has subject matter jurisdiction over this action and personal jurisdiction over the parties to this case.

b. The Trust owns substantial real property and personal property which is to be sold and/or distributed under the express terms of the Trust;

c. The assets of the Trust and its beneficiaries are in danger of being materially injured if a Receiver is not appointed to carry out the terms of the Trust.

d. The lawsuit filed by Frances Shelton against Trustee, John Malone, and his subsequent resignation, has impaired the ability and willingness of the Trustee to act so as to efficiently and promptly carry out the terms of the Trust, and the subsequent resignation of Malone has likely eliminated the viability of appointment of an independent successor Trustee to carry out the terms of the Trust.

e. All other legal and equitable remedies are inadequate to protect the property of the Trust and its beneficiaries.

f. All other requirements of law have been complied with.

g. The appointment of a Receiver is necessary to conserve the assets of the Trust, minimize harm to the beneficiaries of the Trust, and effectuate the terms of the Trust in an efficient and expeditious manner.

h. Irreparable damage will ensue to the beneficiaries of the Trust unless there is an immediate distribution and liquidation of the property of the Trust pursuant to the terms of the Trust.

i. This Order of appointment of a Receiver is necessary, appropriate, and authorized pursuant to:

    i. Texas Civil Practice and Remedies Code, chapter 64;

    ii. Texas Property Code, chapter 114; and

    iii. Texas common law.

j. To achieve the purposes of the Receivership, the Receiver will need the authority set forth in this Order.

k. That appointment of a Receiver over the Trust's assets will not disrupt the Trust's operations and is in the best interest of the Trust and its beneficiaries.

## IV
### IDENTIFICATION OF THE RECEIVERSHIP
### ASSETS OF THE RECEIVERSHIP ESTATE

3.      The **Receivership Assets** of the **Receivership Estate** shall consist of the following:

a.      All property, wherever located, including accounts, personal property, intangible property, real property, interests in any corporation, limited liability company, general partnership, limited partnership, real estate investment trust, or any trust, and all other property in whatever form.

4.      "**Receivership Assets**" means assets, personal property, real property, accounts, and contract rights of any and every kind whatsoever, including without limitation all non-exempt assets described in this Order, that are:

a.      owned, controlled, or held, in whole or in part, by or for the Trust, directly or indirectly;

b.      in the actual or constructive possession or control, directly or indirectly, of the Trust and its Trustee;

c.      held by an agent, including attorneys, of the current or former Trustees of the Trust;

d.      owned, controlled, or held, in whole or in part, directly or indirectly, by, or in the actual or constructive possession of the Trust and its Trustee, including assets that have been transferred to other persons or entities but as to which assets such persons or entities do not have a legitimate claim; and

e.      consist of any claims, or causes of action, or equity, or proceeds, owned by or on behalf of the Trust, which have been or could be asserted in any pending arbitration, state lawsuit or appeal, federal lawsuit or appeal, or bankruptcy court proceeding or appeal, to include any settlement proceeds or payment resulting therefrom.

## V
### APPOINTMENT OF RECEIVER

IT IS THEREFORE, ORDERED, ADJUDGED, and DECREED by this Court that:

5.      The Court hereby takes exclusive jurisdiction and possession of the Receivership Assets, as defined herein,

6.      Until further order of the Court, Mr. James W. Volberding, Attorney, CPA, Volberding Legal Group, PLLC, 110 N. College Avenue, Suite 1850, Tyler, Texas 75702, USA, +001 (903) 597-6622, is hereby appointed to serve as the Court's appointed Receiver for the assets of the Trust (the "**Receivership Estate**"). Immediately with this Order, the Receiver shall hold the Receivership Estate assets

*in custodia legis.* The Court finds that Mr. Volberding is appropriate and qualified to serve as Receiver.

## VI
## ORDER FREEZING ALL RECEIVERSHIP ASSETS

7.      Except as otherwise specified herein, the **Receivership Assets** are frozen and may not be conveyed, assigned, transferred or in any way hypothecated (i) until further order of this Court, and only this Court, or (ii) with or by the prior written authorization of the Receiver.

8.      All persons, institutions, banks, investment companies, investors, lenders, attorneys, and entities with direct or indirect control over any Receivership Assets or accounts—other than any Bankruptcy Trustee, Receiver, Court, or law enforcement official, acting within thecourse and scope of their official duties—are hereby restrained and enjoined from directly or indirectly transferring, setting off, receiving, changing, charging, selling, pledging, assigning, liquidating or otherwise dissipating, disposing of or withdrawing such Receivership Assets, wherever they may be located. This freeze shall include, but not be limited to, Receivership Assets that are on deposit with financial institutions such as banks, brokerage firms, and mutual funds, or other institutions. This freeze (and the reporting requirement below) shall not include any asset, account, or equity under the control of any U.S. Bankruptcy Court or Bankruptcy Trustee. All such assets, including amount, where located and how held shall be reported to the Receiver by all persons, upon receipt or knowledge of this Order, as required herein.

## VII
## GENERAL POWERS AND DUTIES OF RECEIVER

9.      Except as limited herein, the Receiver shall have all powers, authorities, rights, and privileges necessary to manage the Receivership Assets under the supervision of the Court. This includes all powers to manage the Receivership Assets that were heretofore conveyed and possessed by the Trust, under any valid deeds and/or pursuant to the terms of the Trust and its amendments, and all powers and authority of a Receiver at equity, and all powers conferred upon a Receiver by the provisions of Texas law, and this Order.

10.     The Trustee (the term "Trustee" shall include all former Trustees) and his attorneys, and the beneficiaries of the Trust and its attorneys are hereby restrained from taking any action to manage, sell, dispose of, retain or in any way exercise control over the Receivership Assets. Such persons and entities shall have no authority with respect to the Receivership Assets, except to the extent as hereafter may be expressly granted by the Court, and this Court only, or with prior written authorization of the Receiver. This restriction does not apply to the Trust Advisor of the Trust, who may continue to carry out his duties under the Trust.

11.    No beneficiary holding or claiming any position of any sort with the Trust shall possess any authority to sell, convey, retain, remove, assign, or in anyway exercise control over the Receivership Assets.

12.    Subject to the specific provisions below, the Receiver shall immediately have the following general powers and duties:

a.    To use reasonable efforts to determine the nature, location, and value of all Receivership Assets, including, but not limited to, , financial accounts, vehicles, boats, equipment, fixtures, effects, goods, chattels, real property, premises, leases, notes, membership interests in any limited liabilitycompany, partnership interests; contracts, certificates of title, instruments, inheritances, interests in any trust, art, collectibles, furnishings, jewelry, personal effects, and other assets, together with all rents, profits, dividends, interest or other income attributable thereto, of whatever kind, which the Trust owns directly or indirectly, possess directly or indirectly, have a beneficial or constructive interest in, orcontrol directly or indirectly;

b.    To take immediate custody, control, and possession of all Receivership Assets and records, documents, and tax returns relevant thereto from the Trustee , except for any materials which constitute attorney-client communications or attorney work product with any person in his or her individual capacity only;

c.    To take immediate custody, control, and possession of all U.S. tax returns of the Trust, if filed, and to request copies of all tax returns from the IRS. Receiver is authorized to sign and submit to the IRS a Form 4506 for copies of all tax returns of the Trust;

d.    To take immediate possession, custody and control of all Receivership Assets, and to manage, control, operate, and maintain the Receivership Assets, pending further Order of the Court;

e.    To use Receivership Assets immediately for the benefit of the Receivership Estate, making payments and disbursements and incurring expenses as may be necessary or advisable in the ordinary course of business in discharging his duties as Receiver;

f.    To take any action immediately that, prior to the entry of this Order, could have been taken by the Trustee with respect to managing the Receivership Assets, except as limitedby this Order;

g.    To choose, engage and employ attorneys, accountants, appraisers,consultants, experts and any other independent contractors and technical specialists, immediately, including, butnot limited to, real estate agents, forensic experts, property managers, and auctioneers (collectively, **"Retained Personnel"**) as the Receiver deems advisable or necessary in the performance of the Receiver's duties and responsibilities under the authority granted by this Order;

h.      To take such action immediately as necessary and appropriate for the preservation of Receivership Assets or to prevent the dissipation or concealment of Receivership Assets;

i.      To the extent necessary to locate and identify assets, the Receiver isauthorized to issue subpoenas immediately for documents and testimony, and to take depositions of any person, consistent with the Texas or Federal Rules of Civil Procedure;

j.      To file any lawsuit, without further authorization by the Court, against any person or entity to recover property the Receiver determines was wrongfully transferred from the Receivership Estate;

k.      To settle any outstanding claims asserted against the Trust, or any subsidiary or affiliate;

l.      To sell any asset owned by or on behalf of the Trust; and,

m.      To take such other action as may be deemed appropriate by the Receiver.

13.    The Receiver may delegate to his agents or attorneys any of the powers of the Receiver granted to Receiver by this Order.

14.    The Receiver may seek further Orders of the Court regarding standing powers of the Receiver and administration of Receivership Assets as the Receiver, in his sole discretion, deems necessary, to conserve the Receivership Assets, to protect the best interests of the beneficiaries of the Trust, and to protect the interests of the Receiver.

## VIII
## TURNOVER OF DOCUMENTS AND INFORMATION

15.    The Trustee   of the Trust, and the past and/or present agents, attorneys, accountants, and employees of the Trustee, as well as those acting on their behalf (hereinafter "**Trustee Representatives**"), are hereby enjoined, ordered and directed to preserve and immediately turn over to the Receiver forthwith all paper and electronic information of, and/or relating to, the Receivership Assets; such information shall include but not be limited to books, records, documents, accounts, all financial and accounting records, all tax returns and records, both state and federal, trust documents, balance sheets, income statements, bank records (including monthly statements, canceled checks, records of wire transfers, details of items deposited, and check registers), investor lists, title documents, writings, drawings, graphs, charts, photographs, audio and video recordings, computer records, computer files, databases and other data compilations, including any information stored by third parties or using cloud-based services, access codes, security codes, passwords, safe deposit keys, combinations, and all other instruments, papers, and electronic data or records of any kind or nature, pertaining to the Receivership Assets.

16. The Trustee Representatives are **ORDERED** to turnover to the Receiver within **ten (10) calendar days** from the Trustee's Representatives' receipt of a copy of this Order: (A) the documents listed below, together with all documents and financial records which may be requested by the Receiver; (B) all checks, cash, securities (stocks and bonds), promissory notes, documents of title, and contracts owned by or in the name of Trust or to or for the benefit of the Trust:

Any and all records, as hereinafter described, concerning affairs of the Trust; unless otherwise noted, for the period January 1, 2020, through the present:

a. Monthly statements for every financial institution account in which the current or former Trustee has been a signatory, owner, or beneficiary, wherever located, since January 1, 2020;

b. Cancelled checks and wire transfers for every financial institution account, wherever located, in which Trustee has been a signatory, owner, or beneficiary since January 1, 2020;

c. Copies of the articles of incorporation, Secretary of State charters, operating agreements, membership agreements, and all documents of creation and ownership of any limited liability company, professional corporation, other corporation, general partnership, limited partnership, trust or any other entity, in whatever country said documents were created or exist, in which Trustee currently holds or has held an interest since January 1, 2020;

d. Federal income and state franchise tax returns for the Trust and any limited liability company, professionalcorporation, corporation, general partnership, limited partnership, trust or any other corporate entity, in whatever country said documents were created, were filed, or exist, which Trustee Representative currently holds or has held an interest since January 1, 2020;

e. Stock certificates, membership interests, and bonds owned by or on behalf of the Trust in any limited liability company, professional corporation, other corporation, general partnership, limited partnership, trust or any other corporate entity, wherever located, or created, or held, in which the Trust currently holds or has held an interest since January 1, 2020;

f. Promissory notes owned by or on behalf of the Trust or any limited liability company, professional corporation, other corporation, general partnership, limited partnership, trust or any other corporate entity, wherever located or created, in which the Trust currently holds or has held an interest since January 1, 2020;

g. Bills of sale owned by or on behalf of the Trust or any limited liability company, professional corporation, corporation, general partnership, limited partnership, trust or any other corporate entity, wherever located or created, in which Trustee currently holds or has held an interest since January 1, 2020;

h. Real property deeds and deeds of trust (regardless of date) owned or interest held by or on behalf of the Trust or any limited liability company, professional corporation, corporation, general partnership, limited partnership, trust or any other corporate entity, wherever located or created, in which the Trust currently holds or has held an interest since January 1, 2020;

i. Business journals, ledgers, accounts payable and receivable files of the Trust or any limited liability company, professional corporation, other corporation, general partnership, limited partnership, trust or any other corporate entity, wherever located or created, in which the Trust holds or has held an interest since January 1, 2020, whether or not owned by the Trust;

j. Pledges, security agreements and copies of financial statements filed by or against or on behalf of the Trust or any limited liability company, professional corporation, other corporation, general partnership, limited partnership, trust or any other corporate entity, wherever located or created, in which the Trust currently holds or has held an interest since January 1, 2020;

k. Any other record or document evidencing any ownership to real or personal property, or to any debt, owed, or money had (regardless of date) owned, or interest held by, or on behalf of, the Trust, or any limited liability company, professional corporation, other corporation, general partnership, limited partnership, trust or any other corporate entity, wherever located or created, in which Trustee currently holds or has held an interest since January 1, 2020; and

l. All documents listing or summarizing property owned by, or held by, or on behalf of the Trust or any limited liability company, professional corporation, other corporation, general partnership, limited partnership, trust or any other corporate entity, wherever located or created, in which Trustee currently holds or has held an interest since January 1, 2020.

19. Within **ten (10) calendar days** of the entry of this Order, the Trustee is **ORDERED** to identify and turn over to the Receiver all documents representing all interests of the Trust in any business or venture, including limited liability companies and partnerships, and all agreements, stock certificates and other documents pertaining to the Trust's ownership in the business or venture.

20. The Trustee is **ORDERED** to continue, to turnover to the Receiver at the Receiver's address all checks, cash, securities, promissory notes, documents of title, and contracts within three (3) business days from their receipt and possession of such property, if, as and when they receive any such property.

21. Within **ten (10) calendar days** of the receipt of this Order, the Trustee shall file with the Court and serve upon the Receiver a <u>sworn</u> statement, listing: (a) the identity, location and estimated value of all Receivership Assets, including contact information for the party in possession of all assets of the Trust, held jointly or singly, including

without limitation all assets held outside the territory of the United States; (b) all employees (and job titles thereof), other personnel, attorneys, accountants, principals, owners, and any other agents or contractors of the Trustee; and (c) the amount and nature of all liabilities of the Trust, including without limitation the names, addresses, and amounts of claims of all known creditors of the Trust. Such sworn statement shall include the names, addresses, telephone numbers, facsimile numbers, and e-mail addresses of the holders of any legal, equitable, or beneficial interests in such assets and the names, addresses, telephone numbers, facsimile numbers, and e-mail addresses of any financial institutions or other persons or entities holding such assets, along with the account numbers and balances. The sworn statements shall be accurate as of the date of this Order, shall be witnessed in person by a notarized by a licensed Notary who shall so attest, shall be titled "Affidavit," not a "declaration," shall be signed and verified as true and complete under penalty of perjury.

22. Within **ten (10) calendar days** of the receipt of this Order, the Trustee shall file with the Court and serve upon the Receiver a sworn statement and certification, with complete documentation, covering the period January 1, 2020 to the present:

    a. Identifying all Receivership Assets, wherever located, held by or in the name of, or on behalf of, the Trust, directly or indirectly, has or had any beneficial interest, or over which any of them maintained or maintains and/or exercised or exercises control, including, but not limited to: (a) all securities, investments, funds, real estate, automobiles, jewelry, digital assets, including but not limited to any assets contained in digital assets held at crypto-currency exchanges or in digital wallets and other assets, stating the location of each; and (b) any and all accounts, including all funds held in such accounts, with any bank, brokerage, or other financial institution, or any other institution including the account statements from each bank, brokerage, or other financial institution;

    b. Identifying every account at every bank, brokerage, or other financial institution, wherever located or created: (a) over which the Trustee, has or had signatory authority; and (b) opened by, in the name of, or for the benefit of, or used by the Trustee or any former Trustee, or any corporation, company, limited partnership, general partner, in which the Trust, owns or owned or holds any financial interest, directly or indirectly;

    c. Identifying all credit, bank, charge, debit or other deferred payment card issued to or used by the Trustee, wherever located or created, and each corporation, company, limited partnership, or general partnership, including but not limited to the issuing institution, the card or account number(s), all persons or entities to which a card wasissued and/or with authority to use a card, the balance of each account and/or card as of the most recent billing statement, and all statements for the last twelve months;

    d. Identifying all assets received by the Trust, from any person or entity, including the value, location, and disposition of any assets so received, wherever located, created or received;

e.  Identifying all funds received by the Trust, in any way related, directly or indirectly. The submission must clearly identify, among other things, all investors, lenders or partners, the interests they purchased, sold, exchanged or transferred or loans made or received, the date and amount of their investments or loans, and the current location of such funds;

f.  Identifying all expenditures exceeding $5,000.00 made by the Trustee or any former Trustee including those made on their behalf by any person or entity, or the Trustee or any former Trustee

g.  Identifying all transfers of real or personal or intangible assets made by the Trustee or former Trustee; and

h.  Verifying that all books and records pertaining to the Trust have been turned over.

23. Within **ten (10) calendar days** of the receipt of this Order, the Trustee shall provide to the Receiver copies of the Trust's federal income tax returns, filed in any country, from 2020 through 2023 with all relevant and necessary underlying schedules, worksheets, amendments, extensions, and documentation.

24. Trustee, Trust Advisor, and all beneficiaries shall cooperate with the Receiver in providing information and documents required by the Receiver pertaining to the Receivership Assets, or any other matter relevant to the operation or administration of the receivership, the sale and/or distribution of Receivership Assets, or the collection of funds due to the Trust.

25. The Trustee is required to assist the Receiver in fulfilling his duties and obligations. As such, the Trustee must reasonably and expeditiously cooperate with all requests for information and documents from the Receiver regarding the Receivership Assets and administration thereof. This cooperation and assistance shall include, but not be limited to:

(a) providing any information or documents that the Receiver deems necessary or appropriate to the exercise of the Receiver's powers, the Receiver is authorized to take immediate possession of all bank accounts, investment accounts, or other financial accounts, safe deposit boxes or vaults, cash, all negotiable instruments, promissorynotes, drafts, and checks; causes of action or choses of action, pending lawsuits prosecuted by the Trustee, contract rights, whether present or future, and records and all other documents or instruments relating to the Trust and Trust property;

(b) providing any keys, including but not limited to physical, digital, and cryptographic keys, codes, device PINs, and passwords, including but not limited to account, encryption, email account, website, and computer passwords required to access any computer, electronic file, website, computer storage account, computer storage application, or telephonic data in any medium;

(c) immediately advising all persons who owe money or currency of any kind to the Trust that all debts should be paid directly to the Receiver;

(d) providing full access to all Receivership Assets; and

(e) maintaining and not wasting, damaging, liquidating, dissipating, disposing of, or transferring in any manner any Receivership Assets.

## IX
## ACCESS TO AND TURN OVER OF BOOKS, RECORDS, FINANCIAL ACCOUNTS, AND OTHER INTANGIBLE PROPERTY

26. Wherever located, the Receiver is authorized to take immediate possession of all bank accounts, investment accounts, or other financial accounts, safe deposit boxes or vaults, cash, all negotiable instruments, promissory notes, drafts, and checks; causes of action or choses of action, pending lawsuits prosecuted by the Trustee, contract rights, whether present or future, and records and all other documents or instruments relating to the Trust and Trust property.

27. All persons and entities having control, custody, or possession of any Receivership Assets, including any financial institutions, are hereby directed to turn such property, including but not limited to all accounts, over to the Receiver immediately.

28. All persons and entities having control, custody, or possession of any Receivership Assets, including any financial institutions, shall be entitled to rely on the authority of this Order to turn over all funds and records to the Receiver as the Receiver directs.

29. The Trustee , and any persons receiving notice of this Order by personal service, facsimile transmission, or otherwise, having possession of the property, business, books, records, account, or assets of the Trust, are hereby directed to deliver the same to the Receiver, the Receiver's agents, and/or employees.

30. All banks, brokerage firms, financial institutions, operators, and other persons or entities which have possession, custody, or control of any assets or funds held by, in the name of, or for the benefit of, directly or indirectly, the Trust, that receive actual notice of this Order by personal service, facsimile transmission, or otherwise shall:

    a. Not liquidate, transfer, sell, convey, or otherwise transfer any assets, securities, funds, or accounts in the name of or for the benefit of the Trust except upon instructions from the Receiver;

    b. Not exercise any form of set-off, alleged set-off, lien, or any form of self- help whatsoever, or refuse to transfer any funds or assets to the Receiver's control without the prior written authorization of the Receiver or the permission of the Court;

    c. Cooperate expeditiously in providing information and transferring funds, assets, and accounts to the Receiver or at the direction of the Receiver.

31. Receiver is authorized to intervene immediately in any pending U.S. federal or state lawsuit, arbitration, appeal or bankruptcy proceeding, or such proceeding in any other country, in which the Trust is a party and take such action as the Receiver, in his sole discretion, may deem appropriate action in the U.S. federal or state lawsuit, arbitration, appeal or bankruptcy proceeding, or such proceeding in any other country, in the best interest of the Receivership Estate. Receiver is authorized to dismiss or settle any U.S. federal or state lawsuit, arbitration, appeal, proof of claim, or bankruptcy proceeding, or such proceeding in any other country, in which the Trustee is a party or claimant. Receiver is authorized to replace, immediately or at any time, the attorneys of record of the Trustee at Receiver's discretion. The Receiver will accede to the attorney-client privilege of the Trustee or any former Trustee.

32. Receiver is authorized to file any counterclaims, claims, subpoenas, discovery, or lawsuits deemed necessary, in his sole discretion, against any individual or entity to recover money or assets Receiver determines belong to Receivership Estate.

33. The Receiver is authorized to direct the U.S. Postal Service to direct all mail addressed to the Trust to be delivered to the Receiver's office. The Receiver is authorized to open all mail directed to the Trust, to determine whether items or information therein fall within the mandates of this Order.

## X
## ACCESS TO AND TURN OVER PERSONAL PROPERTY

34. The Receiver is authorized but not directed to take immediate possession of all personal property of the Trust, wherever located—including located, held, or maintained in any country – and including but not limited to electronically stored information, computers, laptops, hard drives, external storage drives, and any other such memory, media or electronic storage devices, books, papers, data processing records, evidence of indebtedness, bank records and accounts, savings records and accounts, brokerage records and accounts, certificates of deposit, stocks, bonds, debentures, and other securities and investments, contracts, mortgages, furniture, office supplies, inventory, equipment, vehicles, aircraft, artwork, , boats, and ships.

## XI
## ACCESS TO AND TURN OVER REAL PROPERTY

35. The Receiver is authorized but not directed to take immediate possession of all real property of the Trust, wherever located in any country—including but not limited to all ownership and leasehold interests and fixtures.

36. Upon receiving actual notice of this Order by personal service, facsimile transmission, or otherwise, all persons other than law enforcement officials acting within the course and scope of their official duties, are (without the express written permission of the Receiver) prohibited from: (a) entering such premises; (b) removing anything from such premises; or, (c) destroying, concealing, or erasing anything on such premises.

37.     In order to execute the express and implied terms of this Order, the Receiver is authorized to change door locks to any premises—located, held, or maintained in any country. The parties to this suit, or any other person acting or purporting to act on their behalf, and the Trustee or former Trustee, or their agents, are ordered not to change the locks in any manner, nor to have duplicate keys made, nor shall they have keys in their possession during the term of the receivership.

38.     Any U.S. Sheriff or Constable, and their deputies, and any other peace officer, or law enforcement officer, are hereby directed and ordered to assist the Receiver in carrying out his duties and exercising his powers hereunder and prevent any person from interfering with the Receiver in taking control and possession of the property of the Trust, without the necessity of a Writ of Execution. The Receiver is authorized to direct any Sheriff or Constable, and their deputies, and any other peace officer, or law enforcement officer, to seize and sell property under a Writ of Execution.

39.     The Receiver is authorized to request similar assistance from any other federal, state, county, or civil law enforcement officer(s) or constable(s) of any jurisdiction—in any country.

40.     The Receiver is authorized to execute and record a special warranty deed and to transfer legal title of all real property—located, held, or maintained in any country—from the Trust to the Receiver, and from the Receiver to any third-party or beneficiary.

## XII
## AUTHORIZATION TO OBTAIN THIRD PARTY RECORDS AND ASSETS

41.     In addition to the powers of the Receiver set forth herein, the Receiver shall have the following rights, authority and powers with respect to the Trust's property, to:

   a.     collect all accounts receivable of the Trust;

   b.     collect all payments due pursuant to any contract from any third-party to the Trust;

   c.     endorse and cash all checks and negotiable instruments payable to the Trust;

   d.     receive all wire transfers to the Trust;

   e.     hire a real estate broker to sell any real property and mineral interest belonging to the Trust—located, held, or maintained in any country;

   f.     hire any person or company to move and store the property of the Trust—located, held, or maintained in any country;

   g.     insure (but not the obligation) any property belonging to the Trust;

h.  obtain from any financial institution, bank, credit union, credit bureau, savings and loan, title company, or any other third party, in any country, any financial records belonging to or pertaining to the Trust;

i.  obtain from any government federal or state official, of any country or state, any government records belonging to or pertaining to the Trust, including financial information, documents, and records;

j.  hire any person or company necessary to accomplish any right or power under this Order;

k.  file any lawsuit, in any jurisdiction, in any country, necessary to seize or recover any non-exempt assets from any third parties who have acquired possession or control;

l.  file any involuntary bankruptcy petition for the Trust pursuant to United States Code Title 11 which Receiver believes necessary and effective; and

m.  file any lawsuit, in Texas District Court, or United States District Court, against any beneficiary, Trustee, former Trustee, party or partner of any Trustee, former Trustee, beneficiary, or third party, in any contract, as necessary to recover payments due to the Trust.

42.  In addition to the powers of the Receiver set forth herein, Receiver shall have the right, authority, and power to request and obtain from the Trustee's or former Trustee's attorneys all files, correspondence, emails, records, papers and documents, whether paper or electronic, pertaining to the Trust's ownership of any property or legal interest, or any negotiation of the purchase, sale, acquisition or creation of any property or legal interest. Receiver shall assume the attorney-client privilege of the Trustee or former Trustee , but not that of any individual.

## XIII
### CHARGING ORDER AND INJUNCTION

43.  In addition, but not in lieu of, the Court grants an injunction and charging order in favor of the Receiver against all limited liability company membership interests owned or controlled by any individual or entity in the Trust, and against membership interests owned or controlled by the Trust, and against all membership interests in any subsidiary or affiliate which is owned or controlled by the Trust, directly or indirectly, or in which the Trust holds or owns or controls a material financial interest, directly or indirectly (hereinafter, "**Subsidiary or Affiliate**"). Together, such membership interests shall be referred to hereinafter as "**Membership Interest**" or "**Membership Interest of the Judgment Debtor**".

44.  Effective immediately, the Member Interest is charged to satisfy the judgment, including, but not limited to, the principal, accrued interest, costs, fees, and receivership fees and expenses, in favor of the Receiver. Any distribution or distributions from such Membership Interest to any individual or entity in respect

of such limited liability company membership interest shall be made directly to the Receiver.

45.     The Trustee, any former Trustee, and any beneficiary of the Trust are immediately enjoined and restrained from directly or indirectly transferring or assigning, or causing or permitting any other attorney, agent, accountant, person, company, or other individual or entity to transfer or assign, any interest in the Trust, without prior written authorization of the Receiver or by Order of this Court.

46.     The Trustee, any former Trustee, and any beneficiary of the Trust are immediately enjoined and restrained from distributing, transferring, or diverting any assets of the Trust to any and all attorneys, agents, accountants, persons, companies, or other individuals or entities acting in concert with them other than the Receiver.

## XIV
## NOTICE TO TRUSTEE AND BENEFICIARIES

47.     In light of the inability of the Trustee to carry out his duties, the Receiver is authorized to provide notice of this order, or any discovery requests, or any other document or motion, to the Trustee or any beneficiary of the Trust, by delivering such notice and order and discovery requests in any of the following manner: (1) to the Trustee's office addresses by first-class U.S. Mail, or international overnight courier, without requiring signature or restricted delivery; (2) to Trustee's, any former Trustee, and any beneficiary's attorney, by fax, U.S. Mail or email, unless he or she indicates that he or she no longer represent the Trustee, a former Trustee, or beneficiary, or (3) by email to the Trustee, former Trustee, or an beneficiary of the Trust, if unrepresented by counsel.

## XV
## NOTICE TO THIRD PARTIES

48.     The Receiver shall promptly give notice of Receiver's appointment to all known officers, directors, agents, employees, shareholders, creditors, debtors, managers, members, agents, attorneys, and general and limited partners, contract partners, of the Trustee, any former Trustee, and any beneficiary of the Trust, as the Receiver deems necessary or advisable to effectuate the operation of the receivership.

49.     All persons and entities owing any obligation, debt, or distribution with respect to an ownership interest in any Receivership Asset shall, until further ordered by the Court, pay all such obligations in accordance with the terms thereof to the Receiver, and its receipt for such payments shall have the same force and effect as if the Trustee had received such payment.

50.     In furtherance of his responsibilities in this matter, the Receiver is authorized to communicate with, and/or serve this Order upon, any person, entity, or government office, of any country, that he deems appropriate to inform them of the status of this matter and/or the financial condition of the Receivership Estate. All government offices, of any country, which maintain public files of security interests in real and

personal property shall, consistent with such office's applicable procedures, record this Order upon the request of the Receiver.

51.    The Receiver is authorized to instruct the United States Postmaster to hold and/or reroute mail which is related, directly or indirectly, to the business, operations, or activities of any of the Receivership Assets (the "Receiver's Mail"), including all mail addressed to, or for the benefit of, the Trust or Trustee. The Postmaster shall not comply with, and shall immediately report to the Receiver, any change of address or other instruction given by anyone other than the Receiver concerning the Receiver's Mail.

52.    The Trustee or former Trustee shall not open any of the Receiver's Mail and shall immediately turn over such mail, regardless of when received, to the Receiver. The foregoing instructions shall apply to any proprietor, whether individual or entity, of any private mail box, depository, business or service, or mail courier or delivery service, hired, rented, or used by the Trustee. No one other than Receiver shall open a new mailbox regarding the Trust, or take any steps or make any arrangements to receive mail in contravention of this Order, whether through the U.S. mail, a private mail depository, or courier service.

53.    Subject to payment for services provided, any entity furnishing any utilities or related services to the Trust or Trust property shall maintain such service and transfer any such accounts to the Receiver unless instructed to the contrary by the Receiver.

## XVI
### INJUNCTION AGAINST INTERFERENCE WITH RECEIVER

54.    The Trustee, any former Trustee, any beneficiary of the Trust, and all persons receiving notice of this Order by personal service, facsimile, or otherwise, are hereby restrained and enjoined from directly or indirectly taking any action or causing any action to be taken, without the express written agreement of the Receiver, which would:

    a.    Interfere with the Receiver's efforts to take control, possession, or management of any Receivership Assets; such prohibited actions include but are not limited to, using self-help or executing or issuing or causing the execution or issuance of any court attachment, subpoena, replevin, execution, or other process for the purpose of impounding or taking possession of or interfering with or creating or enforcing a lien upon any Receivership Assets;

    b.    Hinder, obstruct or otherwise interfere with the Receiver in the performance of his duties; such prohibited actions include but are not limited to, concealing, destroying, or altering records or information;

    c.    Dissipate or otherwise diminish the value of any Receivership Assets; such prohibited actions include but are not limited to, releasing claims or disposing, transferring, exchanging, assigning or in any way conveying any Receivership Assets, enforcing judgments, assessments or claims against any Receivership

Assets or the Trust, attempting to modify, cancel, terminate, call, extinguish, revoke or accelerate (the due date), of any lease, loan, mortgage, indebtedness, security agreement, Production Service Agreement, or other agreement executed by the Trust or which otherwise affects any Receivership Assets; or,

d. Transact any of the business of the Trust, except for continuing to litigate the claims in this suit, or transferring any Receivership Assets to anyone other than the Receiver;

e. Destroy, secret, deface, transfer, or otherwise alter or dispose of any documents of or pertaining to the Trust and to the extent any such documents are no longer in existence, fail to disclose the nature and contents of such documents and how, when, and by whom such documents were caused to no longer be in existence;

f. Fail to notify the Receiver of any Receivership Assets, including accounts constituting Receivership Assets held in any name other than the name of the Trust, or by any person other than the Trustee or former Trustee, or fail to provide any assistance or information requested by the Receiver in connection with obtaining possession, custody, or control of such Receivership Assets;

g. Refuse to cooperate with the Receiver or the Receiver's duly authorized agents in the exercise of their powers, duties, or authority under any order of the Court; and

h. Interfere with or harass the Receiver, or interfere in any manner with the exclusive jurisdiction of this Court over the Receivership Estate.

55. The Trustee, any former Trustee, any beneficiary, and the Trust Advisor shall cooperate with and assist the Receiver in the performance of the Receiver's duties.

## XVIII
## MANAGEMENT OF RECEIVERSHIP ASSETS

56. The Receiver shall deposit all Receivership Assets into Receiver's IOLTA.

57. Alternatively, the Receiver may establish one or more custodial accounts at a federally insured U.S. bank to receive and hold all cash equivalent Receivership Assets (the "Receivership Funds").

58. The Receiver's deposit account may be entitled "Receiver's Account" together with the name of the action, or a title to that effect.

59. The Receiver is authorized to use the Receivership Assets and proceeds thereof to pay debts and expenses of the Trust that (i) have accrued prior to or during the receivership and (ii) in the sole discretion of the Receiver are essential or necessary to the operations of the Trust.

60. The Receiver's duties shall include, using reasonable efforts, identifying, marshaling, taking custody of, and preserving the value of the Receivership Assets and identifying appropriate dispositions of the same.

61. Upon further Order, pursuant to such procedures as may be required by the Court, the Receiver will be authorized to sell, and transfer clear title to, all real property in the Receivership Estate.

62. The Receiver is authorized to solicit and engage Retained Personnel to assist him in carrying out the duties and responsibilities described in this Order. Receiver is authorized to engage his law firm, Volberding Legal Group, PLLC, and any other lawyers, law firms, liquidators, or accountants.

63. The Receiver is authorized to take all actions he deems necessary in his sole judgment to manage or maintain business operations of the Receivership Estate, including making payments to creditors, employees, and agents of the Receivership Estate and communicating with vendors, investors, governmental and regulatory authorities, and others, as appropriate.

## XIX
## INSURANCE

64. Trustee and all persons or entities affiliated with the Trustee are ordered to immediately provide the Receiver with all available insurance information for both existing and prior insurance policies. This includes all applications, policies, riders, correspondence, endorsements, claims and other information. Trustee and all persons associated with Trustee are ordered: (1) to advise the insurance agent(s) of this Order in writing, (2) designate all authority over the policies to the Receiver, and (3) take no action with regard to terminating or modifying existing insurance policies.

65. The Receiver is hereby authorized, but not required, to engage insurance brokers and consultants as necessary to properly insure the Receivership Assets. The Trustee and persons acting on their behalf shall cooperate with the Receiver with regard to identifying and maintaining existing insurance policies on the Receivership Assets.

## XX
## AUTHORITY TO COOPERATE WITH LAW ENFORCEMENT OFFICIALS

66. The Receiver shall have the authority to contact, respond to, and cooperate with and provide information to any federal or state law enforcement officer or official, agents with the Federal Bureau of Investigation or Internal Revenue Service, or any federal or state grand jury pertaining to any possible criminal act committed by Judgment Debtors or Corporate Entities or any other person or entity.

67. Receiver shall have the authority to contact, respond to, and cooperate with and provide information to any law enforcement officer or official of any other country, and to any tax enforcement officer or official of any other country, or any investigative agency or body of any other country, pertaining to any possible criminal

act committed by the Trustee, any former Trustee, any beneficiary, or any other person or entity.

68. Receiver is authorized to provided documents and records in response to any subpoena received from any such official or agency.

## XXI
### BANKRUPTCY PETITIONS

69. Receiver is granted the sole and exclusive authority to sign and file voluntary petitions for relief under Title 11 of the United States Code (the "Bankruptcy Code") for the Trust, or any subsidiary or affiliate thereof.

70. If the Trust is otherwise placed into bankruptcy proceedings, the Receiver is authorized to manage and oversee such companies during the pendency of such cases, notwithstanding anything to the contrary set forth in any of the companies' organizational documents (or otherwise), including any necessary consent rights. In such a situation, the Receiver shall have all of the powers and duties as provided a debtor in possession under the Bankruptcy Code to the exclusion of any other person or entity.

## XXIII
### BONDS AND OATH OF RECEIVER

71. Receiver is ordered to post bond in the amount of $5,000.00 with the Clerk of the Court conditioned on faithful discharge of Receiver's duties and obedience to the Orders of the Court.

72. Receiver shall file the required oath of service.

## XXIV
### RECEIVER IMMUNITY FROM LIABILITY

73. The Receiver and Retained Personnel are entitled to derived judicial immunity. The Receiver and Retained Personnel, acting within the scope of such agency, are entitled to rely on all outstanding rules of law and Orders of the Court and shall not be liable to anyone, in any country, for their own good-faith compliance with any order, rule, law, judgment, or decree. In no event shall the Receiver or Retained Personnel be liable to anyone for their good-faith compliance with their duties and responsibilities as Receiver or Retained Personnel, including compliance with applicable law governing the collection of debt, nor shall the Receiver or Retained Personnel be liable to anyone for any actions taken or omitted by them except upon a finding by the Court that they acted or failed to act as a result of malfeasance, bad faith, or in reckless disregard of their duties. The Receiver and Retained Personnel shall be entitled to such derived judicial immunity even if the Judgment or this Receivership Order are subsequently stayed, reversed, vacated, modified, amended, for any reason, by any court, including for lack of jurisdiction.

74. The Court shall retain exclusive jurisdiction over any action filed against the Receiver or Retained Personnel based upon acts or omissions alleged to have been committed in their representative capacities relative to the carrying out of duties and responsibilities of the Receiver.

75. Under no circumstances shall Trustee, any former Trustee, any beneficiary, or any other person or entity, file any lawsuit, objection, discovery, intervention, or claim against Receiver, or any of his attorneys, except in this Court and no other. In the event such lawsuit, objection, discovery, intervention, or claim is filed, Receiver is instructed to seek dismissal of such suit and file appropriate motions in this Court to address the violation of this provision. In the event any attorney files such lawsuit, discovery, intervention, orclaim against Receiver or his lawyers in any court except this Court, such attorney must type the following statement in 14-point font, bold, underlined at the top front page of each pleading or correspondence to such court: "**The McLennan County 414th District Court has Ordered That all Claims, Objections, Pleadings and Discovery Against Receiver, Mr. Volberding, and his Attorneys be Filed Only in Said McLennan County 414th District Court, cause number 224-335-5**."

76. In the event the Receiver decides to resign, the Receiver shall first give written notice to the Court and counsel for the parties herein of its intention, and the resignation shall not be effective until a successor is appointed.

77. The Receiver shall not be personally liable for any liabilities or costs that have accrued, or will accrue to the Trust, the Trustee, or any beneficiary of the Trust.

## XXV
## RECOMMENDATIONS AND REPORTS

78. The Receiver, in accordance with the terms of the Trust and any amendments thereto, is authorized, empowered, and directed to develop a plan for the fair, reasonable, and efficient preservation and/or disposition of assets as quickly as possible using his or her best judgment regarding the sale and/or distribution of the assets of the Trust (the "**Preservation / Liquidation Plan**").

79. At Receiver's discretion, the Receiver shall file and serve a full report and accounting of each Receivership Estate, reflecting (to the best of the Receiver's knowledge as of the period covered by the report) the existence, value, and location of all Receivership Assets, and of the extent of liabilities, both those claimed to exist by others and those the Receiver believes to be legal obligations of the Receivership Estate.

80. The Status Report may contain the following:

   a. A summary of the operations of the Receiver;

   b. The amount of cash on hand, the amount and nature of accrued administrative expenses, and the amount of unencumbered funds in the estate;

c. A schedule of all the Receiver's receipts and disbursements, with one column for the quarterly period covered and a second column for the entire duration of the receivership;

d. A description of all known Receivership Assets, including approximate or actual valuations, anticipated or proposed dispositions, and reasons for retaining assets where no disposition is intended;

e. A list of all known creditors with their addresses and the amounts of their claims;

f. The Receiver's recommendations for a continuation or discontinuation of the receivership and the reasons for the recommendations;

g. Expenses incurred by the Receiver, including his own fees and fees of Retained Personnel, during that quarter.

## XXVI
### FEES, EXPENSES AND ACCOUNTINGS

81. The Receiver need not obtain approval prior to the disbursement of Receivership Funds for expenses in the ordinary course of the administration and operation of the receivership. Further, prior approval is not required for payments of applicable federal, state, or local taxes.

82. The Receiver is authorized to solicit and engage Retained Personnel to assist him in carrying out the duties and responsibilities described in this Order.

83. The Receiver's fee is $500.00 per billable hour incurred by the Receiver for his work on this matter. (. All Receiver's fees will be taxed as costs against the Trust, which means that the Receiver is authorized to seek and recover all receivership fees plus receivership expenses. The Receiver may secure payment for the Receiver's fees and expenses in any manner the Receiver deems to be in the best interest of the Trust, including but to limited to taking a portion of the proceeds from the sale of any and all Receivership Assets.

84. The Court finds the foregoing to be a fair, reasonable and necessary fee for the Receiver. A receiver's fees and expenses "are considered court costs and are governed by rules regarding the award of costs."[1] Those rules provide that the trial court is responsible for adjudicating which party or parties will pay costs.[2] "[W]here

---

[1] *Hill v. Hill*, 460 S.W.3d 751, 767 (Tex. App.—Dallas 2015, pet. denied) (rejecting argument that trial court had no legal basis to assess 100% of receiver's post-judgment fees against single party and that doing so amounted to impermissible sanction); *see* Tex. R. Civ. P. 131, 141.

[2] *Diggs v. VSM Fin., L.L.C.*, 482 S.W.3d 672, 674 (Tex. App.—Houston [1st Dist.] 2015, no pet.); *see also* Tex. Civ. Prac. & Rem. Code § 64.004 ("Unless inconsistent with this chapter or other general law, the rules of equity govern all matters relating to the appointment, powers, duties, and liabilities of a receiver and to the powers of a court regarding a receiver.").

a receiver is appointed, taxation of costs of the receivership and the manner of their collection are matters entirely within the sound discretion of the trial court."[3]

85.     In concluding that this a fair, reasonable and necessary fee for the Receiver, the Court considered:

   a.   The Court's file in this cause;

   b.   The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the receivership work properly;

   c.   The range of reasonable and necessary hourly rates paid in this county and in other Texas counties;

   d.   The importance of fulfilling the terms of the Trust and any amendments thereto in order to balance and safeguard the interests of the beneficiaries of the Trust and to maintain respect for the law;

   e.   The circumstance that surrounding the Trust, therefore indicating that any unreasonable harm to the Trust and its beneficiaries by appointment of Receiver is comparatively low;

   f.   The education, skill, experience, training, knowledge, reputation, ability, and seasoned judgment of the Receiver;

   g.   The complexity and demands of this particular case;

   h.   The value of property owned by the Trust and the work that will likely be required to carry out the terms of the Trust t by Receiver; and

   i.   The time limitations imposed by this Court and this case.

86.     Intervenor is awarded attorney's fees, expenses and costs in the amount of $2,500 for filing and arguing the motion for receivership and obtaining an order.

87.     In the event the Trustee or any beneficiary of interested party appeals this order, Intervenor and Receiver are awarded $50,000 each for appeal to the Court of Appeals, if any appellant does not succeed in said appeal. In the event any Trustee, beneficiary, or interested party files a petition for review to the Texas Supreme Court, Intervenor and Receiver are awarded $20,000 each for response to the petition for review, if the petition for review is denied. Intervenor and Receiver are awarded an additional $50,000 each if the petition for review is granted, but any Trustee, beneficiary, or interested party's appeal to the Texas Supreme Court is not successful. These appellate attorney's fees shall be included in the Judgment for which Receiver is authorized to recover for Judgment Creditor.

_____

[3] *Hill*, 460 S.W.3d at 767 (quoting *Theatres of Am., Inc. v. State*, 577 S.W.2d 542, 547 (Tex. App.—Tyler 1979, no writ)).

88. At the close of the Receivership, the Receiver shall submit a Final Accounting, which shall include a report of all sums paid to the Receiver and Retained Personnel pursuant to this Order.

89. All such fees and expenses of the Receiver, including all amounts due to the Receiver or Retained Personnel, shall be accorded priority to the maximum extent provided by applicable law.

90. Further, this Order shall constitute a subordinate lien upon the Receivership Assets including, but not limited to, any real property owned by the Trust or Receiver and any amounts advanced by Receiver in accordance with this Order. Such lien shall be properly perfected upon filing of this Order, or an abstract thereof, in the Public Records of the County.

SIGNED _____.

XXXXXXXXXXXXXXXXXXX
**JUDGE PRESIDING**

# EXHIBIT 2

February 24, 2025

The Honorable Judge Robert Stem
Trust Advisor of The Dororthy Spanos Living Trust

Dear Judge Stem:

I hereby resign as Trustee of The Dororthy Spanos Living Trust, effective 12 o'clock noon on February 24, 2025.

Sincerely,

By: John Malone

# EXHIBIT 3

CAUSE NO. 20220135PR1

| | | |
|---|---|---|
| IN THE ESTATE OF | § | IN THE COUNTY COURT AT LAW |
| | § | |
| DOROTHY J. SPANOS, | § | NUMBER 1 OF |
| | § | |
| DECEASED | § | McLENNAN COUNTY, TEXAS |

## ORDER APPOINTING TEMPORARY ADMINISTRATOR AND TRUST ADVISOR AND AUTHORIZING ISSUANCE OF LETTERS OF ADMINISTRATION

On this day the Court heard and considered the Application for Appointment of a Temporary Administrator and of a Trust Advisor filed by Katherine Leuschner ("Applicant"). After hearing the evidence in support of the application, the Court finds that Dorothy J. Spanos ("the Decedent") is dead and that four years have not elapsed since the date of Decedent's death on September 18, 2021; that this Court has jurisdiction and venue over this estate, and the interest of this estate and trust requires the immediate appointment of a Temporary Administrator and Trust Advisor; that the Application should be granted, including the issuance of Letters of Temporary Administration, and that the Honorable Robert Stem, would be a suitable temporary administrator and trust advisor, is not disqualified from acting as such, and should be temporary administrator of this estate and trust advisor of the Dorothy Spanos Living Trust.

It is ORDERED that the Honorable Robert Stem is hereby appointed temporary administrator of this estate to serve until _September 5, 2022_, which is not longer than 180 days from the date hereto, and who shall give bond in the sum of $ _10,000 –_ condition as required by law; that unless this appointment is contested after service of citation, it shall be continued in force until _September 5, 2022_ or for such period of time as the Court shall deem in the interest of this estate, or it shall be made permanent if found by law and shall issue

992

letters of temporary administration within three days after the temporary administrator has qualified according to law; and that the temporary administrator shall have the following powers:

a. To take charge and possession of any real property of the Estate that is not otherwise in the Trust.

b. To take possession of all accounts, funds, stocks, CDs, and other financial accounts subject to probate belonging to Decedent at the time of her death; to open new accounts and to be authorized signatory on those accounts;

c. To execute and deliver any instruments necessary for the sale, transfer or conveyance of any interest in real property owned by Decedent (including but not limited to contracts, deeds, closing statements, purchase and sale agreements, affidavits, pleadings and other similar documents) at the time of death; to pay court costs and all necessary expenses and attorney's fees; to sue or defend lawsuits; and to exercise any rights necessary to protect Decedent's real and personal property;

d. To insure the Estate and its assets against liability in appropriate cases;

e. To insure the Estate property against fire, theft, and other hazards, as deemed necessary by the administrator;

f. To pay taxes, court costs, and bond premiums, as necessary;

g. To hire professionals to represent, advise, or assist the Temporary Administrator in performance of his duties;

h. To consent to and obtain business and financial records, including business records of Spanos Management, LLC, records from financial institutions, records from attorneys for the Decedent and medical records of the Decedent;

i. To consent to and obtain records of the Nick L. Spanos Family Trust 1994 to determine the relationship between the two trusts and other assets;

j. To asses and determine all claims and debts owed to the Estate and/or to be paid by the Estate to its creditor;

k. To file an Interim Inventory of the Estate of Decedent, within forty-five (45) days of appointment; and

l. To consent and obtain all estate planning documents of the Decedent, including but not limited to, any wills, codicils, memorandums, trusts, powers of attorney, directives, drafts, notes, and recordings.

IT IS FURTHER ORDERED that the Honorable Robert Stem is hereby appointed as Trust Advisor of the Dorothy Spanos Living Trust to serve until _September 5, 2022_, which is not longer than 180 days from the date hereto, this his appointment as Trust Advisor does not require a bond, and that his appointment unless this appointment is contested after service of citation, it shall be continued in force for such period of time as the Court shall deem in the interest of the Trust and its beneficiaries, or it shall be made permanent if found by law and shall issue; that Judge Stem shall have the following powers in his capacity of the Trust Advisor as detailed in the Trust:

a.   to demand a written accounting from the Trustee, review the accounting, and approve or reject the accounting;

b.   to construe the terms of the Trust to settle any interpretation disputes;

c.   to execute documents and direct the Trustee to execute and deliver documents;

d.   to examine the trust records, including all documentation, inventories, and accountings; and

e.   to employ professionals to advise or assist the Trust Advisor perform his duties.

SIGNED this __8__ day of March, 2022.

_____
JUDGE PRESIDING

**APPROVED AS TO FORM:**

**BEARD KULTGEN BROPHY BOSTWICK &**
**DICKSON, PLLC**
220 South Fourth Street
Waco, Texas 76701
(254) 776-5500
(254) 776-3591/Facsimile

BY:   /s/ Mark E. Firmin
      Mark E. Firmin
      State Bar No. 24099614

# EXHIBIT 4

| | | |
|---|---|---|
| **IN THE ESTATE OF** | § | **IN THE COUNTY COURT OF** |
| | § | |
| **DOROTHY J. SPANOS,** | § | |
| | § | |
| **DECEASED** | § | **McLENNAN COUNTY, TEXAS** |

## AGREED ORDER APPROVING THE DISCHARGE OF TEMPORARY ADMINISTRATOR AND TERMINATION OF TEMPORARY ADMINISTRATION

Before this Court is the Agreed Order Approving the Discharge of Temporary Administrator, the Honorable Judge Robert Stem ("Judge Stem" or "Temporary Administrator"), and Termination of Temporary Administration, on behalf of the Estate of Dorothy J. Spanos, Deceased ("the Estate"). The parties to this Agreed Order have represented to the Court the following:

After diligently investigating the assets of the Estate and Dorothy Spanos Living Trust ("the Trust") in cooperation with Frances Shelton, an heir of the Estate and Trustee of the Trust, and Katherine Leuschner, the other heir of the Estate and a beneficiary of the Trust, the parties have been unable to discover debts owed by or to the Estate, or any assets remaining in the Estate beyond a few vehicles and watercraft, whose titles were not changed to the Trust prior to Decedent's passing.

The parties represent that Shelton and Leuschner are the only heirs of the Decedent and primary beneficiaries of the personal property under the terms the Trust and its amendment.

The parties further represent that based on their investigation to date it appears there is no necessity of administration at this time and that Shelton and Leuschner, in their respective capacities, should be authorized to transfer title to any titled assets via an Affidavit of Heirship or other legal means.

The parties further represent that Shelton and Leuschner have agreed that in the event assets or debts of the Estate requiring administration are discovered Shelton, as the Independent Executor named in the Pour-Over Will of Dorothy J. Spanos ("the Will"), will either offer the Will for probate,

Agreed Order Approving the Discharge of Temporary Administrator and Termination of
Temporary Administration on Behalf of the Estate of Dorothy J. Spanos, Deceased    Page 1 of 4

996

probate the Will as a muniment of title, or record a small estate affidavit, whichever is most feasible and cost-effective.

The parties further agree that because there is no necessity of administration at this time and no need for an inventory, that Judge Stem shall be discharged as Temporary Administrator, his bond released, and the Temporary Administration terminated.

The Court, therefore, makes the following findings:

1. By order of the Court, the Honorable Judge Robert Stem was duly appointed to serve as Temporary Administrator of the Estate of Dorothy J. Spanos and as Trust Advisor of the Dorothy Spanos Living Trust on March 8, 2022.

2. Judge Stem has served in the role of Temporary Administrator and Trust Advisor since his appointment and has acted in accordance with this Court's order and pursuant to the powers granted therein.

3. Judge Stem has made a diligent search to determine the assets of the Estate and Trust and debts owed to or by the Estate.

4. Judge Stem has determined, to the best of his knowledge, that the only assets that were not transferred to the Trust were a few vehicles and watercrafts that can be dealt with through an Affidavit of Heirship or other legal means.

5. Judge Stem has determined that there is no necessity for an administration of this Estate at this time.

6. Judge Stem has managed the Estate in compliance with the standards set forth for a temporary administrator in the Texas Estates Code.

7. Judge Stem has not paid any fees or expenses from the assets of the Estate.

Agreed Order Approving the Discharge of Temporary Administrator and Termination of
Temporary Administration on Behalf of the Estate of Dorothy J. Spanos, Deceased                Page 2 of 4

997

8. Judge Stem is entitled to be paid compensation for his services as Temporary Administrator pursuant to Texas Estates Code § 352.002 and shall be paid for such services from assets in the Trust.

9. Judge Stem shall be discharged as Temporary Administrator and the Temporary Administration terminated.

10. Judge Stem shall continue to serve as the Trust Advisor of the Dorothy Spanos Living Trust in accordance with the Court's order of March 8, 2022 and pursuant to the terms of the Trust.

IT IS ORDERED THAT:

1. Judge Stem shall be paid for reasonable and necessary services rendered as Temporary Administrator from the assets of the Trust and the parties agree that Judge Stem shall carry his fees forward until his service as the Trust Advisor is complete at which such time he shall submit an invoice to the Trustee;

2. No necessity of administration exists at this time and that Leuschner and Shelton may execute any documents necessary to transfer title to any personal property or real property in their respective capacities;

3. That in the event an administration becomes necessary or other assts discovered, Shelton shall timely offer the Will for probate, probate the Will as a muniment of title, or record a small estate affidavit, whichever is most feasible and cost-effective; and

4. That Judge Stem is discharged as temporary administrator of the Estate and the Temporary Administration is terminated.

SIGNED, ENTERED, and ORDERED on this __18th__ day of May 2022.

_____
JUDGE PRESIDING

Agreed Order Approving the Discharge of Temporary Administrator and Termination of
Temporary Administration on Behalf of the Estate of Dorothy J. Spanos, Deceased          Page 3 of 4

998

APPROVED AS TO FORM AND SUBSTANCE:

/s/ Robert Stem
Judge Robert Stem, Temporary Administrator


/s/ Mark E. Firmin
Attorney for Katherine Leuschner


/s/ Daniel A. Palmer
Attorney for Frances Shelton

Agreed Order Approving the Discharge of Temporary Administrator and Termination of
Temporary Administration on Behalf of the Estate of Dorothy J. Spanos, Deceased        Page 4 of 4

999

# EXHIBIT 5

J.A. "HARDY" HARWELL
MCLENNAN COUNTY CLERK
FILED

2022 SEP -1 PH 3: 49

CAUSE NO. 20220135PR1

| | | |
|---|---|---|
| IN THE ESTATE OF | § | IN THE COUNTY COURT |
| | § | |
| DOROTHY J. SPANOS, | § | |
| | § | |
| DECEASED | § | McLENNAN COUNTY, TEXAS |

## AGREED ORDER TO EXTEND THE APPOINTMENT OF THE TRUST ADVISOR OF THE DOROTHY SPANOS LIVING TRUST

Before this Court is the Agreed Order Extending the Appointment of the Honorable Judge Robert Stem ("Judge Stem" or "Trust Advisor"), as Trust Advisor to the Trustee of the Dorothy Spanos Living Trust. The parties to this Agreed Order have represented to the Court the following:

The Parties represent that on March 8, 2022, the Court signed an Order appointing Judge Stem as Trust Advisor to the Trustee of the Dorothy Spanos Living Trust through September 5, 2022.

There still exists a necessity for the Trust Advisor to assist in resolving a dispute amongst the Parties involving a perceived ambiguity in the Trust involving the distribution of certain real property, as well as assisting with the division and distribution of some of the personal property.

The Parties request that Judge Stem's appointment as Trust Advisor be extended indefinitely to help facilitate an agreement amongst the Parties for the distribution of real property and to resolve any other disagreements amongst the Parties relating to the Trust that may exist as a result of any perceived ambiguity.

The Court, therefore, makes the following findings:

1. By order of the Court, the Honorable Judge Robert Stem was duly appointed to serve as Trust Advisor of the Dorothy Spanos Living Trust on March 8, 2022.

2. Judge Stem has served as Trust Advisor since his appointment and has acted in accordance with this Court's order and pursuant to the powers granted therein.

3. A necessity stills exists for a Trust Advisor to facilitate in resolving a dispute amongst the Parties arising from a perceived ambiguity in the Trust.

Agreed Order Extending the Appointment of the Trust Advisor of the Dorothy Spanos Living Trust    Page 1 of 2

1001

4.    Judge Stem shall continue to serve as the Trust Advisor of the Dorothy Spanos Living Trust in accordance with the Court's order of March 8, 2022 and pursuant to the terms of the Trust.

IT IS ORDERED THAT:

1.    Judge Stem shall continue to serve as the Trust Advisor of the Dorothy Spanos Living Trust in accordance with the Court's order of March 8, 2022 and pursuant to the terms of the Trust until such time that the Trust Advisor either determines that there no longer exists a necessity for a Trust Advisor, by agreement of the Parties, or if the Court, in the best interest of the Trust, determines cause exists for the removal of the Trust Advisor.

SIGNED, ENTERED, and ORDERED on this ___1st___ day of __September__ 2022.

_____
JUDGE PRESIDING


APPROVED AS TO FORM AND SUBSTANCE:


/s/ Robert Stem
Judge Robert Stem, Trust Advisor to the Trustee
Of the Dorothy Spanos Living Trust


/s/ Mark E. Firmin
Attorney for Katherine Leuschner


/s/ Danny A. Palmer
Attorney for Frances Shelton, Trustee of the
Dorothy Spanos Living Trust


/s/ Jim Dunnam
Attorney for Bobby Spanos, Chris Spanos and
Nicole Spanos

# EXHIBIT 6



# Robert Stem

Senior District Judge
State of Texas
Mediator

108 Bridge St.
Marlin, Texas 76661

(254) 214-4401

rstemfalls@gmail.com
judgerobertstem.com

May 3, 2023

Mr. Danny Palmer
Haley & Olson
100 Ritchie Road #200
Waco, Texas 76712
Via email: dpalmer@haleyolson.com

Re: Dorothy Spanos Trust

Dear Danny:

I have reviewed the request from Counsel for Kathy Leuschner, Bobby Spanos, Nicole Lawrie, and Chris Spanos to remove Frances Shelton as Trustee. I have also reviewed and taken into consideration your response, as well as all the facts and circumstances that have transpired since my appointment as trust advisor over a year ago.

The Dorothy Spanos Trust is in need of a truly neutral, detached and independent trustee.

As trust advisor, I am exercising the power set forth in Section 4.07(c), and removing Frances Shelton as Trustee. This emailed letter, sent simultaneously to all Counsel, will serve as written notice to Frances Shelton of her removal through her Attorney of Record. Rick Shelton, as Successor Trustee is not an appropriate substitute trustee, and this letter will serve as written notice to him. In the event you are unable to accept notice on behalf of Rick Shelton, please let me know and I'll proceed to send the appropriate notice.

I have contacted Attorney John Malone, and he has agreed to accept the appointment as Successor Trustee. Under Sections 3.08 and 4.07 of the Trust, John Malone will be appointed as the Special Independent Trustee of the Dorothy Spanos Trust. John Malone is copied on this group email which will serve as written notice of his appointment.

Please contact John Malone in order to provide the necessary initial documents to begin the transition. I am also available to set up a time to have a joint visit with John Malone to speed up the process.

Sincerely,

Robert Stem
Trust Advisor
Dorothy Spanos Trust

1004

# EXHIBIT 7

**Estate of Benson, Not Reported in S.W. Rptr. (2015)**

2015 WL 5258702

2015 WL 5258702
Only the Westlaw citation is currently available.

SEE TX R RAP RULE 47.2 FOR
DESIGNATION AND SIGNING OF OPINIONS.

Court of Appeals of Texas, San Antonio.

ESTATE OF Shirley L. BENSON, Deceased

No. 04–15–00087–CV
|
Delivered and Filed: September 9, 2015

From the Probate Court No. 2, Bexar County, Texas Trial
Court Nos. 155,572 & 155,572–A Honorable Tom Rickhoff,
Judge Presiding

**Attorneys and Law Firms**

Bennett L. Stahl, Harriet O'Neill, Douglas Alexander, Emily
Harrison Liljenwall, for Renee Benson.

Owen J. McGovern, Troy Ray Ford, Russell S. Post, Phillip
Whitmann, David J. Beck, for Thomas Milton Benson, Jr.

Sitting: Karen Angelini, Justice Marialyn Barnard, Justice
Rebeca C. Martinez, Justice

## MEMORANDUM OPINION

Opinion by: Marialyn Barnard, Justice

*1 This is an accelerated, interlocutory appeal from
a probate court order regarding the Shirley L. Benson
Testamentary Trust ("the Trust"). Appellant Thomas Milton
Benson Jr., as trustee of the Trust, contends the probate
court abused its discretion by entering a temporary injunction
enjoining him from acting as trustee and appointing
temporary co-receivers over the Trust assets. We reverse the
portion of the probate court's order granting the temporary
injunction and render judgment dissolving the temporary
injunction. However, we affirm the portion of the probate
court's order appointing temporary co-receivers.

## BACKGROUND

Renee Benson is the only surviving daughter of Thomas
Milton Benson Jr. and his first wife, Shirley L. Benson.
Before her death, Shirley executed a will that provided for
the creation of the Trust upon her death. When she died, the
Trust was formed and received the residue of her estate. In the
will, Shirley named Tom trustee and income beneficiary of
the Trust and the Bensons' three children, Robert, Renee, and
Jeanne Marie, remainder beneficiaries of the Trust. The Trust
provided that upon Tom's death, its assets would be divided
equally among the three children. During Tom's lifetime,
however, the Trust was to provide for the distribution of
income to Robert, Renee, and Jeanne Marie to the extent
necessary for their health, support, and maintenance.

After Shirley's will was probated, Tom began serving as
trustee. Over the next thirty-five years, Tom managed the
assets of the Trust, utilizing the assistance of accountants,
bookkeepers, and business advisors. Currently, the Trust
consists of a variety of significant assets, including a non-
controlling interest in Bensco, Inc.,[1] a ninety-seven percent
interest in Lone Star Capital Bank, a ninety-nine percent
interest in Uptown Blanco, Ltd.,[2] real estate interests in
Texas and Louisiana, and several million dollars in cash.

According to Renee, in 2014, her father's behavior toward her
and her two adult children, Rita and Ryan, abruptly changed.
At that time, Renee and her children were heavily involved
in running a number of Tom's enterprises, including the New
Orleans Saints, the New Orleans Pelicans, Lone Star Capital
Bank, and five car dealerships. During an evidentiary hearing,
Renee testified she and her father always had a very close
relationship, and she and her children took part in many of her
father's business ventures. However, according to Renee, this
dynamic began to change over the past year. Renee testified
that in December of 2014, her father asked her to visit him
in New Orleans, and when she went to his house, she found
him "out of it." According to Renee, Tom was taking a lot of
medications, but did not know what they were. Renee testified
that since the December 2014 visit, she has not been permitted
to visit or speak to her father.

*2 Renee also testified that a few days after Christmas 2014,
she received a letter from her father. The letter was addressed
to her and her children. In the letter, her father stated he has
been unhappy with their behavior since his marriage to his
third wife Gayle in 2004. As a result, he no longer wanted
any contact with them. Renee testified that in the letter, her
father stated she and her children were banned from entering
any of his facilities, including the facilities or games for the

New Orleans Saints and New Orleans Pelicans, the Benson Towers, and the automobile dealerships. The letter also stated none of them had any right to give directions or orders to any of his business personnel. Confused, Renee testified she tried to contact her father by phone and in person over the next couple of weeks; however, Tom refused to speak to her.

The evidence showed that around that same time, Tom was exhibiting some troubling behavior toward close business associates, specifically Tom Roddy and Bill McCandless, both longtime bankers in San Antonio who had worked with Tom for over thirty years. According to Mr. Roddy, Tom attempted to fire him, Mr. McCandless, Renee, Rita, and Ryan from the Lone Star Capital Bank's Board of Directors. Mr. Roddy also testified Tom abruptly withdrew $25 million dollars—$4.76 million of which belonged to the Trust—from Lone Star Capital Bank and deposited the funds with Frost National Bank. The total withdrawal constituted approximately twelve percent of the bank's total deposits, placing the bank in an urgent situation. Lone Star Bank's CEO and President, Danny Buck, testified Tom did not provide him with any warning of the withdrawal, and as a result, the bank had to sell some securities and obtain a short-term loan. Mr. Buck stated such behavior was unprecedented for an owner of a bank. At the same time, however, Mr. Roddy also testified Tom's actions were not illegal and did not impact the bank's book value.

Lastly, Tom secretly relocated the office of the Trust bookkeeper, Mary Polensky. Ms. Polensky testified she usually used an office at Renee's company, Renson Enterprises, Inc., but Tom asked her to move out without telling anyone where she was going. Ms. Polensky complied and did not return any of Renee's or Mr. Roddy's phone calls for more than two months. Not until the evidentiary hearing did Renee learn that Ms. Polensky moved her office from Renson Enterprises, Inc. to Tom's condominium in San Antonio.

As a result of Tom's behavior, Renee filed an original petition in the Bexar County probate court, alleging Tom was not fulfilling his fiduciary duties as trustee and seeking to remove Tom as trustee of the Trust. In her petition, Renee pointed out that in addition to other unusual behaviors, Tom failed to pay a number of fees, including property insurance premiums and taxes on several real estate assets owned by the Trust. Renee asked the probate court to issue a temporary restraining order to prevent her father from moving trust assets as well as a temporary injunction enjoining Tom from taking any

action related to the Trust. Renee also asked the probate court to appoint a temporary receiver to manage the Trust assets during the course of the removal proceedings.

That same day, the probate court granted the temporary restraining order against Tom and ordered a hearing on Renee's request for the temporary injunction. Shortly thereafter, the probate court held a two-day evidentiary hearing to determine whether it should grant the requested temporary injunction. As indicated above, Renee presented testimony regarding Tom's behavior toward her and his other business associates as well as Tom's recent actions with regard to the Trust. Conversely, Tom presented evidence indicating he had a strained relationship with Renee and her children and he no longer wanted any contact with them. Tom, however, did not testify at the hearing.

*3 At the conclusion of the hearing, the probate court neither expressly granted nor denied Renee's request for temporary injunctive relief; rather, the probate court rendered a written order appointing temporary co-receivers, Phil Hardberger and Arthur Bayern, authorizing them to take control of both the Estate of Shirley L. Benson and the Trust (collectively "the Receivership Estate"). Specifically, the order authorized the co-receivers to identify and take possession of the Receivership Estate, manage the business and financial affairs of the Receivership Estate, and essentially perform any action necessary to preserve its value. An addendum outlining the probate court's reasons for appointing co-receivers was attached to the order. The addendum summarized Tom's actions relating to Renee and the Trust. Tom appealed the probate court's order.

Several days later, the co-receivers asked the probate court to expand their powers to allow them to reach additional assets. Without specific notice to Tom, the probate court amended its original order, granting the temporary co-receivers the power to determine the extent to which the Receivership Estate owns assets with third parties. The probate court also granted the temporary injunction. Thereafter, Tom filed an amended notice of appeal, indicating the probate court's amended order failed to comply with Texas Rules of Civil Procedure 683 and 684. Tom also sent a letter to the probate court, requesting an opportunity to be heard before any additional action was taken. The probate court denied Tom's request and rendered a second amended order, itemizing the actions Tom was commanded to desist and refrain from and setting the matter for trial. Tom filed another amended notice of appeal.

Estate of Benson, Not Reported in S.W. Rptr. (2015)

2015 WL 5258702

## ANALYSIS

In three issues on appeal, Tom argues the probate court abused its discretion in granting a temporary injunction in favor of Renee and appointing co-receivers. Tom first argues there was no evidence he committed a material breach of trust to support the probate court's second amended order granting a temporary injunction and appointing co-receivers. In addition, Tom argues neither the temporary injunction nor appointment of co-receivers "can be defended under the requirements of equity." Specifically, Tom argues there is no evidence to show Renee suffered serious injury or irreparable harm or that less invasive equitable remedies would be inadequate. Finally, Tom contends the probate court's second amended order is facially flawed and void. According to Tom, the probate court rendered the order without notice of a hearing to him and the order does not comply with the mandatory requirements set out in Texas Rule of Civil Procedure 683.

### *Standard of Review*

We review a trial court's interlocutory order appointing a receiver or granting a temporary injunction under an abuse of discretion standard. *Elliot v. Weatherman*, 396 S.W.3d 224, 228 (Tex.App.–Austin 2013, no pet.); *Benefield v. State*, 266 S.W.3d 25, 30–31 (Tex.App.–Houston [1st Dist.] 2008, no pet.); *Khaledi v. H.K. Global Trading, Ltd.*, 126 S.W.3d 273, 280 (Tex.App. San Antonio 2003, no pet.). A trial court abuses its discretion when it acts arbitrarily, unreasonably, without regard to any guiding rules and principles of law, or misapplies the law to the established facts. *Elliot*, 396 S.W.3d at 228; *Orix Capital Mkts., LLC v. La Villita Motor Inns., J.V.*, 329 S.W.3d 30, 44 (Tex.App. San Antonio 2010, pet. denied); *Benefield*, 266, S.W.3d at 31. Conversely, a trial court does not abuse its discretion so long as some evidence in the record reasonably supports the trial court's decision. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 211 (Tex.2002); *Khaledi*, 126 S.W.3d at 280. When conducting our analysis, we may not substitute our judgment for that of the trial court unless it is clear from the record that the trial court could reach only one decision. *Elliot*, 396 S.W.3d at 228 (citing *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex.1992)).

### *Temporary Injunction*

*4 As an initial matter, because Tom's last argument is dispositive with regard to the granting of the temporary injunction, we address it first. As stated above, Tom contends the temporary injunction order is void because it does not comply with Texas Rule of Civil Procedure 683. According to Tom, the order is conclusory because it does not "articulate the reasons" Renee will suffer irreparable injury if the injunction is not granted. We agree.

Texas Rule of Civil Procedure 683 states that every order granting an injunction must "set forth the reasons for its issuance" and "be specific in its terms." TEX.R. CIV. P. 683. The Texas Supreme Court has interpreted this rule to require "the order set forth the reasons why the court deems it proper to issue the writ to prevent injury to the applicant in the interim; that is, the reasons why the court believes the applicant's probable right will be endangered if the writ does not issue." *Transp. Co. v. Robertson Tremsps., Inc.*, 152 Tex. 551, 556, 261 S.W.2d 549, 553 (1953); *Kotz v. Imperial Capital Bank*, 319 S.W.3d 54, 56 (Tex.App. San Antonio 2010, no pet.); *see also State v. Cook United, Inc.*, 464 S.W.2d 105, 106 (Tex.1971) ("[I]t is necessary to give the reasons why injury will be suffered if the interlocutory relief is not ordered"). When setting forth the reasons injury will occur, the trial court must set forth specific reasons, not merely conclusory statements. *Kotz*, 319 S.W.3d at 56; *see also* Tex.R. Civ. P. 683 (requiring court's order granting injunction to "be specific in terms"). Simply stating a party "will suffer irreparable harm" does not satisfy Rule 683's specificity requirement. *AutoNation, Inc. v. Hatfield*, 186 S.W.3d 576, 582 (Tex.App. Houston [14th Dist.] 2005, no pet.); *see also Indep. CapitalMgmt., LLC v. Collins*, 261 S.W.3d 792, 795 96 (Tex.App. Dallas 2008, no pet.); *Univ. Inter scholastic League v. Torres*, 616 S.W.2d 355, 358 (Tex.Civ.App. San Antonio 1981, no writ). This procedural requirement for specificity is mandatory and must be strictly followed; an order granting a temporary injunction that fails to strictly comply with the specificity requirement may be declared void and dissolved. *Qwest Commc'ns Corp. v. AT & T Corp.*, 24 S.W.3d 334, 337 (Tex.2000) (per curiam); *Kotz*, 319 S.W.3d at 56; *Indep. Capital Mgmt.*, 261 S.W.3d at 795. A trial court is considered to have abused its discretion if it issues a temporary injunction order that fails to satisfy the specificity requirement of Rule 683. *Indep. Capital Mgmt.*, 261 S.W.3d at 795.

To determine whether an order is sufficiently specific about the injury to be suffered by the applicant, we look only to the order itself. *See AutoNation, Inc.*, 186 S.W.3d at 582,

Here, the portion of the probate court's second amended order granting the temporary injunction does not specify the reasons the writ is necessary to prevent an injury to Renee, the applicant. Instead, the order simply states, "Petitioner [Renee] will have no adequate remedy at law, and the Petitioner will be irreparably harmed." This statement merely sets out the elements necessary for injunctive relief without identifying how or why Renee will be irreparably harmed. Thus, it is conclusory. *See Indep. Capital Mgmt.*, 261 S.W.3d 795–96; *AutoNation, Inc.*, 186 S.W.3d at 582; *Interscholastic League*, 616 S.W.2d at 358; *see also Arkoma Basin Exploration Co. v. FMF Associates 1990 A, Ltd.*, 249 S.W.3d 380, 389 n.32 (Tex.2008) (defining "conclusory" as "[e]xpressing a factual inference without stating the underlying facts on which the inference is based.").

*5 Although the portion of the order granting the injunction states the probate court's reasons for granting injunctive relief are set forth in the attached addendum, the addendum sets out the actions Tom has taken and the state of his health. It does not specify, as it must, what injury Renee will suffer in the absence of an injunction. *See Robertson Transps.*, 261 S.W.3d at 553 (requiring order to set forth why it believes *applicant's* probable right will be injured); *Kotz*, 319 S.W.3d at 56. Here, the addendum contains several conclusory statements regarding injuries allegedly suffered by the Trust and depositors of Lone Star Capital Bank. For example, on the first page, the addendum states, "Significant actions by the trustee and his few known statements motivating those acts negatively impacted the trust and were of particular concern." It later states, "Both sides presented evidence that this action [transferring funds from Lone Star Capital Bank to Frost Bank] impaired the banks [sic] function and could cause other depositors concern." However, neither of these statements identify how *Renee, the applicant,* will suffer harm, nor do they set forth reasons explaining why injury will result to *Renee* in the absence of an injunction. *See Robertson Transps.*, 261 S.W.3d at 553; *Kotz*, 319 S.W.3d at 56.

The only part of the addendum that can be construed as setting forth any reason injury will be suffered in the absence of an injunction states:

> The actions of the trustee will likely damage the trustee's local brand significantly over this next year if not reversed soon and if the major interested parties are not reassured

that the previous status quo obtain accompanied by stability and calmness [sic].

This language, however, does not comply with the strict specificity requirements of Rule 683 as it fails to identify what injury will occur to *Renee* or how *Renee* will suffer an injury as a result if the injunction is not granted. *See Robertson Transps.*, 261 S.W.3d at 553; *Kotz*, 319 S.W.3d at 56–57.

Accordingly, after reviewing the order and the addendum, we conclude the probate court failed to identify what harm will occur to Renee or how she will suffer any injury in the absence of an injunction. *See IAC, Ltd.*, 160 S.W.3d at 201 ("The trial court ... must give the reasons why injury will be suffered if the interlocutory relief is not ordered"). We therefore hold the portion of the probate court's second amended order granting the temporary injunction does not comply with the requirements of Rule 683. *See* Tex.R. Civ. P. 683; *Kotz*, 319 S.W.3d at 56. Thus, we hold the portion of the order granting the temporary injunction order is void and the temporary injunction must be dissolved. *See Quest*, 24 S.W.3d at 337; *Kotz*, 319 S.W.3d at 56.

### *Appointment of Receiver*

We now turn to Tom's challenges regarding the probate court's appointment of coreceivers. Whether authorized by statute or by equity, the appointment of a receiver is considered a harsh, drastic, and extraordinary remedy that must be used cautiously. *Benefield*, 266 S.W.3d at 31; *Elliot*, 396 S.W.3d at 228–29. Only in certain circumstances may a trial court appoint a receiver over trust property. *Elliot*, 396 S.W.3d at 228. Section 114.008(a)(5) of the Texas Property Code authorizes a court to "appoint a receiver to take possession of the trust property and administer the trust" if the court finds that "a breach of trust has occurred or might occur." TEX. PROP.CODE § 114.008(a)(5) (West 2014); *see also Elliot*, 396 S.W.3d at 228. The party seeking the appointment of a receiver bears the burden of proof to show the existence of circumstances justifying the appointment of a receiver. *Benefield*, 266 S.W.3d at 31; *Elliot*, 396 S.W.3d at 228–29.

In his first issue, Tom contends the probate court abused its discretion in appointing coreceivers over the Trust assets because there was no evidence he committed a breach of trust or that a breach of trust might occur so as to support the

appointment of co-receivers. In response, Renee argues she produced evidence establishing Tom committed a breach of trust. According to Renee, Tom breached his fiduciary duties as trustee when he: (1) severed all contact with Renee and her children; (2) abruptly withdrew $25 million dollars from Lone Star Capital Bank; (3) attempted to fire several of the board members of Lone Star Capital Bank; and (4) secretly moved the Trust's bookkeeper from Renee's company's office to his private condominium.

**\*6** A breach of trust occurs when a trustee breaches his statutory or common law fiduciary duty. *See* TEX. PROP.CODE § 114.001(b). It is a well-established principle that a trustee is a fiduciary that is held to a high standard of care when dealing with trust property. *See generally* TEX. PROP.CODE §§ 113.051–115.059; *Estate of Boylan*, No. 01–14–000170–CV, 2015 WL 598531, at \*4 (Tex.App.–Fort Worth March 12, 2015, no pet.) (mem.op.). As a fiduciary, a trustee owes an unwavering duty of good faith, fair dealing, loyalty, and fidelity to his or her beneficiaries when managing the affairs of a trust and its corpus. *See Boylan*, 2014 WL 598531, at \*4. Moreover, a trustee owes a duty of full disclosure of all material facts known to him or her which might affect the rights of beneficiaries. *Trostle v. Trostle*, 77 S.W.3d 908, 914 (Tex.App.2002 Amarillo, no pet.) (citing *Huie v. DeShazo*, 922 S.W.2d 920, 923–24 (Tex.1996)). This fiduciary duty requires that a trustee exercise care and judgment that a person of ordinary prudence, discretion and intelligence would exercise when managing his or her own affairs. *Boylan*, 2014 WL 598531, at \*4. Furthermore, the existence of strained relations between parties does not minimize the fiduciary's duty of full and complete disclosure. *Montgomery v. Kennedy*, 669 S.W.2d 309, 313 (Tex.1984). "A trustee can exercise his fiduciary duty in such a negligent manner that his lack of diligence will result in a breach of his fiduciary duty." *Jewett v. Capital Nat. Bank of Austin*, 618 S.W.2d 109, 112 (Tex.Civ.App.–Waco 1981, writ ref'd n.r.e.). Accordingly, we must determine whether Tom's actions constitute a breach of his fiduciary duty, and therefore, whether a breach of trust occurred or might occur without the appointment of co-receivers.

To begin, the probate court found there was evidence of a breach of trust to support its decision to appoint co-receivers. In the addendum to the second amended order, the probate court stated, "It appears the respondent trustee's defense is that his actions do not constitute a trust breach. The court disagrees." As noted above, Renee produced evidence that Tom severed communication with her and her children, who

were the beneficiaries of the Trust, and he began moving trust assets and taking actions that could affect the value of the Trust assets. Without explanation, Tom transferred $4.76 million dollars of Trust funds from Lone Star Capital Bank—in which the Trust has a ninety-seven percent interest—to Frost National Bank. This transfer was part of a larger transfer of $25 million. According to Lone Star Capital Bank, although the transfer had no effect on the bank's book value, it could have potentially impacted the bank's market value in a negative way. Renee also produced evidence that Tom did not provide bank personnel with any warning of the withdrawal, and as a result, the bank had to sell some securities and obtain a short-term loan. She also produced evidence that because of the transfer's potential to negatively impact the market value of the bank, a transfer of such magnitude was uncharacteristic of bank owners.

The record also contains evidence that Tom attempted to fire several Lone Star Capital Bank board members. Finally, Renee produced evidence that Tom secretly moved the bookkeeper of the Trust and told the bookkeeper not to talk to Renee or her children or tell anyone of her movement. The evidence showed Renee attempted to contact the bookkeeper several times but was unsuccessful.

These actions constitute some evidence from which the probate court could have determined, in its discretion, that Tom committed a breach of trust. As trustee, Tom not only had a duty to exercise the care and judgment that he would exercise when managing his own affairs, but also a duty to fully disclose any material facts that *might* affect Renee and her children's rights. *See Boylan*, 2014 WL 598531, at \*4; *Trostle*, 77 S.W.3d 908 at 914. Tom's abrupt severance of all communications with the Trust beneficiaries, his undisclosed transfer of funds that could have negatively impacted the market value of Lone Star Capital Bank—a Trust asset, his unexplained attempts to fire members of the Bank's board—including long-time business associates, and his concealment of the Trust bookkeeper from the Trust beneficiaries constitute some evidence of actions a person of ordinary prudence and discretion would not take when managing his own affairs. *See Boylan*, 2014 WL 598531, at \*4. Tom's actions also constitute evidence of a failure to disclose material facts that might have affected the rights of the beneficiaries. Considering all of the evidence, we hold there was some evidence to establish Tom breached his fiduciary duty and therefore a breach of trust occurred. *See id.*; *see also* TEX. PROP.CODE § 114.001(a)(5). As a result, we hold the probate court did not abuse its discretion when

it ordered the appointment of co-receivers as authorized by section 114.008(a)(5) of the Texas Property Code. *See* TEX. PROP.CODE § 114.001(a)(5).

**\*7** Tom next argues that the appointment of co-receivers cannot be defended under the requirements of equity. Specifically, Tom contends the evidence did not establish that Renee suffered irreparable harm or that less invasive equitable remedies would be inadequate. However, Tom's complaint fails because Renee was not required to satisfy the requirements of equity, i.e., she was not required to establish she suffered irreparable harm or that no other adequate remedy at law existed.

As noted above, the appointment of a receiver may be authorized by statute or by equity. *See Benefield*, 266 S.W.Sd at 31; *Elliot*, 396 S.W.3d at 228–29; *see also Fortenberry v. Cavanaugh*, No. 03–04–00816–CV, 2005 WL 1412103, at \*2 (Tex.App. Austin June 16, 2005, no pet.). Here, Renee requested the appointment of a receiver pursuant to section 114.008(a)(5) of the Texas Property Code, not based on equity. Section 114.008(a)(5) authorizes the appointment of a receiver to take possession of trust property and administer the trust so long as the court finds that "a breach of trust has occurred or might occur." TEX. PROP.CODE § 114.008(a)(5). Thus, Renee was not statutorily required to produce evidence showing irreparable harm or lack of another remedy. The appointment of a receiver is listed as one of many other equally available remedies that an applicant can request. *See* TEX. PROP.CODE § 114.008(a)(1)(10). Accordingly, Renee was only required to produce evidence satisfying the statutory requirements of section 114.008(a)(5), and as discussed above, there was some evidence establishing a breach of trust occurred so as to support the probate court's discretionary decision to appoint co-receivers to oversee the Trust.

Tom, however, contends that even if a specific statutory provision authorizes the appointment of a receiver, Renee must still satisfy the rules of equity by establishing she suffered irreparable injury and no other remedy at law exists. Tom relies on several cases which contain the following proposition: "Even if a specific statutory provision authorizes a receivership, a trial court should not appoint a receiver if another remedy exists at law or in equity that is adequate and complete." *See Elliot*, 396 S.W.3d at 228 29; *see also Benefield*, 266 S.W.3d at 31; *Fortenberry v. Cavanaugh*, 2005 WL 1412103, at \*2. In those cases, the statute authorizing the appointment of a receiver *required* the trial court to

make an equitable determination that all other remedies were inadequate. *See Benefield*, 266 S.W.3d at 31 32 (relying on Texas Nonprofit Corporation Act, which states receiver may be appointed only if all other remedies are determined by court to be inadequate); *Fortenberry v. Cavanaugh*, 2005 WL 1412103, at \*2–\*3 (same). In fact, both *Benefield* and *Elliot* rely on *Rowe v. Rowe*, 887 S.W.2d 191, 200–01 (Tex.App.– Fort Worth 1994, writ denied), wherein the petitioner sought the appointment of a receiver under article 7.05(A) of the Business Corporation Act, which specifically required a party seeking the appointment of a receiver to convince the trial court that "all other remedies available either at law or in equity are inadequate." Moreover, in *Elliot*, the statement relied upon by Tom was dicta. In *Elliot*, the court held the trial court abused its discretion in appointing a receiver because the parties did not receive proper notice of the other party's request for a receiver and the evidence did not support the appointment of a receiver without notice—the discussion of proof of another remedy was not the basis of the court's decision. *See Elliot*, 396 S.W.3d at 228 29 (pointing out that evidence did not support finding that other remedies were inadequate—finding required to justify appointment of receiver without notice). Accordingly, these cases are neither instructive nor applicable as section 114.008(a)(5), the statutory provision relied upon by Renee, does not require an applicant for a receiver to prove any elements of equity. Thus, we overrule Tom's second issue.

**\*8** Finally, Tom contends the probate court's appointment of co-receivers was an abuse of discretion because he was not provided with notice that Renee was seeking the appointment of a receiver. When, as is the case here, a party requests the appointment of a receiver over trust assets, which include real property interests, Rule 695 of the Texas Rules of Civil Procedure specifically provides, in relevant part:

> Except where otherwise provided by statute, no receiver shall be appointed without notice to take charge of property which is fixed and immovable. When an application for appointment of a receiver to take possession of property of this type is filed, the judge or court shall set the same down for hearing and notice of such hearing shall be given to the adverse party by serving notice thereof

Estate of Benson, Not Reported in S.W. Rptr. (2015)

2015 WL 5258702

not less than three days prior to such hearing....

TEX.R. CIV. P. 695; *see also Elliot*, 396 S.W.3d at 228 29; *Indep. Am. Sav. Ass'n Preston 117 Joint Venture*, 753 S.W.2d 749, 750 (Tex.App. Dallas 1988, no writ.). To determine whether Tom received proper notice of Renee's request for the appointment of a receiver, we first examine Renee's pleadings. *See Elliot*, 396 S.W.3d at 229. Here, Renee filed an Original Petition for Removal of Trustee and Application for Temporary Injunctive Relief, wherein she specifically requested imposition of a temporary restraining order, imposition of a temporary injunction, and the appointment of a temporary receiver pursuant to section 114.008(a)(5) of the Texas Property Code. Renee's request for the appointment of a receiver appears twice in her petition: (1) in section nine, entitled "Application to Appoint Temporary Conservator for Trust," wherein Renee states, "Petitioner requests that pending final trial the Court order the appointment of a temporary receiver ...;" and (2) in section thirteen, entitled "Requests for Relief," wherein Renee lists the appointment of a receiver as a type of relief sought.

The day after Renee filed her original petition, the probate court rendered the requested temporary restraining order, setting a hearing on Renee's other requests. Approximately two weeks later, the probate court held a two-day evidentiary hearing, of which all the parties had notice and all the parties appeared and presented evidence regarding Tom's actions. At the conclusion of the hearing, the probate court orally appointed co-receivers to take possession of the trust property and manage it. That same day, the probate court rendered a written order appointing co-receivers, and the order was subsequently amended twice, albeit without additional hearings.

Based on the foregoing, we conclude the record establishes Tom had notice of the relief requested by Renee, i.e., that she sought the appointment of a receiver. Her petition– the sole pleading before the probate court prior to the evidentiary hearing–specifically notified Tom of her request for appointment of a receiver.

Tom relies on *Elliot* to support his position that he did not receive notice that Renee was seeking the appointment of a receiver. In *Elliot*, the court held the trial court abused its discretion in appointing a receiver over real property held by a trust because the parties did not receive the notice required

by Rule 695. *See Elliot*, 396 S.W.3d at 229. However, we hold *Elliot* is distinguishable. In *Elliot*, the court reviewed the applicant's pleadings and pointed out, "Nowhere in his pleadings does Weatherman use the term 'receiver' or request that the court transfer control of trust assets to a third party." *Elliot*, 396 S.W.3d at 228. Thus, unlike Renee, Weatherman did not plead for the appointment of a receiver. *See id.*

**\*9** Tom also argues the language used to set the evidentiary hearing in this case did not mention the term "receivership," and therefore, he did not receive notice of Renee's request for a receiver. We again disagree. As detailed above, the only pleading on file prior to the evidentiary hearing was Renee's petition, wherein she specifically requested injunctive relief *and the appointment of receiver. See O & G Carriers, Inc. v. Smith Energy 1986–A Partnership*, 826 S.W.2d 703, 707 (Tex.App.–Houston [1st Dist.] 1992, no writ) (stating use of phrase "escrow agent" instead of "receiver" was not of substantial significance to support no notice argument).

Finally, Tom argues he did not receive notice or an opportunity to be heard when the probate court amended its order appointing co-receivers on two different occasions without a hearing. However, Tom does not cite any authority —nor have we found any—for the proposition that a party must be notified and provided with an opportunity to be heard before a court amends an order appointing a receiver. Rule 29.5 of the Texas Rules of Appellate Procedure authorizes a trial court to modify or amend an original order so long as those modifications do not interfere with or impair the appellate court's jurisdiction. TEX.R.APP. P. 29.5. Nowhere does the rule require additional notice or an additional hearing. Accordingly, we hold the probate court was authorized to amend the original order without providing the parties with additional notice or a second or third hearing. *See id.* The record establishes the original order was amended to allow the co-receivers access to certain trust property; the amended order also expanded the temporary restraining order into a temporary injunction, enjoining Tom from acting as trustee of the Trust, which as discussed above, did not comply with Rule 683.

Accordingly, we overrule Tom's notice issue and hold the evidence in the record establishes Tom received the required notice prior to the two-day evidentiary hearing and subsequent rendition of orders. *See* TEX.R. CIV. P. 695.

## CONCLUSION

Based on the forgoing, we reverse the portion of the probate court's order granting temporary injunctive relief and render judgment dissolving the temporary injunction. However, we affirm the portion of the probate court's order appointing temporary co-receivers.

**All Citations**

Not Reported in S.W. Rptr., 2015 WL 5258702

## Footnotes

1    Bensco, Inc. is a Texas corporation whose wholly-owned subsidiaries include three Texas and two Louisiana automobile dealerships.

2    Uptown Blanco, Ltd. is a real estate business focused on purchasing, renovating, and renting buildings in Blanco, Texas.

End of Document
© 2025 Thomson Reuters. No claim to original U.S. Government Works.

# EXHIBIT 8

# JAMES W. VOLBERDING

## CURRICULUM VITAE

james@volberdinglawfirm.com | www.volberdinglawfirm.com

| Objective |
|---|
| Mr. Volberding, CPA, Attorney, serves as court-appointed Receiver in state and federal courts, for the purposes of asset recovery and asset preservation and security. Mr. Volberding applies a panoply of effective techniques and resources to recover and preserve assets: account capture, real estate seizure and liquidation, litigation to recover fraudulent transfers by corporate officers, and detailed tracing of assets and funds. Geographic scope of asset recovery is world-wide. |

### Skills Summary

| Conceptual | Operational | Technical |
|---|---|---|
| - Visualization 10 steps ahead to chart alternative courses of litigation action<br>- Litigation strategy and tactics | - Litigation team management<br>- Information and document management and control<br>- Assertive litigation | - Forensic accounting and tracing<br>- Account auditing and analysis<br>- Certified Public Accountant |

### Professional Background

**Volberding Legal Group, PLLC** Present
- Practice entirely devoted to receivership asset recovery.
- More than 100 receivership appointments in 70 Texas state courts and one federal court.

**Volberding Law Firm** 1996 – 2015
- Civil and criminal litigation law firm
- Civil litigation in all aspects of civil law, from commercial and individual lawsuits, probate, real estate, contracts
- Criminal litigation in all aspect of state and federal criminal proceedings, capital murder to misdemeanors

**The Hon. Judge William M. Steger** 1993 - 1995
- U.S. District Court, Eastern District of Texas, Tyler, Law Clerk

**Nacogdoches County District Attorney's Office**
- Felony prosecutor

**Booz Allen Hamilton, Inc.**, Florham Park, New Jersey
- Booz-Allen is an international management consulting firm and defense contractor. Planned and led audits throughout the firm's worldwide practice offices including London, Paris, São Paulo, Mexico City, Düsseldorf, San Francisco, Chicago, New York, and Washington. Conducted internal audits to detect fraud, determine compliance with federal regulations, and assure proper financial reporting.

**Coopers & Lybrand**, Midland, Texas
- Coopers & Lybrand was an international public accounting firm, now PricewaterhouseCoopers. As an auditor, performed substantive and compliance audits of client firms to assess financial integrity and detect weaknesses in operations.

| Military Service | |
|---|---|

**United States Army Reserve**

| | |
|---|---|
| Commissioned: | Judge Advocate General Corps, Retired |
| Retired rank: | Lieutenant Colonel, service 28 years, Honorable Discharge |
| Former assignment: | Legal Command, 1st Legal Operations Detachment, Ft. Sam Houston, Texas |
| Former assignment: | Command Judge Advocate, Central Medical Area Readiness Support Group, Chicago Staff Judge Advocate, 412th Theater Engineer Command, Vicksburg, MS (two-star command of 12,000+ personnel) |
| Awards: | Meritorious Service Medal with Oak Leaf Cluster |
| | Korea Defense Service Medal |
| | Army Commendation Medal with Oak Leaf Cluster |

## Academic Background

| | |
|---|---|
| Master's Degree, Strategic Studies | U.S. Army War College |
| Juris Doctorate | Baylor University Law School |
| | *Baylor Law Review*, Notes & Comments Editor |
| B.B.A. (Accounting and Finance) | Texas A&M University |

## Bar Memberships

United States Supreme Court
Texas Supreme Court
United States Court of Appeals, Fifth Circuit
United States District Court, Eastern District of Texas
United States District Court, Northern District of Texas
United States District Court, Southern District of Texas
United States District Court, Western District of Texas
Argued before Court of Appeals for the Armed Forces

## Professional Organizations

Texas State Bar
International Bar Association, Insolvency and Asset Recovery Sections
National Association of Federal Equity Receivers
Texas Trial Lawyers Association
Dallas County Bar Association
Smith County Bar Association
American Institute of Certified Public Accountants
Texas Society of Certified Public Accountants
Arkansas State Board of Public Accountancy
Rotary International

## Publications

- Volberding, James W., "A New Old Way of Reaching Assets in the US," *Insolvency and Restructuring International* (vol. 17, no. 1, June 2023).
- Volberding, James W., "Reaching Foreign Assets of Texas Judgment Debtors," *Dallas Bar Association* at 31 (Nov. 2022).

## Athletic and Personal

- Competed in 60+ marathons, including nine Boston Marathons.
- Married, five adult children who speak combined seven languages.

## Contact Information

| | |
|---|---|
| Mr. James W. Volberding | Office: +001 (903) 597-6622 |
| Volberding Legal Group, PLLC | Fax: +001 (903) 913-7130 |
| 110 N. College Avenue | Cell: +001 (903) 520-1373 (Text, Signal, WhatsApp) |
| Suite 1850, Plaza Tower | Email: James@volberdinglawfirm.com |
| Tyler, TX 75702 | Website: www.volberdinglawfirm.com |
| United States | |

| Selected Receivership Outcomes |
|---|

1. **Current**. Harris County, Texas. Litigation on-going in numerous state district courts, state appellate court, Supreme Court of Texas, two U.S. Bankruptcy Courts, against Nate Paul, owner of World Class Capital Group entities, currently facing superseding federal indictment in Western District of Texas.

2. **October 2023**. Upshur County, Texas. $3.3 million default personal injury judgment against two real estate LLCs. Seized and sold 16 residential rental properties from LLC for $1.2 million. Seized $300,000 in cash accounts. Assumed control of 100 rental properties, housing more than 200 tenants. Protected all property owners and tenants. Spun off property management business.

3. **May 2023**. Smith County, Texas. $126,000 state court breach of contract judgment, recovered in full, with all receivership fees.

4. **May 2023**. Gregg County, Texas. U.S. District Court judgment for $300,000 for wage violations filed by five former waitresses of Longview bar and pool hall. With assistance of U.S. Marshals, Receiver seized the bar and pool hall, then sold to one of the waitresses. Unfortunately, she could not raise necessary capital and the club failed. Judgment debtor possessed no other non-exempt assets.

5. **March 2023**. Smith County, Texas. In divorce case, Receiver took possession of former's couple's homestead, removed former spouse, and sold property, with proceeds divided.

6. **February 2023**. Morris County, Texas. $128,000 state court judgment in favor of bank against corporate borrower, recovered in full, with all receivership fees.

7. **January 2023**. Smith County, Texas. $750,000 default judgment for plaintiff against mobile home operator for financial reporting violations. Over eight years, Receiver seized and liquidated approximately 40 residential lots and mobile homes, paying approximately $250,000 to judgment creditor.

8. **December 2022**. Harris County, Texas. As lead counsel for pre-judgment appointed Receiver, seized and held assets fraudulently transferred by defendant, including $3.5 mansion, jewelry, and expensive vehicles.

9. **October 2022**. Smith County, Texas. In suit between two former international business partners, served as pre-judgment Receiver to liquidate and hold $1.6 million in residential properties. Parties settled at mediation and Receiver released funds pursuant to agreement.

10. **June 2022**. Smith County, Texas. $8,000 justice court personal injury judgment recovered in full, with all receivership fees.

11. **May 2022**. Harris County, Texas. As lead counsel for pre-judgment appointed Special Master, monitored and controlled corporate disbursements and contracts during five-owner litigation over corporation ownership and control.

12. **February 2022**. Harris County, Texas. As lead counsel for pre-judgment appointed Receiver, assumed custody and management of six-story office building in Houston until property could be transferred to judgment creditor.

13. **December 2021**. Smith County, Texas. $371,000 judgment in favor of mother against daughter who misappropriated fund, recovered in full, with all receivership fees. Also recovered real property of $500,000.

14. **December 2021**. Smith County, Texas. $115,000 judgment in favor of business partner against former business partner, recovered in full, with all receivership fees.

15. **July 2021**. Cherokee County, Texas. $172,000 judgment in favor of commercial business for breach of contract was settled with payments to Receiver. All settlement agreement proceeds obtained and

delivered.

16. **July 2021**. Cherokee County, Texas. $33,000 probate court judgment against individual, recovered 100% owed, with all receivership fees.

17. **February 2021.** Wood County, Texas. In divorce case, Receiver took possession of former's couple's homestead, removed former spouse, and sold property, with proceeds divided.

18. **February 2021.** Harris County, Texas. As lead counsel for Receiver, initiated fraudulent transfer litigation against husband and wife to recover full judgment owed to Houston bank, with receivership fees.

19. **October 2020**. Wood County, Texas. Partial success. On $476,000 state court personal injury default judgment, seized dilapidated motel in Mineola and sold for $50,000.

20. **October 2020**. Smith County, Texas. On old 2013 $8,000 justice court judgment against judgment debtor individual for business debt, seized accounts and resolved with payment schedule for 100% to judgment creditor engineering firm.

21. **November 2020**. Collin County, Texas. $56,000 Florida state court judgment against corporation domesticated in Texas, recovered in full, with all receivership fees.

22. **February 2020**. Titus County, Texas. Probate court judgment of $500,000 in favor of beneficiary was partially recovered from executor who misappropriated estate funds. $174,000 recovered through account seizure and real estate recovery and sale.

23. **August 2019**. Navarro County, Texas. $33,000 corporate judgment, recovered in full, with all receivership fees.

24. **2018, Ongoing**. Gregg County, Texas. Following $4.2 million judgment in favor of Texas bank for defaulted energy loan, appointed Receiver for former energy entrepreneur judgment debtor who relocated to Canada. Initiated litigation in Vancouver, British Columbia. Litigation by bank is pending. Receivership recovered more than $300,000 in mineral interests, accounts, and royalties.

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Sarah Rowell on behalf of Mark Firmin
Bar No. 24099614
Rowell@thetexasfirm.com
Envelope ID: 97762499
Filing Code Description: Motion (No Fee)
Filing Description: Motion to Appoint Receiver
Status as of 2/25/2025 3:04 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Tyler BTalbert | | talbert@sytfirm.com | 2/25/2025 11:27:39 AM | SENT |
| Michael LScanes | | scanes@sytfirm.com | 2/25/2025 11:27:39 AM | SENT |
| Andrea Mehta | 24078992 | andreamehta@dunnamlaw.com | 2/25/2025 11:27:39 AM | SENT |
| James Dunnam | 6258010 | jimdunnam@dunnamlaw.com | 2/25/2025 11:27:39 AM | SENT |
| Sarah Rowell | | Rowell@thetexasfirm.com | 2/25/2025 11:27:39 AM | SENT |
| Andy McSwain | | mcswain@thetexasfirm.com | 2/25/2025 11:27:39 AM | SENT |
| Mason Dunnam | 24108079 | masondunnam@dunnamlaw.com | 2/25/2025 11:27:39 AM | SENT |
| Benjamin CYelverton | | yelverton@sytfirm.com | 2/25/2025 11:27:39 AM | SENT |
| Nickie JoD'Cee | | jodcee@sytfirm.com | 2/25/2025 11:27:39 AM | SENT |
| Mark Firmin | | firmin@thetexasfirm.com | 2/25/2025 11:27:39 AM | SENT |
| Craig D.Cherry | | ccherry@cjsjlaw.com | 2/25/2025 11:27:39 AM | SENT |
| Jenn Haring | | jharing@cjsjlaw.com | 2/25/2025 11:27:39 AM | SENT |
| Becky Perry | | bperry@cjsjlaw.com | 2/25/2025 11:27:39 AM | SENT |
| Ryan Johnson | | rjohnson@cjsjlaw.com | 2/25/2025 11:27:39 AM | SENT |
| Scott James | | sjames@cjsjlaw.com | 2/25/2025 11:27:39 AM | SENT |
| Yolanda Lopez | | lopez@sytfirm.com | 2/25/2025 11:27:39 AM | SENT |
| Chloe St. Romain | | stromain@sytfirm.com | 2/25/2025 11:27:39 AM | SENT |
| John Malone | | john@johnmalonepc.com | 2/25/2025 11:27:39 AM | SENT |
| Judge Robert Stem | | rstemfalls@gmail.com | 2/25/2025 11:27:39 AM | SENT |
| Katie Quillen | | kquillen@cjsjlaw.com | 2/25/2025 11:27:39 AM | SENT |

FILED
MCLENNAN COUNTY
3/3/2025 3:18 PM
JON R. GIMBLE
DISTRICT CLERK

Belinda Williams

CAUSE NO. 2024-3035-5

| | | |
|---|---|---|
| FRANCES SPANOS SHELTON, | § | IN THE DISTRICT COURT |
| | § | |
| PLAINTIFF, | § | |
| | § | |
| V. | § | 414TH JUDICIAL DISTRICT |
| | § | |
| JOHN MALONE, AS TRUSTEE OF THE DOROTHY | § | |
| SPANOS LIVING TRUST, | § | |
| | § | |
| DEFENDANTS, | § | MCLENNAN COUNTY, TEXAS |
| | § | |
| V. | § | |
| | § | |
| VERNON LEUSCHNER, AS DURABLE POWER | § | |
| OF ATTORNEY FOR KATHERINE LEUSCHNER, | § | |
| ROBERT LEE SPANOS, CHRISTPHER BLAKE | § | |
| SPANOS, AND KATHRYN NICOLE LAWRIE, | § | |
| | § | |
| INTERVENORS. | § | |

## ROBERT LEE SPANOS, CHRISTOPHER BLAKE SPANOS AND KATHRYN NICOLE LAWRIE'S JOINDER TO MOTION TO APPOINT RECEIVER

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES, Intervenors, ROBERT LEE SPANOS, CHRISTOPHER BLAKE SPANOS, AND KATHRYN NICOLE LAWRIE and pursuant to Rule 58 of the Texas Rules of Civil Procedure hereby join in Intervenor, VERNON LEUSCHNER, as durable power of attorney for KATHERINE LEUSCHNER's Motion to Appoint Receiver. By so joining, ROBERT LEE SPANOS, CHRISTOPHER BLAKE SPANOS, AND KATHRYN NICOLE LAWRIE adopt as if set forth herein the facts, arguments, authorities, and requested relief contained in the Motion.

WHEREFORE, PREMISES CONSIDERED, ROBERT LEE SPANOS, CHRISTOPHER BLAKE SPANOS, AND KATHRYN NICOLE LAWRIE request that the Court grant the relief

requested in the Motion to Appoint Receiver and grant such other and further relief, both at law and in equity, to which Intervenors may be entitled.

Respectfully submitted,

_/s/ Jim Dunnam_

**JIM DUNNAM**
State Bar No. 06258010
jimdunnam@dunnamlaw.com
**ANDREA MEHTA**
State Bar No. 24078992
andreamehta@dunnamlaw.com
**MASON VANCE DUNNAM**
State Bar No. 24108079
masondunnam@dunnamlaw.com
**DUNNAM & DUNNAM LLP**
4125 West Waco Drive
Waco, Texas 76710
Telephone: (254) 753-6437
Fax: (254) 753-7434

**ATTORNEYS FOR INTERVENOR
ROBERT SPANOS, CHRISTOPHER SPANOS,
AND NICOLE SPANOS**

## CERTIFICATE OF SERVICE

I certify that on March 3, 2025, a true and correct copy of the foregoing document was served upon all known counsel of record via certified mail, first class mail, facsimile, e-mail, and/or electronically through the Court's Filing Manager, in accordance with the Texas Rules of Civil Procedure.

_/s/ Jim Dunnam_
Jim Dunnam

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Nicole Ratliff on behalf of Jim Dunnam
Bar No. 6258010
nicole@dunnamlaw.com
Envelope ID: 98000026
Filing Code Description: Notice
Filing Description: Joinder to Motion to Appoint Receiver
Status as of 3/4/2025 8:14 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Kirk Pittard | | kpittard@dpslawgroup.com | 3/3/2025 3:18:40 PM | SENT |
| Tyler BTalbert | | talbert@sytfirm.com | 3/3/2025 3:18:40 PM | SENT |
| Michael LScanes | | scanes@sytfirm.com | 3/3/2025 3:18:40 PM | SENT |
| Andrea Mehta | 24078992 | andreamehta@dunnamlaw.com | 3/3/2025 3:18:40 PM | SENT |
| James Dunnam | 6258010 | jimdunnam@dunnamlaw.com | 3/3/2025 3:18:40 PM | SENT |
| Andy McSwain | | mcswain@thetexasfirm.com | 3/3/2025 3:18:40 PM | SENT |
| Mason Dunnam | 24108079 | masondunnam@dunnamlaw.com | 3/3/2025 3:18:40 PM | SENT |
| Benjamin CYelverton | | yelverton@sytfirm.com | 3/3/2025 3:18:40 PM | SENT |
| Nickie JoD'Cee | | jodcee@sytfirm.com | 3/3/2025 3:18:40 PM | SENT |
| Rick Thompson | | rthompson@dpslawgroup.com | 3/3/2025 3:18:40 PM | SENT |
| Sarah Rowell | | Rowell@thetexasfirm.com | 3/3/2025 3:18:40 PM | SENT |
| Mark Firmin | | firmin@thetexasfirm.com | 3/3/2025 3:18:40 PM | SENT |
| Craig D.Cherry | | ccherry@cjsjlaw.com | 3/3/2025 3:18:40 PM | SENT |
| Kelly Blackburn | | efile@dpslawgroup.com | 3/3/2025 3:18:40 PM | SENT |
| Ryan Johnson | | rjohnson@cjsjlaw.com | 3/3/2025 3:18:40 PM | SENT |
| Yolanda Lopez | | lopez@sytfirm.com | 3/3/2025 3:18:40 PM | SENT |
| Chloe St. Romain | | stromain@sytfirm.com | 3/3/2025 3:18:40 PM | SENT |
| John Malone | | john@johnmalonepc.com | 3/3/2025 3:18:40 PM | SENT |
| Judge Robert Stem | | rstemfalls@gmail.com | 3/3/2025 3:18:40 PM | SENT |
| Jenn Haring | | jharing@cjsjlaw.com | 3/3/2025 3:18:40 PM | SENT |
| Becky Perry | | bperry@cjsjlaw.com | 3/3/2025 3:18:40 PM | SENT |
| Scott James | | sjames@cjsjlaw.com | 3/3/2025 3:18:40 PM | SENT |

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Nicole Ratliff on behalf of Jim Dunnam
Bar No. 6258010
nicole@dunnamlaw.com
Envelope ID: 98000026
Filing Code Description: Notice
Filing Description: Joinder to Motion to Appoint Receiver
Status as of 3/4/2025 8:14 AM CST

Case Contacts

| Scott James | | sjames@cjsjlaw.com | 3/3/2025 3:18:40 PM | SENT |
|---|---|---|---|---|
| Lara Hollingsworth | | lhollingsworth@dpslawgroup.com | 3/3/2025 3:18:40 PM | SENT |
| Ashley Snyder | | Snyder@thetexasfirm.com | 3/3/2025 3:18:40 PM | SENT |
| Katie Quillen | | kquillen@cjsjlaw.com | 3/3/2025 3:18:40 PM | SENT |

# TAB L

**REPORTER'S RECORD**
**VOLUME 2 OF 3 VOLUMES**
**TRIAL COURT CAUSE NO. 2024-3035-5**
**COURT OF APPEALS CAUSE NO. 10-25-00108-CV**

| | |
|---|---|
| FRANCES SPANOS SHELTON, )( | IN THE DISTRICT COURT OF |
| Plaintiff, )( | |
| )( | |
| VS. )( | |
| )( | |
| VERNON LEUSCHNER, )( | |
| AND AS DURABLE POWER OF )( | |
| ATTORNEY FOR KATHERINE )( | |
| LEUSCHNER, ROBERT LEE SPANOS, )( | 414TH JUDICIAL DISTRICT |
| AND KATHRYN NICOLE LAWRIE, )( | |
| Intervenors, )( | |
| )( | |
| VS. )( | |
| )( | |
| VERNON LEUSCHNER,INDIVIDUALLY,)( | |
| AND KATHERINE LEUSCHNER, )( | |
| Defendants. )( | MCLENNAN COUNTY, TEXAS |

_____

**MOTION TO RE-AFFIRM AND/OR DESIGNATE TRUSTEE**
**OF THE DOROTHY SPANOS LIVING TRUST**

**MOTION TO APPOINT RECEIVER**

_____

On the 4th day of March, 2025, the following proceedings came on to be held in the above-titled and numbered cause before the Honorable Ryan Luna, Judge Presiding, held in Waco, McLennan County, Texas.

Proceedings reported by oral stenography.

Jennifer Murphy, CSR, CVR

there been any discussion with Judge Stem about who he thinks ought to replace Malone?

MR. MCSWAIN: We're gonna talk about that. That's one of the things. I'm gonna put Judge Stem on the stand. I'm happy to do it now, or I'm happy to do it in connection with the Receivership. Whatever you want to do.

THE COURT: Let's do it now.

MR. MCSWAIN: Do it now?

THE COURT: Yeah.

You need a break? Okay. Let's take a five-minute break.

MR. MCSWAIN: Okay.

(Recess taken from 3:14 p.m. to 3:22 p.m.)

THE COURT: We are back on the record in 2024-3035-5.

(Witness sworn.)

THE COURT: If you'll have a seat, please.

**JUDGE ROBERT STEM,**

having been first duly sworn, testified as follows:

**DIRECT EXAMINATION**

BY MR. MCSWAIN:

Q. Would you please state your name for the record, Judge Stem.

A. Robert Stem.

Q. Okay. How long were you a district judge?

case. We've got the order that's already in evidence, where you appointed the trust advisor in March of 2022.

Did you begin to serve at that point in time?

A. I did.

Q. As you sit here today, do you believe that that order was issued by Judge Vik --

(Speaking simultaneously.)

A. Absolutely.

Q. (BY MR. MCSWAIN) -- jurisdiction? You think it was issued with jurisdiction --

MR. CHERRY: Objection, Your Honor; calls for a legal conclusion.

THE COURT: I'm sorry, can you ask the question again so we can have a clean -- please?

Q. (BY MR. MCSWAIN) Do you think that Judge Vik had jurisdiction when he issued that order?

MR. CHERRY: Objection, Your Honor; legal conclusion.

THE COURT: Overruled.

A. Yes, sir.

Q. (BY MR. MCSWAIN) Have you done a lot of work since March 2022, on this estate and this trust and trying to sort things out?

A. Yes, sir.

Q. Tell the judge a little bit about what you have done

powers under 4.7 --

A.   Yes.

Q.   -- of the trust?

A.   Correct.

Q.   And did you feel, at the time, that -- based on her actions, that you had the ability to remove her for cause?

A.   Yes.

Q.   There's been some discussion, and Ms. Shelton has provided an audio recording of you -- I don't know, six or eight or nine months later -- in a discussion with Josh White and Ms. Shelton, where you told Ms. Shelton, "I did not remove you for cause," or words to that effect?

A.   Words to that effect.

Q.   Okay.  Did you tell her that?

A.   Yeah.

Q.   Okay.  Why did you tell her that when you felt like you could have removed for cause at the time?

A.   Well, I mean, that's my nature.  I mean, I was practicing some degree of diplomacy at that time.  We didn't need to have a hard-hitting session.  Kathy's side had outlined -- and Fran had seen it -- a several-page letter detailing what Kathy believed is violations of the trust, okay?  Mr. Palmer responded, and I had to make a call, okay?

Q.   Okay.

A.   My letter of May the 3rd just simply says, we need a

neutral, detached, and independent trustee, okay? And she was not a neutral, detached, and independent trustee, okay? And that's as far as I took it, okay?

Q. So to Judge Luna's -- so you ended up appointing John Malone, and there's reference made that appointment in this letter?

A. Correct.

Q. As John Malone served as trustee, did he discuss with you, as trust advisor, on a regular basis, things that he was doing, ought to be doing, thinking about doing? Did he discuss those things with you?

A. Yes.

Q. Did the two of you work hand-in-hand to try to bring this to a resolution somehow?

A. Yes.

Q. Did you think that the suit against John Malone was righteous?

A. No. Baseless.

Q. Okay.

A. Clearly baseless.

Q. And I want to go back. And we're gonna talk about that in just a minute. I want to go back.

Apparently, in the discussion that you had with Mr. White and Ms Shelton five, six, seven, eight months after you removed her as the trustee, your hour-long discussion with

them -- or at least part of it -- was recorded. Are you now aware of that?

A. I am now. I wasn't then.

Q. Did Mr. White tell you that he was using his fancy Apple Watch to record everything that y'all were talking about?

A. No.

Q. Did he disclose to you, at the time, that he was recording?

A. No.

Q. Okay. If he had told you, "I'd like to record what we're talking about, you know, so that we can have that record of it later, or so that my wife can take notes" -- which apparently was the situation -- "and make sure she's accurate," what would you have said?

A. I think John Malone and I would have discussed it with him, and say, "Hey, why do you need to record this?"

Q. Okay.

A. But the fact is, he never disclosed that to us.

Q. Okay.

A. That, in my mind -- to everyone in this courtroom -- is a breach of a professional courtesy. And anyone who participates in that, that is breach of professional responsibility and courtesy.

MR. JAMES: Your Honor, I'm gonna object to

that last statement and ask it to be stricken from the record. Josh White's not here to defend himself. There's no motion or pleading regarding that. And it's improper for Judge Stem just to make that ex parte statement on the record.

MR. MCSWAIN: Judge, they put it into the filings in this court, along with an affidavit from Mr. White, and have repeatedly utilized it in their briefing in this case in front of you, and I think that it's fair for Judge Stem to get to explain himself.

MR. JAMES: Your Honor, I'm not objecting to the audio, I'm objecting to what Judge Stem just said on the record.

THE COURT: I'll overrule the objection.

Mr. McSwain, if you could, if you think it's an appropriate time to turn our attention to the reasons why you think of a receiver is necessary?

MR. MCSWAIN: Yes, sir.

THE COURT: Thank you.

MR. MCSWAIN: I'm sorry. I'm just about there.

MR. JAMES: Your Honor, I would request a brief cross-examination before he goes on to the receivership argument, just so the record's clear. If you want me to reserve it until later, that's fine, too. But I do have some questions for Judge Stem.

THE COURT: Okay. Well, I'll certainly grant

issue with accounting when I came on. We got that done. Maybe the attorneys can have an idea how much was in there. Several hundred thousand dollars.

Q. Okay. Based on your experience, based on all the discussions you've had with the parties, based on all that you know that has gone on and the decisions that have to be made about this real property, what do you think -- what do you think needs to happen here to get the parties from where we are right now, at each others' throats, to being done?

A. I have thought long and hard on this. The trust is exhausted. There's no money left. This is an extraordinary case. And it requires extraordinary measures. This is a time where we need to save these people from themselves. There will be nothing left. All these grandkids will be cheated out of their inheritance. This ongoing litigation will exhaust this trust. This is an extraordinary case that requires an extraordinary ruling.

The only way to bring this to conclusion is not through a successor trustee, but it's through a receivership with some judicial protection to get this done. John Malone and I worked hours and hours and hours trying to get this done. And that man deserves a medal. He deserves a nod toward the Nobel Peace Prize, not a ridiculous, baseless, spiteful lawsuit. Shame on you guys. I'm sorry, Judge, but this is -- enough is enough. I've seen these in court.

I'm gonna show you --

MR. JAMES: And if may I approach the witness, Your Honor, this is in the actual trust document. The ELMO seems to be pretty blurry over there, but I wanted to reference Section 3.08 with the witness, if I may, Your Honor. May I approach?

THE COURT: Yes.

Q. (BY MR. JAMES) There was a lot of talk earlier, Judge Stem, about this real estate and how you believe that my client, Fran Shelton, was not able to divide it appropriately because, you know, she was biased or whatever your words were, correct? Is that a fair summary of what you were saying?

A. I didn't say biased. I would say she was not impartial.

Q. Would you say that -- again, you said you reviewed the trust and wanted to follow it, that she would be an interested party over that particular transaction because she's always getting some of the land?

A. Yeah. She's getting some of the land, but more importantly -- I mean, she put one of her children up front, a clear violation of the trust.

Q. And I -- we'll get to that in a minute, the specific language, in a minute. What I'm talking about -- there's a definition in the trust of interested party. Have you read that -- or interested trustee, sorry.

"her" being Fran, right -- "to be in such a dynamically difficult situation?"

A. Yes.

Q. You also told my client, face-to-face, just as if just the two of y'all were in the room, "There's an appreciation of what you have done for this trust."

A. Correct.

Q. Didn't you also tell my client that she was put in a horrible position by no fault of her?

A. Exactly.

Q. Didn't you also tell her that she's been put in an enormously difficult position?

A. Yes.

Q. Did you not also say, sir -- and this is a verbatim quote, "This is a family situation that was sideways by no fault of your own"?

A. Correct.

Q. And then last, but not least, you told my client to her face, seven months and two days after you sent this letter that has no for-cause reason in it whatsoever -- you told her that, "They were throwing laser beams at her." Is that a true quote?

A. Yes.

Q. And when you're saying, "they," you're talking about her sister Kathy and their side?

A.    Correct.

Q.    So, in other words, your decision -- not what you're saying here today, but way back to almost over two years ago -- it was 22 years months ago when she was removed, correct?

A.    May of 2023.

Q.    Yeah.  So around 22 months, a little less than 2 years ago; that's correct?

A.    Correct.

Q.    Isn't it true, sir, that way back when, you removed Fran as trustee to protect her from all that was going in the trust at that time?

A.    We talked about it.

Q.    Okay.  That's not my question, though.  I said, isn't that true why you removed her?

A.    That was one of the reasons.  You've got my letter. I think it speaks for itself.

Q.    Well, I don't know that it speaks for itself.  And I'm not gonna go through it because the judge can read the letter.  But I would presume that if somebody was going to -- especially a trust advisor that had the duties that you had -- that you're going to put the details of why you were removing a trustee, and you didn't put up that.

A.    Not necessarily.

Q.    Okay.  Well, forget the "not necessarily" --

A. It was somewhere a million-two, to a million-five, somewhere in that range.

Q. And isn't it true that there actually have been offers to purchase that part, the 40 acres with the house, for $1.45 million?

A. Yes. Both sides have made some offers.

Q. Exactly. But the highest offer during the time that you've been the trust advisor was $1.45 million, correct?

A. I think that's correct. Yes.

Q. And, yet, John Malone -- and you acting as trust advisor, did not agree to the sale, correct?

A. I don't think the contract was ever submitted.

Q. Okay. But an offer was made --

A. I think there was an offer made. Yes.

Q. But it was rejected by John Malone, correct?

A. I don't know that he rejected because it was ever actual -- correct. John asked for a tract form, and it was never submitted.

Q. And, again, contract or no contract, do you know who made that offer to purchase that -- the highest offer?

A. I think it was Fran.

Q. Okay.

A. I'm not sure. Both sides made one.

Q. Kathy and her husband, Vernon, the opposing side, they made an offer -- and again, let me back up.

Jennifer Murphy, CSR, CVR

That was agreeable for you as the trust advisor and for John Malone as the Trustee.  It was okay for the family to bid on it, and they were gonna sell it to the highest bidder, right?

A.    Yeah, they should.  It's family property.

Q.    That's right.

In your opinion, it would be good to try to keep it in the family if the price was correct?

A.    That was my initial conversation right after I got here; called everybody together and said, "Does anybody want to buy the other one out?  Let's keep this ranch together."

Q.    And you've testified, and the trust document amendment also says that it's supposed to be sold as reasonable as practicable.

A.    Sure.

Q.    And it's your testimony that my clients were the highest bidder on that, but that sale was never consummated?

A.    Correct.

Q.    Okay.

A.    Never a contract submitted.

MR. JAMES:  Your Honor, I have no further questions at this time.  I appreciate your time, Judge Stem.

THE WITNESS:  Thank you.

MR. DUNNAM:  Do you have a map, Mr. Firmin?

THE COURT:  Here you go.

relate to 64.001 of the Civil Practice and Remedies Code. And they don't relate to 114.008(a)(5) of the Texas Property Code. Neither of those statutes include a requirement that you have to exhaust all other remedies. In fact, under 114, it's just one of many options that you can use to remedy a potential breach of trust.

And, in this case, under 64.001, all you have to have in order to be able to get a receivership is you've gotta have a probable interest in the right of the property, okay? All the -- everybody agrees here that the beneficiaries have an interest in that property and in the trust, okay? We talked about a plan of distribution for that. So there's no question there's a probable right in interest of the property, okay? It's part of the trust.

Then you have to show that the property or fund must be in danger of being lost, removed, or materially injured, okay? We already had a beneficiary sue an independent special trustee because she didn't like the decision that was going to happen. If you appoint another trustee, it's the same thing. This trust is always going to be losing money over time.

In fact, that was a concern Josh White raised in a letter to Judge Stem and John Malone was his concern about all the money being lost if litigation was filed, and then a month later, they filed it, and caused all this other

money to be spent on 6,000-plus pages in discovery and everything else that forced our hand to go file a lawsuit to try to protect our rights.

If you appoint another independent trustee, a corporate one, some other -- A: Judge Stem's already told you that it's gonna be unlikely somebody's gonna want to do it. Why would they want to, if they're going to be able to get sued? If Ms. Shelton doesn't like what's going to happen when someone exercises their discretion, she's gonna file a lawsuit. You cloak someone with immunity as a receiver to sell this property, you avoid that. There's not a way to stop this from just devolving into years of wasted money if a Receiver isn't appointed under 64.101 or under 114.

We've asked you to appoint James Volberding. We've attached his exhibit as Exhibit A to our motion -- he's out of Tyler -- as a receiver. He's happy to talk with you, if you like. He's mentioned that to us. I've spoken to the man one time. And his primary practice is on receiverships. That's what he primarily does. He's well-qualified to do this. He's gonna make the decisions that the parties themselves have not been able to agree to.

We've given you evidence under 114.008 that has been a breach of trust that has occurred or might occur. You heard Judge Stem talk about things that Fran Shelton did that were violation of the trust or interpretations of the trust

that were wrong when she was the trustee.

From the very beginning, she made accusations of theft against Kathy's children that she had no evidence of whatsoever that were there. That is not the action of a person who can be a trustee or her husband to be a person who's gonna be a trustee. Those are the type of people that are showing vengeance of vindictiveness, for whatever reason you want, trying to give acreage out of -- that clearly has to be sold.

Front pasture? And you're gonna get 12 acres there? Another plan was provided. She rejected that one. As soon we request access easements back in January of 2023, which by the way, is seven months before Fran Shelton swore under verified pleading that we first raised that issue, she as trustee, immediately denied the ability for us to get this access easements as trustee because she didn't want to be able to share a road. When you're the trustee and also the beneficiary, you don't have the right to take off your hat, favor some people, and not favor another.

Because there's been evidence of a breach of trust, and Judge Stem's talked extensively about how those things that occurred while he was trust advisor before she was removed. Those are in the email. And if I need to prove those up and admit them as evidence, I can. The fact is, a breach of trust has occurred or might occur. If you put her

she picked the road to benefit herself, when she was serving as trustee. Why does she get the road? The only reason we were even willing to contemplate doing that was because accesses are required by the Texas Supreme Court for easement by necessity for a landlocked property, particularly when there's not one.

And that's actually been given -- an ingress-egress easement -- has actually been given by Dorothy and Nick to Kathy Leuschner when she bought the rock house back in the 1990s. We have a certified deed for that that I could put into the record for you, where they granted an easement to Kathy. The same property she's going to get again, her parents gave her an easement. They want to know what Dorothy wanted to do, that's what she did. She gave an easement to Kathy.

So there is more than enough evidence here that a breach of trust has occurred. And when a breach of trust occurs, all there has to be is some evidence, and the Court doesn't abuse their discretion. Those three cases that I gave you: The Benson case, the Moody case, and the Price case, dispel this myth that you have to exhaust all of the other remedies.

And you've heard Judge Stem, a judge with an impeccable reputation in this county -- and elsewhere -- who told you that he believes that is the only way to get these

**REPORTER'S RECORD**
**VOLUME 2 OF 3 VOLUMES**
**TRIAL COURT CAUSE NO. 2024-3035-5**
**COURT OF APPEALS CAUSE NO. 10-25-00108-CV**

FRANCES SPANOS SHELTON,      )(  IN THE DISTRICT COURT OF
    Plaintiff,              )(
                                  )(
VS.                          )(
                                  )(
VERNON LEUSCHNER,            )(
AND AS DURABLE POWER OF      )(
ATTORNEY FOR KATHERINE       )(
LEUSCHNER, ROBERT LEE SPANOS, )(  414TH JUDICIAL DISTRICT
AND KATHRYN NICOLE LAWRIE,    )(
    Intervenors,             )(
                                  )(
VS.                          )(
                                  )(
VERNON LEUSCHNER,INDIVIDUALLY,)(
AND KATHERINE LEUSCHNER,      )(
    Defendants.              )(  MCLENNAN COUNTY, TEXAS

_____

**REPORTER'S CERTIFICATE**
_____

        I, Jennifer Murphy, Official Court Reporter in and for the 414th District Court of McLennan County, State of Texas, do hereby certify that the above and foregoing contains a true and correct transcription of all portions of evidence and other proceedings requested in writing by counsel for the parties to be included in this volume of the Reporter's Record, in the above-styled and numbered cause, all of which occurred in open court or in chambers and were reported by me.

        I further certify that this Reporter's Record of the proceedings truly and correctly reflects the exhibits,

if any, admitted by the respective parties.

WITNESS MY OFFICIAL HAND this, the 10th day of April 2025.

_____/s/Jennifer Murphy_____

Jennifer Murphy, Texas CSR # 11894, CVR
Expiration Date:  09-30-2025
Official Court Reporter
414th District Court
McLennan County, Texas
501 Washington Avenue, Room 307
Waco, Texas 76501
(254)759-5914

# TAB M

**CAUSE NO. 20220135PR1**

| | | |
|---|---|---|
| IN THE ESTATE OF | § | IN THE COUNTY COURT OF |
| | § | |
| DOROTHY J. SPANOS, | § | |
| | § | |
| DECEASED | § | McLENNAN COUNTY, TEXAS |

## APPLICATION TO PROBATE WILL AND FOR
## APPOINTMENT OF A TEMPORARY ADMINISTRATOR

COMES NOW, Applicant, Vernon Leuschner, as the durable power of attorney for Katherine Leuschner ("Applicant") and pursuant to Texas Estates Code § 452.051(a) files this Application to Probate Will and for Appointment of a Temporary Administrator and furnishes the following information to the Court for the appointment of a temporary administrator

### I.
### BACKGROUND

1.      Dorothy J. Spanos died on September 18, 2021. She died testate with a pour-over will dated December 19, 2017 (the "Will"), that calls for her probate assets to be transferred to the Dorothy Spanos Living Trust. The Will has never been admitted to probate and limitations runs on September 18, 2025.

2.      On March 2, 2022, Katherine Leuschner initiated this cause by filing an Application for Appointment of a Temporary Administrator and of a Trust Advisor, which is incorporated herein by reference and attached hereto as **Exh. A**.

3.      On March 8, 2022, Katherine Leuschner filed a Proof of Death and Other Facts. Following a hearing on the same day, the Court appointed Judge Robert Stem to serve as the Temporary Administrator of the Estate of Dorthy J. Spanos and as Trust Advisor of the Dorothy Spanos Living Trust. Letters of Temporary Administration were issued to Judge Stem on March 11, 2022.

4.      On or about May 18, 2022, the Court signed an Agreed Order Approving the Discharge of Temporary Administration and Termination of Temporary Administration (the "Agreed Order"). *See*

**Exh B**. Under the Agreed Order, the parties agreed that there was no necessity of administration at the time, and requested that Judge Stem be discharged from his role as Temporary Administrator, but to continue to serve as the Trust Advisor. The Order also provided that "in the event that assets or debt of the Estate requiring administration were discovered that Frances Shelton, as the named Independent Executor in the Will would either offer the Will for probate, probate the Will as a muniment of title, or record a small estates affidavit, whichever is most feasible or cost effective." The Agreed Order had the effect of leaving Decedent's Estate open and it has never been closed. The September 1, 2022, Agreed Order extending Judge Stem's appointment as Trust Advisor indefinitely evidences that the Estate and this Cause remain open.

5.      Since September 1, 2022, Judge Stem removed Frances Shelton as Trustee of the Trust, and the heirs and beneficiaries of the Dorothy Spanos Living Trust have become embroiled in litigation that is currently pending in the 414th Judicial District Court, including an interlocutory appeal and petition for writ of mandamus that are also pending and involved Judge Luna's appointment of Aubrey Williams as Receiver over certain real property owned by the Dorothy Spanos Living Trust that occasioned the initial Application to be filed in March 2022.

6.      Applicant has identified an asset of Decedent that he does not believe has been dealt with that creates a necessity for a temporary administration. Decedent was the sole member and manager of Spanos Management Company, LLC, and public information reports have continued to be filed with the State of Texas showing Decedent as the Director and President. On information and belief, Spanos Management Company, LLC has a bank account with Independent Financial Bank that contained approximately $40,000 as of September 29, 2023. The membership interest is a probate asset and there is the potential that the bank account of Spanos Management Company, LLC is also a probate asset of Decedent that would require administration to be properly handled and distributed to the Trust.

7.      With limitations set to expire on September 18, 2025 and there being no apparent movement by Frances Shelton to probate the Will, Applicant, out of an abundance of caution, moves that the Court admit the Will of Dorothy J. Spanos to private and appoint a Temporary Administrator to wind up the affairs of the Spanos Management Company, LLC, to close the Spanos Management Company, LLC's bank account, and to deposit the funds in an account owned by the Dorothy Spanos Living Trust.

## II.
## APPLICATION

8.      Applicant is domiciled in Waco, McLennan County, Texas. The last three numbers of Applicant's driver's license are 427, and the last three number of her social security number are 981.

9.      Decedent died on September 18, 2021, in Waco, McLennan County, Texas, at the age of 86 years at which time Decedent was domiciled and resided in Crawford, McLennan County. The last three digits of Decedent's social security number are 332.

10.     Decedent died testate leaving a Will dated December 17, 2017. The Will contains a Self-Proving Affidavit that was witnessed by Taylor N. Kincannon, 8117 Preston Road, Suite 300, Dallas, Texas 75225, and Billy Borunda, 120 Hatach Road, Lorena, Texas 76655. A copy off the will be tendered to the Court along with a certified copy of Decedent's death certificate.

11.     The Court has jurisdiction and venue over this matter because Decedent was domiciled and had a fixed place of residence in McLennan County on the date of death., and there is a pending estate open under this cause.

12.     A necessity exists for the administration of Decedent's estate. The interest of Decedent's estate requires immediate appointment of a temporary administrator because of the issues detailed herein.

13.     Applicant respectfully requests that the Court appoint Aubrey Wiilliams or another qualified third party to serve as the Temporary Administrator. As a Texas resident and licensed attorney that

was appointed by Judge Luna as a Receiver of real property owned by the Dorothy Spanos Living Trust, Mr. Williams would be a suitable Temporary Administrator of the Estate. His office is located at P.O. Box 20156, Waco, Texas 76702. Tex. Estates Code § 256.052.

14. Decedent's Estate is believed to be composed of personal property described generally as membership interest and cash, with a probable value of $40,000.

15. Pursuant to Texas Estates Code §§ 452.002 and 256.054 and to the best of Applicant's knowledge, Decedent died testate. A copy of the purported Will is produced for probate because an original copy of the purported Will is not under Applicant's control or in Applicant's possession. Based on the copy of the Will that Applicant submit, the Will is a pour-over will that gives all of Decedent's probate property to the Trustee of the Dorothy J. Spanos Living Trust. *See* Tex. Estates Code § 256.054. The office of Trustee of the Dorothy Spanos Living Trust is currently vacant.

16. No child or children were born to or adopted by Decedent after the date of the Will or any other will known to exist.

17. After the date of Decedent's Will, no marriage was dissolved.

18. Neither the Will nor any known prior Will of Decedent name either the State of Texas, a governmental agency of the State of Texas, or a charitable organization as a devisee.

19. Aubrey Williams is not disqualified by law from accepting letters of administration.

**Necessity of Temporary Administration.**

20. While Frances Shelton and Rick Shelton are listed respectively as the Independent Executor and the successor, Frances Shelton was removed as Trustee of the Dorothy Spanos Living Trust on May 3, 2023 because the Trust was "indeed of a truly neutral, detached, and independent trustee." The same is needed in connection with Decedent's Estate due to the discord and friction that currently exists between Decedent's heirs and beneficiaries.

21. As detailed above, a necessity exists for the administration of the Decedent's estate because estate assets are in danger of being lost or wasted due to limitations running on September 18, 2025.

22. Appointing a Temporary Administrator is in the best interest of Decedent's estate because it will ensure that an impartial third party is in place to verify and determine the assets of the Estate and timely transfer them to the Trust (ii) that assets are not wasted or used in an impermissible manner, and (ii) that the wishes of the Decedent are honored and her Will probated to effectuate those wishes.

23. As mentioned above, Applicant respectfully requests that the Court appoint the Aubrey Williams or another suitable third party as the Temporary Administrator for the Estate of Dorothy J. Spanos.

**Duties and Powers of Temporary Administrator**

24. A Temporary Administrator of the Estate should be given the following duties and powers:

    a. To take charge and possession of any real property of the Estate that is not otherwise in the Trust.

    b. To take possession of all accounts, funds, stocks, CDs, and other financial accounts subject to probate belonging to Decedent at the time of her death; to open new accounts and to be authorized signatory on those accounts;

    c. To execute and deliver any instruments necessary for the sale, transfer or conveyance of any interest in real property owned by Decedent (including but not limited to contracts, deeds, closing statements, purchase and sale agreements, affidavits, pleadings and other similar documents) at the time of death; to pay court costs and all necessary expenses and attorney's fees; to sue or defend lawsuits; and to exercise any rights necessary to protect Decedent's real and personal property;

    d. To insure the Estate and its assets against liability in appropriate cases;

    e. To insure the Estate property against fire, theft, and other hazards, as deemed necessary by the administrator;

    f. To pay taxes, court costs, and bond premiums, as necessary;

    g. To hire professionals to represent, advise, or assist the Temporary Administrator in performance of his duties;

h.   To consent to and obtain business and financial records, including business records of Spanos Management, LLC, records from financial institutions, records from attorneys for the Decedent and medical records of the Decedent;

i.   To consent to and obtain records of the Nick L. Spanos Family Trust 1994 to determine the relationship between the two trusts and other assets;

j.   To asses and determine all claims and debts owed to the Estate and/or to be paid by the Estate to its creditor; and

k.   To file an Interim Inventory of the Estate of Decedent, within forty-five (45) days of appointment.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Vernon Leuschner, as the durable power of attorney of Katherine Leuschner, respectfully requests that the Court make an immediate appointment of Aubrey Williams or another suitable third party to serve as Temporary Administrator of Decedent's estate to serve as such until discharged by order of this Court, for the issuance of Letters of Administration to the Temporary Administration, and for any such further relief to which she may be entitled.

Respectfully submitted,

**BEARD KULTGEN BROPHY BOSTWICK & DICKSON, PLLC**

Andy McSwain
State Bar No. 13861100
Mark E. Firmin
State Bar No. 24099614
220 South 4th Street
Waco, Texas 76701
(254) 776-5500 – Telephone
(254) 776-3591 – Fax
mcswain@thetexasfirm.com
firmin@thetexasfirm.com

**ATTORNEYS FOR INTERVENOR VERNON LEUSCHNER, AS THE DURABLE**

## CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of September, copy of the foregoing instrument has this day been served upon all known current counsel of record via email, fax, and/or certified mail return receipt requested.

_Monk F_____

## VERIFICATION

**STATE OF TEXAS**           §
                             §
**COUNTY OF McLENNAN**        §

Before me, the undersigned notary public, personally appeared Vernon Leuschner, as the durable power of attorney of Katherine Leuschner known to me or proved to me through her Texas Driver's License, who after being duly sworn, upon her oath stated that she is the Applicant in the above case, that she has read the foregoing document, and the factual allegations contained therein are true and correct within her personal knowledge.

_____
Vernon Leuschner, Durable Power of
Attorney of Katherine Leuschner

SWORN TO AND SUBSCRIBED before me on the ___17th___ day of ___September___,
2025.

ASHLEY ELISE SNYDER
Notary Public, State of Texas
Comm. Expires 02-28-2027
Notary ID 131884344

_____
Notary Public, State of Texas

# EXHIBIT A

Filed 3/2/2022 4:54 PM
J.A. (Andy) Harwell
County Clerk
McLennan County, Texas
By Cynthia Cunningham
Deputy

NOTICE: THIS DOCUMENT
CONTAINS SENSITIVE DATA.

CAUSE NO. 20220135PR1 _____

| | | |
|---|---|---|
| IN THE ESTATE OF | § | IN THE COUNTY COURT AT LAW |
| | § | |
| DOROTHY J. SPANOS, | § | NUMBER ____ OF |
| | § | |
| DECEASED | § | McLENNAN COUNTY, TEXAS |

### APPLICATION FOR APPOINTMENT OF A
### TEMPORARY ADMINISTRATOR AND OF A TRUST ADVISOR

COMES NOW, Applicant, Katherine Leuschner ("Katherine" or "Applicant") and pursuant to Texas Estates Code § 452.051(a) files this Application for Appointment of a Temporary Administrator in the Estate of Dorothy J. Spanos ("Dorothy" or "Decedent") and Trust Advisor of the Dorothy Spanos Living Trust and furnishes the following information to the Court for the appointment of a temporary administrator, respectfully showing the Court as follows:

### APPLICATION

1. Applicant is domiciled in Waco, McLennan County, Texas. The last three numbers of Applicant's driver's license are 728, and the last three number of her social security number are 328.

2. Decedent died on September 18, 2021, in Crawford, McLennan County, Texas, at the age of 86 years. The last three digits of Decedent's social security number are 332.

3. The Court has jurisdiction and venue over this matter because Decedent was domiciled and had a fixed place of residence in McLennan County on the date of death.

4. A necessity exists for the administration Decedent's estate. The interest of Decedent's estate requires immediate appointment of a temporary administrator because of issues detailed in the section below.

5. Applicant respectfully requests that the Court appoint the Honorable Judge Robert Stem (retired) as the Temporary Administrator for the Estate of Dorothy J. Spanos and as Trust Advisor

for the Dorothy Spanos Living Trust. As a Texas resident and the Senior District Judge of Falls County, Judge Stem would be a suitable Temporary Administrator of the Estate and as the Trust Advisor. His office is located at 108 Bridge St., Marlin, Texas 76661. Tex. Estates Code § 256.052.

6.      Decedent's Estate/Trust is composed of personal and real property described generally as real and personal property, cash, personal effects, personal and recreational vehicles, and household goods of a probable value in excess of $5,000,000.

7.      Pursuant to Texas Estates Code §§ 452.002 and 256.054 and to the best of Applicant's knowledge, Decedent died testate. A will is not produced for probate because an original copy of the purported will ("the Will") is not under Applicant's control or in Applicant's possession. Based on the copy of the Will that Applicant has seen, Applicant believes the Will to be a pour-over will that gives all of Decedent's probate property to the Trustee of the Dorothy J. Spanos Living Trust. *See* Tex. Estates Code § 256.054. The current Trustee of the Trust is Frances Shelton, whose address is 11339 Cedar Rock Parkway, Crawford, Texas 76638. In the case of partial intestacy, Frances Shelton Applicant are Decedent's heirs.

8.      No child or children were born to or adopted by Decedent after the date of the Will or any other will known to exist.

9.      After the date of Decedent's Will, no marriage was dissolved.

10.     Neither the Will nor any known prior Will of Decedent name either the State of Texas, a governmental agency of the State of Texas, or a charitable organization as a devisee.

11.     The Honorable Judge Robert Stem (retired) is not disqualified by law from accepting letters of administration.

## INFORMATION IN SUPPORT OF THE NECESSITY OF ADMINISTRATION AND APPLICATION FOR THE APPOINTMENT OF A TEMPORARY ADMINISTRATOR AND TRUST ADVISOR

### Background Information

12.    For 56 years, Decedent was married to Nick L. Spanos ("Nick"). Applicant and her sister, Frances Shelton ("Frances"), are the only two children from the marriage of Decedent and Nick.

13.    Decedent and Nick operated a successful trucking business as well as businesses in the warehouse and aeronautical industries. Nick passed away in 2013. They built their home on 261 acres located at 228 Spanos Ranch Rd., Crawford, Texas 76638 ("the Crawford Ranch").

14.    On or about December 19, 2017, Decedent executed several estate planning documents, including but not limited to (i) a Statutory Durable Power of Attorney naming Frances as her agent, (ii) the Dorothy Spanos Living Trust[1] appointing Frances as Trustee in the event of Dorothy's incapacity or death ("the Trust"), and (iii) the Pour-Over Will of Dorothy J. Spanos ("the Will"), designating Frances as executor of Dorothy's estate.[2] Applicant is a named beneficiary under the Trust..

15.    On or about July 1, 2020, Decedent executed the First Amendment to the Dorothy Spanos Living Trust ("the Trust Amendment") that made several specific distributions to various beneficiaries of cash, personal property, and real property.

16.    Applicant is unaware of any further amendments to the Trust or codicils to the known Will.

17.    At this time, Applicant is not contesting the validity of the Will, the Trust, or its amendment, but rather seeks to have the Trust faithfully interpreted and the Trust and Estate properly administered.

---

[1] The Trust has several named beneficiaries, including Applicant, Frances, Rick, and several grandchildren and great-grandchildren of Decedent.
[2] Frances's husband, Rick, was named as a successor to Frances in the DPOA, Trust, and Will.

## Decedent's Trust Provides for Appointment of Trust Advisor

18.     As settlor of the Trust, Decedent expressly provided for the appointment of a Trust Advisor—a court-appointed neutral third party who is unrelated to any beneficiary—whose "purpose is to direct [Dorothy's] Trustee in matters concerning the trust, and to assist in achieving [Dorothy's] objectives as expressed by the other provisions of [her] estate plan if needed." Trust § 4.01–.02.

19.     As a beneficiary of the Trust, Applicant possesses the right to request the appointment of a Trust Advisor. *See* Trust § 4.02.

20.     A need exists for the appointment of a Trust Advisor because (i) the Trustee has failed to provide basic information about the Trust and its assets, (ii) there are disputes concerning the interpretation of specific distributions in the Trust Amendment, and (iii) concerns relating to the disposition of other real property, personal property, and use and/or wasting of trust assets as detailed herein.

## Trust and Will Control the Payment of Debts, Collection of Claims Owed to the Estate, and Disposition of Significant Assets,

21.     The Trust and the Will control the disposition of Decedent's considerable assets and the Estate is the administrative vehicle through which debts owed to or by the Estate are to be collected and paid. any liabilities that are owed by her estate.

22.     On information and belief, included among the Trust assets are multiple banks accounts, certificates of deposit, stock accounts, and multiple real property tracts.[3]

23.     Additionally, the Estate is owed a large debt by Frances' husband, Rick Shelton, in excess of $550,000.   On information and belief, soon after Decedent's death, Rick became delinquent on payments for what is known as the "Warehouse Loan."  Frances' failure to pursue payment created

---

[3] Applicant also recently learned about the existence of the Nick L. Spanos Family Trust of 1994 and Spanos Management LLC—both of which could have a bearing on what property is managed by the Trust, and through which Applicant may ultimately be a beneficiary.  On information and belief, Frances is the trustee of the Nick L. Spanos Trust, but she has been less than forthcoming about the existence of these entities and their possible relationship to the Trust.

the appearance of self-dealing and favoritism toward her husband to the detriment of the other beneficiaries of the Trust and Estate.

24. When confronted by Applicant and other beneficiaries about non-payment of the Warehouse Loan, Frances merely provided copies of (possibly post-dated) checks Rick wrote without proof that those checks had been deposited, and Frances persists in refusing to provide information on the terms of the loan. The acts and omissions of Frances in this regard further underscore the need for the appointment of a Trust Advisor and Temporary Administrator to ascertain the details of the Warehouse Loan, including but to limited to the terms of the loan, the amount owed, the amortization schedule, and to ensure that timely payments are made without any favoritism or self-dealing.

**Applicant is Entitled to Transparency as well as Accurate and Complete Information**

25. The Trust provides that the "Trustee must provide an annual accounting to the Income Beneficiaries," which "must include the receipts, expenditures, and distributions of income and principal and the assets on hand for each accounting period." Further, the Trustee "must make the [T]rust's financial records and documents available to beneficiaries at reasonable times and upon reasonable notice for inspection." Trust § 12.13.

26. Despite repeated written and verbal requests from Applicant and other beneficiaries for Frances has failed to provide full and complete information regarding the Estate and Trust assets, the claims and/or debts against the Estate/Trust owed to creditors, or sufficient information regarding potential self-dealing transactions between Executor/Trustee Frances and Frances's husband, Rick, and has wasted Estate/Trust assets which she has a duty to preserve and manage for the beneficiaries.

27. As mentioned above, Frances failed to pursue payment from Rick on behalf of the Estate/Trust and persists in refusing to be transparent about the details concerning the Warehouse Loan and the assets of the Estate/Trust. **Frances marital relationship to a debtor of the Estate may also explain why she has failed to offer the Will for probate, which would require her to**

**provide a certified inventory and pursue claims owed to the Estate.** Frances' conflict of interest and unwillingness to act in this regard further undergirds the need for a Temporary Administrator and Trust Advisor.

28.     Frances also refuses to provide full and complete information regarding a check she wrote less than two weeks after Decedent passing from one of Decedent's checking accounts to Rick for more than $8,000.00. While this and other questionable transactions may ultimately prove to be legitimate, Frances has utterly failed to be transparent and her persistence in refusing to provide full accounting demonstrating that they are, and thus, creating the appearance of impropriety and self-dealing that necessitate oversight by a Temporary Administrator/Trust Advisor to guard against abuse and breach of the fiduciary duty Frances owes every beneficiary.

### Special Treatment for Family of Executor/Trustee; Waste of Estate/Trust Assets

29.     Immediately following Decedent's death, Frances wasted no less than $48,000 in Estate/Trust assets by hiring private, 24-hour, in-person security guards at the Crawford house, which already had a security system and cameras. Frances has failed to provide any satisfactory explanation for the necessity in retaining 24-hour security for a residence that is otherwise in a safe neighborhood with no history of crime.

30.     Moreover, Frances continues to treat Applicant and other beneficiaries differently than she treats herself, her husband, and her and her husband's children. Frances excluded Applicant and her family members—who are named as beneficiaries in the Trust—from accessing Decedent's home and real property in Crawford, which they have always been permitted to use for recreation and leisure.

31.     Most egregiously is Frances' handling of a lot and membership at Escondido in Horseshoe Bay when compared to how she has treated Bobby Spanos, Applicant's son. Prior to Decedent's passing, Frances, acting in her capacity as co-Trustee, executed an admittedly invalid transfer to the Escondido lot and memberships that went to her and Rick under the Trust Amendment so that Rick

could play golf whenever he wanted. Conversely, on the date of Decedent's death, Frances kicked Bobby Spanos out of the residence on the Crawford Ranch that he lived in with Decedent and he has been denied free access to the Crawford Ranch since that time despite being entitled to 44 acres of the Crawford Ranch under the Trust Amendment.

32. At the same time, Frances admittedly used Decedent's second home in Horseshoe Bay for her own benefit, and even allowed other family members to use it. Interestingly, Frances never saw fit to spend tens of thousands of dollars on security guards for this seldomly occupied vacation property, which only fuels Applicant's belief that the in-person security at the Crawford Ranch was hired to exclude Applicant and her family. The appointment of a Trust Advisor and Temporary Administrator is necessary to ensure that all beneficiaries have equal access to and enjoyment of the real property held by the Trust for all of their benefit and not for the exclusive use of the Trustee's family.

**Refusal to Honor Decedent's Express Wishes in Division and Use of Real Property**

33. Section 7.11 of the 2020 Trust Amendment provides explicit instructions for the division and distribution of Decedent's Crawford Ranch amongst the various beneficiaries. One such specific distribution requires that 39.322 acres, expressly identified by Decedent, to be sold with the proceeds evenly distributed amongst Frances (1/3), Applicant (1/3), and the Decedent's living grandchildren (1/3). Section 7.11 goes on to identify the acreage to be sold as: the existing house; RV Shed, and 39.322 acres including runway, front pasture, and pasture behind the home . . ." (see excerpt below).

> The existing house; RV Shed; Hanger; and 39.322 acres including runway, front pasture, and pasture behind the home to be sold with proceeds evenly distributed in the following manner:
>
> 1/3 to Frances Shelton;
>
> 1/3 to Katherine Leuschner; and
>
> 1/3 to be evenly divided amongst all living grandchildren at the time of my death.
>
> Property passing under this Section passes free of any administrative expenses or death taxes.

34.     Despite these detailed instructions, Frances (or rather Rick[4]) hired 1519 Surveying & Engineering to gerrymander the distribution so as to package acreage to be distributed to her and her children/stepchildren that she then intends to sell as part of the 39.322 acres in order to maximize the amount of proceeds she and her children/step-children receive while harming Applicant and her children's future use and enjoyment of the Crawford Ranch. For example, the most recent survey cuts out 12.00 acres from the front pasture fronting Cedar Rock Parkway to be distributed to Frances' son, Nick, as well as prime property for Frances and her step-children Brandon and Brianna, leaving Applicant and her children with less than desirable acreage at the back of the property. See excerpt below and survey attached hereto as **Exhibit A.**



---

[4] The Survey clearly indicates that it was prepared for Rick Shelton despite him lacking any authority to act on behalf of the Trust.

35. Because of Frances' refusal to honor a specific distribution in the Trust, a Trust Advisor is needed to ensure that Decedent's wishes are honored.

**Necessity for Temporary Administrator and Trust Advisor**

36. As detailed above, a necessity exists for the administration of the Decedent's estate and the appointment of a Trust Advisor because estate assets and/or assets held by the Trust are in danger of being lost or wasted due to the mismanagement of Frances, the Executor/Trustee, and Frances has engaged in behaviors that, at a minimum, have the appearance of self-dealing and border on a breach of her fiduciary duty.

37. Appointing a Temporary Administrator and Trust Advisor are in the best interest of Decedent's estate and Trust as well as Decedent's beneficiaries because it will ensure (i) that an impartial third party is in place to verify and determine the assets of the Estate and Trust, (ii) that the debts owed to and by the Estate/Trust are timely and appropriately paid, (iii) that the beneficiaries are treated equally, (iv) that assets are not wasted or used in an impermissible manner, and (v) that the wishes of the Decedent are honored.

38. As mentioned above, Applicant respectfully requests that the Court appoint the Honorable Judge Robert Stem (retired) as the Temporary Administrator for the Estate of Dorothy J. Spanos and Trust Advisor for the Dorothy Spanos Living Trust.

**Duties and Powers of Temporary Administrator**

39. A Temporary Administrator of the Estate should be given the following duties and powers:

    a.    To take charge and possession of any real property of the Estate that is not otherwise in the Trust.

    b.    To take possession of all accounts, funds, stocks, CDs, and other financial accounts subject to probate belonging to Decedent at the time of her death; to open new accounts and to be authorized signatory on those accounts;

    c.    To execute and deliver any instruments necessary for the sale, transfer or conveyance of any interest in real property owned by Decedent (including but not limited to contracts, deeds, closing statements, purchase and sale agreements, affidavits,

pleadings and other similar documents) at the time of death; to pay court costs and all necessary expenses and attorney's fees; to sue or defend lawsuits; and to exercise any rights necessary to protect Decedent's real and personal property;

d.    To insure the Estate and its assets against liability in appropriate cases;

e.    To insure the Estate property against fire, theft, and other hazards, as deemed necessary by the administrator;

f.    To pay taxes, court costs, and bond premiums, as necessary;

g.    To hire professionals to represent, advise, or assist the Temporary Administrator in performance of his duties;

h.    To consent to and obtain business and financial records, including business records of Spanos Management, LLC, records from financial institutions, records from attorneys for the Decedent and medical records of the Decedent;

i.    To consent to and obtain records of the Nick L. Spanos Family Trust 1994 to determine the relationship between the two trusts and other assets;

j.    To asses and determine all claims and debts owed to the Estate and/or to be paid by the Estate to its creditor; and

k.    To file an Interim Inventory of the Estate of Decedent, within forty-five (45) days of appointment.

## Duties and Powers of the Trust Advisor

40.    Pursuant to the terms of the Trust, a Trust Advisor has, among others, the following broad powers:

a.    to demand a written accounting from the Trustee, review the accounting, and approve or reject the accounting;

b.    to construe the terms of the Trust to settle any interpretation disputes;

c.    to execute documents and direct the Trustee to execute and deliver documents;

d.    to examine the trust records, including all documentation, inventories, and accountings; and

e.    to employ professionals to advise or assist the Trust Advisor perform his duties.

Trust §§ 4.07, 4.13–.14.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Katherine respectfully requests that the Court make an immediate appointment of the Honorable Judge Robert Stem (retired) as Temporary Administrator of Decedent's estate and Trust Advisor of the Dorothy Spanos Living Trust to serve as such until discharged by order of this Court, for the issuance of Letters of Administration to the Temporary Administration, and for any such further relief to which she may be entitled.

Respectfully submitted,

**BEARD KULTGEN BROPHY
BOSTWICK & DICKSON, PLLC**

Julia B. Jurgensen
State Bar No. 24050328
Mark E. Firmin
State Bar No. 24099614
220 South 4th Street
Waco, Texas 76701
(254) 776-5500 – Telephone
(254) 776-3591 – Fax
jurgensen@thetexasfirm.com
firmin@thetexasfirm.com
**ATTORNEYS FOR APPLICANT**

**VERIFICATION**

**STATE OF TEXAS**                          §
                                            §
**COUNTY OF McLENNAN**                       §

  Before me, the undersigned notary public, personally appeared Katherine Leuschner, known to me or proved to me through her Texas Driver's License, who after being duly sworn, upon her oath stated that she is the Applicant in the above case, that she has read the foregoing document, and the factual allegations contained therein are true and correct within her personal knowledge.

*Katherine Leuschner*
Katherine Leuschner

  SWORN TO AND SUBSCRIBED before me on the 2nd day of March , 2022.

SARAH JANE ROWELL
Notary Public
STATE OF TEXAS
ID# 13182054-6
My Comm. Exp. Dec. 4, 2022

*Sarah Jane Rowell*
Notary Public, State of Texas

# EXHIBIT A



**Automated Certificate of eService**
This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Melissa Perez on behalf of Mark Firmin
Bar No. 24099614
perez@thetexasfirm.com
Envelope ID: 62243180
Status as of 3/3/2022 8:26 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Julia Jurgensen | | Jurgensen@thetexasfirm.com | 3/2/2022 4:54:39 PM | SENT |
| Melissa Perez | | Perez@thetexasfirm.com | 3/2/2022 4:54:39 PM | SENT |
| Sarah Rowell | | Rowell@thetexasfirm.com | 3/2/2022 4:54:39 PM | SENT |
| Mark Firmin | | firmin@thetexasfirm.com | 3/2/2022 4:54:39 PM | SENT |

# EXHIBIT B

J.A. "ANDY" HARWELL
McLENNAN COUNTY CLERK
FILED
2022 MAY 19 AM 11: 21

**CAUSE NO. 20220135PR1**

| | | |
|---|---|---|
| IN THE ESTATE OF | § | IN THE COUNTY COURT OF |
| | § | |
| DOROTHY J. SPANOS, | § | |
| | § | |
| | § | |
| DECEASED | § | McLENNAN COUNTY, TEXAS |

## AGREED ORDER APPROVING THE DISCHARGE OF TEMPORARY ADMINISTRATOR AND TERMINATION OF TEMPORARY ADMINISTRATION

Before this Court is the Agreed Order Approving the Discharge of Temporary Administrator, the Honorable Judge Robert Stem ("Judge Stem" or "Temporary Administrator"), and Termination of Temporary Administration, on behalf of the Estate of Dorothy J. Spanos, Deceased ("the Estate"). The parties to this Agreed Order have represented to the Court the following:

After diligently investigating the assets of the Estate and Dorothy Spanos Living Trust ("the Trust") in cooperation with Frances Shelton, an heir of the Estate and Trustee of the Trust, and Katherine Leuschner, the other heir of the Estate and a beneficiary of the Trust, the parties have been unable to discover debts owed by or to the Estate, or any assets remaining in the Estate beyond a few vehicles and watercraft, whose titles were not changed to the Trust prior to Decedent's passing.

The parties represent that Shelton and Leuschner are the only heirs of the Decedent and primary beneficiaries of the personal property under the terms the Trust and its amendment.

The parties further represent that based on their investigation to date it appears there is no necessity of administration at this time and that Shelton and Leuschner, in their respective capacities, should be authorized to transfer title to any titled assets via an Affidavit of Heirship or other legal means.

The parties further represent that Shelton and Leuschner have agreed that in the event assets or debts of the Estate requiring administration are discovered Shelton, as the Independent Executor named in the Pour-Over Will of Dorothy J. Spanos ("the Will"), will either offer the Will for probate,

probate the Will as a muniment of title, or record a small estate affidavit, whichever is most feasible and cost-effective.

The parties further agree that because there is no necessity of administration at this time and no need for an inventory, that Judge Stem shall be discharged as Temporary Administrator, his bond released, and the Temporary Administration terminated.

The Court, therefore, makes the following findings:

1. By order of the Court, the Honorable Judge Robert Stem was duly appointed to serve as Temporary Administrator of the Estate of Dorothy J. Spanos and as Trust Advisor of the Dorothy Spanos Living Trust on March 8, 2022.

2. Judge Stem has served in the role of Temporary Administrator and Trust Advisor since his appointment and has acted in accordance with this Court's order and pursuant to the powers granted therein.

3. Judge Stem has made a diligent search to determine the assets of the Estate and Trust and debts owed to or by the Estate.

4. Judge Stem has determined, to the best of his knowledge, that the only assets that were not transferred to the Trust were a few vehicles and watercrafts that can be dealt with through an Affidavit of Heirship or other legal means.

5. Judge Stem has determined that there is no necessity for an administration of this Estate at this time.

6. Judge Stem has managed the Estate in compliance with the standards set forth for a temporary administrator in the Texas Estates Code.

7. Judge Stem has not paid any fees or expenses from the assets of the Estate.

8.    Judge Stem is entitled to be paid compensation for his services as Temporary Administrator pursuant to Texas Estates Code § 352.002 and shall be paid for such services from assets in the Trust.

9.    Judge Stem shall be discharged as Temporary Administrator and the Temporary Administration terminated.

10.    Judge Stem shall continue to serve as the Trust Advisor of the Dorothy Spanos Living Trust in accordance with the Court's order of March 8, 2022 and pursuant to the terms of the Trust.

IT IS ORDERED THAT:

1.    Judge Stem shall be paid for reasonable and necessary services rendered as Temporary Administrator from the assets of the Trust and the parties agree that Judge Stem shall carry his fees forward until his service as the Trust Advisor is complete at which such time he shall submit an invoice to the Trustee;

2.    No necessity of administration exists at this time and that Leuschner and Shelton may execute any documents necessary to transfer title to any personal property or real property in their respective capacities;

3.    That in the event an administration becomes necessary or other assts discovered, Shelton shall timely offer the Will for probate, probate the Will as a muniment of title, or record a small estate affidavit, whichever is most feasible and cost-effective; and

4.    That Judge Stem is discharged as temporary administrator of the Estate and the Temporary Administration is terminated.

SIGNED, ENTERED, and ORDERED on this ___18th___ day of May 2022.

_____
JUDGE PRESIDING

APPROVED AS TO FORM AND SUBSTANCE:

/s/ Robert Stem
Judge Robert Stem, Temporary Administrator


/s/ Mark E. Firmin
Attorney for Katherine Leuschner


/s/ Daniel A. Palmer
Attorney for Frances Shelton

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Sarah Rowell on behalf of Mark Firmin
Bar No. 24099614
Rowell@thetexasfirm.com
Envelope ID: 64478595
Status as of 5/13/2022 10:36 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Robert Stem | | rstemfalls@gmail.com | 5/13/2022 10:18:36 AM | SENT |
| Daniel Palmer | | dpalmer@haleyolson.com | 5/13/2022 10:18:36 AM | SENT |
| Melissa Perez | | Perez@thetexasfirm.com | 5/13/2022 10:18:36 AM | SENT |
| Sarah Rowell | | Rowell@thetexasfirm.com | 5/13/2022 10:18:36 AM | SENT |
| Mark Firmin | | firmin@thetexasfirm.com | 5/13/2022 10:18:36 AM | SENT |
| Julia Jurgensen | | Jurgensen@thetexasfirm.com | 5/13/2022 10:18:36 AM | SENT |

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Kelly Blackburn on behalf of William Richard Thompson
Bar No. 788537
efile@dpslawgroup.com
Envelope ID: 106480768
Filing Code Description: Original Proceeding Petition
Filing Description: Petition for Writ of Mandamus
Status as of 10/6/2025 1:37 PM CST

Associated Case Party: FrancesSpanosShelton

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Kelly Blackburn | | efile@dpslawgroup.com | 10/6/2025 12:28:00 PM | SENT |
| Kirk Pittard | | kpittard@dpslawgroup.com | 10/6/2025 12:28:00 PM | SENT |
| Rick Thompson | | rthompson@dpslawgroup.com | 10/6/2025 12:28:00 PM | SENT |
| Craig Cherry | 24012419 | ccherry@cjsjlaw.com | 10/6/2025 12:28:00 PM | SENT |
| Ryan Johnson | 24048574 | rjohnson@cjsjlaw.com | 10/6/2025 12:28:00 PM | SENT |
| Scott James | 24037848 | sjames@cjsjlaw.com | 10/6/2025 12:28:00 PM | SENT |

Associated Case Party: Vernon Leuschner

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Angus McSwain | 13861100 | mcswain@thetexasfirm.com | 10/6/2025 12:28:00 PM | SENT |
| Mark Firmin | 24099614 | firmin@thetexasfirm.com | 10/6/2025 12:28:00 PM | SENT |

Associated Case Party: Robert Spanos

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| James Dunnam | 6258010 | jimdunnam@dunnamlaw.com | 10/6/2025 12:28:00 PM | SENT |
| Andrea Mehta | 24078992 | andreamehta@dunnamlaw.com | 10/6/2025 12:28:00 PM | SENT |
| Mason Dunnam | 24108079 | masondunnam@dunnamlaw.com | 10/6/2025 12:28:00 PM | SENT |

Associated Case Party: Hon. Judge Ryan Luna

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Hon. Judge Ryan Luna | | 414th@mclennan.gov | 10/6/2025 12:28:00 PM | SENT |

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Kelly Blackburn on behalf of William Richard Thompson
Bar No. 788537
efile@dpslawgroup.com
Envelope ID: 106480768
Filing Code Description: Original Proceeding Petition
Filing Description: Petition for Writ of Mandamus
Status as of 10/6/2025 1:37 PM CST

Associated Case Party: Aubrey Williams

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Aubrey Williams | 21512500 | aubreyw9000@yahoo.com | 10/6/2025 12:28:00 PM | SENT |